UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | No. 2:14-cv-08725-CAS(AGRx) | Date | June 15, 2015 |
|---|---|---|---|
| Title | GOLDEN V. O'MELVENY & MEYERS, LLP | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: | |
| Jerrold Bregman | Kevin Rosen | |

**Proceedings:** DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS (Filed 05/04/2015, Dkt. 17)

## I. INTRODUCTION

On November 10, 2014, plaintiff Jeffrey I. Golden, in his capacity as the trustee in bankruptcy for defendants' former client, Aletheia Research and Management, Inc. ("Aletheia"), filed a plenary action in this Court against defendants O'Melveny & Myers LLP, Steven J. Olson, J. Jorge deNeve, and Freedman + Taitelman, LLP for alleged legal malpractice. Dkt. 1 ("Cmplt."). He asserts claims for: (1) professional negligence (conflict of interest); (2) breach of fiduciary duty; (3) avoidance and recovery of preferential transfers under 11 U.S.C. §§ 548 and 550; (4) avoidance and recovery of fraudulent conveyances (two-year transfers) under 11 U.S.C. §§ 548 and 550; and (5) avoidance and recovery of fraudulent conveyances (four-year transfers) under 11 U.S.C. §§ 544 and 550 and Cal. Civ. Code §§ 3439.04, 3439.05, and 3439.07. Id.

On May 4, 2015, defendants O'Melveny & Myers LLP, Steven J. Olson, and J. Jorge deNeve (collectively, "O'Melveny") moved to compel arbitration. Dkt. 17 ("Mot."). In the alternative, O'Melveny seeks to compel arbitration of claims one, two, and five and stay litigation of claims three and four pending the completion of arbitration. Id. at 14. On May 15, 2015, plaintiff filed an opposition, conceding that the first two claims may be arbitrable, but contending that the other claims are not subject to arbitration because they arise under the Bankruptcy Code. Dkt. 26 ("Opp'n") at 1. On May 28, 2015, O'Melveny filed a reply. Dkt. No. 29. The Court held a hearing on June 15, 2015. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | No. 2:14-cv-08725-CAS(AGRx) | Date | June 15, 2015 |
| Title | GOLDEN V. O'MELVENY & MEYERS, LLP | | |

## II.   FACTUAL BACKGROUND

Aletheia was a Los Angeles-based investment advising firm serving high net worth individuals and institutions. Compl. ¶ 13. When the U.S. Securities and Exchange Commission ("SEC") began to investigate Aletheia's activities, Aletheia retained O'Melveny on January 26, 2010, pursuant to a written engagement agreement, to represent the firm and several of its officers and directors in connection with the investigation. Id. ¶¶ 26-29.

The January 26, 2010 engagement agreement notified the parties that the terms of engagement would call for arbitration should disputes arise between the parties:

> The Terms include an agreement to arbitrate certain matters before and pursuant to the Comprehensive Arbitration Rules and Procedures (as then in effect) of JAMS in the City of Los Angeles. You should note that discovery rules, standards of evidence, rights to appeal, and procedural rules, among other things, differ in arbitration from the rules applicable in a civil trial. By agreeing to arbitration, you also will be agreeing to waive any right to a jury or court trial.

Dkt. 17-2 ("January 26, 2010 Agreement") at 10-11.[1] Additionally, the agreement permitted Aletheia and its officers and directors to check the boxes next to their names if they "did not wish to agree now to arbitration of any disputes, claims or controversies to the extent provided in the attached Terms." Id. at 11. Aletheia left the box next to its name blank. See id.

The attached terms of engagement included an arbitration provision that stated as follows:

---

[1] The engagement agreement and the terms of engagement are both docketed as parts of Exhibit A to the Declaration of Seth Aronson, Dkt. 17-1. The pages of the agreement are unnumbered, while the pages of the terms of the engagement are numbered consecutively starting with 1. Accordingly, the Court cites to the pagination generated by its electronic case filing system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | No. 2:14-cv-08725-CAS(AGRx) | Date | June 15, 2015 |
| Title | GOLDEN V. O'MELVENY & MEYERS, LLP | | |

