KEVIN S. ROSEN (SBN 133304)
  krosen@gibsondunn.com
MATTHEW S. KAHN (SBN 261679)
  mkahn@gibsondunn.com
JARED M. STRUMWASSER (SBN 275326)
  jstrumwasser@gibsondunn.com
AIMEE M. HALBERT (SBN 279144)
  ahalbert@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.6635

Attorneys for Defendants
O'Melveny & Myers LLP, Steven J. Olson,
and J. Jorge deNeve

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY I. GOLDEN, Chapter 7 Trustee of Aletheia Research and Management, Inc., <br><br> Plaintiff, <br><br> v. <br><br> O'MELVENY & MYERS LLP; STEVEN J. OLSON, an individual; J. JORGE DENEVE, an individual; and DOES 1 through 12, <br><br> Defendants. | Case No. 2:14-cv-08725-CAS-AGR <br><br> **DECLARATION OF MARTIN S. CHECOV IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION TO DISQUALIFY GIBSON, DUNN & CRUTCHER LLP AS COUNSEL FOR DEFENDANTS** |

DECLARATION OF MARTIN S. CHECOV IN SUPPORT OF DEFENDANTS'
OPPOSITION TO MOTION TO DISQUALIFY

I, Martin S. Checov, declare as follows:

1.     I am an attorney licensed to practice law in California.  I am a partner of Defendant O'Melveny & Myers LLP ("O'Melveny" or the "Firm").  I came to the Firm as an associate in 1980, became a partner in 1988, and the following year co-founded the San Francisco office, where I am now based.  I am the Firm-wide General Counsel of O'Melveny, having served in that role for more than 13 years.  I submit this Declaration in support of Defendants' Opposition to the Motion to Disqualify Gibson, Dunn & Crutcher LLP ("Gibson Dunn") as Counsel for Defendants filed by Jeffrey Golden, Chapter 7 Trustee of Aletheia Research and Management, Inc. ("Aletheia").  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would testify competently to them.

2.     For many years, Gibson Dunn has served as regular outside professional liability defense counsel for O'Melveny in a number of matters.  During the summer of 2010, Gibson Dunn partner Kevin Rosen and I were working together on a regular basis on the defense of pending malpractice litigation against O'Melveny in which Gibson Dunn served as counsel of record.  In July 2010, I turned to Mr. Rosen as one of our most trusted advisers to represent O'Melveny as a client in a new claim against the Firm, which took the form of a lawsuit against O'Melveny, filed on July 20, 2010 in the Los Angeles County Superior Court, *Peikin v. O'Melveny & Myers LLP*, No. BC441951 (the "Peikin Litigation").  That action was brought by Roger Peikin, the former General Counsel and Chief Financial Officer of Aletheia, against O'Melveny, which was the only defendant in the Peikin Litigation.

3.     At the time the Peikin Litigation was filed, O'Melveny had represented Aletheia and its then-Chairman, Chief Executive Officer, and Chief Investment Officer, Peter J. Eichler, in connection with an ongoing SEC investigation.  O'Melveny had also represented Aletheia, Mr. Eichler, and, briefly, Mr. Peikin in connection with two lawsuits between Proctor Investment Managers LLC and Proctor Investment Distributors LLC (collectively, "Proctor"), on the one hand, and Aletheia, Mr. Eichler,

DECLARATION OF MARTIN S. CHECOV IN SUPPORT OF DEFENDANTS'
OPPOSITION TO MOTION TO DISQUALIFY

Mr. Peikin, and later several other Aletheia directors, on the other hand, proceeding in parallel in the Supreme Court of the State of New York, County of New York and in the Los Angeles County Superior Court (the "Proctor Litigation").

4. The retention of Gibson Dunn as counsel for O'Melveny stemmed from a dispute that arose in approximately June of 2010 between Messrs. Peikin and Eichler concerning the terms of the former's employment by Aletheia. This dispute led to Mr. Peikin's retention of independent counsel, Robert C. Friese of Shartsis Friese LLP, who wrote to O'Melveny on June 15, 2010 terminating O'Melveny as counsel in various matters, and threatening claims against the Firm (with respect to which the letter demanded that O'Melveny sign a tolling agreement). Following the substitution of other counsel for Mr. Peikin in the Proctor Litigation, O'Melveny continued to represent its other clients but, in the foregoing correspondence and telephone conferences in June and July of 2010, and subsequently in the complaint filed in the Peikin Litigation, Mr. Peikin's attorney, Mr. Friese, claimed that O'Melveny had a conflict of interest vis-à-vis Mr. Peikin in connection with O'Melveny's representation of Aletheia and Mr. Eichler in certain matters based on O'Melveny's brief prior representation of Mr. Peikin as a joint client. Mr. Friese claimed that Mr. Peikin's interests conflicted with those of Aletheia and/or Mr. Eichler, and thus O'Melveny could not continue to represent Aletheia or Mr. Eichler in matters involving Mr. Peikin. In the Peikin Litigation, Mr. Peikin sought an injunction restraining O'Melveny from representing Mr. Eichler and Aletheia in certain matters involving Mr. Peikin's interests, including the Proctor Litigation.

