UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | CV 14-8725 CAS (AGRx) | Date | August 3, 2016 |
|---|---|---|---|
| Title | JEFFREY I. GOLDEN V. O'MELVENY & MEYERS LLP | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

|  Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   (IN CHAMBERS) - PLAINTIFF'S MOTION FOR
RECONSIDERATION AND MOTION FOR DISQUALIFICATION

## I.   INTRODUCTION

On November 10, 2014, plaintiff Jeffrey I. Golden ("Golden"), in his capacity as the trustee in bankruptcy for defendants' former client, Aletheia Research and Management, Inc. ("Alethia"), filed a plenary action in this Court against defendants O'Melveny & Myers LLP, Steven J. Olson, and J. Jorge deNeve ("O'Melveny"), and Freedman & Taitelman, LLP for alleged legal malpractice. Dkt. 1 ("Compl."). Plaintiff asserts claims for: (1) professional negligence (conflict of interest); (2) breach of fiduciary duty; (3) avoidance and recovery of preferential transfers under 11 U.S.C. §§ 548 and 550; (4) avoidance and recovery of fraudulent conveyances (two-year transfers) under 11 U.S.C. §§ 548 and 550; and (5) avoidance and recovery of fraudulent conveyances (four-year transfers) under 11 U.S.C. §§ 544 and 550 and Cal. Civ. Code §§ 3439.04, 3439.05, and 3439.07. Id.

On June 15, 2015, the Court compelled arbitration as to claims one and two, pursuant to the arbitration provisions contained in the engagement agreement between O'Melveny and Alethia, dated January 26, 2010 ("the Agreement").[1] Dkt. 30 ("Arbitration Order"). The Court stayed claims three through five pending the

---

[1] Subsequently, the parties entered into additional agreements for services which incorporate the arbitration clause and choice of law provisions contained in the Agreement. For convenience, the Court refers to these subsequent agreements collectively as "the Agreement."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**             '**O**'

| Case No. | CV 14-8725 CAS (AGRx) | Date | August 3, 2016 |
|---|---|---|---|
| Title | JEFFREY I. GOLDEN V. O'MELVENY & MEYERS LLP | | |

completion of arbitration.  Id.  The parties began arbitration before the Hon. Gary A. Feess, United States District Judge (Retired), in November 2015.  Dkt. 39 at 3.

On June 14, 2016, Golden filed a motion for reconsideration of the Arbitration Order.  Dkt. 54 ("Mot.").  Golden contends that the Agreement is void as against public policy.  Golden further argues that California arbitration rules, rather than the rules of the Federal Arbitration Act, 9 U.S.C. § 1 (the "FAA"), applies to the Agreement, and that accordingly, the Court was required to address any challenges to the validity of the Agreement before the case could be sent to an arbitrator.  Id.  O'Melveny opposes the motion.  Dkt. 60 ("Opp.").

On June 22, 2015, Golden moved to disqualify O'Melveny's counsel, Gibson, Dunn & Crutcher LLP, based primarily on an alleged conflict of interest.  Dkt. 56.  O'Melveny opposes the motion.  Dkt. 59.

## II.    BACKGROUND

Alethia was a Los Angeles-based investment advising firm serving high net worth individuals and institutions.  Compl. ¶ 13.  When the U.S. Securities and Exchange Commission ("SEC") began to investigate its activities, Alethia retained O'Melveny on January 26, 2010, pursuant to the Agreement, to represent the firm and several of its officers and directors in connection with the investigation.  Id., ¶¶ 26-29.  The Agreement notified the parties that the terms of engagement would call for arbitration should disputes arise between them:

> As a material part of our agreement, you and we agree that any and all disputes, claims or controversies arising out of or relating to this agreement, our relationship, or the services performed, will be determined exclusively by confidential, final and binding arbitration, in accordance with the then existing Comprehensive Arbitration Rules and Procedures of JAMS ['JAMS Rules'], in the City of Los Angeles.

Dkt. 17-2 (the Agreement) at 10-11.  See also Initial Engagement Agreement, at 11-12 ("The Terms include an agreement to arbitrate certain matters before and pursuant to the Comprehensive Arbitration Rules and Procedures (as then in effect) of JAMS in the City of Los Angeles").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**              **'O'**

| Case No. | CV 14-8725 CAS (AGRx) | Date | August 3, 2016 |
|---|---|---|---|
| Title | JEFFREY I. GOLDEN V. O'MELVENY & MEYERS LLP | | |

The Agreement also contained a general choice-of-law provision, which stated:

Our agreement will be governed by the internal law, and not the law pertaining to choice or conflict of laws, of the State of California, except to any extent required by applicable law or rules of professional conduct.

Agreement at 7 ("Choice-of-Law Provision"). The instant claims against O'Melveny arise from its representation in these matters.

On November 10, 2014, Golden filed the present lawsuit in this Court. Dkt. 1. On June 15, 2015, the Court compelled arbitration as to claims one and two and stayed claims three through five pending the completion of arbitration. Id. The parties began arbitration before Judge Feess in November 2015. Dkt. 39 at 3.

On February 4, in response to Golden's request, Judge Feess stayed the arbitration in contemplation of Golden's stated intention to bring a motion to reconsider this Court's Arbitration Order in light of the California Court of Appeals' opinion in Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co., 244 Cal. App. 4th 590, as modified on denial of reh'g (Feb. 26, 2016) ("Sheppard Mullin"), review granted and opinion superseded sub nom. Sheppard, Mullin, Richter & Hampton v. J-M Mfg., 368 P.3d 922 (Cal. 2016). Dkt. 46 at 3. On June 14, 2016, Golden filed a motion for reconsideration of the Court's June 15, 2015 Arbitration Order. Dkt. 54 ("Mot.").[2]

---

[2] On April 27, 2016, the California Supreme Court granted a petition for rehearing of Sheppard Mullin. Pursuant to Cal. Rule of Court 8.1115, the decision of the Court of Appeal may no longer be cited by California courts. Further, the Ninth Circuit has refused to consider a California Court of Appeal decision based on the California Supreme Court's grant of review. See Credit Suisse First Boston Corp. v. Grunwald, 400 F.3d 1119, 1126 n.8 (9th Cir. 2005). Although the stated basis for Golden's motion for reconsideration is now arguably moot, the Court nonetheless considers Golden's arguments.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | CV 14-8725 CAS (AGRx) | Date | August 3, 2016 |
|----------|------------------------|------|----------------|
| Title | JEFFREY I. GOLDEN V. O'MELVENY & MEYERS LLP | | |

## III.   ANALYSIS

Golden contends that the Agreement is voidable on the grounds of illegality.  In its "Limited Opposition" to O'Melveny's motion to compel arbitration, Golden did not raise an illegality argument, conceded that the FAA applies to the Agreement, Dkt. 26, at 5, 10, 11, and did not dispute that its professional negligence and breach of fiduciary duty claims were subject to arbitration.  Dkt. 26 at 1.  The Court's Arbitration Order applied the FAA, which vests in the arbitrator the power to determine the legality of the contract in which an arbitration clause is contained.  See Nitro-Lift Techs., LLC v. Howard, __ U.S. __, 133 S. Ct. 500, 503 (2012) (where "parties commit to arbitrate contractual disputes, it is a mainstay of the [FAA's] substantive law that attacks on the validity of the contract, as distinct from attacks on the validity of the arbitration clause itself, are to be resolved 'by the arbitrator in the first instance, not by a federal or state court,'" quoting Preston v. Ferrer, 552 U.S. 346, 349 (2008)); Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445-46 (2006) ("as a matter of substantive federal arbitration law," "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance," because an arbitration provision is "enforceable apart from the remainder of the contract").

