1  KEVIN S. ROSEN, SBN 133304
    krosen@gibsondunn.com
2  MATTHEW S. KAHN, SBN 261679
    mkahn@gibsondunn.com
3  SHANNON MADER, SBN 235271
    smader@gibsondunn.com
4  BLAKE SHINODA, SBN 300455
    bshinoda@gibsondunn.com
5  GIBSON, DUNN & CRUTCHER LLP
    333 South Grand Avenue
6  Los Angeles, CA  90071-3197
    Telephone:  213.229.7000
7  Facsimile:   213.229.6635

8

9  Attorneys for Defendants O'MELVENY &
    MYERS LLP, STEVEN J. OLSON, AND J.
10  JORGE DENEVE

11  UNITED STATES DISTRICT COURT

12  CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 13  JEFFREY I. GOLDEN, Chapter 7 Trustee of Aletheia Research and Management, Inc., | CASE NO. 2:14-cv-08725-CAS-AGR |
| 14 | **NOTICE OF MOTION AND MOTION FOR ORDER CONFIRMING ARBITRAL AWARD PURSUANT TO § 1 ET SEQ. OF THE FEDERAL ARBITRATION ACT BY DEFENDANTS O'MELVENY & MYERS LLP, STEVEN J. OLSON, AND J. JORGE DENEVE; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** |
| 15  Plaintiff, | |
| 16  v. | |
| 17  O'MELVENY & MYERS LLP; STEVEN J. OLSON, an individual; J. JORGE DENEVE, an individual; and DOES 1 through 12, | |
| 18 | |
| 19 | |
| 20  Defendants. | *[SUPPORTING DECLARATION OF KEVIN S. ROSEN AND [PROPOSED] ORDER FILED CONCURRENTLY HEREWITH]* |
| 21 | |
| 22 | **Hearing:** Date:  October 21, 2019 |
| 23 | Time:  10:00 a.m. |
| 24 | Place:  Courtroom 8D Judge:  Hon. Christina A. Snyder |

25

26

27

28

Gibson, Dunn &
Crutcher LLP

**TO PLAINTIFF AND TO HIS ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on October 21, 2019, at 10:00 a.m., or as soon thereafter as counsel may be heard by the above-entitled court, located at 350 W. First Street, Los Angeles, California 90012, Defendants O'Melveny & Myers LLP, Steve J. Olson, and J. Jorge deNeve ("Defendants") will, and hereby do, move the Court for an order confirming the corrected Final Award dated June 21, 2019 and issued in the arbitration between Defendants and the Trustee that the Court ordered on June 15, 2015. This motion is made pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and the Court's inherent authority.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which began on August 27, 2019 via a letter from Defendants' counsel to the Trustee's counsel regarding the substance of this motion. Counsel exchanged additional email correspondence and had a meet-and-confer telephone conference, culminating in the parties entering into a stipulation that provided for a briefing schedule for this motion and the Trustee's motion to vacate. (Dkt. 77, 79.)

This motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the supporting Declaration of Kevin S. Rosen and all exhibits attached thereto and referenced therein, the proposed order granting the relief requested herein, all papers and pleadings on file, all matters of which judicial notice may be taken, and such further argument and evidence as may be presented at or before the hearing on this matter.

Dated: September 9, 2019

GIBSON, DUNN & CRUTCHER LLP


By: /s/ Kevin S. Rosen
                    Kevin S. Rosen

Attorneys for Defendants O'MELVENY & MYERS LLP, STEVEN J. OLSON, and J. JORGE DENEVE

1

# TABLE OF CONTENTS

Page

I. OVERVIEW ................................................................................................. 1

II. BACKGROUND ....................................................................................... 3

    A.    The Court Orders The Trustee's State Law Claims To Arbitration .......... 3

    B.    The Arbitration Begins ............................................................... 4

    C.    The Court Rejects The Trustee's New Attempts To Avoid Arbitration ............................................................................. 4

