1  KEVIN S. ROSEN, SBN 133304
      krosen@gibsondunn.com
2  MATTHEW S. KAHN, SBN 261679
      mkahn@gibsondunn.com
3  SHANNON MADER, SBN 235271
      smader@gibsondunn.com
4  BLAKE SHINODA, SBN 300455
      bshinoda@gibsondunn.com
5  GIBSON, DUNN & CRUTCHER LLP
   333 South Grand Avenue
6  Los Angeles, CA 90071-3197
   Telephone:  213.229.7000
7  Facsimile:   213.229.6635

8

9  Attorneys for Defendants O'MELVENY &
   MYERS LLP, STEVEN J. OLSON, AND J.
10  JORGE DENEVE

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13  JEFFREY I. GOLDEN, Chapter 7        CASE NO. 2:14-cv-08725-CAS-AGR
    Trustee of Aletheia Research and
14  Management, Inc.,                   **DEFENDANTS' OPPOSITION TO
                                        TRUSTEE'S MOTION TO VACATE
15              Plaintiff,              FINAL ARBITRATION AWARD**

16       v.                            *[SUPPORTING DECLARATION OF
                                        KEVIN S. ROSEN FILED
17  O'MELVENY & MYERS LLP;              CONCURRENTLY HEREWITH]*
    STEVEN J. OLSON, an individual; J.
18  JORGE DENEVE, an individual; and    **Hearing:**
    DOES 1 through 12,                  Date:  October 21, 2019
19                                      Time:  10:00 a.m.
                Defendants.             Place:  Courtroom 8D
20                                      Judge:  Hon. Christina A. Snyder

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................. 1

II. BACKGROUND ................................................................................................ 2

    A.    The Trustee's Complaint ................................................................ 2

    B.    The Court Orders The Trustee's State Law Claims To Arbitration .......... 3

    C.    The Court Rejects The Trustee's New Attempts To Avoid Arbitration ............................................................................... 3

    D.    The Arbitration Proceedings ............................................................. 4

        1.    The Trustee's Premature Summary Judgment Motion ................... 4

        2.    The Trustee's Attacks On The Arbitrator ................................. 4

        3.    Further Pretrial Proceedings And Evidentiary Hearing .................. 5

    E.    The Final Award Rejecting All Of The Trustee's Claims ...................... 6

III. LEGAL STANDARD ...................................................................................... 8

IV. ARGUMENT ................................................................................................... 9

    A.    The Trustee's Motion Is An Improper Request For A Merits Review ................................................................................... 9

    B.    The Trustee Cannot Show That The Final Award Violates "Public Policy" ............................................................................. 10

        1.    The Trustee Did Not Present His "Public Policy" Argument To The Arbitrator; He Thus Waived It .................... 10

        2.    The Public Policy Exception Does Not Permit The Trustee To Re-Litigate Whether There Was A Conflict Of Interest ......... 11

        3.    There Was No Conflict In Any Event ..................................... 13

    C.    The Final Award Does Not "Manifestly Disregard" The Law ............... 19

    D.    The Final Award Is Not "Completely Irrational" ............................... 20

    E.    The Final Award Is Not The Product Of "Evident Partiality" ............... 21

        1.    The Arbitrator's Son's Potential Employment ............................ 21

        2.    The Arbitrator's Order Declining To Disqualify Gibson Dunn .................................................................... 23

DEFENDANTS' OPPOSITION TO TRUSTEE'S MOTION TO VACATE FINAL ARBITRATION AWARD

# TABLE OF CONTENTS
(continued)

Page

3.  The Arbitrator's Order Granting Defendants' Rule 56(d) Motion ............................................................................... 24

4.  The Arbitrator's Order Regarding The Trustee's Amendment Of His Interrogatory Responses ...................................... 24

5.  Serving As A Referee In An Unrelated Matter Is Not Bias .......... 25

V. CONCLUSION .......................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AAOT Foreign Econ. Ass'n v. Int'l Dev. & Trade Servs., Inc.*,
139 F.3d 980 (2d Cir. 1998) ...................................................................... 25

*American Postal Workers Union v. U.S. Postal Serv.*,
682 F.2d 1280 (9th Cir. 1982) ................................................................... 21

*Anoruo v. Tenet HealthSystem Hahnemann*,
697 F. App'x 110 (3d Cir. 2017) ............................................................... 20

*Aramark Facility Servs. v. Serv. Emps. Int'l Union*,
530 F.3d 817 (9th Cir. 2008) .......................................................... 1, 11, 12

*Benasra v. Mitchell Silberberg & Knupp, LLP*,
96 Cal. App. 4th 96 (2002) ....................................................................... 17

*BGJ Assocs., LLC v. Wilson*,
113 Cal. App. 4th 1217 (2004) ................................................................. 16

*Biller v. Toyota Motor Corp.*,
668 F.3d 655 (9th Cir. 2012) ................................................................. 1, 8

*Blecher & Collins, P.C. v. Nw. Airlines, Inc.*,
858 F. Supp. 1442 (C.D. Cal. 1994) ......................................................... 16

*Bosack v. Soward*,
586 F.3d 1096 (9th Cir. 2009) ............................................................ 20, 21

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006) .................................................................................. 10

*Buehler v. Sbardellati*,
34 Cal. App. 4th 1527 (1995) ................................................................... 14

*Carlini Enterps. v. Paul Yaffe Design, Inc.*,
2016 WL 4374940 (C.D. Cal. Aug. 12, 2016) .......................................... 24

*Centex Homes v. St. Paul Fire & Marine Ins.*,
19 Cal. App. 5th 789 (2018) ..................................................................... 14

Gibson, Dunn & Crutcher LLP

DEFENDANTS' OPPOSITION TO TRUSTEE'S MOTION TO VACATE FINAL ARBITRATION AWARD

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Coldren v. Hart, King & Coldren, Inc.*,
  239 Cal. App. 4th 237 (2015) ............................................................. 14, 15, 17, 18

*Collins v. DR Horton, Inc.*,
  505 F.3d 874 (9th Cir. 2007) .......................................................................... 2, 19, 20

*Comedy Club, Inc. v. Improv West Assocs.*,
  553 F.3d 1277 (9th Cir. 2009) .................................................................................. 20

*Conklin v. Warrington Twp.*,
  476 F. Supp. 2d 458 (M.D. Pa. 2007) ...................................................................... 22

*Coutee v. Barington Capital Grp., LP*,
  336 F.3d 1128 (9th Cir. 2003) .................................................................................. 21

*Datagate, Inc. v. Hewlett-Packard Co.*,
  941 F.2d 864 (9th Cir. 1991) .................................................................................... 22

*Fed. Deposit Ins. Corp. v. Sweeney*,
  136 F.3d 216 (1st Cir. 1998) ..................................................................................... 22

*French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  784 F.2d 902 (9th Cir. 1986) .................................................................................... 12

*Gong v. RFG Oil Co.*,
  166 Cal. App. 4th 209 (2008) .............................................................................. 15, 17

*Hall Street Assocs., LLC v. Mattel, Inc.*,
  552 U.S. 576 (2008) ......................................................................................... 1, 8, 11

*Havasu Lakeshore Invs., LLC v. Fleming*,
  217 Cal. App. 4th 770 (2013) ............................................................ 13, 14, 15, 17, 18

*Immersion Corp. v. Sony Comput. Entm't Am. LLC*,
  188 F. Supp. 3d 960 (N.D. Cal. 2016) ................................................................ 11, 12

*In re Initial Pub. Offering Sec. Litig.*,
  174 F. Supp. 2d 70 (S.D.N.Y. 2001) ........................................................................ 22

*Int'l Bhd. Of Elec. Workers v. Niagra Mohawk Power Corp.*,
  143 F.3d 704 (2d Cir. 1998) ..................................................................................... 13

Gibson, Dunn &
Crutcher LLP

iv

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Iowa Elec. Light & Power Co. v. Local Union 204 of Int'l Elec. Workers,*
834 F.2d 1424 (8th Cir. 1987) .................................................................... 12

*James Dickey, Inc. v. Alterra Am. Ins.,*
2017 WL 3013405 (C.D. Cal. July 14, 2017) ...................................... 23, 24

*In re Kirsh,*
973 F.2d 1454 (9th Cir. 1991) .................................................................... 16

*Koetting v. Van Eman,*
2017 WL 4151237 (S.D. Cal. Sept. 19, 2017) .................................... 24, 25

*Kyocera Corp. v. Prudential-Bache Trade Servs.,*
341 F.3d 987 (9th Cir. 2003) ........................................................ 1, 8, 10, 19

*Lagstein v. Certain Underwriters at Lloyd's, London,*
607 F.3d 634 (9th Cir. 2010) ........................................................ 2, 9, 10, 21

*Latinamerican Theatrical Grp. LLC v. Swen Int'l Holding,*
2013 WL 4016279 (C.D. Cal. Aug. 5, 2013) .............................................. 10

*Lydon v. Turner Constr. Co.,*
2006 WL 8443001 (C.D. Cal. Nov. 2, 2006) .............................................. 25