Arbitration of All Disputes, Claims or Controversies. As a material part of our agreement, you and we agree that any and all disputes, claims or controversies arising out of or relating to this agreement, our relationship, or the services performed, will be determined exclusively by confidential, final and binding arbitration, in accordance with the then existing Comprehensive Arbitration Rules and Procedures of JAMS, in the City of Los Angeles. Disputes, claims and controversies subject to final and binding arbitration include, without limitation, all those that otherwise could be tried in court to a judge or jury in the absence of this agreement to arbitrate. Such disputes, claims and controversies include, without limitation, claims of professional malpractice or other disputes over the quality of our services, claims relating to or arising out of your or our performance under these Terms, and disputes over fees or other charges, costs or expenses (except as covered by the next paragraph[2] or prohibited by law) and any other claims arising out of any alleged act or omission by you or us. By agreeing to submit all such disputes, claims and controversies to binding arbitration, you and we expressly waive any rights to have such matters heard or tried in court before a judge or jury or in another tribunal. Any award will be final, binding and conclusive upon the parties, subject only to judicial review provided by statute, and a judgment rendered on the arbitration award can be entered in any state or federal court having jurisdiction thereof. . . .

Waiver of Right to Jury or Court Trial. You understand that by entering into this agreement to arbitrate you and we are waiving any right to a jury or court trial, to the extent permitted by law.

Id. at 22-23 (footnote added).

Aletheia has repeatedly thereafter supplemented its engagement agreement with O'Melveny to cover additional matters. See Dkt. 17-3 ("April 13, 2010 Agreement");

---

[2] The next paragraph dealt with disputes "subject to the jurisdiction of the State of California over fees, charges, costs or expenses." Id. at 23.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | No. 2:14-cv-08725-CAS(AGRx) | Date | June 15, 2015 |
| Title | GOLDEN V. O'MELVENY & MEYERS, LLP | | |

Dkt. 17-4 ("July 13, 2010 Agreement"); Dkt. 17-5 ("April 14, 2011 Agreement").[3] The instant claims against O'Melveny arise from its representation in these matters. See, e.g., Compl. ¶¶ 15, 30-32, 36, 41, 42, 46, 56, 94.

## III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects a "liberal federal policy favoring arbitration agreements." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991) (quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). The "first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate the dispute." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). The court must determine (1) whether there exists a valid agreement to arbitrate; and (2) if there is a valid agreement, whether the dispute falls within its terms. Chiron Corp. v. Ortho Diagnostic Sys., 207 F.3d 1126, 1130 (9th Cir. 2000).

When determining whether a valid and enforceable contract to arbitrate has been established for the purposes of the FAA, federal courts should apply "ordinary state-law principles that govern the formation of contracts to decide whether the parties agreed to arbitrate a certain matter." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Circuit City Stores v. Adams, 279 F.3d 889, 892 (9th Cir. 2002). "[A]greements to arbitrate [may] be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." AT&T Mobility LLC v. Concepcion, 563 __ U.S. __, 131 S. Ct. 1740, 1746 (2011). The party asserting a defense to the enforceability of an arbitration agreement has the burden of proving that defense by a preponderance of the evidence. See Engalla v. Permanente Med. Grp., 15 Cal. 4th 951, 972 (1997).

---

[3] The supplemental engagement agreements are docketed as Exhibits B-D to the Aronson Declaration.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | No. 2:14-cv-08725-CAS(AGRx) | Date | June 15, 2015 |
| Title | GOLDEN V. O'MELVENY & MEYERS, LLP | | |

## IV. ANALYSIS

O'Melveny seeks to compel arbitration of this entire action. Mot. at 2. Alternatively, O'Melveny moves the Court to compel arbitration of plaintiff's claims for professional negligence (claim 1), breach of fiduciary duty (claim 2), and "state law fraudulent conveyances" (claim 5), while staying the remainder of the case pending completion of the arbitration. Id. at 2-3. In opposition, plaintiff concedes that claims one and two "may be subject to arbitration," Opp'n at 1, but asserts that his latter three claims arise under the Bankruptcy Code, are not subject to any arbitration agreement, and should be litigated before claims one and two are arbitrated, id. at 1-3.