5. On July 20, 2010, immediately upon learning of the intention of Mr. Friese to serve a complaint on behalf of Mr. Peikin against O'Melveny initiating the Peikin Litigation, I contacted Mr. Rosen to ask him to defend O'Melveny in the Peikin Litigation and against any other claims by Mr. Peikin against O'Melveny, including

DECLARATION OF MARTIN S. CHECOV IN SUPPORT OF DEFENDANTS'
OPPOSITION TO MOTION TO DISQUALIFY

Gibson, Dunn &
Crutcher LLP

claims that O'Melveny's prior representation of Mr. Peikin gave rise to claims of conflict of interest and any resulting liability claims against the Firm.

6.      The engagement for which I retained Mr. Rosen contemplated only that O'Melveny would be Gibson Dunn's sole client; there was no consideration whatsoever, or allowance for the possibility, of Gibson Dunn representing Aletheia in any capacity. Here, as in prior matters, O'Melveny was hiring Gibson Dunn to represent it in a matter potentially adverse to a client or former client, and his duty of loyalty would run solely to O'Melveny.  I directed Gibson Dunn to bill its time related to the representation solely to O'Melveny to be paid by our Firm, and we agreed that those fees would not be passed on to Aletheia in any form.  We also agreed that the communications between Gibson Dunn and O'Melveny and any work product by Gibson Dunn on O'Melveny's behalf would be privileged, and would not be disclosed to third parties—including that they would not be disclosed to Aletheia.

7.      Gibson Dunn had previously represented O'Melveny in other matters for which the engagement agreements had expressly noted that their terms would be applicable to future matters as well.  Therefore, Mr. Rosen and I agreed that a new, formal engagement agreement specific to the dispute with Mr. Peikin was unnecessary.

8.      Mr. Rosen and other Gibson Dunn attorneys advised me as O'Melveny's General Counsel and certain other attorneys at O'Melveny with respect to the Peikin Litigation, which ultimately did not progress beyond the filing of Mr. Peikin's complaint.  Both their and my efforts were solely on behalf of our exclusively mutual client, O'Melveny.

9.      In early 2011, Mr. Peikin threatened to raise the same conflict of interest allegations in a disqualification motion he intended to file in the Proctor Litigation that already was proceeding in the Los Angeles County Superior Court.  Because Mr. Peikin's threatened disqualification motion was founded on essentially the same conflict

Gibson, Dunn & Crutcher LLP

3

DECLARATION OF MARTIN S. CHECOV IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION TO DISQUALIFY

allegations as those raised in the Peikin Litigation, I continued to rely on Mr. Rosen and Gibson Dunn to serve as O'Melveny's counsel to defend O'Melveny.

10. In anticipation of Mr. Peikin's threatened motion, following discussions between myself and certain O'Melveny lawyers who were leading the defense of the Proctor Litigation, which were necessary to inform me of relevant facts so that I could advise my client, O'Melveny, and at my direction, Seth Aronson of O'Melveny informed Aletheia that O'Melveny wished to engage its own outside counsel to advise and defend O'Melveny as to Mr. Peikin's claims against O'Melveny. Based on my understanding that Aletheia wanted O'Melveny to continue to represent Aletheia and Mr. Eichler in the Proctor Litigation notwithstanding the conflict of interest asserted by Mr. Peikin, and thus to oppose Mr. Peikin's threatened motion to disqualify O'Melveny, I worked with Mr. Aronson as to how best to proceed as counsel for our clients in the face of these allegations, and I prepared a supplemental engagement agreement and conflict waiver with Aletheia that addressed this circumstance. A true and correct copy of that supplemental engagement agreement, dated April 14, 2011, has been filed with this Court at Dkt. 57-1, Ex. 6. The supplemental engagement agreement made clear, among other things, that O'Melveny might engage its "own counsel," that the bills of O'Melveny's own counsel would be paid for by O'Melveny (with the language in the agreement specifically noting that the fees of our "own counsel" would be "at our expense, of course"), and that all communications with and work product by O'Melveny's own counsel would be privileged.