Golden now seeks reconsideration of the Arbitration Order, contending that the Agreement is invalid and that the Agreement required application of California law, under which "the determination of the legality of the agreement should first be judicially determined" before the case is sent to an arbitrator.  Green v. Mt. Diablo Hospital Dist., 207 Cal. App. 3d 63, 74 (1989) (interpreting the holding in Loving & Evans v. Blick, 33 Cal.2d 603, 610 (1949) and holding that because illegality voids the entire contract, the court must first determine legality of the contract before determining effectiveness of arbitration provisions); see also Hotels Nevada, LLC v. Bridge Banc, LLC, 130 Cal. App. 4th 1431, 1437 (2005) ("California law obligates the trial court to decide illegality issues when the entire contract is illegal"); Moncharsh v. Heily & Blasé, 3 Cal. 4th 1, 29 (1992) ("[I]f an otherwise enforceable arbitration agreement is contained in an illegal contract, a party may avoid arbitration altogether"); California State Council of Carpenters v. Superior Court, 11 Cal. App. 3d 144, 157 (1970) ("We are of the opinion that illegality in a contract containing a provision for arbitration, in order to vitiate such provision, must be such as renders the entire contract illegal and unenforceable").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | CV 14-8725 CAS (AGRx) | Date | August 3, 2016 |
| Title | JEFFREY I. GOLDEN V. O'MELVENY & MEYERS LLP |

### A.    Procedural Basis for Golden's Motion for Reconsideration

Golden argues that reconsideration is justified by any of the following alternative bases: (1) clear error of law pursuant to Local Rule 7-18, or the Court's inherent power; (2) excusable neglect by plaintiff's counsel pursuant to Rule 60(b)(1); (3) a misrepresentation by O'Melveny by failing to address the known impact of the California choice-of-law provision pursuant to Rule 60(b)(3); and (4) achievement of the correct legal result and facilitation of a speedy resolution of the litigation, within the meaning of "any other reason that justifies relief," pursuant to Rule 60(b)(6).  Mot. at 24-25. O'Melveny contends that Golden's motion is procedurally improper and that the arbitrator, not the Court, must resolve Golden's belated illegality argument, regardless of whether the FAA or California Arbitration Act ("CAA") applies.

### 1.    Local Rule 7-18

A motion for reconsideration under Local Rule 7-18 may be made on only the following grounds:

> (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or
> (b) the emergence of new material facts or a change of law occurring after the time of such decision, or
> (c) a manifest showing of a failure to consider material facts presented to the Court before such decision.

L.R. 7–18.  See In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig., 966 F. Supp. 2d 1031, 1036 (C.D. Cal. 2013).

"Motions for reconsideration are disfavored and rarely granted."  Brown v. United States, Nos. CV 09–8168 ABC, CR 03–847 ABC, 2011 WL 333380, *2 (C.D. Cal. Jan. 31, 2011).  "Whether to grant a motion for reconsideration under Local Rule 7–18 is a matter within the court's discretion."  Daghlian v. DeVry Univ., Inc., 582 F. Supp. 2d 1231, 1251 (C.D. Cal. 2007).  See also Dixon v. Wallowa County, 336 F.3d 1013, 1022 (9th Cir. 2003) ("We review a district court's decision on a Rule 59(e) motion to amend a judgment for abuse of discretion").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | CV 14-8725 CAS (AGRx) | Date | August 3, 2016 |
|----------|------------------------|------|----------------|
| Title | JEFFREY I. GOLDEN V. O'MELVENY & MEYERS LLP | | |

### a.    Error that Could Not Reasonably Have Been Known

Golden states that he brings his motion for reconsideration under prong (a) of Local Rule 7-15 but quotes only the first portion of that prong: "a material difference in fact or law from that presented to the Court." Mot. at 23. Golden contends that O'Melveny's legal argument in support of its motion to compel arbitration was incomplete and misleading insofar as it failed to address the significance of the California choice-of-law provision in the Agreement, and that therefore the law presented to and applied by the Court was incorrect.

This is insufficient to support reconsideration of a prior order pursuant to Local Rule 7-15, as that rule also requires that the law asserted upon reconsideration could not "in the exercise of reasonable diligence . . . have been known to the party moving for reconsideration at the time of such decision." L.R. 7-18. A motion for reconsideration "may not be used to raise arguments . . . for the first time when they could reasonably have been raised earlier in the litigation." Kona Enterprises, Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000).

Golden does not contend that he now possesses facts that he could not have known at the time of the Arbitration Order. Indeed, Golden claims that the alleged conflict rendering the Agreement illegal was apparent since at least July 2011. Mot. at 13-14. Further, he asserts that his own Complaint, filed in 2014, "[r]aises the Rule 3-310(C)(2) Conflict of Interest" and "alleges the facts and circumstances which evidence the substance of" the alleged conflict. Id. at 14. Golden also presumably knew of the content of the Agreement, including the choice-of-law provision that forms the basis for Golden's California law argument, at the time of the motion to compel arbitration.

Rather, in his motion for reconsideration, Golden concedes that he previously simply "failed to recognize" the arguments he now raises. Id. at 24. Golden contends that his failure was excusable because O'Melveny did not raise the potential applicability of the CAA in the motion to compel arbitration. Id. at 6. Golden contends that unlike its own inadvertence, O'Melveny's failure to address the potential applicability of the CAA was a knowing, affirmative misrepresentation because O'Melveny's counsel also represented Sheppard, Mullin, Richter & Hampton LLP in Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co., 244 Cal. App. 4th 590, as modified on denial of reh'g (Feb. 26, 2016), review granted and opinion superseded sub nom. Sheppard, Mullin,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**　　　　'O'

| Case No. | CV 14-8725 CAS (AGRx) | Date | August 3, 2016 |
|---|---|---|---|
| Title | JEFFREY I. GOLDEN V. O'MELVENY & MEYERS LLP | | |

Richter & Hampton v. J-M Mfg., 368 P.3d 922 (Cal. 2016), which involved similar choice-of-law and illegality issues as those Golden now raises.

Golden's accusations of wrongdoing are misplaced. The Court declines to find that O'Melveny's counsel made an affirmative misrepresentation of law in this case based on the fact that it made a different argument in a different case, on behalf of a different client, involving different engagement agreements and different facts. As discussed further below, the issue of whether an agreement requires application of the CAA, the FAA, or private arbitration rules requires case-by-case analysis of the terms of the agreement in question.

More importantly, under Local Rule 7-18, what matters is whether or not the *moving party* seeking reconsideration could have known of the newly-presented factual or legal argument at the time the Court made its original order. Golden never explains why he was unable to make his same choice-of-law and illegality arguments, regardless of what O'Melveny argued. Golden's explanation that a " 'light bulb went on' as a result of the recent ruling in Sheppard Mullin, leading to the raising of the issue," Mot. at 6, does not warrant reconsideration of the Court's prior order. See Carroll v. Nakatani, 342 F.3d 934, 945 (9th Cir. 2003) (affirming denial of reconsideration where movant "could reasonably have raised" his arguments earlier).

**b.    Change of Law**

Golden takes a different approach in his reply brief, arguing that although the California Supreme Court, by granting review thereby superceding the Court of Appeal's decision in Sheppard Mullin, and rendering it unpublished, that decision "connected the dots," drawing together existing case law in a factual setting that closely resembled this case. Golden argues that he acted promptly once the original Sheppard Mullin decision was issued. Reply, Dkt. 66 at 1-3. Golden later makes clear that he considers such "connecting the dots" to constitute an intervening change in California law, demonstrating (1) not only that a concurrent conflict of interest renders the entirety of an engagement agreement illegal and void as against public policy, but also (2) that such determination must be made by a court, not an arbitrator. Id. at 3-4.