    D.    The Arbitration Proceedings ........................................................ 6

    E.    The Final Award Rejecting All Of The Trustee's Claims ...................... 8

III. ARGUMENT ........................................................................................... 9

    A.    Confirmation Of The Final Award Is Mandatory Under The FAA ........... 9

    B.    The Final Award Should Be Confirmed .......................................... 10

    C.    The Court Should Set A Status Conference To Discuss Next Steps ....... 11

IV. CONCLUSION ........................................................................................ 12

Gibson, Dunn & Crutcher LLP

NOTICE OF MOTION AND MOTION FOR ORDER CONFIRMING ARBITRAL AWARD PURSUANT TO § 1 ET SEQ. OF THE FEDERAL ARBITRATION ACT BY DEFENDANTS O'MELVENY & MYERS LLP, STEVEN J. OLSON, AND J. JORGE DENEVE

1

# TABLE OF AUTHORITIES

2

Page(s)

3

## Cases

4

5 *AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)................................................................................................9

6 *BDK, Inc. v. Escape Enters., Inc.*,
7    106 F. App'x 535 (9th Cir. 2004).........................................................................12

8 *Hall Street Assocs., L.L.C. v. Mattel, Inc.*,
9    552 U.S. 576 (2008).........................................................................................9, 10

10 *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*,
     341 F.3d 987 (9th Cir. 2003)............................................................................9, 10

11

12 *Latinamerican Theatrical Grp. LLC v. Swen Int'l Holding*,
    2013 WL 4016279 (C.D. Cal. Aug. 5, 2013)........................................................10

13

## Statutes

14

15 9 U.S.C. § 9...............................................................................................................9

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

NOTICE OF MOTION AND MOTION FOR ORDER CONFIRMING ARBITRAL AWARD PURSUANT
TO § 1 ET SEQ. OF THE FEDERAL ARBITRATION ACT BY DEFENDANTS O'MELVENY & MYERS
LLP, STEVEN J. OLSON, AND J. JORGE DENEVE

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. OVERVIEW

More than four years after the Trustee filed a Complaint in this Court that publicly and baselessly attacked and impugned Defendants' ethics and legal work, Defendants were entirely vindicated in an arbitration and have fully prevailed against the Trustee's claims of legal malpractice and breach of fiduciary duty.  Defendants now ask the Court to confirm the Final Award from that arbitration.

In his Complaint, the Trustee asserted two state law claims and three core claims.  The Court ordered the Trustee's state law claims to arbitration on June 15, 2015.  That arbitration commenced on July 9, 2015, and concluded on August 22, 2019.  While the arbitration proceeded, this action has been stayed.  Notwithstanding the scurrilous allegations that the Trustee made in his Complaint, the Trustee utterly failed to prove *any* of his state law claims in the arbitration, as reflected in the Final Award issued by Judge Gary A. Feess (Ret.) ("the Arbitrator").

After presiding over years of arbitration proceedings culminating in a 12-day evidentiary hearing with over 1,200 admitted exhibits, the Arbitrator issued a detailed and well-reasoned 130-page Final Award.  (Rosen Decl., ¶ 6, Ex. 3.)[1]  Simply put, as the Final Award makes clear, "[t]here was *no malpractice*" and "*no actual or potential conflict*" that could support a breach of fiduciary duty claim "in the joint representation at any time during the course of the representation."  (*Id.* at 128-29 (emphases added); *see also id.* at 12 ("[T]he Arbitrator finds and concludes as follows that [Defendants'] representation of Aletheia and Eichler *conformed to the applicable standard of care* and that *there was no conflict of interest* in O'Melveny's joint representation of Aletheia, Eichler and other individual defendants in the Proctor

---

[1]  The Final Award was initially issued on June 21, 2019.  Respondents requested certain corrections pursuant to JAMS Rule 24(j), which were accepted by the Arbitrator.  The Arbitrator then issued a corrected Final Award, which is what Respondents seek to confirm.  (Rosen Decl., ¶ 6.)

litigation or any other matter." (emphases added).)  Indeed, the Arbitrator carefully examined each of the Trustee's allegations and found all of them wanting.  (*See, e.g.*, *id.* at 41 (referring to a contention by the Trustee as "implausible" and "not supported by logic or the evidentiary record"), 84 (noting that one of the positions of Trustee's ethics expert, Robert Kehr, was "indefensible").)