*In re Marriage of Friedman,*
100 Cal. App. 4th 65 (2002) ....................................................................... 17

*M'Guinness v. Johnson,*
243 Cal. App. 4th 602 (2015) ..................................................................... 17

*Merrill Lynch, et al. v. Bobker,*
808 F.2d 930 (2d Cir. 1986) ........................................................................ 20

*Metro-Goldwyn-Mayer v. Tracinda Corp.,*
36 Cal. App. 4th 1832 (1995) ..................................................................... 17

*Moxley v. Robertson,*
169 Cal. App. 2d 72 (1959) ........................................................................ 14

*New Regency Prods., Inc. v. Nippon Herald Films, Inc.,*
501 F.3d 1101 (9th Cir. 2007) ...................................................................... 2

Gibson, Dunn &
Crutcher LLP

v

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Nitro-Lift Technologies, L.L.C. v. Howard,*
   568 U.S. 17 (2012) ............................................................... 10

*Nordahl Dev. Corp., Inc. v. Salmon Smith Barney,*
   309 F. Supp. 2d 1257 (D. Or. 2004) ...................................... 21

*Plumbers & Pipe Fitters Local Union No. 442 v. Ford Constr. Co.,*
   7 F. App'x 558 (9th Cir. 2001) .............................................. 22

*Res. & Dev. Ctr. v. EP Int'l,*
   182 F. Supp. 3d 556 (E.D. Va. 2016) .................................... 11

*Sheet Metal Workers Int'l Ass'n Local Union No. 420 v. Kinney Air
   Conditioning Co.,*
   756 F.2d 742 (9th Cir. 1985) ............................................ 2, 24

*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.,*
   6 Cal. 5th 59 (2018) ............................................................. 11

*In re Sophia B.,*
   203 Cal. App. 3d 1436 (1988) .............................................. 17

*Stanley v. Richmond,*
   35 Cal. App. 4th 1070 (1995) ............................................... 16

*Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173,*
   886 F.2d 1200 (9th Cir. 1989) ......................................... 11, 12

*Steinmann v. ZTE Corp.,*
   2015 WL 13546434 (C.D. Cal. 2015), *aff'd*
   692 F. App'x 493 (9th Cir. 2017) .......................................... 11

*Stolt-Nielsen S.A. v. Animal Feeds Int'l,*
   559 U.S. 662 (2010) ............................................................... 8

*In re Sussex,*
   781 F.3d 1065 (9th Cir. 2015) .............................................. 25

*Titan Fire Corp. v. United Steel, Paper & Forestry, Rubber, Mfg.,
   Energy, Allied Indus. & Serv. Workers Int'l Union,*
   734 F.3d 708 (7th Cir. 2013) ................................................ 12

Gibson, Dunn &
Crutcher LLP

vi

DEFENDANTS' OPPOSITION TO TRUSTEE'S MOTION TO VACATE FINAL ARBITRATION AWARD

# TABLE OF AUTHORITIES
(continued)

Page(s)

*United Paperworkers Int'l Union v. Misco, Inc.*,
 484 U.S. 29 (1987)................................................................. 12

*Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP*,
 593 F. Supp. 2d 1153 (S.D. Cal. 2008) .................................. 16

*Vivitar Corp. v. Broidy*,
 143 Cal. App. 3d 878 (1983) ................................................. 16

*W.R. Grace & Co. v. Rubber Workers*,
 461 U.S. 757 (1983).............................................................. 12

*Woods v. Saturn Distribution Corp.*,
 78 F.3d 424 (9th Cir. 1996) .................................................. 21

*Yanez v. Plummer*,
 221 Cal. App. 4th 180 (2013) ............................................... 16

**Rules**

Cal. R. Prof. Conduct 3-600(E) ................................................. 13

**Other Authorities**

4 Ronald E. Mallen, Legal Malpractice (2018 ed.) ................... 17

Cal. State Bar Comm. Prof. Resp., Formal Op. No. 1998-152 .... 17

Cal. State Bar Comm. Prof. Resp., Formal Op. No. 1999-153 .... 13

Rest. (Third) of the Law Governing Lawyers § 52 ................... 17

Gibson, Dunn & Crutcher LLP

DEFENDANTS' OPPOSITION TO TRUSTEE'S MOTION TO VACATE FINAL ARBITRATION AWARD

# I.  INTRODUCTION

The Trustee's Motion to Vacate conflicts with the express terms of the Federal Arbitration Act ("FAA") and binding precedent.  He wants to re-litigate factual and legal issues that were fully addressed in an arbitration ordered by this Court.  The FAA does not allow the Trustee to vacate the well-reasoned 130-page Final Award by the Hon. Gary A. Feess (the "Arbitrator").  The Trustee's Motion is the "full-bore legal and evidentiary appeal[]" that the FAA squarely forecloses.  *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 588 (2008); *Kyocera Corp. v. Prudential-Bache Trade Servs.*, 341 F.3d 987, 998 (9th Cir. 2003) (cautioning that "[b]road judicial review of arbitration decisions" "jeopardize[s] the very benefits of arbitration").  The Court should deny the Motion for multiple, independent reasons.

***First***, the Motion improperly seeks to re-litigate the legal and factual merits after the parties devoted years to the arbitration, including extensive discovery, pretrial motions, and a 12-day evidentiary hearing.  In his Final Award, the Arbitrator carefully and exhaustively reviewed and considered the applicable case law, the witness testimony, and the complete evidentiary record and then provided detailed findings of fact and conclusions of law.  The Trustee's attempt to recycle arguments that the Arbitrator considered and rejected is precisely the type of merits review that the FAA prohibits.  *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 664 (9th Cir. 2012).

***Second***, the Trustee cannot show that the Final Award violates "public policy" due to a purported conflicted representation.  As this Court already held in rejecting the Trustee's prior motion for reconsideration, the Trustee was required to raise the issue of illegality with the Arbitrator.  Dkt. 69.  He failed to do so and thus waived it.  Besides, the Arbitrator found there was no conflict of interest, vitiating the entire premise of the Trustee's illegality argument.  The public policy exception does not permit courts to second-guess an arbitrator's factual findings as the Trustee urges.  Courts must "tak[e] the facts as found by the arbitrator."  *Aramark Facility Servs. v. Serv. Emps. Int'l Union*, 530 F.3d 817, 823 (9th Cir. 2008).  Even if a merits review

1   were permitted (and it is not), the Arbitrator correctly found there was no conflict.

2   ***Third***, the Final Award did not "manifestly disregard" the law.  The Trustee has

3   failed in his burden to show that the Arbitrator understood and correctly stated the law

4   but then disregarded it.  *Collins v. DR Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007).

5   The Arbitrator correctly stated ***and*** applied the law in concluding there was no conflict.

6   ***Fourth***, the Final Award was not "completely irrational."  The Trustee asserts

7   the Final Award was "irrational[] . . . in light of the ***facts***."  Mot. at 22 (emphasis

8   added).  Vacatur is improper where, as here, a party simply claims that the award was

9   "irrational in light of the facts."  *Lagstein v. Certain Underwriters at Lloyd's, London*,

10  607 F.3d 634, 642 (9th Cir. 2010).

11  ***Fifth***, the Trustee has not demonstrated actual bias.  The Trustee's arguments

12  misstate the record and largely consist of attacks on unfavorable rulings.  But adverse

13  rulings do not prove actual bias.  *Sheet Metal Workers Int'l Ass'n Local Union No. 420*

14  *v. Kinney Air Conditioning Co.*, 756 F.2d 742, 745-46 (9th Cir. 1985).  Nor do "long

15  past, attenuated, [and] insubstantial connections" between the Arbitrator and

16  Defendants' counsel or experts suffice to show actual bias.  *New Regency Prods., Inc.*

17  *v. Nippon Herald Films, Inc.,* 501 F.3d 1101, 1110 (9th Cir. 2007).

18  **II.  BACKGROUND**

19  **A.   The Trustee's Complaint**

20  The Trustee's action, filed on November 10, 2014, asserted two non-core state

21  law claims (professional malpractice and breach of fiduciary duty) and three core

22  bankruptcy claims.  Dkt. 1 ¶¶ 63-97.  The claims were based on Defendants' alleged

23  conflict of interest and purported malpractice when defending Aletheia Research and

24  Management, Inc. ("Aletheia") in a pending lawsuit involving Proctor Investment

25  Managers, Inc. ("Proctor").  O'Melveny took over representing Aletheia (and its CEO

26  Peter Eichler) in the *ongoing* "Proctor Litigation" in 2010.  Dkt. 84-4 (Final Award) at

27  10.  After O'Melveny obtained a number of victories and made several settlement

28  attempts, a less expensive firm took over in early 2012.  *Id.*  When Aletheia filed for

1    bankruptcy in November 2012, the Proctor Litigation was still pending.  *Id.* at 11.