### A. Claims One and Two

As noted above, plaintiff concedes that claims one and two "may be subject to arbitration." Opp'n at 1. The claims for professional negligence (conflict of interest) and breach of fiduciary duty are both indisputably based on O'Melveny's legal services. Thus, they fall within the scope of the provision for arbitration of "claims of professional malpractice or other disputes over the quality of [O'Melveny's] services, claims relating to or arising out of . . . [its] performance under the[] Terms [of the representation], and disputes over fees or other charges." Dkt. 17-2 at 22-23. Accordingly, plaintiff must arbitrate claims one and two.

### B. Claims Three through Five

Plaintiff contends that claims three through five are "not subject to an arbitration agreement" because they "arise under the Bankruptcy Code." The claims for avoidance and recovery of preferential, two-year, and four-year transfers under 11 U.S.C. §§ 544, 548, and 550 are all based on allegations that O'Melveny committed malpractice and breached its fiduciary obligations while representing Aletheia. Moreover, they all challenge O'Melveny's entitlement to be paid fees for its legal services. Therefore, they too fall within the scope of the arbitration agreement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | No. 2:14-cv-08725-CAS(AGRx) | Date | June 15, 2015 |
| Title | GOLDEN V. O'MELVENY & MEYERS, LLP | | |

However, the law is unsettled as to whether a court may compel the parties to arbitrate such "core" bankruptcy claims. "Title 11 governs bankruptcy." In re Donovan Corp., 215 F.3d 929, 930 (9th Cir. 2000). Thus, a core bankruptcy proceeding "aris[es] under title 11, or aris[es] in a case under title 11," while a non-core proceeding "is otherwise related to a case under title 11." In re Bellingham Ins. Agency, 702 F.3d 553, 558 (9th Cir. 2012) (quoting 28 U.S.C. §§ 157(b)(1), 157(c)(1)).

### 1. Whether Claim Five Arises Under the Bankruptcy Code

Although O'Melveny concedes that claim five invokes 11 U.S.C. § 544, it argues that the claim arises under Cal. Civ. Code §§ 3439.04, et seq. Mot. at 10 n.2. Instead of authorizing a stand-alone cause of action, § 544 allows a trustee to bring a claim for fraudulent conveyance under state law, which sometimes provides a longer statute of limitations. See In re United Energy Corp., 944 F.2d 589, 593 & 594 n.5 (9th Cir. 1991). According to O'Melveny, this renders claim five "nothing more than a state law claim for fraudulent conveyances." Mot. at 10 n.2.

The Court is unpersuaded by this argument. Under the plain terms of 28 U.S.C. §§ 157(b)(1), a § 544 claim meets the definition of a core bankruptcy proceeding "arising under title 11." Further, such a claim calls upon the "specialized expertise of the bankruptcy judiciary . . . in the substantive law of fraudulent and preferential transfers . . . [and] the Bankruptcy Code's specific governance over its avoidance remedies." In re Heller Ehrman LLP, 464 B.R. 348, 359 (N.D. Cal. 2011) (citation omitted).

"[F]raudulent transfer claims should not be recharacterized as disguised state law claims absent a showing that plaintiff has failed to state a claim under the applicable fraudulent transfer statute." In re Saigon Plaza Ass'n, LLC, No. 07-40169 LT, 2007 WL 3357641, at *4 (Bankr. N.D. Cal. Nov. 5, 2007) (citing In re Friedman's Inc., 372 B.R. 530, 546 (Bankr. S.D. Ga. 2007) (both declining to recharacterize § 544 claims). The Court concludes that claim five arises under the Bankruptcy Code.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | No. 2:14-cv-08725-CAS(AGRx) | Date | June 15, 2015 |
| Title | GOLDEN V. O'MELVENY & MEYERS, LLP | | |

### 2. Whether Claims Three through Five Should Be Arbitrated

Despite its acknowledgment that "some courts have found that preferential transfers and fraudulent conveyances causes of action based solely on the Bankruptcy Code should not be arbitrated," O'Melveny urges the Court to compel plaintiff to arbitrate his core bankruptcy claims on the ground that "there is no inherent conflict between arbitration and the Bankruptcy Code's underlying purposes" because the core claims "share common questions of fact fully coextensive with [the] state law causes of action for professional malpractice and breach of fiduciary duty." Mot. at 12-13.