11. Mr. Peikin ultimately filed a motion to disqualify O'Melveny in the Proctor Litigation on April 18, 2011. As with the defense of the Peikin Litigation, I sought out Mr. Rosen and Gibson Dunn to represent O'Melveny in the disqualification proceedings only, and not any other aspect of the Proctor Litigation. In the course of doing so, I and others at O'Melveny who were directly involved in defending O'Melveny against Mr. Peikin's conflict and breach of fiduciary duty claims periodically conferred with

DECLARATION OF MARTIN S. CHECOV IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION TO DISQUALIFY

Gibson Dunn to enable its attorneys to advise us regarding these issues. All such discussions, as well as all of Gibson Dunn's resulting work—which was performed under my supervision and direction as General Counsel to the Firm—pertained exclusively to Mr. Peikin's ethical claims against O'Melveny and *not* to the underlying liability claims Proctor was pursuing against Aletheia, Mr. Eichler, or Mr. Peikin in the Proctor Litigation or any other of the underlying claims in the Proctor Litigation.

12. At my direction, Gibson Dunn assisted O'Melveny both as to the ethical issues raised by Mr. Peikin's disqualification motion and how best to respond to Mr. Peikin's allegations against O'Melveny in that motion. On a number of occasions, at my request, Gibson Dunn attorneys discussed these issues with me and certain O'Melveny attorneys on whom I called for assistance in evaluating and addressing Mr. Peikin's direct allegations against O'Melveny. As before, Gibson Dunn's sole role was to represent and advise O'Melveny, and not to represent any other person or entity in these matters, including Mr. Eichler or Aletheia. Although I consulted with Gibson Dunn as to the best means to protect O'Melveny's reputation and position in response to ethical charges against the Firm, including in shaping the arguments to put the Firm's conduct in the best possible ethical light, I did not retain Gibson Dunn to draft, organize, or file any documents in response to the disqualification motion on behalf of Aletheia; only O'Melveny attorneys who were counsel of record for Mr. Eichler and Aletheia in the Proctor Litigation prepared and submitted the opposition to Mr. Peikin's motion, and only O'Melveny attorneys represented and advised Mr. Eichler and Aletheia with respect to the motion.

13. Gibson Dunn billed O'Melveny directly for Gibson Dunn's advice to O'Melveny, and O'Melveny paid Gibson Dunn directly for such advice. O'Melveny did not bill Aletheia for any of the time spent by the Gibson Dunn attorneys who advised O'Melveny or pass on to Aletheia any of the fees or expenses billed to O'Melveny by

Gibson, Dunn & Crutcher LLP

5

Gibson Dunn.  Similarly, none of my time was billed or passed on by O'Melveny to Aletheia.

14.     In cases in which a person or entity is seeking to disqualify a law firm from representing a client in a matter, I know from considerable experience that it is common for the affected client to consider the motion to disqualify to be an attack on the client's own interests in the matter as well as those of its lawyers; this is a sad reality in the face of increasingly frequent tactical motions to disqualify.  In those situations, the client considers the defense of a disqualification motion in a matter to be in the interest of the defense of the client in the matter, and hence expects the fees and expenses incurred by its counsel of record defending the motion to be billed to, and paid by, the client.  It is my practice to discuss (or direct my partners to discuss) that issue, along with other ethical issues presented, with the client, and to confirm the client's expectation and desire in that regard before proceeding.  That occurred here.  Thus, with Aletheia's express consent, O'Melveny opposed Mr. Peikin's disqualification motion and billed Aletheia for O'Melveny's resulting time to do so.  However, I never discussed O'Melveny's bills or our billings to Aletheia with anyone at Gibson Dunn; nor did I provide copies of any of O'Melveny's bills to Gibson Dunn until years later—after the trustee acting in the name of Aletheia filed his complaint against O'Melveny in this action in November 2014, making those bills relevant to the trustee's disgorgement claims.  At no time did O'Melveny ever bill Aletheia for any of Gibson Dunn's time, or seek reimbursement of the amounts O'Melveny paid to Gibson Dunn.  Similarly, at no time did O'Melveny ever bill Aletheia for any of my time, or seek reimbursement from Aletheia for any aspect of my time.  Further, despite the willingness of Aletheia to pay O'Melveny for its own fees relating to Mr. Peikin's disqualification motion, O'Melveny ultimately waived recovery of those fees.  As a result, Aletheia never in fact paid any fees for O'Melveny's work in defending that motion.