As a threshold matter, the Court of Appeal's decision in Sheppard Mullin is no longer binding precedent, because the Supreme Court granted review of the Court of Appeal's decision in Sheppard Mullin.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | CV 14-8725 CAS (AGRx) | Date | August 3, 2016 |
|----------|----------------------|------|----------------|
| Title | JEFFREY I. GOLDEN V. O'MELVENY & MEYERS LLP | | |

Even were that not the case, Golden's argument fails substantively because, as the Court of Appeal in Sheppard Mullin itself states, see Sheppard Mullin, 244 Cal. App. 4th at 605, 614, at the time O'Melveny brought its motion to compel arbitration, California courts had already established both rules of law that Golden now claims to be novel: (1) that conflicts of interest can render an engagement agreement void as against public policy, see, e.g., Kashani v. Tsann Kuen China Enterprise Co., Ltd., 118 Cal. App. 4th 531, 541 (2004) ("California courts have stated that an illegal contract 'may not serve as the foundation of any action, either in law or in equity,' and that when the illegality of the contract renders the bargain unenforceable, '[t]he court will leave them [the parties] where they were when the action was begun,'" quoting Tiedje v. Aluminum Taper Milling Co., 46 Cal.2d 450, 453–54 (1956) ("A contract made contrary to public policy or against the express mandate of a statute may not serve as the foundation of any action, either in law or in equity, and the parties will be left, therefore, where they are found when they come to a court for relief"); Wells v. Comstock, 46 Cal.2d 528, 532 (1956)); and (2) that, where the parties have agreed that California law governs the contract, the alleged illegality of an agreement is for the court, not the arbitrator to decide, see, e.g., Loving, 33 Cal. 2d at 610 ("If it . . . appears to the court from the uncontradicted evidence that the contract is illegal, the court should deny the petition for 'an order directing the parties to proceed to arbitration'"); 1 Witkin, Summary of the Law, Contracts § 450 (10th ed. 2005) ("The power of the arbitrator to determine rights under a contract is dependent upon the existence of a valid contract under which this right might arise, and the question of the validity of the basic contract is essentially a judicial question, which cannot be finally determined by an arbitrator"). Golden therefore does not identify any intervening change in the law to justify his belated arguments.

## 2.    Federal Rule of Civil Procedure 60(b)

Three of the remaining purported bases for Golden's motion are premised on Federal Rule of Civil Procedure 60(b). See Mot. at 7, 24-25. However, Rule 60(b) applies only to final orders, and not to interlocutory, non-appealable orders such as the Arbitration Order.

Rule 60(b)  provides that "the court may relieve a party . . . from a final judgment, order or proceeding for . . ." any of the reasons stated therein.  Fed. R. Civ. P. 60(b). Rule 60(b) thus applies only to final judgments and appealable interlocutory orders.  See Corn v. Guam Coral Co., 318 F.2d 622, 628-29 (9th Cir. 1963) ("[T]he 'final' judgments, orders or proceedings referred to in the first sentence of [Rule 60(b)] . . . are those which

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | CV 14-8725 CAS (AGRx) | Date | August 3, 2016 |
|----------|------------------------|------|----------------|
| Title | JEFFREY I. GOLDEN V. O'MELVENY & MEYERS LLP | | |

terminate the litigation in the district court subject only to the right of appeal"); United States v. Martin, 226 F.3d 1042, 1048 n.8 (9th Cir. 2000) ("Rule 60(b) . . . applies only to motions attacking final, appealable orders"); Motorola, Inc. v. J.B. Rodgers Mechanical Contractors, 215 F.R.D. 581, 583 n.1 (D. Ariz. 2003) ("Plaintiffs cannot avail themselves of Fed. R. Civ. P. . . . 60(b) which only appl[ies] to reconsideration of final judgments and appealable interlocutory orders" (internal quotations omitted)); Abada v. Charles Schwab & Co., Inc., 127 F. Supp. 2d 1101, 1103 n.1 (S.D. Cal. 2000) ("Rule 60(b) applies only to final judgments, and not to interlocutory orders").

"A final order is a 'decision by the District Court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"  Ballard v. Baldrige, 209 F.3d 1160, 1160-61 (9th Cir. 2000) (quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 467 (1978)  (internal citation omitted)).  The Court's Arbitration Order was not a final, appealable order because it did not terminate the litigation on the merits.  See 9 U.S.C. § 16(b)(3) ("[A]n appeal may not be taken from an interlocutory order . . . compelling arbitration"); Delta Computer Corp. v. Samsung Semiconductor & Telecommunications Co., 879 F.2d 662, 665 (9th Cir. 1989) (9 U.S.C. §16(b)(3) "effectively overrides those rulings [that found an order to compel arbitration final] 'in that a rule regarding every order compelling arbitration as 'final' and appealable would completely undermine Congress's effort to thwart appeals of such orders,'" quoting Turboff, 867 F.2d at 1520); Monfared v. St. Luke's Univ. Health Network, 2016 WL 3194562, at *1 (E.D. Pa. June 8, 2016) (holding Rule 60(b) did not apply to motion for reconsideration of an interlocutory order compelling arbitration); Portis v. Ruan Transp. Mgmt. Sys., Inc., 2015 WL 5794540, at *2 n.2 (W.D. Va. Oct. 1, 2015) (same).

Thus, Golden cannot seek reconsideration of the Arbitration Order under Rule 60(b).

### 3.     The Court's Inherent Power

Finally, Golden argues that relief may be granted pursuant to the Court's inherent power to reconsider its rulings at any time.  "A district court's authority to rescind an interlocutory order over which it has jurisdiction is an inherent power rooted firmly in the common law and is not abridged by the Federal Rules of Civil Procedure."  City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper, 254 F.3d 882, 887 (9th Cir. 2001). "However, a court should generally leave a previous decision undisturbed absent a showing that it either represented clear error or would work a manifest injustice."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | CV 14-8725 CAS (AGRx) | Date | August 3, 2016 |
|---|---|---|---|
| Title | JEFFREY I. GOLDEN V. O'MELVENY & MEYERS LLP | | |

Hydranautics v. FilmTec Corp., 306 F. Supp. 2d 958, 968 (S.D. Cal. 2003) (citing Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988)).

Golden contends that, even if the present motion does not strictly qualify under Local Rule 7-18 or Rule 60(b), the Court should exercise its inherent power at this juncture because one of the bases of Golden's motion, the illegality of the Agreement, cannot be waived by his failure to previously raise it at any point during the proceedings. Golden argues that neither the explicit nor implicit consent of a party to an illegal contract may confer on the Court the authority to enforce any of its terms, including an arbitration clause contained therein.

It is widely established that "[a] party to an illegal contract cannot ratify it, cannot be estopped from relying on the illegality, and cannot waive his right to urge that defense." City Lincoln-Mercury Co. v. Lindsey, 52 Cal.2d 267, 274 (1959); see also Alternative Systems, Inc. v. Carey, 67 Cal. App. 4th 1034, 1040 (1998) ("defense of illegality of the entire transaction can be raised at any stage of the proceeding, including opposition to a motion to confirm"); South Bay Radiology Medical Assoc. v. Asher, 220 Cal. App. 3d 1074, 1080 (1990) (agreeing that violation of section 16600 is the sort of illegality which will render an arbitration award void and that the defense of illegality may be raised at any time).