Additionally, with respect to causation (or lack thereof), the Arbitrator expressly found that, "[e]ven if the Trustee had met his burden of showing either professional negligence or breach of fiduciary duty, his claim would fail because he has not proved that anything O'Melveny did or failed to do caused damage to Aletheia."  (*Id.* at 89.) The Arbitrator underscored the Trustee's lack of *any* evidence of causation:

> [W]hile the Trustee attacks O'Melveny's conduct on many fronts, including some that are immaterial to the core issues in this case, *he offers no evidence* of how an attorney representing only Aletheia would have achieved a more favorable result in any of the matters for which O'Melveny was retained.  *The Trustee presented neither witnesses nor documentation* to show that such an attorney would have offered different advice to Aletheia, pursued a different course of action on behalf of Aletheia (e.g., suing or taking other adverse actions toward Eichler, Peikin and others), that Aletheia would have agreed to such a course of action, or that a different course of action would have achieved a better outcome in any respect, including recouping compensation paid to Eichler and Peikin.

(*Id.* at 92 (emphases added).)  Instead, as the Arbitrator found, "[t]he only witnesses to testify on the proper conduct of O'Melveny's representation of Aletheia . . . proved the contrary point; that no experienced litigator representing only Aletheia would have given materially different advice or pursued a materially different course of action than O'Melveny."  (*Id.* at 94.)  These are just a few examples.  As the Final Award puts it, the Trustee "failed to carry his burden of proof on *any* of his claims against *any* of the Respondents."  (*Id.* at 8 (emphases added).)

After years of baseless allegations and costly litigation, the Trustee's claims have been proven meritless.  Defendants look forward to seeking dismissal of the Trustee's remaining, core claims after the Final Award is confirmed and the stay is lifted.

2

Gibson, Dunn & Crutcher LLP

NOTICE OF MOTION AND MOTION FOR ORDER CONFIRMING ARBITRAL AWARD PURSUANT TO § 1 ET SEQ. OF THE FEDERAL ARBITRATION ACT BY DEFENDANTS O'MELVENY & MYERS LLP, STEVEN J. OLSON, AND J. JORGE DENEVE

## II. BACKGROUND

### A.   The Court Orders The Trustee's State Law Claims To Arbitration

The Trustee initiated this action on November 10, 2014.  (Dkt. 1.)  In his Complaint, the Trustee asserted two non-core state law claims (professional malpractice and breach of fiduciary duty) and three core bankruptcy claims for recovery of alleged preferential and fraudulent transfers.  (*Id.* ¶¶ 63-97.)

Defendants moved to compel arbitration of the Trustee's state law claims on May 4, 2015, pursuant to the Federal Arbitration Act (the "FAA").  (Dkt. 17.)  As Defendants explained in the motion to compel, O'Melveny's engagement agreements with Aletheia contained a binding arbitration agreement requiring arbitration of the Trustee's state law claims.  (*Id.* at 3-5.)[2]  In response, the Trustee filed only a "limited opposition" that did "not dispute that" the state law claims "may be subject to arbitration."  (Dkt. 26 at 1.)  Nor did the Trustee dispute that the FAA applied.  Indeed, the Trustee even conceded that "[f]or the avoidance of doubt, the Trustee does not dispute that the prosecution of the [state law claims] in this Court should be stayed" because such a stay is "required by Section 3 of the FAA."  (*Id.* at 11.)

On June 15, 2015, the Court granted Defendants' motion to compel arbitration of the Trustee's state law claims.  (Dkt. 30 at 13.)  The Court recognized that these claims "are both indisputably based on O'Melveny's legal services.  Thus, they fall within the scope of" the engagement agreements' arbitration provision.  (Dkt. 30 at 5.)  The Court applied the FAA in making its decision.  (*Id.* at 4.)