2    **B.    The Court Orders The Trustee's State Law Claims To Arbitration**

3            Defendants moved to compel arbitration on May 4, 2015 pursuant to the FAA

4    based on O'Melveny's engagement agreements with Aletheia.  Dkt. 17 at 3-5.  The

5    Trustee filed a "limited opposition" that did "not dispute that" the state law claims

6    "may be subject to arbitration;" the Trustee also did not dispute that the FAA applied.

7    Dkt. 26 at 1, 11.  On June 15, 2015, this Court granted Defendants' motion pursuant to

8    the FAA, stayed the Trustee's other claims "pending the completion of arbitration,"

9    and "retain[ed] full jurisdiction over this action."  Dkt. 30 at 4, 13; Dkt. 31.

10           Shortly thereafter, the Trustee commenced the arbitration.  Dkt. 84-1 ¶ 2.  The

11   parties jointly selected Judge Feess as the Arbitrator.  *Id.*; Dkt. 84-2.  Following a

12   preliminary hearing on November 10, 2015, the Arbitrator issued Procedural Order

13   No. 1 setting forth the rules and procedures that would govern the arbitration.  Rosen

14   Decl., ¶ 2, Ex. 1.

15   **C.    The Court Rejects The Trustee's New Attempts To Avoid Arbitration**

16           In June 2016, *nearly a year* into the arbitration, the Trustee asked this Court to

17   reconsider its arbitration order, arguing that the engagement agreements, which contain

18   the arbitration agreement, were illegal.  As this Court noted in denying the Trustee's

19   motion, that argument could and should have been raised previously.  Dkt. 69 at 6.

20   The Trustee "did not raise an illegality argument, conceded that the FAA applies to the

21   [Arbitration] Agreement, . . . and did not dispute that its professional negligence and

22   breach of fiduciary duty claims were subject to arbitration."  *Id.* at 4.  The Trustee

23   nonetheless asserted that the California Arbitration Act ("CAA") applied, not the FAA,

24   and his illegality claim should be determined by the Court.  *Id.*  The Court rejected the

25   Trustee's new position, concluding (again) that the FAA applies.  *Id.* at 12-25.  The

26   Court also found that, "[a]pplying the Ninth Circuit's analysis to the present case

27   results in the application of federal law [*i.e.*, the FAA] and, as such, requires the

28   arbitrator, not the Court, to determine the validity of the Agreement."  *Id.* at 20.

**D.     The Arbitration Proceedings**

**1.     The Trustee's Premature Summary Judgment Motion**

In February 2017, the Trustee moved for summary judgment before any depositions or expert discovery.  Rosen Decl., ¶ 3.  He argued that Proctor's allegations in the Proctor Litigation alone precluded O'Melveny's joint representation of Aletheia and Eichler, thereby constituting a *per se* breach of fiduciary duty.  Dkt. No. 81-1 at 360.[1]  Defendants filed a Rule 56(d) declaration explaining why the motion was premature.  Dkt. 81-1 at 340-47; Rosen Decl., ¶ 3, Ex. 2.  In a 12-page order, the Arbitrator denied the Trustee's motion without prejudice to allow more discovery because the Trustee's allegations "involve[] fact questions and may require expert testimony."  Dkt. 81-1 at 362.  The Arbitrator noted that "no case teaches that an after-the-fact lawsuit for breach of fiduciary duty can be decided based solely on pleadings where no party made a motion to disqualify counsel," and that "proof that a conflict existed does not necessarily establish a breach of fiduciary duty."  *Id.* at 362-64.

**2.     The Trustee's Attacks On The Arbitrator**

On July 25, 2017, the Trustee launched his first attack on the Arbitrator.  Dkt. 84-1 ¶ 13.  He demanded recusal because the Arbitrator had disclosed that his son, like many law students, intended to interview for a summer associate position at O'Melveny and Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), among other law firms.  *Id.*; Dkt. 84-9.  The Arbitrator ruled, *inter alia*, that the issue was moot because both law firms declined to extend offers, and regardless, there was no basis for recusal even if his son had been hired by Gibson Dunn or O'Melveny.  Dkt. 84-9 at 2-13.  His order also noted that "[a]ny motion to the district judge seeking disqualification of the arbitrator should be filed with the district court no later than September 11, 2017."  *Id.* at 13.  The Trustee filed no such motion.

In his second gambit, on September 14, 2018, the Trustee objected to the

---

[1]  Page cites to the Trustee's exhibit filings (Dkts. 81-1 and 85-1 to 85-4) refer to the consecutive pagination added by the Trustee to the bottom of those documents.

Arbitrator hearing the testimony of Defendants' standard of care expert, John Spiegel, because they both worked on a part-time pro bono basis for the Christopher Commission decades earlier.  Dkt. 84-1 ¶ 14; Dkt. 84-10 at 1-4.  The Arbitrator disagreed, explaining that, "even though a 27-year-old contact with an anticipated witness imposes no disclosure obligation, let alone provides a basis for recusal, I believe that a response to the Trustee's email would be appropriate because it is based on assumptions that are at least unsupported and, in some cases, erroneous."  Dkt. 84-10 at 2.  The Arbitrator explained why "there was nothing at all about Mr. Spiegel's role in that project that could have any bearing on any issue in this case, including the evaluation of any testimony that he may have to offer."  *Id.* at 2-3.[2]

### 3.    Further Pretrial Proceedings And Evidentiary Hearing

The parties took 20 fact and expert depositions and produced millions of documents.  Dkt. 84-1 ¶ 4.  After discovery concluded in mid-2018, the Trustee filed five additional motions for summary judgment and six motions in limine seeking to exclude all of Defendants' experts.  Rosen Decl., ¶ 4.  The Trustee's principal motion for summary judgment claimed, again, that O'Melveny had an actual conflict of interest in the Proctor Litigation based solely on Proctor's allegations.  Dkt. 81-1 at 638-43.  The Arbitrator correctly denied the Trustee's motion, holding that "[a] careful assessment of the claims presented in this (or any) complaint requires not just a review of some of the facts included in the complaint (and what claims they *theoretically* support), but a more searching inquiry into the plaintiff's litigation objectives."  Dkt. 81-1 at 628; *see also* Rosen Decl., ¶ 4, Ex. 3 at 11-23 (Defs.' opposition brief).

The 12-day evidentiary hearing began on November 5, 2018.  Dkt. 84-4 at 5;

---

[2]  The Trustee also stated that he planned to file a motion in limine to exclude Mr. Spiegel's testimony, and argued that "[w]ere Your Honor to admit Mr. Spiegel's testimony despite the insurmountable infirmities with it, this too would raise serious concerns."  *Id.*  The Arbitrator recognized this argument for what it was—a less than subtle, and thoroughly unprofessional, suggestion that an adverse ruling by the Arbitrator must mean that he was biased.  *Id.* at 3 ("By far the most troubling portion of the Trustee's email is the attempt to precondition the ruling on the Trustee's anticipated motion in limine regarding Mr. Spiegel's testimony.").

Dkt. 84-1 ¶ 5.  There were 12 live witnesses; another 8 witnesses whose depositions were used; and more than 1,200 exhibits were admitted.  Dkt. 84-1 ¶ 5.  The Trustee offered expert testimony regarding ethics, corporate governance, and damages.  Rosen Decl., ¶ 5.  Defendants offered Lawrence Marshall (ethics), John Spiegel (standard of care), Keith Bishop (corporate governance), Leon Metzger (industry practices), and Jeffrey Kinrich (damages).  *Id.*  The parties submitted 50-page post-trial briefs and 25-page reply briefs followed by live closing arguments.  Rosen Decl., ¶ 11, Exs. 9-10.

## E.     The Final Award Rejecting All Of The Trustee's Claims

The Arbitrator issued a detailed 130-page Final Award, finding against the Trustee on each of his claims, including his claim that a conflict of interest existed. The Arbitrator summarized his findings and conclusions as follows:

> First, Respondents' representation of Aletheia, Eichler and other individuals in the Proctor litigation, from the initial investigation of the facts and law to the final effort to settle the dispute and beyond, conformed to the applicable standard of care in the community.  ***There was no malpractice***.

> Second, Respondents' joint representation of Aletheia, Eichler and other individuals was proper.  ***There was no actual or potential conflict*** in the joint representation at any time during the course of the representation.

> Third, Respondents' had ***no duty to advise*** Aletheia regarding claims it could pursue against Eichler.  To the extent that it had a duty to alert regarding possible claims against Eichler and Peikin, Respondents fulfilled that obligation.  Aletheia's senior managers and members of its board of directors were fully informed on those issues.

> Fourth, the Trustee did not properly and timely raise a claim regarding the adequacy of O'Melveny's handling of the SEC investigation.  However, even if it had been timely raised, the Trustee ***failed to meet his burden*** of showing that Respondents' conduct either fell below the standard of care or amounted to a breach of their fiduciary duties to Aletheia.

> Fifth, even assuming that the Trustee had shown either malpractice or a breach of fiduciary duty in respect to the handling of the Proctor litigation or the SEC investigation, he ***failed to prove*** that any act or omission of the Respondents caused Aletheia to incur damages.  The record is devoid of evidence as to how an attorney representing only Aletheia would have conducted herself differently in respect to any of these matters, and how such conduct would have yielded a superior result for Aletheia.