The Court is likewise unpersuaded by this argument. "The courts have not adopted any blanket rule as to whether Congress intended to preclude the waiver of judicial remedies in bankruptcy proceedings. Rather, they have followed a case-by-case approach in determining when arbitration conflicts with congressional bankruptcy policy." In re Arundotech, LLC, No. BAP.CC-08-1282-PADC, 2009 WL 7809008, at *8 (B.A.P. 9th Cir. May 4, 2009) (citing MBNA Am. Bank, N.A. v. Hill, 436 F.3d 104, 108 (2d Cir. 2006); In re U.S. Lines, 197 F.3d 631, 640 (2d Cir. 1999)).

In the leading case of In re Gurga, 176 B.R. 196 (B.A.P. 9th Cir. 1994), the Ninth Circuit held that a court could compel arbitration of non-core claims, such as breach of fiduciary duty. To adjudicate the issue of arbitrability, it was "appropriate for the court (1) to look to the text and legislative history of the Bankruptcy Code for . . . congressional intent [to preclude waiver of judicial remedies] and (2) to determine if there is an inherent conflict, such that arbitration cannot provide the parties the statutory rights and protections afforded under the Bankruptcy Code." Id. at 199-200.

The courts have split, however, on whether a court can also compel the arbitration of core claims. In Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149 (3d Cir. 1989), a bankruptcy trustee sued a brokerage company in district court. In addition to bringing a number of securities fraud-related claims, the trustee raised an avoidance claim under 11 U.S.C. § 544(b). When the defendant moved to compel arbitration, the Third Circuit held that although the trustee was required to arbitrate the majority of the claims:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | No. 2:14-cv-08725-CAS(AGRx) | Date | June 15, 2015 |
| Title | GOLDEN V. O'MELVENY & MEYERS, LLP | | |

> [T]he two claims brought under the trustee's section 544(b) powers are not subject to arbitration . . . . Claims asserted by the trustee under section 544(b) are not derivative of the bankrupt. They are creditor claims that the Code authorizes the trustee to assert on their behalf . . . . [T]here is no justification for binding creditors to an arbitration clause with respect to claims that are not derivative from one who was a party to it . . . . It follows that the trustee cannot be required to arbitrate its section 544(b) claims[.]

Id. at 1155.

Likewise, in In re Gandy, 299 F.3d 489 (5th Cir. 2002), a debtor sued for RICO conspiracy, insider fraud, alter ego, and substantive consolidation in state court. She then added claims under 11 U.S.C. §§ 544, 548, and 550 upon removal of the action to bankruptcy court. The Fifth Circuit held that none of the claims were arbitrable because:

> [C]auses of action under sections 544, 548 and 550 that are in essence created by the Bankruptcy Code for the benefit of creditors of the estate . . . . In this circumstance, the importance of the federal bankruptcy forum provided by the Code is at its zenith. . . . . [T]he heart of Debtor's complaint concerns the avoidance of fraudulent transfers and implicates non-bankruptcy contractual and tort issues in only the most peripheral manner.

Id. at 497 (citations and quotation marks omitted).

Relying on the Third Circuit's decision in Hays, in In re Hagerstown Fiber Ltd. P'ship, 277 B.R. 181 (Bankr. S.D. N.Y. 2002), the court denied a motion to compel a trustee to arbitrate his core claims, including fraudulent conveyance under 11 U.S.C. § 544. The court reasoned that:

> [Section] 544(b) authorizes the trustee to avoid any transfer that an actual creditor holding an allowable claim could have avoided under applicable law. Under non-bankruptcy law, the debtor cannot sue itself to recover its own fraudulent transfers. Section 544(b), however, puts the trustee in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | No. 2:14-cv-08725-CAS(AGRx) | Date | June 15, 2015 |
| Title | GOLDEN V. O'MELVENY & MEYERS, LLP | | |

creditors' shoes, and allows him to assert claims that only they could assert outside of bankruptcy . . . . The claims inherited from the creditors are not arbitrable[.]

Id. at 206-07 (citations omitted).