6

DECLARATION OF MARTIN S. CHECOV IN SUPPORT OF DEFENDANTS'
OPPOSITION TO MOTION TO DISQUALIFY

15.     At all times in dealing with matters involving Aletheia and Messrs. Peikin and Eichler in 2010-2011, my role was strictly confined to the ethical and professional liability matters raised by the matters set forth above, and I acted solely as counsel for O'Melveny in my role as O'Melveny's General Counsel.  I did not offer advice directly or indirectly to Aletheia or clients of O'Melveny on the subject of the substantive liability allegations against Aletheia and its co-defendants in the Proctor Litigation.  I charged no time to Aletheia.  Likewise, Gibson Dunn was understood by all concerned to have been retained by me in my capacity as General Counsel to O'Melveny solely for the purpose of advising me and the Firm in regard to the ethical and professional liability matters we confronted as a result of the allegations by Mr. Peikin, and not the underlying substantive liability allegations against Aletheia and its co-defendants in the Proctor Litigation.

16.     O'Melveny never shared any of Gibson Dunn's communications, work product, or advice with Aletheia.

17.     O'Melveny never entered into an agreement with Gibson Dunn that Aletheia would be a client of Gibson Dunn; nor did O'Melveny enter into an agreement with Aletheia that Gibson Dunn would represent Aletheia in any respect.  I never considered Aletheia to be a client of Gibson Dunn, and know of no communication or document that could reasonably have led any of O'Melveny's clients in the Proctor Litigation to conclude that Gibson Dunn was also acting for them as their attorneys, rather than *exclusively* for O'Melveny.

18.     The Los Angeles County Superior Court denied Mr. Peikin's disqualification motion on July 12, 2011.  Since I had retained Gibson Dunn solely to advise O'Melveny against Mr. Peikin's claims, the court's order concluded our need for Gibson Dunn's services.  Thereafter, Gibson Dunn provided no services to O'Melveny until after Aletheia's trustee filed the present lawsuit in November 2014.

Gibson, Dunn & Crutcher LLP

7

DECLARATION OF MARTIN S. CHECOV IN SUPPORT OF DEFENDANTS'
OPPOSITION TO MOTION TO DISQUALIFY

19. In June 2013, after Aletheia filed for bankruptcy, counsel for Aletheia's bankruptcy trustee contacted me requesting the client files relating to O'Melveny's representation of Aletheia, apparently in furtherance of their investigation of Aletheia and its potential claims in bankruptcy. As part of its production in response to that request, in September and October 2013, O'Melveny, under my direction, produced to Aletheia's counsel all of O'Melveny's invoices pertaining to the Proctor Litigation, including all of the invoices containing references to Gibson Dunn attorneys.

20. In the event Mr. Rosen is required to testify in the present matter, O'Melveny has consented to Gibson Dunn's and Mr. Rosen's continued representation of O'Melveny.

21. O'Melveny would suffer extreme prejudice if Gibson Dunn were disqualified after having represented O'Melveny continuously now for more than eighteen months in this matter. In the course of my role overseeing the work of Gibson Dunn, which includes reviewing its bills, I know that Gibson Dunn professionals have spent over 2,500 hours, incurring over $1 million in fees and expenses paid by O'Melveny, working on our defense in the present litigation and arbitration proceedings. This work has included a substantive mediation with Aletheia; moving to compel arbitration; investigating and preparing a detailed response to Aletheia's Statement of Claims and, separately, a detailed response to Aletheia's substantially Revised Statement of Claims; strategically developing and then negotiating and briefing the merits of a comprehensive Procedural Order governing the arbitration; investigating and preparing a targeted witness list as required by the arbitrator; propounding and responding to dozens of requests for production of documents; collecting, reviewing and producing tens of thousands of documents; creating customized databases for the review of the millions of documents produced by Aletheia; meeting and conferring countless times with Aletheia's counsel regarding a number of discovery disputes; interviewing a large number of potential witnesses, both

Gibson, Dunn & Crutcher LLP

DECLARATION OF MARTIN S. CHECOV IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION TO DISQUALIFY

percipient and expert; and briefing Aletheia's Motion for Reconsideration. If O'Melveny were forced to seek new counsel this far into the litigation and arbitration—counsel not as intimately familiar with our Firm as Gibson Dunn has become over the years as our regular counsel, or as able to deliver considerable efficiency and skill in representing us—we would suffer very significant additional litigation costs, an unwarranted delay in the resolution of the matter where Aletheia has irresponsibly attacked the reputation of O'Melveny and its lawyers, and the potential loss of substantial work product from Gibson Dunn.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on July 6, 2016 in San Francisco, California.

Martin S. Checov

Gibson, Dunn &
Crutcher LLP

9

DECLARATION OF MARTIN S. CHECOV IN SUPPORT OF DEFENDANTS'
OPPOSITION TO MOTION TO DISQUALIFY