However, "if a party believes the entire contractual agreement or a provision for arbitration is illegal, it must oppose arbitration on this basis before participating in the process or forfeit the claim." Cummings v. Future Nissan, 128 Cal. App. 4th 321, 328 (2005) (citing Moncharsh, 3 Cal. 4th at 31 ("a party [who] is claiming (i) the entire contract is illegal, or (ii) the arbitration agreement itself is illegal" must "raise the illegality question prior to participating in the arbitration process")); see also Fouts v. Milgard Mfg., Inc., 2012 WL 1438817, at *2 (N.D. Cal. Apr. 25, 2012) (same); Seifert v. Werner, 2010 WL 2267757, at *2 (E.D. Cal. June 4, 2010) (denying plaintiff's motion to reconsider an order compelling arbitration where, as here, plaintiff had "known since the very outset of th[e] case about the provisions" in the applicable contract that purportedly were illegal but had nonetheless asserted that the action was subject to arbitration several times. By "sit[ting] on [his] rights to claim illegality of the contract," plaintiff had "forfeited any right to claim the subject matter of the dispute [wa]s not subject to arbitration.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | CV 14-8725 CAS (AGRx) | Date | August 3, 2016 |
|---|---|---|---|
| Title | JEFFREY I. GOLDEN V. O'MELVENY & MEYERS LLP | | |

At first glance, these two lines of cases appear in tension with each other, as an arbitration clause constitutes a part of the agreement subject to the illegality defense. See Moncharsh, 3 Cal. 4th at 29 ("If a contract includes an arbitration agreement, and grounds exist to revoke the entire contract, such grounds would also vitiate the arbitration agreement. Thus, if an otherwise enforceable arbitration agreement is contained in an illegal contract, a party may avoid arbitration altogether").

"The forfeiture rule exists to avoid the waste of scarce dispute resolution resources, and to thwart game-playing litigants who would conceal an ace up their sleeves for use in the event of an adverse outcome." Cummings, 128 Cal. App. 4th at 328. California courts appear to reconcile the competing needs of avoiding abuse of the judicial system, while still protecting victims of illegal contracts, by requiring that any arguments as to the arbitrability of a contract be raised prior to the initiation of arbitration but allowing parties to otherwise challenge the legality of the substantive terms of an agreement at any time. On the one hand, in order to avoid manipulation of the legal system, "[t]hose who are aware of a basis for finding the arbitration process invalid must raise it at the outset or as soon as they learn of it so that prompt judicial resolution may take place before wasting the time of the adjudicator(s) and the parties." Id. at 328-29; see also id. at 329 ("[A] party who knowingly participates in the arbitration process without disclosing a ground for declaring it invalid is properly cast into the outer darkness of forfeiture").

On the other hand, even after the Court has compelled arbitration or a party voluntarily submits to arbitration, the party may still challenge the contract as illegal as a defense to any of its substantive terms. Cf. Preston v. Ferrer, 552 U.S. 346, 359 (2008) ("[I]t bears repeating that Preston's petition presents precisely and only a question concerning the forum in which the parties' dispute will be heard. 'By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral . . . forum,'" quoting Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 628 (1985)); Moncharsh, 3 Cal. 4th at 28 ("The attorney did not waive the issue of illegality of the fee-splitting provision by failing to object to the arbitration on that ground, since that challenge was not to the entire employment agreement or the agreement to arbitrate itself, it was an arbitrable issue and he raised it before the arbitrator").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | CV 14-8725 CAS (AGRx) | Date | August 3, 2016 |
|---|---|---|---|
| Title | JEFFREY I. GOLDEN V. O'MELVENY & MEYERS LLP | | |

The Court does not, therefore, find that issues of illegality require it to exercise its inherent power to grant Golden's motion for reconsideration.[3]  Nonetheless, because the Court invited the parties to address the issue of whether the Agreement was governed by the CAA or the FAA at the June 22, 2016 status conference, the Court will address that issue.  As discussed below, regardless of whether the Court exercises its inherent power, Golden's arguments do not require a result that is different than that reached in the Court's Arbitration Order.

## B.     Whether the Agreement Requires Application of California or Federal Law

Golden contends that because the Agreement contains a choice-of-law clause, stating that it "will be governed by the internal law . . . of the State of California," the CAA, not the FAA, applies to the Agreement and dictates whether the legality of the Agreement must be decided by the Court or the arbitrator in the first instance. O'Melveny

---

[3]Golden argues that <u>Cummings</u> and <u>Moncharsh</u> are inapplicable to this case as those cases refer only to the "unconscionability" of an agreement.  Golden asserts that defendants have not cited "a single case authority that a party can waive a challenge to an agreement that is illegal in its entirety on public policy grounds."  Reply at 9.

This is incorrect.  Both cases explicitly address the illegality defense.  <u>See</u>, <u>e.g.</u>, <u>Cummings</u>, 128 Cal. App. 4th at 328 ("[I]f a party believes the entire contractual agreement or a provision for arbitration is illegal, it must oppose arbitration on this basis before participating in the process or forfeit the claim"); <u>Moncharsh</u>, 3 Cal. 4th at 31 ("We thus hold that unless a party is claiming (i) the entire contract is illegal, or (ii) the arbitration agreement itself is illegal, he or she need not raise the illegality question prior to participating in the arbitration process, so long as the issue is raised before the arbitrator").

Golden further fails to explain the relevance of the distinction, particularly in light of the fact that the California Civil Code refers to unlawfulness as one ground of contractual invalidity.  <u>See, e.g.</u>, Civ. Code § 1441 ("A condition in a contract, the fulfillment of which is . . . unlawful . . . is void"); <u>id.</u> at § 1608 ("If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**           **'O'**

| Case No. | CV 14-8725 CAS (AGRx) | Date | August 3, 2016 |
|---|---|---|---|
| Title | JEFFREY I. GOLDEN V. O'MELVENY & MEYERS LLP | | |

argues that the Agreement's general choice-of-law clause does not nullify the applicability of the FAA and that the Court should "interpret the choice-of-law clause as simply supplying state substantive, decisional law, and not state law rules for arbitration." Sovak v. Chugai Pharmaceutical Co., 280 F.3d 1266, 1270 (9th Cir. 2002).

The FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Arreguin v. Global Equity Lending, Inc., No. C 07-06026 MHP, 2008 WL 410340, *4 (N.D. Cal. Sept. 2, 2008) (quoting Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983)). "The FAA was designed 'to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate,' and to place such agreements 'upon the same footing as other contracts.' " Wolsey, Ltd. v. Foodmaker, Inc., 144 F.3d 1205, 1209 (9th Cir. 1998) (quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 219-20 (1985); Scherk v. Alberto-Culver Co., 417 U.S. 506, 511 (1974)); see also Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 270 (1995) (noting that Congress passed the FAA "to overcome courts' refusals to enforce agreements to arbitrate"). Thus, the the FAA "preempts [any] state law that withdraws the power to enforce arbitration agreements." Southland Corp. v. Keating, 465 U.S. 1, 16 n.10 (1984). Further,

> [t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or the allegation of waiver, delay, or a like defense to arbitrability.

Moses H. Cone, 460 U.S. at 24-25.

Nonetheless, parties to a contract are not restricted to the procedural rules established by the FAA and may "specify by contract the rules under which the arbitration will be conducted." Volt Inf. Scis. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989); see also Mastick v. TD Ameritrade, Inc., 209 Cal. App. 4th 1258, 1263-64 (2012). The question presented here is whether the Agreement's language sufficiently expresses the parties' intent to specify rules alternative to the FAA. Relying on California authority, Golden argues that the phrase "governed by California law," found in the Agreement's general choice-of-law provision, sufficiently invokes the application of California procedural arbitration law. Relying on Ninth Circuit and Supreme Court authority, O'Melveny contends that the general choice-of-law

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | CV 14-8725 CAS (AGRx) | Date | August 3, 2016 |
|----------|------------------------|------|----------------|
| Title | JEFFREY I. GOLDEN V. O'MELVENY & MEYERS LLP | | |

provision does not overcome the presumption that the FAA's rules apply in favor of California procedural rules of arbitration, especially given that the Agreement specifies that the arbitration will be conducted according to the Judicial Arbitration and Mediation Service ("JAMS") private arbitration rules.