---

[2]  The motion to compel also explained that O'Melveny's initial engagement agreement with Aletheia was dated January 26, 2010, and was supplemented three times (April 13, 2010; July 13, 2010; and April 14, 2011), and "every engagement agreement executed after January 26, 2010 explicitly 'supplement[ed]' the [January 26, 2010] [e]ngagement [a]greement and incorporated the 'Terms of Engagement therein,' including the Arbitration Provision."  (Dkt. 17 at 3-5; *see also* Dkt. 17-2, 17-3, 17-4, and 17-5 (the engagement agreements).)  Defendants again submit these engagement agreements with this motion to confirm.  (Rosen Decl., ¶¶ 7-11, Exs. 4-7.)

3

NOTICE OF MOTION AND MOTION FOR ORDER CONFIRMING ARBITRAL AWARD PURSUANT TO § 1 ET SEQ. OF THE FEDERAL ARBITRATION ACT BY DEFENDANTS O'MELVENY & MYERS LLP, STEVEN J. OLSON, AND J. JORGE DENEVE

With respect to the Trustee's other three claims, the Court "stay[ed] the action . . . pending the completion of arbitration." (*Id.* at 13.)  The Court further ruled that the stayed claims "derive from [the Trustee's] arbitrable claims under state law and could be narrowed or even dispatched by an arbitrator's analysis of the underlying allegations," and that the decision to stay was "bolstered by [the Trustee's] counsel's statement at oral argument to the effect that the decision of the arbitrator might operate as *res judicata*." (*Id.* at 12 & n.4.)  The Court expressly "retain[ed] full jurisdiction over this action." (Dkt. 31.)

## B.   The Arbitration Begins

Soon after entry of the Court's June 15, 2015 arbitration order, the Trustee filed his Demand for Arbitration before JAMS, attaching and designating his Complaint in this action as his Statement of Claims.  (Rosen Decl., ¶ 2.)  The parties jointly selected Judge Feess as the Arbitrator and proceeded to arbitration.  (*Id.*, ¶ 2, Ex. 1.)  The Trustee then filed a Revised Statement of Claims that, like his initial pleading, asserted claims for breach of fiduciary duty and professional negligence - malpractice against each of the Defendants—*i.e.*, O'Melveny, Olson, and deNeve.  (Rosen Decl., ¶ 3, Ex. 2.)

## C.   The Court Rejects The Trustee's New Attempts To Avoid Arbitration

Nearly a year later and while arbitration proceedings were well underway, the Trustee changed his position and moved for reconsideration of the arbitration order.  In his motion, the Trustee sought to raise—for the first time—an argument that the arbitration agreement was voidable on the grounds of illegality.  But as the Court noted in denying the Trustee's motion for reconsideration, the Trustee's motion was not based on new law and could have been raised previously.  (Dkt. 69 at 6 ("[I]n his motion for reconsideration, [the Trustee] concedes that he previously simply 'failed to recognize' the arguments he now raises.").)  When Defendants moved to compel arbitration, the Trustee "did not raise an illegality argument, conceded that the FAA

4

Gibson, Dunn & Crutcher LLP

1    applies to the [Arbitration] Agreement, . . . and did not dispute that its professional

2    negligence and breach of fiduciary duty claims were subject to arbitration." (*Id.* at 4.)

3    Notwithstanding his prior position, the Trustee nonetheless asserted for the first time

4    that the arbitration agreement is governed by the California Arbitration Act ("CAA"),

5    not the FAA, and that the issue of the legality of the agreement should be determined

6    by the Court. (*Id.*). The Court correctly rejected the Trustee's new position.