> Sixth, ***neither Olson nor deNeve breached any fiduciary*** duty to Aletheia either as counsel or as officers of the company.

Dkt. 84-4 at 128-29 (emphases added).  The Arbitrator also included a seven-page

1    appendix addressing witness credibility.  Notably, the Arbitrator found that former

2    Aletheia executive Roger Peikin, the Trustee's only live percipient witness, "was

3    neither credible nor persuasive." *Id.* at 134.  Conversely, the Arbitrator found the live

4    testimony of O'Melveny's Seth Aronson, Steve Olson and Jorge deNeve "to be

5    credible on the material points in dispute in this matter." *Id.* at 137.

6         This Motion ignores virtually all of the evidence cited in the Final Award and

7    the Arbitrator's findings based on that evidence.  Instead, the Trustee argues, yet again,

8    that O'Melveny had a *per se* conflict of interest based solely on the allegations in the

9    Proctor Litigation.  Mot. at 3.  The Trustee ignores that the Arbitrator thoroughly

10   examined the relevant facts—including lengthy testimony from both sides' ethics

11   experts—as well as applicable case law, and correctly concluded there was **no** actual

12   (or potential) conflict because the interests of Aletheia and Eichler were fully aligned

13   in defending against the Proctor Litigation.  Dkt. 84-4 at 7-8; *id.* at 58-88.

14        This Motion also fails to acknowledge the Arbitrator's findings that

15   O'Melveny's work fully satisfied the standard of care.  *Id.* at 31-58.  Incredibly, the

16   Trustee now claims that "garden variety malpractice considerations concerning the

17   duty of care . . . was not the case the Trustee presented." Mot. at 21.  On the contrary,

18   from his statement of claim to his closing argument, that was exactly the case he

19   presented.  In fact, he alleged 67 breaches of the duty of care, Dkt. 81-1 at 564-76, but

20   without any standard of care expert.  But the key point now is that the Trustee by this

21   Motion does not challenge the Arbitrator's finding that there was no negligence or

22   professional malpractice.  Dkt. 84-4 at 31-58.

23        The Trustee likewise does not dispute the Arbitrator's finding of no causation—

24   which is fatal to his Motion.  The Final Award analyzes why the Trustee failed to show

25   causation, including because "[t]he only witnesses to testify on the proper conduct of

26   O'Melveny's representation of Aletheia . . . proved . . . that no experienced litigator

27   representing only Aletheia would have given materially different advice or pursued a

28   materially different course of action than O'Melveny." *Id.* at 89-94.

### III.  LEGAL STANDARD

The FAA "afford[s] an extremely limited review authority, a limitation that is designed to preserve due process but not to permit unnecessary public intrusion into private arbitration procedures."  *Kyocera*, 341 F.3d at 998.  Sections 9-11 of the FAA thus "substantiat[e] a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway." *Hall Street*, 552 U.S. at 588.  Such limited review is necessary because "[b]road judicial review of arbitration decisions could well jeopardize the very benefits of arbitration, rendering informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process."  *Kyocera*, 341 F.3d at 998.  "Any other reading opens the door to the full-bore legal and evidentiary appeals" and "bring[s] arbitration theory to grief in post arbitration process."  *Hall Street*, 552 U.S. at 588.

Section 10 of the FAA "provides the exclusive means by which a court reviewing an arbitration award under the FAA may grant vacatur of a final arbitration award," and it "provides no authorization for a merits review."  *Biller*, 668 F.3d at 664. "Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the [FAA], which is unambiguous in this regard."  *Kyocera*, 341 F.3d at 994.  As the Ninth Circuit has summarized:

> The risk that arbitrators may construe the governing law imperfectly in the course of delivering a decision that attempts in good faith to interpret the relevant law, or may make errors with respect to the evidence on which they base their rulings, is a risk that every party to arbitration assumes, and such legal and factual errors lie far outside the category of conduct embraced by § 10(a)(4).  [*Id.* at 1003.]

A party seeking vacatur must therefore "clear a high hurdle.  It is not enough for petitioners to show that the panel committed an error—or even a serious error."  *Stolt-Nielsen S.A. v. Animal Feeds Int'l*, 559 U.S. 662, 671 (2010).  Rather, a party seeking to vacate an award as completely irrational or in manifest disregard of the law must show that the "arbitrator stray[ed] from interpretation and application of the agreement and effectively 'dispense[d] his own brand of industrial justice,'" *id.* (citation omitted),

or that it is "clear from the record that the arbitrator[] recognized the applicable law and then ignored it," *Lagstein*, 607 F.3d at 641 (citation omitted).  The Trustee has made no such showing here.

## IV.  ARGUMENT

**A.     The Trustee's Motion Is An Improper Request For A Merits Review**

Despite conceding that vacating an arbitration award is a "rare exception," Mot. at 1, the Trustee repeats legal and factual arguments that were fully addressed and decided against him by the Arbitrator after comprehensive arbitration proceedings, including a 12-day evidentiary hearing resulting in a 130-page Final Award.  As discussed above, this attempt at a do-over is forbidden by the FAA.  For example:

- The Trustee argues that there were allegedly "conflicting interests" in the Proctor Litigation because (1) the "Co-Founders [Eichler and Peikin] had an interest in retaining the ill-gotten gains," (2) Aletheia had an "interest in investigating whether its Co-Founders had looted or were looting the corporate coffers," and (3) the other directors O'Melveny represented "had fiduciary duties to the entire shareholder body to investigate the Co-Founders."  Mot. at 2-3.  But the Trustee omits that the Arbitrator considered these very arguments and concluded that the relevant parties' interests were fully aligned "in the dispute with Proctor (and in all other respects material to the present lawsuit)."  Dkt. 84-4 at 7; *see also id.* at 63 n.21, 76-80.

- The Trustee claims "Eichler used Aletheia as a litigation 'pawn' to cudgel Proctor" and "advance [his] interests."  Mot. at 18 n.9.  But the Arbitrator specifically found that "[t]he wealth of evidence regarding O'Melveny's competent representation of Aletheia and Eichler belies the Trustee's arguments that O'Melveny used Aletheia as a 'cudgel' to further Eichler's fight with Proctor."  Dkt. 84-4 at 56.

- The Trustee claims that "Olson and deNeve were tainted by the same conflict that infected the entirety of O'Melveny's representation when they took senior legal positions in-house at Aletheia after having worked on the matter while at O'Melveny."  Mot. at 4 n.4.  But the Arbitrator rejected that exact argument too,

including rejecting the specific contention that deNeve worked on the Proctor matter while at O'Melveny.  Dkt. 84-4 at 118-28.

The same applies to each of the Trustee's other arguments; none is subject to review.  Moreover, "[n]either erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the statute."  *Kyocera*, 341 F.3d at 994; *see also Latinamerican Theatrical Grp. LLC v. Swen Int'l Holding*, 2013 WL 4016279, at *1 (C.D. Cal. Aug. 5, 2013) (Snyder, J.).  The Trustee's assertion that his Motion "does not call upon this Court to conduct any fact finding or weigh the credibility of witnesses or expert testimony" and merely raises a "legal question" is both disingenuous and unavailing.  Mot. at 4.  Legal conclusions are no more subject to review here than factual findings.  *Lagstein*, 607 F.3d at 641 ("'It is not enough . . . to show that the panel committed an error—or even a serious error.'" (citation omitted) (omission in original)); *Kyocera*, 341 F.3d at 1003 ("The risk that arbitrators may construe the governing law imperfectly . . . or may make errors with respect to the evidence . . . is a risk that every party to arbitration assumes . . . .").

**B.    The Trustee Cannot Show That The Final Award Violates "Public Policy"**

**1.    The Trustee Did Not Present His "Public Policy" Argument To The Arbitrator; He Thus Waived It**

This Court already held that the Arbitrator must decide the issue of illegality—the basis for the Trustee's "public policy" argument—when it rejected the Trustee's motion for reconsideration:  "[a]pplying the Ninth Circuit's analysis to the present case results in the application of federal law and, as such, requires the arbitrator, not the Court, to determine the validity of the [arbitration] Agreement" based on purported illegality.  Dkt. 69 at 20.  The Court was correct.  *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006) ("[T]he issue of the contract's validity is considered by the arbitrator in the first instance."); *Nitro-Lift Technologies, L.L.C. v. Howard*, 568 U.S. 17, 20-21 (2012) ("[A]ttacks on the validity of the contract . . . are to be resolved 'by the arbitrator in the first instance . . . .'" (citation omitted)).