Similarly, in In re Saigon Plaza Ass'n, LLC, No. 07-40169 LT, 2007 WL 3357641, (Bankr. N.D. Cal. Nov. 5, 2007), the court refused to compel a debtor to arbitrate its core claims, such as lien avoidance and recovery of fraudulent transfers under 11 U.S.C. §§ 544, 548, and 550. The court explained that:

[I]t would conflict with purposes of the Bankruptcy Code to enforce the Arbitration Agreement with respect to the claims based on bankruptcy law, even if those claims are derivative. Congress created the bankruptcy court as a court of special expertise. Enforcing pre-dispute agreements to waive the right to have bankruptcy law issues determined by the bankruptcy court would be contrary to the purposes for which the bankruptcy court was created.

Id. at *4.

However, in Bigelow v. Green Tree Fin. Serv. Corp., No. CV–99–6644, 2000 WL 33596476 (E.D. Cal. Nov. 30, 2000), the court granted a motion to compel arbitration despite its finding that it was unclear whether all of the claims—none of which arose under 11 U.S.C. §§ 544, 548, or 550, as do the claims presently before the Court—were core or non-core. It decided that:

The fact that the matter before the court is a core proceeding does not mean that arbitration is inappropriate. The description of a matter as a core proceeding simply means that the bankruptcy court has the jurisdiction to make a full adjudication. However, merely because the court has the authority to render a decision does not mean it should do so . . . . The Supreme Court precedent makes clear that a court must find an inherent conflict between arbitration and the statutes['] underlying purposes in order

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | No. 2:14-cv-08725-CAS(AGRx) | Date | June 15, 2015 |
| Title | GOLDEN V. O'MELVENY & MEYERS, LLP | | |

to deny enforcement of an arbitration provision to an applicable statutory claim.

Id. at *6 (citation omitted).

Moreover, in In re Wire Comm Wireless, Inc., No. 2:07-CV-02451-MCE, 2008 WL 4279407 (E.D. Cal. Sept. 16, 2008), the court found that claims "unquestionably not predicated on federal bankruptcy law" were subject to arbitration. It determined in dicta that:

> [T]he core/non-core distinction does not . . . affect whether a bankruptcy court has the discretion to deny enforcement of an arbitration agreement . . . . Instead, even where "core" jurisdiction is present, the bankruptcy court will not have discretion to override an arbitration agreement unless it finds that the proceedings are based on provisions of the Bankruptcy Code that inherently conflict with the Arbitration Act or that arbitration of the claim would necessarily jeopardize the objectives of the Bankruptcy Code. Therefore, the bankruptcy judge . . . ha[s] to evaluate the nature of the underlying claims and their effect upon the bankruptcy proceedings before determining whether he ha[s] the discretion to deny arbitration.

Id. at *3 (citations and quotation marks omitted).

Unlike Bigelow and In re Wire Comm, the courts in Hays, In re Gandy, In re Hagerstown, and In re Saigon specifically addressed claims arising under 11 U.S.C. §§ 544, 548, and 550—the same statutes pursuant to which plaintiff brings claims three, four, and five in the instant action. In so doing, these latter courts persuasively reasoned that such claims exist for the benefit of creditors that did not enter into any arbitration agreements. Further, the courts cogently explained that such claims call for the Bankruptcy Court's specialized expertise in the substantive law of fraudulent and preferential transfers, as well as the remedy of avoidance.

In contrast, neither the Bigelow nor In re Wire Comm courts addressed claims arising under 11 U.S.C. §§ 544, 548, and 550. Indeed, as noted above, the claims before

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | No. 2:14-cv-08725-CAS(AGRx) | Date | June 15, 2015 |
| Title | GOLDEN V. O'MELVENY & MEYERS, LLP | | |

the court in In re Wire Comm, were "unquestionably not predicated on federal bankruptcy law." 2008 WL 4279407, at *3.  Moreover, in granting the motion to compel arbitration, the Bigelow court concluded with little explanation that it "perceive[d] no adverse effect on the underlying purposes of the [bankruptcy] code[.]"  2000 WL 33596476, at *6.  Accordingly, the Court follows the aforementioned courts that have squarely confronted claims arising under 11 U.S.C. §§ 544, 548, and 550 and concludes that it would conflict with the purposes of the Bankruptcy Code to compel arbitration of claims three through five.