While Golden cites to a few cases that have applied state procedural law based on a general choice-of-law provision that used the phrase "governed by," these cases diverge from other California, as well as Ninth Circuit and Supreme Court precedent. Further, although the Ninth Circuit and California courts take a slightly different approach to interpreting agreements containing potentially conflicting choice-of-law and arbitration rule provisions, both approaches support the same conclusion: the FAA and JAMS Rules apply to the Agreement.

### 1.    Supreme Court Precedent

The California cases cited by Golden must be read in light of Supreme Court precedent. See Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468 (1989) ("Volt"); Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, (1995) ("Mastrobuono"); and Preston v. Ferrer, 552 U.S. 346 (2008) ("Preston").

The first case, Volt, involved a conflict between Cal. Civ. Proc. Code Ann. § 1281.2(c), which permits a court to stay arbitration pending resolution of related litigation, and the FAA, which contains no such provision. Volt, 489 U.S. at 470-71. The Court noted that "in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the Act, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." Id. at 475 (citing Perry v. Thomas, 482 U.S. 483, 493, n.9 (1987); Mitsubishi Motors Corp., 473 U.S. at 626 (in construing an arbitration agreement within the coverage of the FAA, "as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability"); Moses H. Cone, 460 U.S. at 24-25 (§ 2 of the FAA "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act," which requires that "questions of arbitrability . . . be addressed with a healthy regard for the federal policy favoring arbitration," and that "any doubts concerning the scope of arbitrable issues . . . be resolved in favor of arbitration")).

Importantly, however, the Volt Court did not rule on the matter of whether the contract's choice-of-law clause incorporated California law. Id. at 474 ("[T]he

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | CV 14-8725 CAS (AGRx) | Date | August 3, 2016 |
|---|---|---|---|
| Title | JEFFREY I. GOLDEN V. O'MELVENY & MEYERS LLP | | |

interpretation of private contracts is ordinarily a question of state law, which this Court does not sit to review."); see also Mastrobuono, 514 U.S. at 60 n.4 ("In Volt . . . we did not interpret the contract de novo. Instead, we deferred to the California court's construction of its own state law"); Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1131 (9th Cir. 2000) (Volt did not interpret the contract de novo, instead it deferred to the California court's construction). Rather, the Court addressed whether (1) the presumption in favor of arbitrability or (2) the principle of conflict preemption barred the application of state law when the parties specifically agreed to arbitrate according to state law rules.

As to the first question, the Court held "[t]here is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate. Interpreting a choice-of-law clause to make applicable state rules governing the conduct of arbitration—rules which are manifestly designed to encourage resort to the arbitral process—simply does not offend the rule of liberal construction set forth in Moses H. Cone, nor does it offend any other policy embodied in the FAA." Id. at 476. Thus, the Court concluded, the presumption in favor of arbitrability does not require the Court to overturn parties' choice of procedural rules if the parties have, in fact, so chosen that set of rules.

The Court next held that the principle of conflict preemption did not apply to preempt the parties' chosen rules in favor of the FAA.

> Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate, so too may they specify by contract the rules under which that arbitration will be conducted. Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward.

Id. at 479. The Court applied the CAA, pursuant to the parties' agreement to arbitrate pursuant to those rules.

In contrast with Volt, which addressed issues of presumption and preemption, not contract interpretation, Mastrobuono "review[ed] a federal court's interpretation of [a]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | CV 14-8725 CAS (AGRx) | Date | August 3, 2016 |
|----------|----------------------|------|----------------|
| Title | JEFFREY I. GOLDEN V. O'MELVENY & MEYERS LLP | | |

contract" to determine if the contract evinced intent to be governed by state or federal procedural arbitration rules. <u>Mastrobuono</u>, 514 U.S. at 60 n.4. <u>Mastrobuono</u> arose from a conflict between New York law, which "allows courts, but not arbitrators, to award punitive damages," and the FAA, which does not so limit the available remedies. <u>Id.</u> at 53-54.

The Court interpreted an agreement that contained a general choice-of-law provision, stating that the contract "[s]hall be governed by the laws of the State of New York," <u>id.</u> at 58-59, and a specific arbitration provision that stated that " 'any controversy' arising out of the transactions between the parties 'shall be settled by arbitration' in accordance with the rules of the National Association of Securities Dealers (NASD), or the Boards of Directors of the New York Stock Exchange and/or the American Stock Exchange." <u>Id.</u> at 59.

Pursuant to principles of contract interpretation, the Court looked to the language of the agreement to determine whether the parties intended New York law to apply, limiting the availability of punitive damages. Echoing <u>Volt</u>, the Court noted that such an approach "is consistent with the central purpose of the Federal Arbitration Act to ensure 'that private agreements to arbitrate are enforced according to their terms.'" <u>Id.</u> at 54. The Court found that the general choice-of-law clause did not clearly indicate the parties' intent to apply New York procedural arbitration law, to disputes arising from the agreement.

> The choice-of-law provision, when viewed in isolation, may reasonably be read as merely a substitute for the conflict-of-laws analysis that otherwise would determine what law to apply to disputes arising out of the contractual relationship. Thus, if a similar contract, without a choice-of-law provision, had been signed in New York and was to be performed in New York, presumably 'the laws of the State of New York' would apply, even though the contract did not expressly so state. In such event, there would be nothing in the contract that could possibly constitute evidence of an intent to exclude punitive damages claims. Accordingly, punitive damages would be allowed because, in the absence of contractual intent to the contrary, the FAA would pre-empt the [New York punitive damages] rule.

<u>Id.</u> at 59. "At most," the Court held, "the choice-of-law clause introduces an ambiguity into an arbitration agreement that would otherwise allow punitive damages awards." <u>Id.</u> at 62.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | CV 14-8725 CAS (AGRx) | Date | August 3, 2016 |
| --- | --- | --- | --- |
| Title | JEFFREY I. GOLDEN V. O'MELVENY & MEYERS LLP | | |

Following the principle of contract construction that an agreement should be read to give effect to all of its provisions and render them consistent, the Court held that

the best way to harmonize the choice-of-law provision with the arbitration provision is to read 'the laws of the State of New York' to encompass substantive principles that New York courts would apply, but not to include special rules limiting the authority of arbitrators. Thus, the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration; neither sentence intrudes upon the other. In contrast, respondents' reading sets up the two clauses in conflict with one another: one foreclosing punitive damages, the other allowing them. This interpretation is untenable.

Id. at 63-64.

The Court interpreted a similar contract in Preston, and in doing so, clarified the holdings in Volt and Mastrobuono. The agreement at issue in Preston also contained a general choice-of-law clause, stating that the "agreement shall be governed by the laws of the state of California," and a specific arbitration clause, stating that "any dispute . . . relating to . . . the breach, validity, or legality" of the contract should be arbitrated in accordance with the American Arbitration Association ("AAA") rules. Preston, 552 U.S. at 361. Ferrer challenged the validity of the contract, contending that Preston, who had presented himself as a talent agent in reaching the relevant agreement with Ferrer, was not actually so licensed. California procedural law grants jurisdiction over the determination of whether an individual is licensed as a talent agent exclusively to the Labor Commissioner. Id. at 361. The FAA, in contrast, requires that all questions regarding a contract's validity be resolved by an arbitrator.

The Court again held that the contract evinced the parties' intent to arbitrate pursuant to the FAA and AAA procedural rules and California substantive law:

The incorporation of the AAA rules, and in particular Rule 7(b), weighs against inferring from the choice-of-law clause an understanding shared by Ferrer and Preston that their disputes would be heard, in the first instance, by the Labor Commissioner. Following the guide Mastrobuono provides, the 'best way to harmonize' the parties' adoption of the AAA rules and their selection of California law is to read the latter to encompass prescriptions governing the substantive rights and obligations of the parties, but not the State's 'special rules limiting the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | CV 14-8725 CAS (AGRx) | Date | August 3, 2016 |
| Title | JEFFREY I. GOLDEN V. O'MELVENY & MEYERS LLP | | |

authority of arbitrators.'