7       ***First***, the Court rejected the Trustee's purported justifications for changing his

8    position and seeking reconsideration. The Court held that the Trustee had failed to

9    provide a basis under Local Rule 7-18 to move for reconsideration, because, *inter alia*,

10    the Trustee "concedes that he previously simply 'failed to recognize' the arguments he

11    now raises" and "never explains why he was unable to make his same choice-of-law

12    and illegality arguments" previously. (*Id.* at 6-7.) The Court further concluded that

13    the Trustee had not "identif[ied] any intervening change in the law to justify his

14    belated arguments." (*Id.* at 7-8.) "[A]t the time O'Melveny brought its motion to

15    compel arbitration, California courts had already established both rules of law that [the

16    Trustee] now claims to be novel." (*Id.* at 8.) The Court also rejected the Trustee's

17    arguments that he could use Federal Rule of Civil Procedure 60(b) as a ground to have

18    the Court reconsider the order compelling arbitration. (*Id.* at 8-9.)

19       ***Second***, the Court rejected the Trustee's argument that the CAA, not the FAA,

20    applies. (*Id.* at 12.) After reviewing and discussing the caselaw, the Court correctly

21    concluded (again) that the FAA applies—just as all parties had agreed all along (until

22    the Trustee changed his position). (*Id.* at 12-25.) The Court found that, "[a]pplying

23    the Ninth Circuit's analysis to the present case results in the application of federal law

24    [*i.e.*, the FAA] and, as such, requires the arbitrator, not the Court, to determine the

25    validity of the Agreement." (*Id.* at 20.)[3]

26

27

28

---

[3] Despite the Court's instructions, the Trustee never raised his illegality argument with the Arbitrator.

Gibson, Dunn & Crutcher LLP

Additionally, in an improper attempt to avoid both arbitration *and* this Court, the Trustee filed a motion for turnover in the bankruptcy court, forcing Defendants to file a motion in this Court, which was granted. (Dkt. 70, 75.)  In connection with the Trustee's turnover motion, this Court found that "the Trustee appears to be attempting to circumvent the Court's prior orders compelling arbitration of the Trustee's state law claims" and that "[t]here is no indication that the turnover motion is related to any on-going proceedings in the main bankruptcy case" (Dkt. 75 at 4).

**D.    The Arbitration Proceedings**

Returning to arbitration, the parties proceeded with discovery and pretrial motion practice, culminating in a 12-day evidentiary hearing.  The discovery and pretrial motion practice was extensive, including 20 fact and expert depositions, millions of documents produced, seven motions for summary judgment (all filed by the Trustee), and six motions *in limine* (again all filed by the Trustee).  (Rosen Decl., ¶ 4.)

The Trustee also leveled several unsuccessful attacks against the Arbitrator, including seeking to disqualify him or cause him to recuse himself.  (Rosen Decl., ¶ 12.)  His first motion on July 25, 2017 argued that the Arbitrator should recuse himself because of the Arbitrator's disclosure that his son, like many law students planning to practice in Los Angeles, intended to interview for a summer associate position at O'Melveny and Gibson, Dunn & Crutcher LLP, Defendants' counsel, among other law firms.  (Rosen Decl., ¶ 13; Ex. 8 at 1 (stating that was the initial "ostensible basis" but that "[a]s further briefing was presented, the request morphed into complaints regarding the adequacy of my disclosures and the substance of my adverse rulings on motions made by the Trustee").)  The Arbitrator correctly rejected this argument, finding, *inter alia*, that the issue was moot because both law firms declined to extend offers, and regardless, that there would be no basis for recusal even if his son had been employed by one of the law firms.  (*Id.* at 2-13.)  The Arbitrator's order also noted that "[a]ny motion to the district judge seeking disqualification of the

arbitrator should be filed with the district court no later than September 11, 2017." (*Id.* at 13.)  The Trustee filed no such motion in this Court.