The Trustee *never* raised the issue of illegality with the Arbitrator and therefore waived it.  *See, e.g.*, *Steinmann v. ZTE Corp.*, 2015 WL 13546434, at *5 (C.D. Cal. 2015) (party may not wait to attack arbitration "'on grounds not raised before the arbitrators when the result turns out to be adverse'"), *aff'd* 692 F. App'x 493 (9th Cir. 2017); *Res. & Dev. Ctr. v. EP Int'l*, 182 F. Supp. 3d 556, 567 (E.D. Va. 2016) (claim that the underlying contract violates public policy "'is to be determined exclusively by the arbitrators'" and forfeited if not raised during arbitration).  The Court can reject the Trustee's public policy argument on this basis alone.  While the Trustee invokes *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*, 6 Cal. 5th 59 (2018), that case was decided under the CAA, *not* the FAA.  *Id.* at 72 & n.2.  Thus, *Sheppard* does not control the analysis here—as the Court previously ruled.  Dkt. 69 at 20.

### 2. The Public Policy Exception Does Not Permit The Trustee To Re-Litigate Whether There Was A Conflict Of Interest

The Trustee's public policy argument fares no better on the merits.  To the extent a public policy exception exists,[3] it is a narrow one.  *See, e.g.*, *Aramark Facility Servs. v. Serv. Emps. Int'l Union*, 530 F.3d 817, 823 (9th Cir. 2008); *Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173*, 886 F.2d 1200, 1211 (9th Cir. 1989).  It applies only where enforcing an arbitral award "would violate 1) an 'explicit, well defined and dominant public policy' that 2) 'specifically militates against the relief ordered by the arbitrator.'"  *Immersion Corp. v. Sony Comput. Entm't Am. LLC*, 188 F. Supp. 3d 960, 969 (N.D. Cal. 2016).

The Trustee cites no cases applying the public policy exception to an arbitration award finding that there was no conflict of interest; there are no such cases.  Obviously, enforcing an arbitration award finding that the attorney was *not* conflicted would not violate public policy because there is no public policy against *unconflicted* representations.  *See Stead Motors*, 886 F.2d at 1211 n.11 ("[H]owever the public policy itself is established, it is the arbitrator's *award* which must violate it if the

---

[3] There is no public policy exception under the FAA.  *Hall Street*, 552 U.S. at 583.

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' OPPOSITION TO TRUSTEE'S MOTION TO VACATE FINAL ARBITRATION AWARD

public policy exception is to apply." (emphasis in original)).  An award condoning a representation the arbitrator found *was* conflicted potentially could implicate public policy (though no case has so held), but the Arbitrator made no such finding.

The Trustee also ignores his own cases, which clearly state that a court applying the public policy exception must "tak[e] the facts as found by the arbitrator." *Aramark*, 530 F.3d at 823; *see also United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 45 (1987) ("The parties did not bargain for the facts to be found by a court, but by an arbitrator . . . . Nor does the fact that it is inquiring into a possible violation of public policy excuse a court for doing the arbitrator's task.").  The Trustee cites *W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 766 (1983) for the generic proposition that "the question of public policy is ultimately one for resolution by the courts." Mot. at 10.  But that has nothing to do with a determination of the underlying facts.  Neither *W.R. Grace* nor the Trustee's other cases supports using the public policy exception to bootstrap a merits review.[4]

This same principle would apply even if one accepts the Trustee's argument, Mot. at 4, that the existence of a conflict is a purely legal issue (it is not).  For example, in *Immersion*, cited by the Trustee, the court rejected a similar argument that the public policy exception allowed for *de novo* review of underlying legal issues because "[t]he role of an arbitrator requires reaching conclusions of law, yet confirmation by the court 'is required even in the face of . . . misinterpretations of law'" and *de novo* review "find[s] no support in Ninth Circuit precedent." *Immersion*, 188 F. Supp. 3d at 969-70 (quoting *French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 902, 906

---

[4] *Iowa Elec. Light & Power Co. v. Local Union 204 of Int'l Elec. Workers*, 834 F.2d 1424 (8th Cir. 1987) is inapposite.  The issue there was whether an arbitrator's decision to reinstate a worker violated public policy relating to strict adherence to nuclear safety rules.  *Id.* at 1427.  Notably, the Ninth Circuit declined to follow *Iowa Electric* to the extent it is inconsistent with Supreme Court precedent in *Misco*.  *See Stead*, 886 F.2d at 1214.  *Titan Fire Corp. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 734 F.3d 708 (7th Cir. 2013), likewise is irrelevant.  The issue there was whether payments ordered by the arbitrator violated the Labor Management Relations Act. *Id.* at 717.

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' OPPOSITION TO TRUSTEE'S MOTION TO VACATE FINAL ARBITRATION AWARD

(9th Cir. 1986)) (omission in original); *see also Int'l Bhd. Of Elec. Workers v. Niagra Mohawk Power Corp.*, 143 F.3d 704, 716 (2d Cir. 1998) (court "is limited to determining whether the award itself, as contrasted with the reasoning that underlies the award" violates public policy and "is not authorized to revisit . . . the reasoning").

### 3.     There Was No Conflict In Any Event

The evidence conclusively established there was no actual or potential conflict in O'Melveny's joint representation of Aletheia and Eichler in the Proctor Litigation because their interests were aligned, and because it was not reasonably foreseeable their interests would diverge.  The Trustee's arguments to the contrary turn on an incorrect and misleading recitation of the applicable law and evidence.

### a.     The Trustee Misstates The Applicable Standard

There is no *per se* prohibition for jointly representing a corporation and the corporation's directors or officers in litigation *with third parties*, as O'Melveny did in the Proctor Litigation.  "A member representing an organization **may** also represent any of its directors, officers, employees, members, shareholders, or other constituents, subject to the provisions of Rule 3-310."  Cal. R. Prof. Conduct 3-600(E) (emphasis added).[5]  California cases and bar opinions have long recognized this principle.  *See, e.g.*, *Havasu Lakeshore Invs., LLC v. Fleming*, 217 Cal. App. 4th 770, 781-82 (2013) (rejecting "proposition that an attorney may never jointly represent an entity and its management against a nonmanaging minority member"); Cal. State Bar Comm. Prof. Resp., Formal Op. No. 1999-153 (a lawyer may permissibly represent a "corporation and Shareholder A . . . in a lawsuit brought by Shareholder B, the only other shareholder of the corporation, against both the corporation and Shareholder A").

As Defendants' ethics expert, Professor Marshall of Stanford Law School, testified at the evidentiary hearing, an actual conflict exists only if the clients' interests with respect to the engagement diverge.  Dkt. 85-4 at 1981, 1984 (Tr. 2691:4-9;

---

[5]  The Rules of Professional Conduct were recently amended, but the prior rules were in effect at the time and the substantive standards applicable here have not changed.

Gibson, Dunn & Crutcher LLP

2701:12-2702:11); *see also Buehler v. Sbardellati*, 34 Cal. App. 4th 1527, 1539-40 (1995) (jury properly instructed that defendant's joint representation did not give rise to a conflict if the clients "sought to accomplish a common end result and engaged the services of the defendant to implement their joint plan"); *Moxley v. Robertson*, 169 Cal. App. 2d 72, 75 (1959) (finding no conflict where plaintiffs "sought to accomplish a common end result and engaged the services of a single attorney to implement their joint plan"). A potential conflict exists only if it is reasonably foreseeable at the time that the clients' interests with respect to the engagement will diverge at some point in the future. Dkt. 85-4 at 1966-67, 1992, 1996 (Tr. 2629:22-2630:12; 2635:22-2636:4; 2733:25-2734:6; 2750:2-8). A purely hypothetical or theoretical conflict does ***not*** suffice. *Id.* at 1966 (Tr. 2629:3-4); *Havasu*, 217 Cal. App. 4th at 779 (holding that "a mere *hypothetical* conflict is insufficient" and there must be a "'reasonable likelihood an actual conflict will arise'" (emphasis in original) (citation omitted)); *Centex Homes v. St. Paul Fire & Marine Ins.*, 19 Cal. App. 5th 789, 801 (2018) (same); *Coldren v. Hart, King & Coldren, Inc.*, 239 Cal. App. 4th 237, 247-48 (2015) (same).

      The Trustee incorrectly argues that "California courts have identified two sets of allegations that create an actual conflict of interest between the corporation and its [i]nsiders": "'[1] [w]here a shareholder has filed an action questioning [the corporation's] management or the actions of individual officers or directors . . . or [2] controversies or factional differences among shareholders as to control of the corporation.'" Mot. at 3. But neither *Havasu* nor any of the Trustee's other cases apply such a standard. As the Arbitrator noted, "[t]he Trustee's description of *Havasu Lakeshore*'s analysis and ruling is incorrect." Dkt. 84-4 at 66. Indeed, *Havasu* expressly rejected the "proposition" that "an attorney may never jointly represent an entity and its management against a nonmanaging minority member," explaining that such a "notion is contrary to rule 3-600(E), which expressly permits counsel to represent an organization and its constituents." *Havasu*, 217 Cal. App. 4th at 781-82.