### 3. Whether Claims Three through Five Should Be Stayed

"This Court has discretion whether to proceed with the non-arbitrable claims before or after the arbitration and has authority to stay proceedings in the interest of saving time and effort for itself and litigants."  Wilcox v. Ho-Wing Sit, 586 F. Supp. 561, 567 (N.D. Cal. 1984) (citing Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936); Atsa of Calif., Inc. v. Cont'l Ins. Co., 702 F.2d 172, 176 (9th Cir. 1983)).  "The decision is primarily one of judicial economy.  Where the completion of the arbitration may resolve or shed light on the nonarbitrable issues and claims, a stay may be appropriate."  In re Saigon, 2007 WL 3357641, at *7 (citation omitted).

To support his request for a stay of any state law claims subject to arbitration pending conclusion of litigation, plaintiff relies on In re Saigon.  Opp'n at 10.  However, the In re Saigon court did just the opposite: it stayed the litigation of bankruptcy law claims pending completion of arbitration upon determining that the claims were "derivative" of state law claims.  In re Saigon, 2007 WL 3357641, at *7.  Plaintiff also references In re Hagerstown, in which the court decided that "the fraudulent transfer claims should be stayed . . . pending the conclusion of the arbitration" because they were "directly connected to the contract disputes."  In re Hagerstown, 277 B.R. at 208.

The Wilcox court applied this logic outside the bankruptcy context to hold that "judicial economy would best be served by staying th[e] proceeding" pending completion of arbitration where the plaintiffs' arbitrable state law claims for fraud and breach of fiduciary duty "predominated" over their non-arbitrable claims for securities fraud and RICO violations.  Wilcox, 586 F. Supp. at 567.  It emphasized that the arbitrator was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | No. 2:14-cv-08725-CAS(AGRx) | Date | June 15, 2015 |
| Title | GOLDEN V. O'MELVENY & MEYERS, LLP | | |

"likely to decide issues that w[ould] . . . streamline subsequent proceedings before th[e] Court," and that arbitration "might resolve questions at issue in the [non-arbitrable] claims and . . . obviate further litigation." Id.

Similarly, to decide whether O'Melveny can defeat plaintiff's attempts to avoid and recover on transfers, a court would likely be required to determine whether O'Melveny committed malpractice and breached its fiduciary obligations in representing Aletheia.[4] Therefore, as in In re Saigon, In re Hagerstown, and Wilcox, plaintiff's non-arbitrable claims under the Bankruptcy Code derive from his arbitrable claims under state law and could be narrowed or even dispatched by an arbitrator's analysis of the underlying allegations. The Court thus concludes that claims three through five should be stayed while claims one and two are arbitrated.

---

[4] Plaintiff resists this conclusion and, at oral argument, directed the Court to In re S.W. Bach & Co., 425 B.R. 78 (Bankr. S.D.N.Y. 2010), which was not cited in plaintiff's briefing. There, the bankruptcy court likewise was presented with a claim for fraudulent conveyance arising under the Bankruptcy Code, as well as several common law claims subject to an arbitration agreement. Consistent with the cases discussed above, the In re S.W. Bach & Co. court recognized that the decision to stay non-arbitrable claims pending arbitration of arbitrable claims is committed to court's sound discretion. 425 B.R. at 98.

Here, the Court's discretionary decision to stay non-arbitrable claims arising under the Bankruptcy Code in favor of arbitrable common law claims is bolstered by plaintiff's counsel's statement at oral argument to the effect that the decision of the arbitrator might operate as *res judicata*. Thus, counsel appears to concede that the arbitrable and non-arbitrable claims are in fact related.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | No. 2:14-cv-08725-CAS(AGRx) | Date | June 15, 2015 |
| Title | GOLDEN V. O'MELVENY & MEYERS, LLP | | |

## V. CONCLUSION

In accordance with the foregoing, the Court GRANTS O'Melveny's motion to compel arbitration and stay proceedings (Dkt. 17) as to claims one and two. The Court stays the action as to claims three through five pending the completion of arbitration.

IT IS SO ORDERED.

| | | 00 | : | 18 |
|---|---|---|---|---|
| | Initials of Preparer | | CMJ | |