Id. at 362-63 (quoting Mastrobuono, 514 U.S. at 63-64).

The Court additionally clarified Volt's applicability in cases requiring the interpretation of contracts incorporating different sets of rules in the general choice-of-laws provision and the specific arbitration clause. Most importantly, the Court acknowledged that the Court did not have the opportunity to interpret the parties' underlying contract and therefore did not "address[] the import of the contract's incorporation by reference of privately promulgated arbitration rules." Id. at 362. The Court further noted that the application of California law in Volt did not present an actual conflict with the FAA, indicating that where such a conflict exists, the FAA may preempt state law, regardless of a general choice-of-law provision to the contrary. Id. at 361.

Interpretation of these cases has resulted in some differences between California courts and the Ninth Circuit in the treatment of contracts containing a general choice-of-law provision and specific arbitration clause incorporating private arbitration rules. As discussed below, notwithstanding the handful of cases cited by Golden, application of Ninth Circuit and California precedent arrive at the same conclusion, namely, the rules of the FAA, not the CAA, apply to the Agreement.

### 2. Ninth Circuit Analysis

Analysis of whether the FAA or CAA applies begins with a strong presumption that the FAA, not state law, supplies the rules for arbitration. Although "[p]arties may agree to state law rules for arbitration," they must clearly evidence their intent to be bound by such rules. In other words, the strong default presumption is that the FAA, not state law, supplies the rules for arbitration." Sovak, 280 F.3d at 1269 (citing Volt, 489 U.S. at 479; Mastrobuono, 514 U.S. at 61-62; Chiron Corp., 207 F.3d at 1131); Wolsey, 144 F.3d at 1213; Roadway Package Sys. v. Kayser, 257 F.3d 287, 293 (3d Cir. 2001) (stating that parties must evidence a "clear intent" to incorporate state law rules for arbitration)). See also Fid. Fed. Bank, FSB v. Durga Ma Corp., 386 F.3d 1306, 1311 (9th Cir. 2004) ("Both parties acknowledge that in Sovak v. Chugai, we held that there is a 'strong default presumption[ ] that the [Federal Arbitration Act], not state law, supplies the rules for arbitration.' To overcome that presumption, parties to an arbitration agreement must evidence a 'clear intent' to incorporate state law rules for arbitration," quoting Sovak, 280 F.3d at 1269 (alteration in original)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**        **'O'**

| Case No. | CV 14-8725 CAS (AGRx) | Date | August 3, 2016 |
|----------|------------------------|------|----------------|
| Title | JEFFREY I. GOLDEN V. O'MELVENY & MEYERS LLP | | |

The Ninth Circuit has held that a general choice-of-law provision, without more is not enough to overcome that presumption.  Sovak, 280 F.3d at 1270 ("[A] general choice-of-law clause within an arbitration provision does not trump the presumption that the FAA supplies the rules for arbitration, citing Wolsey, 144 F.3d at 1213 (stating that "Mastrobuono dictates that general choice-of-law clauses do not incorporate state rules" for arbitration); Chiron Corp., 207 F.3d at 1131 (same)).

The Ninth Circuit has therefore interpreted Mastrobuono as standing for the proposition that, absent any other indication of the parties' intent, a general choice-of-law clause applies state substantive law, while the FAA governs arbitration procedure that affects the allocation of decisional authority between courts and arbitrators.  Sovak, 280 F.3d at 1270 ("[W]e will interpret the choice-of-law clause as simply supplying state substantive, decisional law, and not state law rules for arbitration"); Wolsey, 144 F.3d at 1213 ("Mastrobuono dictates that general choice-of-law clauses do not incorporate state rules that govern the allocation of authority between courts and arbitrators").

For example, the Ninth Circuit in Fid. Fed. Bank, 386 F.3d 1306, was tasked with interpreting the following arbitration clause: "[D]isputes or controversies shall be submitted to and resolved by binding arbitration in accordance with the laws of the State of California and the rules of the American Arbitration Association."  Id. at 1308.  The court "interpret[ed] the agreement . . . to elect state substantive law but federal procedural law."  Id. at 1312.

Similarly, in Wolsey, 144 F.3d 1205, the Ninth Circuit interpreted an agreement that in included a choice-of-law clause that provided "[T]his Agreement between Foodmaker International and [Wolsey] shall be interpreted and construed under the laws of the State of California, U.S.A.," and an arbitration clause that stated that "all controversies, disputes or claims . . . shall be submitted for non-binding arbitration . . . [and] shall be heard by three arbitrators in accordance with the then-current commercial arbitration rules of the American Arbitration Association."  Id. at 1209.

The court held that because the agreement "contain[ed] an arbitration clause and a general choice-of-law clause, but d[id] not contain a specific reference to the state arbitration rule at issue. . . pursuant to Mastrobuono, the relevant question [was] whether [the rule of law to be applied] . . . affect[ed] 'only [California's] substantive rights and obligations,' or whether it also affect[ed] '[California's] allocation of power between alternative tribunals."  Wolsey, 144 F.3d at 1212 (quoting Mastrobuono, 514 U.S. at 63-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | CV 14-8725 CAS (AGRx) | Date | August 3, 2016 |
|----------|----------------------|------|----------------|
| Title | JEFFREY I. GOLDEN V. O'MELVENY & MEYERS LLP | | |

64).  See also Chiron Corp., 207 F.3d at 1130 (holding that a choice-of-law provision that provided "[t]his agreement shall be construed and interpreted according to the laws of the State of New Jersey," did not overcome the presumption that the FAA governs procedural arbitration law).

Applying the Ninth Circuit's analysis to the present case results in the application of federal law and, as such, requires the arbitrator, not the Court, to determine the validity of the Agreement.  The Agreement's choice-of-law clause, generally incorporating California law, does not apply to the question of whether the court or arbitrator will determine validity, as that rule is procedural, not substantive, and does not effect the allocation of decisional authority between the arbitrator and the Court.  See, Preston 552 U.S. at 362-63; Sovak, 280 F.3d at 1270; Wolsey, 144 F.3d at 1213.

Golden argues that, unlike Mastrobuono and the Ninth Circuit cases that followed that decision, the present case does not involve a situation where the choice-of-law clause and arbitration clause are in conflict.  Specifically, while JAMS Rule 11(b) provides that "[j]urisdictional and arbitrability disputes, including disputes over the . . . validity . . . of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator," who "has the authority to determine jurisdiction and arbitrability issues as a preliminary matter," Rosen Decl., ¶ 34, Exh. 5 at 129, JAMS Rule 4 states that "[i]f any of these Rules . . . is determined to be in conflict with a provision of applicable law, the provision of law will govern over the Rule in conflict."  Golden thus argues that although JAMS Rule 11(b) conflicts with California law, Rule 4 indicates that the JAMS Rules do not apply in such a situation, leaving California law as providing the only applicable set of rules.

Golden's reliance on Mastrobuono for the proposition that when the parties chose conflicting state arbitration rules, those rules apply, is misplaced.  Under Ninth Circuit law, the Agreement's general choice-of-law clause does not evidence the parties' clear intent to apply California law to supply the procedural rules of arbitration and therefore is insufficient to overcome the presumption that the FAA applies.

**3.      California Law Analysis**

California courts have generally required parties to demonstrate some intent to apply state procedural law, aside from the mere presence of a general choice-of-law provision.  Golden has, however, cited to California appellate court decisions that have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | CV 14-8725 CAS (AGRx) | Date | August 3, 2016 |
|---|---|---|---|
| Title | JEFFREY I. GOLDEN V. O'MELVENY & MEYERS LLP | | |

concluded that the presence of a general choice-of-law clause, or the inclusion of the phrase "governed by" in such a clause, is enough to evince such intent. The Court does not find these cases persuasive, for the reasons discussed below.