In his second request to disqualify the Arbitrator on September 14, 2018, the Trustee objected to the Arbitrator's ability to consider the testimony of Defendants' standard of care expert, John Spiegel, based on the Arbitrator's decades-old brief contact with Spiegel when they both worked on a part-time pro bono basis, among many other volunteers, for the Christopher Commission.  (Rosen Decl., ¶ 14; Ex. 9 at 1-4.)  The Arbitrator denied this gambit as well.  (*Id.*)  As the Arbitrator explained, "even though a 27-year-old contact with an anticipated witness imposes no disclosure obligation, let alone provides a basis for recusal, I believe that a response to the Trustee's email would be appropriate because it is based on assumptions that are at least unsupported and, in some cases, erroneous." (*Id.* at 2.)  The Arbitrator corrected the Trustee's misstatements about the Christopher Commission and concluded that "there was nothing at all about Mr. Spiegel's role in that project that could have any bearing on any issue in this case, including the evaluation of any testimony that he may have to offer." (*Id.* at 2-3.)

Moreover, the Trustee had stated he planned to file a motion in limine to exclude Mr. Spiegel's testimony and argued that "[w]ere Your Honor to admit Mr. Spiegel's testimony despite the insurmountable infirmities with it, this too would raise serious concerns." (*Id.*)  The Arbitrator properly recognized this argument for what it was—a less than subtle, and thoroughly unprofessional, suggestion that an adverse ruling by the Arbitrator must mean that he was biased.  (*Id.* at 3 ("By far the most troubling portion of the Trustee's email is the attempt to precondition the ruling on the Trustee's anticipated motion in limine regarding Mr. Spiegel's testimony.").)

In the end, the Evidentiary Hearing lasted 12 days, 12 witnesses testified live, and more than 1,200 exhibits were admitted.  (Rosen Decl., ¶ 5.)  The parties then each submitted 50-page post-trial briefs and 25-page reply briefs.  (*Id.*)  Finally, there were

Gibson, Dunn &
Crutcher LLP

7

NOTICE OF MOTION AND MOTION FOR ORDER CONFIRMING ARBITRAL AWARD PURSUANT
TO § 1 ET SEQ. OF THE FEDERAL ARBITRATION ACT BY DEFENDANTS O'MELVENY & MYERS
LLP, STEVEN J. OLSON, AND J. JORGE DENEVE

1    live closing arguments.  (*Id.*)  Simply put, the Arbitrator heard and reviewed an

2    extraordinary amount of evidence before issuing the Final Award in Defendants' favor.

3    **E.    The Final Award Rejecting All Of The Trustee's Claims**

4            The Arbitrator issued a detailed and well-reasoned Final Award spanning 130

5    pages that found against the Trustee on each of his claims, including the Trustee's

6    principal claim that a conflict of interest existed pursuant to California Rule of

7    Professional Conduct 3-310(C)(2).  Notwithstanding the Trustee's inflammatory

8    allegations, the Arbitrator recognized that the Trustee's claims were meritless and

9    unsupported by the evidence.  (*See, e.g.*, Rosen Decl., ¶ 6, Ex. 3 at 7 ("The Trustee's

10   portrayal of events would make a compelling tale if it were supported by persuasive

11   evidence, ***but it is not***." (emphasis added).)

12           The Arbitrator summarized his findings and conclusions as follows:

13   First, Respondents' representation of Aletheia, Eichler and other
     individuals in the Proctor litigation, from the initial investigation of the

14   facts and law to the final effort to settle the dispute and beyond,
     conformed to the applicable standard of care in the community.  ***There***

15   ***was no malpractice***.

16   Second, Respondents' joint representation of Aletheia, Eichler and other
     individuals was proper.  ***There was no actual or potential conflict*** in the

17   joint representation at any time during the course of the representation.

18   Third, Respondents' had ***no duty to advise*** Aletheia regarding claims it
     could pursue against Eichler.  To the extent that it had a duty to alert

19   regarding possible claims against Eichler and Peikin, Respondents
     fulfilled that obligation.  Aletheia's senior managers and members of its

20   board of directors were fully informed on those issues.

21   Fourth, the Trustee did not properly and timely raise a claim regarding the
     adequacy of O'Melveny's handling of the SEC investigation.  However,

22   even if it had been timely raised, the Trustee ***failed to meet his burden*** of
     showing that Respondents' conduct either fell below the standard of care

23   or amounted to a breach of their fiduciary duties to Aletheia.