      As the Arbitrator rightly recognized in his order denying the Trustee's motion

for summary judgment, virtually all of the Trustee's cases "involved either an express derivative claim, a claim for dissolution, or both," and "[n]one ordered disqualification where, as here, no relief was sought for the corporation." Dkt. 81-1 at 641-42. The Arbitrator also correctly rejected the Trustee's characterization of *Gong v. RFG Oil Co.*, 166 Cal. App. 4th 209, 215 (2008). As the Arbitrator noted, "the shareholder plaintiff [in *Gong*], unlike Proctor, sought dissolution of the corporation and expressly alleged damage to the corporation." Dkt. 84-4 at 68. The Arbitrator also correctly noted that "[m]ore recent cases, including *Coldren* and *Havasu Lakeshore,* have emphasized that *Gong* established a very narrow precedent." *Id.*

In *Coldren*, for instance, the court concluded that "*Gong* should be read for the narrow proposition that where a plaintiff's allegations are essentially derivative in nature, the failure to label them as such ***may*** still prohibit dual representation of the corporation and the defendant shareholder." *Coldren*, 239 Cal. App. 4th at 251 (emphasis added). The court continued, however, that *Gong* had no application because the plaintiff's "lawsuit [was] not a derivative suit in any sense":

> Contrary to [the plaintiff's] assertions . . . his complaint is not a derivative action. [The plaintiff] has made direct claims against [the company] and seeks $8 million in damages from [the company]. If he prevails, the damages will not go to the benefit of [the company]; quite to the contrary, [the company] will have to pay the damages to [the plaintiff].

*Id.* at 246-47. Here, too, Proctor made ***direct, not derivative*** claims against Aletheia and sought millions in damages ***from Aletheia***. Dkt. 84-4 at 72-73. If Proctor prevailed, the damages would ***not*** have gone to Aletheia; rather, Aletheia would have paid the damages to Proctor. Similarly, in *Havasu*, the court distinguished *Gong* because the case (unlike *Gong*) did "not involve a derivative suit (or its substantive equivalent) or an attempt . . . to force the dissolution of the [company]." 217 Cal. App. 4th at 781. As the Arbitrator correctly concluded, "[t]hese cases demonstrate that the question of conflict is to be determined not simply on a review of the factual allegations of the pleadings, but on the claims presented and the relief sought." Dkt. 84-4 at 69. The relief sought in a derivative action on behalf of the company is very

different than the relief sought in a direct action against the company.

### b.     The Existence Of A Conflict Is An Issue Of Fact

The Arbitrator correctly rejected the Trustee's argument that Proctor's allegations in the Proctor Litigation, standing alone, created a *per se* conflict of interest that *ipso facto* established a breach of fiduciary duty.  Dkt. 81-1 at 363-66; Dkt. 81-1 at 628-29.  The Trustee advocates that same erroneous position here.

*First*, the Arbitrator correctly held that determining whether a conflict existed "involves fact questions."  Dkt. 81-1 at 362.  California courts have long recognized that "[n]o precise formula can be stated for the determination of whether an attorney is representing conflicting interests," and that issues of conflict "largely turn on the individual facts of the relationships between the parties and the nature of the disputes involved."  *Vivitar Corp. v. Broidy*, 143 Cal. App. 3d 878, 882 (1983); *see also Blecher & Collins, P.C. v. Nw. Airlines, Inc.*, 858 F. Supp. 1442, 1454 (C.D. Cal. 1994) ("Whether or not an actual conflict of interest existed is a triable issue of fact.").

*Second*, the Arbitrator correctly concluded that "proof that a conflict exist[s] does not necessarily establish a breach of fiduciary duty."  Dkt. 81-1 at 364.  California courts repeatedly have held that a violation of the ethical rules "constitutes evidence of malpractice liability and breach of fiduciary duty ***but does not, standing alone, prove the malpractice or the fiduciary breach***."  *Yanez v. Plummer*, 221 Cal. App. 4th 180, 188 (2013) (emphasis added); *see also In re Kirsh*, 973 F.2d 1454, 1461 (9th Cir. 1991) (same); *Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP*, 593 F. Supp. 2d 1153, 1170 (S.D. Cal. 2008) (same); *BGJ Assocs., LLC v. Wilson*, 113 Cal. App. 4th 1217, 1227 (2004) (same).  While the court "may determine the scope of an attorney's fiduciary duty as a matter of law," "it is generally a question of fact whether the attorney has breached a fiduciary duty."  *Vaxiion*, 593 F. Supp. 2d at 1170.

*Third*, the Arbitrator rightly determined that "expert testimony is permitted on complex questions relating to an attorney's duties under the Rules of Professional Conduct."  Dkt. 81-1 at 363 n.1; *see, e.g.*, *Stanley v. Richmond*, 35 Cal. App. 4th 1070,

Gibson, Dunn &
Crutcher LLP

16

1087 (1995) (expert testimony "admissible to establish the duty and breach elements of a cause of action for breach of fiduciary duty"); *In re Marriage of Friedman*, 100 Cal. App. 4th 65, 73 (2002) ("expert opinion testimony was properly received to establish the duties owed by [the law firm]"); 4 Ronald E. Mallen, Legal Malpractice (2018 ed.) § 37:124 ("Multiple representation and conflicting interests can present complex issues" to be informed by "[e]xpert testimony"; "[t]he analysis of a rule's application, in general, and to the particular conduct, requires the testimony of expert witnesses."); Rest. (Third) of the Law Governing Lawyers § 52 ("[A] plaintiff alleging . . . breach of fiduciary duty ordinarily must introduce expert testimony.").

None of the Trustee's cases holds otherwise. As the Arbitrator noted, none holds that "an after-the-fact lawsuit for breach of fiduciary duty can be decided based solely on pleadings where no party made a motion to disqualify counsel," Dkt. 81-1 at 362, and none "support[s] [the Trustee's] assertion that mere allegations in a complaint are conclusive on the issue of the existence of a conflict," Dkt. 81-1 at 646. The Trustee's principal cases—*Coldren*, *M'Guinness v. Johnson*, 243 Cal. App. 4th 602 (2015), *Havasu*, *Gong*, and *Metro-Goldwyn-Mayer v. Tracinda Corp.*, 36 Cal. App. 4th 1832 (1995)—were decided in the motion-to-disqualify context, which is inapposite.[6] Further, as the Arbitrator recognized, even in the Trustee's cases the courts looked beyond the pleadings at the actual facts. In *Gong*, for instance, "the motion to disqualify arose in phase 2 of a case where the corporation and its majority shareholder were jointly represented in phase 1. Thus, the court . . . did not look to the

---

[6] Unlike after-the-fact lawsuits, disqualification motions are often decided on incomplete records at the outset of a lawsuit. *See, e.g., Benasra v. Mitchell Silberberg & Knupp, LLP*, 96 Cal. App. 4th 96, 110 (2002) ("[A] motion to disqualify is intended to prevent immediate, irreparable harm. It is decided summarily, on declarations and documentary evidence, generally without an evidentiary hearing."). Disqualification motions are also prophylactic and "often based on the *potential* that continued involvement by the attorney will cause harm to a client or former client" even though "it may nonetheless turn out that the potential never materialize[s]." *In re Sophia B.*, 203 Cal. App. 3d 1436, 1439 (1988) (emphasis in original). Accordingly, "principles [from disqualification cases] do not necessarily establish civil standards of care." Cal. State Bar Comm. Prof. Resp., Formal Op. No. 1998-152.

pleadings at all until *after* the case had been partially tried." Dkt. 81-1 at 646.  Even then, the court "looked outside the pleadings and considered the litigation strategy of the respective parties, including the strategy and approach of the majority shareholder, in bringing a counterclaim against the minority." *Id.* at 646-47; *see also id.* at 647 (distinguishing *Coldren* because the court "conducted a thorough assessment of the pending claims and relief sought"); 647-48 (distinguishing *Havasu* because the court analyzed the "factual circumstances of the litigation").

### c.    Under The Correct Standard, There Was No Conflict

*First*, the evidence showed that Aletheia and Eichler shared a common interest in defeating Proctor's claims.  Proctor was asserting ***direct*** (not derivative) claims against Aletheia, based on contractual and other rights ***unique to Proctor***, and was seeking to recover millions of dollars ***from*** Aletheia, not ***for*** Aletheia.  Proctor repeatedly disavowed having brought derivative claims.  *See* Dkt. 85-1 at 34 ¶ 49 (Proctor Compl.), 216 ¶ 58 (Proctor Cross Compl.), 310 ¶ 82 (Proctor FACC); Rosen Decl. ¶ 6, Ex. 4 at 2, 6, 12-14; Rosen Decl. ¶ 7, Ex. 5 at 3-5.  The Trustee's mischaracterizations do not change this reality—*e.g.*, the Trustee quotes the fragment "Eichler and Peikin have also breached their fiduciary duties . . ." but omits "to Proctor IM."  Dkt. 85-1 at 15 ¶ 1.  Thus, as Professor Marshall testified, there was a "perfect alignment of interest where both Aletheia and the individual defendants had a common desire to defeat the litigation – or to resolve the litigation . . . as inexpensively as possible."  Dkt. 85-4 at 1968 (Tr. 2638:11-2639:4).