Mount Diablo Med. Ctr. v. Health Net of California, Inc., 101 Cal. App. 4th 711, 714 (2002), has been cited as establishing the rule that a general choice-of-law clause is sufficient to evince the parties' intent for arbitration to proceed according to that jurisdiction's laws, regardless of whether the arbitration clause explicitly specifies alternate private arbitration rules to be applicable. See, e.g., Cronus Investments, Inc. v. Concierge Servs., 35 Cal. 4th 376, 387 (2005). Examination of Mount Diablo, however, reveals a much more nuanced approach.

The contract in that case included an arbitration agreement which stated that "all matters in controversy shall be submitted . . . to arbitration under the appropriate rules of the American Arbitration Association ('AAA')." Mount Diablo, 101 Cal. App. 4th at 716 n. 4. It also included a choice-of-law provision, which stated: "The validity, construction, interpretation and enforcement of this Agreement shall be governed by the laws of the State of California." Id. at 716. Health Net raised the same argument as O'Melveny here, contending that a general choice-of-law clause did not evince an intention to render the parties' agreement to arbitrate subject to the terms of the California Code of Civil Procedure. Id. at 714.

The court refused to accept Health Net's blanket treatment of general choice-of-law clauses, noting that "[w]hile Health Net attempts to group all choice-of-law clauses that make no explicit reference to arbitration under the rubric 'generic,' the term has no precise definition." Id. at 722. Rather, the court read controlling authority to require it to "look first to the language of the contract to determine what portions of state law the parties intended to incorporate, and then, if any ambiguity exists, to determine whether the provision in question conflicts with the objectives of the FAA." Id.

Addressing the language of the specific choice-of-law provision contained in the parties' agreement, the court held that while

[t]he choice-of-law provision in the present case may be 'generic' in the sense that it does not mention arbitration or any other specific issue that might become a subject of controversy . . . [i]t provides that '[t]he validity, construction, interpretation and enforcement of this Agreement' shall be governed by California

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | CV 14-8725 CAS (AGRx) | Date | August 3, 2016 |
|----------|------------------------|------|----------------|
| Title | JEFFREY I. GOLDEN V. O'MELVENY & MEYERS LLP | | |

law. The explicit reference to enforcement reasonably includes such matters as
whether proceedings to enforce the agreement shall occur in court or before an
arbitrator.  Chapter 2 (in which section 1281.2 appears) of title 9 of part III of the
California Code of Civil Procedure is captioned 'Enforcement of Arbitration
Agreements.'  An interpretation of the choice-of-law provision to exclude
reference to this chapter would be strained at best.

Id. at 722.

The court continued to contrast the "generic" choice-of-law provision at issue in
Mount Diablo with the "generic" choice-of-law provisions considered in Mastrobuono
and other cases that found such provisions insufficient to demonstrate an intent to
incorporate state procedural arbitration rules.  "In contrast" to the provision in Mount
Diablo, "the agreement in Mastrobuono provided only that it 'shall be governed by the
laws of the State of New York.'  In Wolsey, the contract provided that it '. . . shall be
interpreted and construed under the laws of the State of California, U.S.A.' "  Id. at 723
(quoting Mastrobuono, 514 U.S. at 53; Wolsey, 144 F.3d at 1209).  Several other "federal
cases following Mastrobuono" also "contain choice-of-law provisions that use language
similar to that in Mastrobuono and Wolsey, to the effect that the agreement would be
governed by the law of a particular jurisdiction, without reference to enforcement."  Id. at
723 (collecting cases).  The court therefore found that although both sets of choice-of-law
provisions were claimed to be "generic," the text of the clauses themselves was
determinative, in that certain provisions demonstrated a clear intent to incorporate
California procedural arbitration law, while others did not.

Mount Diablo then moved to the second stage of analysis:

"If the language of the choice-of-law clause is broad enough to include state law on
the subject of arbitrability . . . the second step in the court's analysis, under
Mastrobuono, must be to determine whether the particular provision of state law in
question is one that reflects a hostility to the enforcement of arbitration agreements
that the FAA was designed to overcome.  If so, the choice-of-law clause should not
be construed to incorporate such a provision, at least in the absence of
unambiguous language in the contract making the intention to do so unmistakably
clear."

Id. at 724.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | CV 14-8725 CAS (AGRx) | Date | August 3, 2016 |
|---|---|---|---|
| Title | JEFFREY I. GOLDEN V. O'MELVENY & MEYERS LLP | | |

The California Supreme Court's decision in Cronus Investments, Inc. v. Concierge Servs., 35 Cal. 4th 376, 381 (2005), adopted the Court of Appeal's analysis in Mount Diablo. The Court there found that the parties' choice-of-law provision incorporated California law because its terms were similar to that of Mount Diablo. Id. at 387. The arbitration clause in Cronus parallels Mount Diablo in an important respect: the arbitration clause in Cronus also specifically indicated that the "enforcement" of the contract would be governed by California law: "This agreement shall be construed and enforced in accordance with and governed by the laws of the State of California, without giving effect to the choice of laws provisions thereof.'" Id. at 381.

Thus, although the Cronus court did not explain its analysis of the choice-of-law clause in as much detail as did the Mount Diablo court, its reliance on the fact that its provision was "substantially similar to the provisions in Mount Diablo," indicates that the Supreme Court also found the text of the clause itself, not just the fact that it was a choice-of-law clause, significant in determining that the parties intended to apply California procedural law.

Application of Mount Diablo and Cronus to the Agreement also leads to the application of federal law. The choice-of-law clause states:

Our agreement will be governed by the internal law, and not the law pertaining to choice or conflict of laws, of the State of California, except to any extent required by applicable law or rules of professional conduct.

Nothing in the clause evinces particular intent to incorporate state arbitration rules; rather, they resemble the clauses in Mount Diablo and other cases that merely include language "to the effect that the agreement would be governed by the law of a particular jurisdiction, without reference to enforcement." Mount Diablo, 101 Cal. App. 4th at 723.

However, as Golden argues, some California courts have cited Mount Diablo and Cronus for the proposition that *any* choice-of-law provision automatically demonstrates the intended application of that state's arbitration rules.

For example, the choice-of-law provision in Mastick, 209 Cal. App. 4th at 1262, stated that "the parties will be governed by California law and disputes between them will be resolved through arbitration in accordance with the AAA rules." Id. Although this clause does not contain express language regarding the enforcement of the contract, nor any other language referencing the act of arbitration, the Mastick court cited Cronus and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**　　　'O'

| Case No. | CV 14-8725 CAS (AGRx) | Date | August 3, 2016 |
|----------|----------------------|------|----------------|
| Title | JEFFREY I. GOLDEN V. O'MELVENY & MEYERS LLP | | |

<u>Volt</u> in its finding that because "the parties agree[d] that California law 'governs' the contract, the CAA applies." <u>Id.</u> at 1263-64.  <u>Mastick</u> relies on the word "governs" to demonstrate intent that the choice-of-law clause is all-encompassing, despite the fact that the parties agreed in a separate arbitration clause that "arbitration would proceed under AAA arbitration rules." <u>Id.</u> at 1263-64 (citing <u>Volt</u>, 489 U.S. at 470; <u>Cronus</u>, 35 Cal. 4th at 387).  However, <u>Mastick</u> distinguished <u>Mastrobuono</u>, not on the basis of the text of the agreement, but on the nature of the rule at issue: while <u>Mastrobuono</u> involved a "special rule limiting the authority of arbitrators," <u>Mastick</u> did not.  <u>Id.</u> at 1265.  In other words, <u>Mastick</u> did not involve rules allocating the decisional authority between the courts and the arbitrators.