24   Fifth, even assuming that the Trustee had shown either malpractice or a
     breach of fiduciary duty in respect to the handling of the Proctor litigation

25   or the SEC investigation, he ***failed to prove*** that any act or omission of the
     Respondents caused Aletheia to incur damages.  The record is devoid of

26   evidence as to how an attorney representing only Aletheia would have
     conducted herself differently in respect to any of these matters, and how

27   such conduct would have yielded a superior result for Aletheia.

28

Gibson, Dunn &
Crutcher LLP

8

NOTICE OF MOTION AND MOTION FOR ORDER CONFIRMING ARBITRAL AWARD PURSUANT
TO § 1 ET SEQ. OF THE FEDERAL ARBITRATION ACT BY DEFENDANTS O'MELVENY & MYERS
LLP, STEVEN J. OLSON, AND J. JORGE DENEVE

Sixth, ***neither Olson nor deNeve breached any fiduciary*** duty to Aletheia either as counsel or as officers of the company.

(*Id.* at 128-29 (emphases added).)

The Arbitrator also included a seven-page appendix addressing witness credibility. Notably, the Arbitrator found that Roger Peikin, the Trustee's only live percipient witness, "was neither credible nor persuasive." (*Id.* at 134.) For example, the Arbitrator noted that "[b]y the Trustee's own account, . . . Peikin received a 'sweetheart deal' in settlement of claims against him" brought by the Trustee, and the record demonstrated "serious inconsistencies that cannot be squared with an honest effort at providing truthful testimony." (*Id.* at 131-32.) Conversely, the Arbitrator found the live testimony of Seth Aronson, Mr. Olson, and Mr. deNeve "to be credible on the material points in dispute in this matter." (*Id.* at 137.)

## III.  ARGUMENT

### A.  Confirmation Of The Final Award Is Mandatory Under The FAA

It is "beyond dispute that the FAA was designed to promote arbitration," and the Supreme Court has "repeatedly described the [FAA] as 'embod[ying] [a] national policy favoring arbitration,' . . . and 'a liberal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345-46 (2011) (citations omitted) (alterations in original). Sections 9 to 11 of the FAA "substantiat[e] a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway." *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588 (2008).

Accordingly, a court "must grant" a motion seeking an order confirming an arbitration award unless the award is vacated, modified, or corrected. 9 U.S.C. § 9. "Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the statute." *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 994 (9th Cir. 2003); *see also*

9

Gibson, Dunn &
Crutcher LLP

1 *Latinamerican Theatrical Grp. LLC v. Swen Int'l Holding*, 2013 WL 4016279, at *1

2 (C.D. Cal. Aug. 5, 2013) (Snyder, J.) (same).  As the Ninth Circuit has recognized, the

3 FAA "afford[s] an extremely limited review authority, a limitation that is designed to

4 preserve due process but not to permit unnecessary public intrusion into private

5 arbitration procedures." *Kyocera*, 341 F.3d at 998.  Anything to the contrary would

6 undermine the goals of the FAA: "[b]road judicial review of arbitration decisions

7 could well jeopardize the very benefits of arbitration, rendering informal arbitration

8 merely a prelude to a more cumbersome and time-consuming judicial review process."

9 *Id.*; *see also Hall Street*, 552 U.S. at 588 ("Any other reading opens the door to the

10 full-bore legal and evidentiary appeals that can 'rende[r] informal arbitration merely a

11 prelude to a more cumbersome and time-consuming judicial review process,' . . . and

12 bring arbitration theory to grief in post arbitration process." (quoting *Kyocera*, 341

13 F.3d at 998) (alteration in original)).

14 **B.    The Final Award Should Be Confirmed**

15        The FAA specifies the very limited grounds on which a court may vacate,

16 modify, or correct an award.  Specifically, Section 10 provides only four grounds on

17 which an award may be vacated:

18        (1) where the award was procured by corruption, fraud, or undue means;

19        (2) where there was evident partiality or corruption in the arbitrators, or
           either of them;
20

21        (3) where the arbitrators were guilty of misconduct in refusing to
           postpone the hearing, upon sufficient cause shown, or in refusing to hear
22        evidence pertinent and material to the controversy; or of any other
           misbehavior by which the rights of any party have been prejudiced; or

23        (4) where the arbitrators exceeded their powers, or so imperfectly
           executed them that a mutual, final, and definite award upon the subject
24        matter submitted was not made.

25        None of these grounds applies here.  First, there is no evidence that the award

26 "was procured by corruption, fraud, or undue means."  Second, there is no evidence

27 that "there was evident partiality or corruption in the arbitrator[]."  Indeed, the

28

NOTICE OF MOTION AND MOTION FOR ORDER CONFIRMING ARBITRAL AWARD PURSUANT
TO § 1 ET SEQ. OF THE FEDERAL ARBITRATION ACT BY DEFENDANTS O'MELVENY & MYERS
LLP, STEVEN J. OLSON, AND J. JORGE DENEVE

Arbitrator correctly denied on several occasions the Trustee's erroneous attempts to disqualify him or obtain a recusal, and the Trustee declined to move this Court to disqualify the Arbitrator despite the opportunity to do so, no doubt because he knew such a motion would be meritless.  Third, there is no evidence of misconduct or any other misbehavior by the Arbitrator.  Finally, the Arbitrator did not exceed his powers.[4]

Similarly, Section 11 provides only three grounds on which an award may be modified or corrected:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
>
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
>
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

Again, none of these grounds applies here.  There is no evidence that the Arbitrator made "an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award," nor is there any evidence that the Arbitrator "awarded upon a matter not submitted" or that the award "is imperfect in matter of form."

## C.    The Court Should Set A Status Conference To Discuss Next Steps

Finally, Defendants respectfully suggest that the Court set a status conference to discuss next steps.  In deciding to stay the Trustee's three core claims, the Court recognized that the Trustee's "non-arbitrable claims under the Bankruptcy Code derive from his arbitrable claims under state law and could be narrowed or even dispatched by an arbitrator's analysis of the underlying allegations."  (Dkt. 30 at 12.)  The Court's conclusion was "bolstered by [the Trustee's] counsel's statement at oral argument to

---

[4]  The Trustee has indicated that he intends to argue that the Final Award should be vacated.  Defendants will respond to the Trustee's motion.

NOTICE OF MOTION AND MOTION FOR ORDER CONFIRMING ARBITRAL AWARD PURSUANT TO § 1 ET SEQ. OF THE FEDERAL ARBITRATION ACT BY DEFENDANTS O'MELVENY & MYERS LLP, STEVEN J. OLSON, AND J. JORGE DENEVE

the effect that the decision of the arbitrator might operate as *res judicata*." (*Id.* at 12 n.4.). And that is precisely what happened here: the Arbitrator issued a detailed ruling against all of the Trustee's state law claims, which also fully dispatches the purported bases for the Trustee's remaining core claims. Thus, after confirming the Final Award, the Court should set a status conference to discuss lifting the stay and setting a schedule for the parties to brief the issue of whether the Trustee's remaining claims should be dismissed. *See, e.g.*, *BDK, Inc. v. Escape Enters., Inc.*, 106 F. App'x 535, 537-38 (9th Cir. 2004) (affirming district court's orders confirming an arbitration award and granting summary judgment with respect to non-arbitrated claims based on the doctrine of collateral estoppel).

## IV.  CONCLUSION

For all of the foregoing reasons, Defendants request that the Court issue an order confirming the Final Award and such other relief as the Court may deem proper. Defendants further request that the Court set a status conference after confirming the Final Award to discuss how the Court would like to address the stayed claims in light of the factual findings by the Arbitrator.

Dated: September 9, 2019

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Kevin S. Rosen
                    Kevin S. Rosen

Attorneys for Defendants O'MELVENY & MYERS LLP, STEVEN J. OLSON, and J. JORGE DENEVE

Gibson, Dunn & Crutcher LLP