*Second*, the evidence showed that there was no potential conflict because, even if Aletheia had theoretical claims against Eichler for alleged excessive compensation, Aletheia would not have asserted them, at least while the Proctor Litigation was pending given Eichler's importance to Aletheia.  Peikin, the Trustee's principal fact witness and Eichler's rival, admitted that Eichler was essential to Aletheia's success.  Dkt. 85-3 at 713, 835 (Tr. 100:5-8; 314:11-23).  Aronson, who led O'Melveny's work on the Proctor Litigation, concurred.  *Id.* at 981 (Tr. 647:2-6).  And Leon Metzger,

Defendants' industry expert, opined that a lawsuit brought by Aletheia against Eichler would have resulted in a dramatic shrinking—if not complete collapse—of Aletheia. Dkt. 85-4 at 1887, 1892 (Tr. 2478:3-6, 2495:4-9). Indeed, even the Trustee's ethics expert, Kehr, admitted that one of the risks of Aletheia suing Eichler was that all of Aletheia's clients might leave. Dkt. 85-3 at 1423 (Tr. 1626:16-24).

John Spiegel, Defendants' standard of care expert (the Trustee had no similar expert), drawing on his extensive experience litigating shareholder cases, testified it was not reasonably foreseeable that Aletheia's and Eichler's interests would diverge. No reasonable and experienced practitioner "would ever contemplate or recommend" asserting a claim against Eichler while the Proctor Litigation was pending; doing so would have a "whole series of devastating consequences" to Aletheia. *Id.* at 1672 (Tr. 2070:8-23). Professor Marshall likewise opined that the interests of Aletheia and Eichler "were aligned and stayed aligned" throughout the Proctor Litigation. Dkt. 85-4 at 1968 (Tr. 2637:17-2638:10). He explained it was not reasonably foreseeable that Aletheia and Eichler would turn on one another in the litigation because doing so would have been "devastating" to Aletheia. *Id.* (Tr. 2639:5-2640:22).[7]

## C.     The Final Award Does Not "Manifestly Disregard" The Law

"The manifest disregard exception requires 'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand and apply the law.'" *Collins*, 505 F.3d at 879. "The risk that arbitrators may construe the governing law imperfectly . . . or may make errors with respect to the evidence . . . is a risk that every party to arbitration assumes." *Kyocera*, 341 F.3d at 1003. To establish

---

[7] The Trustee's "duty to disclose" arguments are irrelevant. Mot. at 18-21. As the Arbitrator found, the Trustee is conflating the duty to disclose with the duties to advise and alert and, in any event, there was no breach of either duty. Dkt. 84-4 at 94-104. Because there was no potential conflict, O'Melveny had no duty to disclose "because there was nothing to disclose." *Id.* at 95. And because O'Melveny was engaged for the limited purpose of defending Aletheia and Eichler against Proctor's claims, there was no duty to advise Aletheia regarding potential claims against Eichler. *Id.* at 96-99. Further, as the Arbitrator found, Aletheia "was in fact alerted to the existence of the claims of excessive compensation and the potential consequences arising from those claims." *Id.* at 99.

1    manifest disregard, the Trustee must show that the arbitrator understood and correctly

2    stated the law, and then disregarded it.  *Collins*, 505 F.3d at 879.

3         As demonstrated above, the Arbitrator correctly stated ***and*** applied the law.  He

4    analyzed the Trustee's cited cases and concluded they did not support the Trustee's

5    positions.  Dkt. 84-4 at 7, 66-69, 70, 74-80.  While the Trustee (erroneously) contends

6    the Arbitrator erred by "distinguish[ing]" the Trustee's cases and "focusing exclusively

7    on the relief sought by Proctor" instead of the "factual allegations made by Proctor,"

8    none of these assertions constitutes manifest disregard.  Mot. at 17.  The Trustee

9    simply disagrees with the Arbitrator's conclusions and findings.  But mere

10   "disagreement . . . is not a proper basis on which to vacate an arbitration award."

11   *Anoruo v. Tenet HealthSystem Hahnemann*, 697 F. App'x 110, 112 (3d Cir. 2017).

12   Courts are "not at liberty to set aside an arbitration panel's award because of an

13   arguable difference regarding the meaning or applicability of laws urged upon it."

14   *Merrill Lynch, et al. v. Bobker*, 808 F.2d 930, 933-34 (2d Cir. 1986).

15   **D.   The Final Award Is Not "Completely Irrational"**

16        The Trustee fundamentally misconstrues the "completely irrational" standard.

17   Mot. at 21-23.  The standard is "extremely narrow and is satisfied only 'where [the

18   arbitrator's decision] fails to draw its essence from the agreement.'"  *Bosack v.*

19   *Soward*, 586 F.3d 1096, 1106 (9th Cir. 2009) (quoting *Comedy Club, Inc. v. Improv*

20   *West Assocs.,* 553 F.3d 1277, 1288 (9th Cir. 2009)).  An award "draws its essence from

21   the agreement if the award is derived from the agreement, viewed in light of the

22   agreement's language and context, as well as other indications of the parties'

23   intentions."  *Id.* (citations and internal quotations omitted).

24        The Trustee argues the Final Award was "irrational[] . . . in light of the ***facts***."

25   Mot. at 22 (emphasis added).  For example, the Trustee blithely claims a "mountain of

26   evidence" shows that O'Melveny recognized there was a conflict.  *Id.*  Leaving aside

27   that the Arbitrator considered the evidence the Trustee cites but reached a different

28   conclusion, "the question is whether the award is 'irrational' with respect to the

contract, not whether the panel's findings of fact are correct."[8]  *Bosack*, 586 F.3d at 1106; *see Lagstein*, 607 F.2d at 642 (reversing vacatur where party had argued award was "irrational in light of the facts").  "Whether or not the [Arbitrator]'s findings are supported by the evidence in the record is beyond the scope of [the Court's] review."  *Bosack*, 586 F.3d at 1106.  Thus, even if the Arbitrator made erroneous findings (he did not), it "does not render the decision completely irrational."  *Id.*[9]

**E.     The Final Award Is Not The Product Of "Evident Partiality"**

The Trustee's factual recitation is false, his reliance on cases from other jurisdictions is misplaced, and most importantly, he misstates the applicable test.  Where, as here, a party's "objection is not directed at any [alleged] nondisclosure of relevant information," evident partiality requires a showing of actual bias.  *Woods v. Saturn Distribution Corp.*, 78 F.3d 424, 428 (9th Cir. 1996); *see also Lagstein*, 607 F.3d at 645-46.  The test here thus is *not*, as the Trustee suggests, the facile proposition of whether "a reasonable person would conclude that arbitrator [sic] was partial to one party."  Mot. at 23.  To prove actual bias, the Trustee must adduce "specific facts" showing "improper motives," *Woods*, 78 F.3d at 427, *and* that the arbitrator was "predisposed to favor" a particular party or that the arbitrator "stood to gain from a decision in favor of" that party.  *Nordahl Dev. Corp., Inc. v. Salmon Smith Barney*, 309 F. Supp. 2d 1257, 1267 (D. Or. 2004).  The Trustee has utterly failed to so.

**1.     The Arbitrator's Son's Potential Employment**

The Trustee demanded recusal based on the Arbitrator's disclosure that his son

---

[8] For example, the Trustee claims there was a "damning" memorandum prepared by O'Melveny but ignores the Arbitrator's contrary conclusions. Dkt. 84-4 at 81 (noting that the Trustee "misleadingly asserts" that Ex. 222 shows that O'Melveny determined that Aletheia was damaged), 70 n.23.

[9] The Trustee's misapprehends *Coutee v. Barington Capital Grp., LP*, 336 F.3d 1128 (9th Cir. 2003) and *American Postal Workers Union v. U.S. Postal Serv.*, 682 F.2d 1280 (9th Cir. 1982). Neither holds that the "completely irrational" standard permits vacatur based on erroneous factual findings. Indeed, *Coutee* makes clear that "manifest disregard of the facts is *not* an independent ground for vacatur in this circuit." *Coutee*, 336 F.3d at 1133 (emphasis added).

Gibson, Dunn & Crutcher LLP

DEFENDANTS' OPPOSITION TO TRUSTEE'S MOTION TO VACATE FINAL ARBITRATION AWARD

1  had applied for a summer associate position with O'Melveny and Gibson Dunn

2  (among other firms).  Dkt. 81-1 at 447.  As Defendants explained and the Arbitrator

3  found, the Trustee's demand was moot and meritless.  Both firms declined to offer a

4  position to the Arbitrator's son, and even if they had, it still would not establish evident

5  partiality.  Dkt. 81-1 at 452-54; Dkt. 81-1 at 470-81; Rosen Decl., ¶ 8, Ex. 6 (Defs.'

6  8/4/17 surreply, which was tellingly omitted by the Trustee).

7      Notably, the Trustee does not challenge the Arbitrator's conclusion, which was

8  clearly correct.  *Plumbers & Pipe Fitters Local Union No. 442 v. Ford Constr. Co.*, 7

9  F. App'x 558, 559 (9th Cir. 2001) (arbitrator's son's job at association that had

10  represented a party did not show "evident partiality"); *Datagate, Inc. v. Hewlett-*

11  *Packard Co.*, 941 F.2d 864, 870-72 (9th Cir. 1991) (denying disqualification where

12  one of the parties "employed the judge's son for the past 15 years"); *In re Initial Pub.*

13  *Offering Sec. Litig.*, 174 F. Supp. 2d 70, 80-98 (S.D.N.Y. 2001) (collecting cases

14  showing disqualification is improper where the alleged conflict is "promptly

15  eliminate[d]" and thus moot).

16      Rather, the Trustee speculates, without any evidence whatsoever, that the

17  Arbitrator somehow ***became*** biased because he "blam[ed] the Trustee for his son's loss

18  of employment."  Mot. at 24.  The Arbitrator rejected any suggestion that Defendants

19  caused his son's "loss of employment" and stated that his son had "received job offers

20  from multiple firms and will have summer employment with a top tier law firm."  Dkt.

21  81-1 at 471.  He also confirmed that "[t]here is nothing in the respective arguments

22  presented and actions undertaken by the parties that will affect any future decisions in

23  this case."  *Id.* at 471.

24      In any event, denying a recusal motion does not show actual bias.  *See, e.g.*, *Fed.*

25  *Deposit Ins. Corp. v. Sweeney*, 136 F.3d 216, 219-20 (1st Cir. 1998) ("A party cannot

26  force disqualification by attacking the judge and then claiming that these attacks must

27  have caused the judge to be biased against [it]." (internal quotations omitted)); *Conklin*

28  *v. Warrington Twp.*, 476 F. Supp. 2d 458, 464 (M.D. Pa. 2007) (party may not

1   challenge judge's impartiality "and then claim that the judge must disqualify herself

2   because the aspersions . . . create a cloud on her partiality" (internal quotations

3   omitted)); *see also* Rosen Decl., ¶ 8, Ex. 6 at 2-3 (collecting cases).

4        Finally, the Trustee waived this argument.  The Arbitrator invited him to raise it

5   with this Court, but the Trustee expressly declined to do so.  Dkt. No. 81-1 at 481

6   ("Any motion to the district judge seeking disqualification of the arbitrator should be

7   filed with the district court no later than September 11, 2017.").  Indeed, the Trustee

8   expressly "accept[ed the Arbitrator's] assurances that there is 'nothing in the respective

9   arguments presented and actions undertaken by the parties that will affect any future

10  decisions in this case,'" and said he had decided not to raise the issue with the Court

11  "[i]n light of the Order, and the state of the law as applicable to this case."  Rosen

12  Decl., ¶ 9, Ex. 7.

13        **2.    The Arbitrator's Order Declining To Disqualify Gibson Dunn**

14       Although the Trustee does not dispute that the Arbitrator correctly denied his

15  motion to disqualify Gibson Dunn, Dkt. 81-1 at 422-45, he claims the Arbitrator

16  purportedly "evidenced advocacy" by rejecting one of the Trustee's irrelevant and

17  erroneous characterizations of an underlying ruling.  Mot. at 24.  In that motion, the

18  Trustee made the same mischaracterization that he repeats here—namely, that Judge

19  Lefkowitz's underlying order denying Peikin's motion to disqualify O'Melveny

20  purportedly identified a conflict between Aletheia and Eichler in the Proctor Litigation.

21  Dkt. 81-1 at 405.  In fact, Judge Lefkowitz made no such ruling; instead, the court

22  merely noted that Proctor's claim against the individual defendants (*i.e.*, ***not*** against

23  Aletheia) could lead to a dispute among those individual defendants, as the Arbitrator

24  explained in detail in his order.  Dkt. 81-1 at 427-30.  The Arbitrator was free to reject

25  the Trustee's mischaracterization.  Doing so is not improper "advocacy."  Mot. at 24.

26       The Arbitrator's decision was reasonable and plainly does not demonstrate

27  actual bias.  *James Dickey, Inc. v. Alterra Am. Ins.*, 2017 WL 3013405, at *5 (C.D.

28  Cal. July 14, 2017) (rejecting evident partiality claim because arbitrator's "decision to

deny the continuance was reasonable and does not amount to bias").  The Trustee's attempt to cast an unfavorable decision by the Arbitrator as evidence of bias fails as a matter of law.  *Kinney*, 756 F.2d at 745-46 ("Even repeated rulings against one party to the arbitration will not establish bias absent some evidence of improper motivation."); *Carlini Enterps. v. Paul Yaffe Design, Inc.*, 2016 WL 4374940, at *3 (C.D. Cal. Aug. 12, 2016) ("Substantive conclusions in an arbitration award are insufficient to demonstrate evident partiality.").

### 3.  The Arbitrator's Order Granting Defendants' Rule 56(d) Motion

The Arbitrator's decision was entirely reasonable.  As Defendants explained and the Arbitrator found, the Trustee's summary judgment motion raised factual issues for which discovery was proper.  Dkt. 81-1 at 362-66 (discussing relevant case law); Dkt. 81-1 at 340-47; Rosen Decl., ¶ 3, Ex. 2.  That the Trustee disagrees with the Arbitrator's ruling does not show bias.  *See, e.g.*, *Kinney*, 756 F.2d at 745-46; *James Dickey, Inc.*, 2017 WL 3013405, at *5.

### 4.  The Arbitrator's Order Regarding The Trustee's Amendment Of His Interrogatory Responses

That the Arbitrator denied the Trustee's untimely amendment to his interrogatory response is not proof of bias either.  Mot. at 25.[10]  Upon Defendants' motion, Dkt. 81-1 at 501-56, the Arbitrator correctly rejected the amendment as untimely because the Trustee was belatedly seeking to assert a new legal theory when he had notice of the theory much earlier.  Dkt. 81-1 at 587, 590-93.  In any event, once again, an unfavorable decision does not show actual bias.  *See, e.g.*, *Kinney*, 756 F.2d at 745-46; *Carlini*, 2016 WL 4374940, at *3.  The Trustee also never raised this objection during the arbitration and thus waived it.  *Koetting v. Van Eman*, 2017 WL 4151237, at *3 (S.D. Cal. Sept. 19, 2017) ("[A] party may not sit idle through an

---

[10]  The Trustee misstates the Aronson discovery dispute, which concerned whether the Trustee should have more than ten hours to depose Aronson in individual and person-most-knowledgeable capacities.  Dkt. 81-1 at 497-98.  The Trustee moved for additional time, and the Arbitrator, ***over Defendants' objection***, granted the Trustee four more hours.  *Id.* at 498-99.

1  arbitration procedure and then . . . . attack that procedure on grounds not raised before

2  the arbitrators when the result turns out to be adverse. . . . This rule . . . extends to

3  questions such as arbitrator bias."); *Lydon v. Turner Constr. Co.*, 2006 WL 8443001, at

4  *3 n.3 (C.D. Cal. Nov. 2, 2006) ("Plaintiff's . . . failure to object timely to the alleged

5  'bias' waives the objection . . . .").

6       **5.    Serving As A Referee In An Unrelated Matter Is Not Bias**

7       In a single sentence, the Trustee suggests that the Arbitrator was biased because

8  "Gibson [Dunn] . . . hired the Arbitrator on a new $20 million litigation matter . . .

9  while the Arbitrator was deliberating."  Mot. at 25.  Gibson Dunn did not "hire" the

10 Arbitrator in another matter.  Rather, as the Arbitrator's disclosure makes clear, the

11 parties in an unrelated matter (*Corday Prods., Inc. v. Sony Pictures Television, Inc.*)

12 jointly selected the Arbitrator as a referee.  Dkt. 81-1 at 650; Rosen Decl., ¶ 10, Ex. 8.

13 Moreover, the Gibson Dunn attorneys in *Corday* "have no involvement in or

14 connection to" this action.  Dkt. 81-1 at 650.  "[A]ttenuated[] or insubstantial

15 connections" like this are insufficient to show a "reasonable impression of partiality,"

16 let alone actual bias.  *In re Sussex*, 781 F.3d 1065, 1074 (9th Cir. 2015) (citation

17 omitted).  Finally, the Trustee has waived any objection; the Arbitrator disclosed this

18 matter on May 1, 2019, Dkt. 81-1 at 650, but the Trustee did not object until ***after*** the

19 Arbitrator issued the Final Award.  *Koetting*, 2017 WL 4151237, at *3; *AAOT Foreign

20 *Econ. Ass'n v. Int'l Dev. & Trade Servs., Inc.*, 139 F.3d 980, 982 (2d Cir. 1998).

21                          **V.  CONCLUSION**

22       For all of the foregoing reasons, Defendants request that the Court deny the

23 Trustee's Motion to Vacate and grant Defendants' Motion to Confirm.

24 Dated:  September 27, 2019            GIBSON, DUNN & CRUTCHER LLP

25

26                                      By:  /s/ Kevin S. Rosen
                                             Kevin S. Rosen

27                                      Attorneys for Defendants O'MELVENY &
                                        MYERS LLP, STEVEN J. OLSON, and
28                                      J. JORGE DENEVE