Other California courts have followed this approach to interpreting choice-of-law clause cases as requiring the application of the state law rules of arbitration, or have not engaged in the textual interpretation and have based their analysis on whether or not the rule itself limited the authority of arbitrators.  <u>See, e.g.</u>, <u>San Francisco Unified Sch. Dist. v. Keenan & Associates</u>, No. A112106, 2007 WL 1417419, at *14 (Cal. Ct. App. May 15, 2007) (not discussing whether or not the choice-of-law provision evinces intent to incorporate California arbitration rules, because "unlike the New York rule involved in <u>Mastrobuono</u>, does not involve a special rule limiting the authority of arbitrators").

The Court disagrees with this approach for a number of reasons.  First, it "violates another cardinal principle of contract construction: that a document should be read to give effect to all its provisions and to render them consistent with each other."  <u>Mastrobuono</u>, 514 U.S. at 63.  Specifically, it relies on the presence of a general choice-of-law clause without reference to whether the parties also selected alternative, private arbitration rules and whether automatically applying state law would read out that portion of the arbitration clause.

Further, to the extent that this line of cases relies on the phrase "governs" or "governed by" in the choice-of-law provision to trigger the blanket application of that jurisdiction's procedural law, as Golden suggests, that method of analysis is inconsistent with the Supreme Court's decision in <u>Preston</u>.  The conflict-of-law provision in the <u>Preston</u> agreement also included the phrase "governed by," but this did not prevent the Supreme Court from applying the AAA rules, designated in the arbitration clause, rather than California state rules.  <u>See Preston</u>, 552 U.S. at 361.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL                    'O'

| Case No. | CV 14-8725 CAS (AGRx) | Date | August 3, 2016 |
|----------|------------------------|------|----------------|
| Title | JEFFREY I. GOLDEN V. O'MELVENY & MEYERS LLP | | |

Finally, this approach effectively presumes that state law applies, where the FAA requires the opposite presumption. Indeed, given that "[m]ost commercial contracts written in this country contain choice-of-law clauses . . . specifying which State's law is to govern the interpretation of the contract," the automatic application of state law to the rules of arbitration where such choice-of-law clauses exist would "render the Federal Arbitration Act a virtual nullity as to presently existing contracts." Volt, 489 U.S. at 491 (Brennan, J., dissenting).

In sum, the Court concludes that the FAA and JAMS Rules govern the rules of arbitration, including whether the Court or arbitrator should decide issues raised regarding the alleged invalidity of the contract. Applying those rules, the Court declines to alter its holding in the Arbitration Order and compels the parties to return to arbitration.[4]

### C.    Sanctions

O'Melveny argues that the Court should impose sanctions against Golden and its counsel because Golden's motion for reconsideration was not warranted by the facts or law.

Under Rule 11(b), by presenting pleadings, written motions or other papers to the court,

> an attorney . . . certif[ies] that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances . . . (1) [the paper] is not being presented for any improper purpose, such as to harass or to

---

[4]  Golden spends a significant portion of its briefs arguing that judicial economy strongly favors a threshold determination by this Court as to the illegality of the Agreement. Such considerations are irrelevant, as whether or not to return the case to the arbitrator is not a matter of the Court's discretion, but rather required based on the application of the FAA.  See C. Itoh & Co. v. Jordan International Co., 552 F.2d 1228, 1231 (7th Cir. 1977) ("Considerations of judicial economy bear no relation to 'the making and performance of an agreement to arbitrate,' and to permit a district court to deny a stay pending arbitration, based on such discretionary considerations would, in our opinion, frustrate the strong federal policy in favor of arbitration which is expressed in the Federal Arbitration Act as interpreted by the Supreme Court.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | CV 14-8725 CAS (AGRx) | Date | August 3, 2016 |
|---|---|---|---|
| Title | JEFFREY I. GOLDEN V. O'MELVENY & MEYERS LLP | | |

cause unnecessary delay or needless increase in the cost of litigation; (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and] (3) the factual contentions have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b).

Under Rule 11(c)(2), sanctions "on an attorney, law firm or party" are properly imposed if the court finds that the attorney, firm or party has violated – "or is responsible for the violation" of – Rule 11(b).  Fed. R. Civ. P. 11(c)(2).  Thus, "[a]lthough typically levied against an attorney, a court is authorized to issue Rule 11 sanctions against a party even though the party is neither an attorney nor the signor of the pleadings."  Byrne v. Nezhat, 261 F.3d 1075, 1106 (11th Cir. 2001) (citing Souran v. Travelers Ins. Co., 982 F.2d 1497, 1508 n.14 (11th Cir. 1993)).

The Ninth Circuit has held that sanctions may be imposed on the signer of a paper or a represented party if (1) the paper is filed for an improper purpose, or (2) the paper is frivolous.  Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1362 (9th Cir. 1990).  Frivolousness is "shorthand . . . [for] a filing that is both baseless and made without a reasonable and competent inquiry."  Id.  The standard governing the "improper purpose" and "frivolousness" inquiries is an objective one.  G.C. and K.B. Investments, Inc. v. Wilson, 326 F.3d 1096, 1109 (9th Cir. 2003).  "'[T]he subjective intent of the . . . movant to file a meritorious document is of no moment.  The standard is reasonableness."  Id.

Further, "[a]n attorney who unreasonably and vexatiously 'multiplies the proceedings' may be required to pay the excess fees and costs caused by his conduct" under 28 U.S.C. § 1927.  Lahiri v. Universal Music & Video Distrib., 606 F.3d 1216, 1218-19 (9th Cir. 2010) (quoting 28 U.S.C. § 1927). Section 1927 does not require a finding of subjective bad faith. Hamilton v. Boise Cascade Express, 519 F.3d 1197, 1203 (10th Cir. 2008) ("Where, 'pure heart' notwithstanding, an attorney's momentarily 'empty head' results in an objectively vexatious and unreasonable multiplication of proceedings at expense to his opponent, the court may hold the attorney personally responsible").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | CV 14-8725 CAS (AGRx) | Date | August 3, 2016 |
|---|---|---|---|
| Title | JEFFREY I. GOLDEN V. O'MELVENY & MEYERS LLP | | |

Finally, the Court has the "inherent power" to impose sanctions for "bad faith" conduct in litigation.  Chambers v. NASCO, Inc., 501 U.S. 32, 41, 51 (1991) (upholding sanctions where counsel filed "false and frivolous" papers, "attempt[ed] to perpetrate a fraud on the court," and employed other "tactics of delay").  "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument." Primus Auto Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 649 (9th Cir. 1997) "A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order."  Id.

Although Golden's arguments did not prevail, his motion for reconsideration was not baseless.  Indeed, as described above, Golden's argument was supported by citation to California case law, albeit not ultimately persuasive to the Court.  Accordingly, the Court declines to sanction Golden for his filing of the motion for reconsideration.  See California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1472 (9th Cir. 1987) (" Although Williams ultimately failed to adduce substantial support for the complaint, the suit was not so baseless that sanctions ought to be imposed"); Ultramar Am. Ltd. v. Dwelle, 848 F.2d 199 (9th Cir. 1988) ("The filing of the single motion that drew the sanctions does not demonstrate an abuse of the proceedings or process of the court, nor was the motion so baseless or lacking in plausibility that sanctions ought to be imposed"); Rodriguez v. Int'l Bhd. of Boilermakers, No. 14-CV-03537-LHK, 2016 WL 913440, at *9 (N.D. Cal. Mar. 10, 2016) ("[A] claim that has 'some plausible basis, [even] a weak one,' is sufficient to avoid sanctions under Rule 11," quoting United Nat. Ins. Co. v. R&D Latex Corp., 242 F.3d 1102, 1117 (9th Cir. 2001)).

## IV.   CONCLUSION

For the reasons stated, the Court denies Golden's motion for reconsideration and compels the parties to proceed with the arbitration, including the motion to disqualify, before Judge Feess.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |