1  KEVIN S. ROSEN, SBN 133304
   krosen@gibsondunn.com
2  MATTHEW S. KAHN, SBN 261679
   mkahn@gibsondunn.com
3  SHANNON MADER, SBN 235271
   smader@gibsondunn.com
4  BLAKE SHINODA, SBN 300455
   bshinoda@gibsondunn.com
5  GIBSON, DUNN & CRUTCHER LLP
   333 South Grand Avenue
6  Los Angeles, CA  90071-3197
   Telephone:  213.229.7000
7  Facsimile:    213.229.6635

8

9  Attorneys for Defendants O'MELVENY &
   MYERS LLP, STEVEN J. OLSON, AND J.
10  JORGE DENEVE

11  UNITED STATES DISTRICT COURT

12  CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 13  JEFFREY I. GOLDEN, Chapter 7 Trustee of Aletheia Research and Management, Inc., | CASE NO. 2:14-cv-08725-CAS-AGR |
| 14 | **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ORDER CONFIRMING ARBITRAL AWARD PURSUANT TO § 1 ET SEQ. OF THE FEDERAL ARBITRATION ACT** |
| 15  Plaintiff, | |
| 16  v. | *[SUPPORTING SUPPLEMENTAL DECLARATION OF KEVIN S. ROSEN FILED CONCURRENTLY HEREWITH]* |
| 17  O'MELVENY & MYERS LLP; STEVEN J. OLSON, an individual; J. JORGE DENEVE, an individual; and DOES 1 through 12, | |
| 18 | |
| 19 | **Hearing:** |
| 20  Defendants. | Date:  October 21, 2019 Time:  10:00 a.m. |
| 21 | Place:  Courtroom 8D Judge:  Hon. Christina A. Snyder |

22

23

24

25

26

27

28

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ORDER CONFIRMING ARBITRAL AWARD
PURSUANT TO § 1 ET SEQ. OF THE FEDERAL ARBITRATION ACT

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................. 1

II.    THE TRUSTEE'S OPPOSITION PLAINLY AND IMPROPERLY
       SEEKS MERITS REVIEW .................................................................. 2

III.   THERE IS NO BASIS UNDER SECTION 10 OF THE FAA TO
       VACATE THE FINAL AWARD .......................................................... 8

       A.    The Final Award Does Not Violate "Public Policy" ................. 8

             1.    Illegality Was An Issue For The Arbitrator To Decide ................. 8

             2.    The Public Policy Exception Does Not Apply And Does Not
                   Permit Merits Review Regardless ....................................... 9

             3.    There Was No Conflict In Any Event ................................. 11

                   a.    Once Again, The Trustee Misstates The Applicable
                         Standard ........................................................... 11

                   b.    Professor Marshall Articulated The Correct Standard ........ 13

                   c.    Under The Correct Standard, There Was No Conflict ........ 13

                   d.    The Barnes/Lee Demurrer Is Irrelevant.............................. 15

                   e.    Professor Marshall's Opinions Were Admissible And
                         Directly Relevant To The Trustee's Claims........................ 16

                   f.    The Trustee Failed To Prove Causation .............................. 18

                   g.    The Trustee's Arguments Regarding Malpractice And
                         Disgorgement Are Irrelevant And Wrong........................... 20

       B.    The Final Award Does Not "Manifestly Disregard" The Law ............... 21

       C.    The Final Award Is Not "Completely Irrational" .................................. 23

       D.    The Final Award Is Not The Product Of "Evident Partiality"................ 23

IV.    CONCLUSION ................................................................................... 24

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ORDER CONFIRMING ARBITRAL AWARD
PURSUANT TO § 1 ET SEQ. OF THE FEDERAL ARBITRATION ACT

# TABLE OF AUTHORITIES

<u>**Page**</u>

**Cases**

*Anoruo v. Tenet HealthSystem Hahnemann*,
  697 F. App'x 110 (3d Cir. 2017) ................................................................. 23

*Aramark Facility Servs. v. Serv. Emps. Int'l Union*,
  530 F.3d 817 (9th Cir. 2008) ......................................................... 2, 9, 10

*Arbitration between Lemoine Skinner III v. Donaldson, Lufkin & Jenrette
  Sec. Corp.*,
  2003 WL 23174478 (N.D. Cal. Dec. 29, 2003) ........................................ 17

*In re AWTR Liquidation Inc.*,
  548 B.R. 300 (Bankr. C.D. Cal. 2016) ...................................................... 12

*Bamberger Rosenheim, Ltd. v. OA Development, Inc.*,
  2016 WL 9776588 (N.D. Ga. Aug. 24, 2016) ........................................... 17

*Biller v. Toyota Motor Corp.*,
  668 F.3d 655 (9th Cir. 2012) .................................................................. 1, 3

*Blecher & Collins, PC v. Nw. Airlines, Inc.*,
  858 F. Supp. 1442 (C.D. Cal. 1994) .......................................................... 18

*Bosack v. Soward*,
  586 F.3d 1096 (9th Cir. 2009) ............................................................. 2, 23

*Buckeye Check Cashing, Inc. v. Cardegna*,
  546 U.S. 440 (2006).................................................................................... 8

*Carlini Enterps. v. Paul Yaffe Design, Inc.*,
  2016 WL 4374940 (C.D. Cal. Aug. 12, 2016) ......................................... 24

*Carter v. Health Net of Cal., Inc.*,
  374 F.3d 830 (9th Cir. 2004) .................................................................... 22

*Centex Homes v. St. Paul Fire & Marine Ins. Co.*,
  19 Cal. App. 5th 789 (2018) ..................................................................... 13

*Coldren v. Hart, King & Coldren, Inc.*,
  239 Cal. App. 4th 237 (2015) ............................................................ 12, 13

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ORDER CONFIRMING ARBITRAL AWARD
PURSUANT TO § 1 ET SEQ. OF THE FEDERAL ARBITRATION ACT

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Collins v. DR Horton, Inc.*,
505 F.3d 874 (9th Cir. 2007) ............................................................. 2, 22

*Comedy Club, Inc. v. Improv West Assocs.*,
553 F.3d 1277 (9th Cir. 2009) ........................................................... 2, 24

*French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
784 F.2d 902 (9th Cir. 1986) ................................................................. 11

*Gong v. RFG Oil, Inc.*,
166 Cal. App. 4th 209 (2008) ................................................................ 12

*Hall Street Assocs., LLC v. Mattel, Inc.*,
552 U.S. 576 (2008) ................................................................................. 1

*Havasu Lakeshore Investments, LLC v. Fleming*,
217 Cal. App. 4th 770 (2013) .......................................................... 12, 13

*Immersion Corp. v. Sony Comput. Entm't Am. LLC*,
188 F. Supp. 3d 960 (N.D. Cal. 2016) ............................................. 10, 11

*Int'l Bhd. Of Elec. Workers v. Niagra Mohawk Power Corp.*,
143 F.3d 704 (2d Cir. 1998) .................................................................. 11

*Iowa Elec. Light & Power Co. v. Local Union 204 of Int'l Elec. Workers*,
834 F.2d 1424 (8th Cir. 1987) ............................................................... 10

*James Dickey, Inc. v. Alterra Am. Ins.*,
2017 WL 3013405 (C.D. Cal. July 14, 2017) ......................................... 24

*Knutson v. Foster*,
25 Cal. App. 5th 1075 (2018) ................................................................ 22

*Kyocera Corp. v. Prudential-Bache Trade Servs.*,
341 F.3d 987 (9th Cir. 2003) ..................................................... 1, 3, 7, 22

*Lagstein v. Certain Underwriters at Lloyd's, London*,
607 F.3d 634 (9th Cir. 2010) ................................................................. 21

*Latinamerican Theatrical Grp. LLC v. Swen Int'l Holding*,
2013 WL 4016279 (C.D. Cal. Aug. 5, 2013) ........................................... 7

iii

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ORDER CONFIRMING ARBITRAL AWARD
PURSUANT TO § 1 ET SEQ. OF THE FEDERAL ARBITRATION ACT

**TABLE OF AUTHORITIES**
(continued)

Page

*Lazy Acres Market, Inc. v. Tseng*,
 152 Cal. App. 4th 1431 (2007) ............................................................... 20

*Loube v. Loube*,
 64 Cal. App. 4th 421 (1998) ................................................................. 16

*Loving & Evans v. Blick*,
 33 Cal. 2d 603 (1949) ........................................................................... 9

*In re Marriage of Friedman*,
 100 Cal. App. 4th 65 (2002) ................................................................. 17

*Merrill Lynch, et al. v. Bobker*,
 808 F.2d 930 (2d Cir. 1986) ................................................................. 23

*Mitchell v. Gonzales*,
 54 Cal. 3d 1041 (1991) ......................................................................... 22

*Montes v. Shearson Lehman Bros., Inc.*,
 128 F.3d 1456 (11th Cir. 1997) ........................................................... 23

*Nitro-Lift Technologies, L.L.C. v. Howard*,
 568 U.S. 17 (2012) ................................................................................. 8

*Persson v. Smart Inventions, Inc.*,
 125 Cal. App. 4th 1141 (2005) ............................................................... 5

*Res. & Dev. Ctr. v. EP Int'l*,
 182 F. Supp. 3d 556 (E.D. Va. 2016) ..................................................... 9

*Rutherford v. Owens-Illinois, Inc.*,
 16 Cal. 4th 953 (1997) .......................................................................... 22

*Sammis v. Stafford*,
 48 Cal. App. 4th 1935 (1996) ................................................................. 3

*San Diego Gas & Elec. Co. v. San Diego Reg'l Water Quality Control
 Bd.*,
 36 Cal. App. 5th 427 (2019) ................................................................. 22

*Shearson/American Express Inc. v. McMahon*,
 482 U.S. 220 (1987) ............................................................................. 23

iv

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Sheet Metal Workers Int'l Ass'n Local Union No. 420 v. Kinney Air*
    *Conditioning Co.,*
    756 F.2d 742 (9th Cir. 1985) .............................................................................. 2, 24

*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.,*
    6 Cal. 5th 59 (2018) ............................................................................................ 9, 21

*Slovensky v. Friedman,*
    142 Cal. App. 4th 1518 (2006) ................................................................................. 18

*Stanley v. Richmond,*
    35 Cal. App. 4th 1070 (1995) ............................................................................. 16, 18

*State Compensation Ins Fund v. Drobot,*
    192 F. Supp. 3d 1080 (C.D. Cal. 2016) ................................................................... 18

*Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173,*
    886 F.2d 1200 (9th Cir. 1989) ............................................................................. 9, 10

*Steinmann v. ZTE Corp.,*
    2015 WL 13546434 (C.D. Cal. Dec. 11, 2015), *aff'd* 692 F. App'x 493
    (9th Cir. 2017) ............................................................................................................ 9

*Titan Fire Corp. v. United Steel, Paper & Forestry, Rubber, Mfg.,*
    *Energy, Allied Indus. & Serv. Workers Int'l Union,*
    734 F.3d 708 (7th Cir. 2013) .................................................................................... 10

*U.S. Life Ins. Co. v. Super. Nat'l Ins. Co.,*
    591 F.3d 1167 (9th Cir. 2010) .................................................................................. 17

*United Paperworkers Int'l Union v. Misco, Inc.,*
    484 U.S. 29 (1987) .................................................................................................... 10

*Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP,*
    593 F. Supp. 2d 1153 (S.D. Cal. 2008) ................................................................... 18

*Viner v. Sweet,*
    30 Cal. 4th 1232 (2003) ........................................................................................... 18

*W.R. Grace & Co. v. Rubber Workers,*
    461 U.S. 757 (1983) .................................................................................................. 10

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ORDER CONFIRMING ARBITRAL AWARD
PURSUANT TO § 1 ET SEQ. OF THE FEDERAL ARBITRATION ACT

1

**TABLE OF AUTHORITIES**
**(continued)**

2

**Page**

3

*Wilko v. Swan,*

4

346 U.S. 427 (1953)................................................................23

5

*Y.G. v. Riverside Unified School Dist.,*

6

774 F. Supp. 2d 1055 (2011) ......................................................9

7

*Yukos Capital S.A.R.L. v. Samaraneftegaz,*

8

592 F. App'x 8 (2d Cir. 2014) ....................................................9

9

**Statutes**

10

9 U.S.C. § 9................................................................................2

11

9 U.S.C. § 10..............................................................................3

12

**Other Authorities**

13

4 Ronald E. Mallen, Legal Malpractice (2018 ed.) § 37:124 ........................17

14

Rest. (Third) of the Law Governing Lawyers § 52 ........................................17

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ORDER CONFIRMING ARBITRAL AWARD
PURSUANT TO § 1 ET SEQ. OF THE FEDERAL ARBITRATION ACT

## I.    INTRODUCTION

The Trustee's Opposition confirms that he wants to re-litigate factual and legal issues that were fully addressed in the arbitration ordered by this Court.  The Trustee merely repeats arguments that were considered and rejected by Judge Feess; selectively cites and mischaracterizes the record; and, perhaps most importantly, ignores the applicable standard of review under the FAA.  There is no basis under the FAA to vacate the Arbitrator's detailed and well-reasoned 130-page Final Award, and the Trustee's Opposition is unquestionably the "full-bore legal and evidentiary appeal[]" that the FAA squarely forecloses.  *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 588 (2008); *Kyocera Corp. v. Prudential-Bache Trade Servs.*, 341 F.3d 987, 998 (9th Cir. 2003) (cautioning that "[b]road judicial review of arbitration decisions" "jeopardize[s] the very benefits of arbitration").  Confirmation of the Final Award is mandatory here (*see* Dkt. 84 at 9-11), and Defendants respectfully request that this Court do just that (as well as deny the Trustee's Motion to Vacate).

***First***, the Opposition improperly seeks to re-litigate the legal and factual merits after the parties devoted years to the arbitration, including extensive discovery, numerous pretrial motions, and a 12-day evidentiary hearing.  The Opposition doubles down on the Trustee's baseless Motion to Vacate by wholly disregarding the Arbitrator's factual findings.  Indeed, the Opposition is largely premised on a litany of "facts" that the Trustee falsely characterizes as "undisputed," but which the Arbitrator expressly considered and soundly rejected.  In fact, the Trustee fails to cite—or even acknowledge—the Arbitrator's contrary findings.  This is precisely the type of merits review that the FAA prohibits.  *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 664 (9th Cir. 2012).

***Second***, the Final Award's finding that there was no conflict of interest does not violate "public policy," and the Trustee certainly has not proven otherwise.  As this Court held in rejecting the Trustee's prior motion for reconsideration in 2016, the Trustee was required to raise the issue of illegality with the Arbitrator.  Dkt. 69.  He

1

failed to do so and thus waived this argument.  In any event, the Arbitrator's factual finding that there was no conflict of interest vitiates the entire premise of the Trustee's illegality argument.  The public policy exception does not permit courts to second-guess an arbitrator's factual findings as the Trustee urges.  Rather, the Court must "tak[e] the facts as found by the arbitrator."  *Aramark Facility Servs. v. Serv. Emps. Int'l Union*, 530 F.3d 817, 823 (9th Cir. 2008).  Finally, even if a merits review were permitted (and it is not), the Arbitrator correctly found there was no conflict.

**Third**, the Final Award did not "manifestly disregard" the law.  The Trustee has failed to show that the Arbitrator understood and correctly stated the law but then disregarded it.  *Collins v. DR Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007).  In fact, the Arbitrator correctly stated **and** applied the law in concluding that there was no conflict and that the Trustee failed to prove causation.

**Fourth**, the Final Award was not "completely irrational."  This exception is "extremely narrow and is satisfied only 'where [the arbitrator's decision] fails to draw its essence from the [arbitration] agreement.'"  *Bosack v. Soward*, 586 F.3d 1096, 1106 (9th Cir. 2009) (quoting *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009)) (first alteration in original).  The Trustee does not even attempt to meet this standard.

**Fifth**, the Trustee has not demonstrated actual bias.  The Trustee's argument consists entirely of an attack on one unfavorable ruling.  But as a matter of law, adverse rulings do not prove actual bias.  *Sheet Metal Workers Int'l Ass'n Local Union No. 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 745-46 (9th Cir. 1985).

## II.   THE TRUSTEE'S OPPOSITION PLAINLY AND IMPROPERLY SEEKS MERITS REVIEW

As explained in Defendants' Motion to Confirm (Dkt. 84 at 9-10) and Opposition to the Trustee's Motion to Vacate (Dkt. 94 at 8-9), the Court "must grant" the Motion to Confirm the Final Award because none of the narrow grounds for vacating an arbitral award applies.  9 U.S.C. § 9.  The FAA "afford[s] an extremely

Gibson, Dunn & Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ORDER CONFIRMING ARBITRAL AWARD PURSUANT TO § 1 ET SEQ. OF THE FEDERAL ARBITRATION ACT

limited review authority, a limitation that is designed to preserve due process but not to permit unnecessary public intrusion into private arbitration procedures." *Kyocera*, 341 F.3d at 998.  Section 10 of the FAA "provides the exclusive means by which a court reviewing an arbitration award under the FAA may grant vacatur of a final arbitration award," and it "provides **no** authorization for a merits review." *Biller*, 668 F.3d at 664 (emphasis added).  Indeed, "[n]either erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the [FAA]." *Kyocera*, 341 F.3d at 994.

Despite these well-established standards, the Trustee's Opposition is replete with arguments about disputed issues of fact and law that were fully addressed and decided against him by the Arbitrator after comprehensive arbitration proceedings.  In effect, the Trustee is asking the Court to re-review all of the documentary evidence, re-weigh reams of percipient and expert witness testimony, reconsider the Arbitrator's evidentiary rulings (including on motions *in limine* and myriad rulings on objections at the evidentiary hearing), and draw its own inferences and conclusions contrary to those that the Arbitrator reached after years of briefings, more than 1,200 admitted exhibits, a 12-day evidentiary hearing, and 150 pages of post-trial briefing.  That is entirely impermissible under the FAA (and impractical).  For example:

- The Trustee claims that "Eichler had no winning defense under California Corporations Code Section 310(a)(3)" against a hypothetical claim brought by Aletheia because his compensation "was never ratified or approved by Aletheia's Board or shareholders—without the vote of interested directors."  Dkt. 91 at 15. But the Arbitrator considered this argument and reached a contrary conclusion: "Eichler and Peikin could have mounted a strong defense."  Dkt. 84-4 at 80-84. The Arbitrator weighed expert testimony, the evidentiary record, and applicable case law in reaching that conclusion.  *Id.*; *see also id.* at 83 (noting that *Sammis v. Stafford*, 48 Cal. App. 4th 1935 (1996), which is cited by the Trustee, "is not

Gibson, Dunn & Crutcher LLP

helpful [to the Trustee] because it does not address the situation where there has been no board vote, with or without interested directors").[1]

- The Trustee argues that Aletheia "had a direct economic interest in Proctor's claims" because, if Proctor prevailed, the money "would flow first to Aletheia and only then to minority shareholders . . . rather than directly to Proctor." Dkt. 91 at 15.  But the Arbitrator rejected this argument too.  Dkt. 84-4 at 72-76, 123-24.  As the Arbitrator correctly noted, Proctor was seeking recovery *for Proctor*, not for Aletheia.  Dkt. 84-4 at 72-76.  Indeed, Proctor repeatedly disavowed that it was asserting derivative claims on behalf of the company.  *See, e.g.*, Dkt. 85-1[2] at 34 ¶ 49, 94 ¶ 3, 216 ¶ 58, 310 ¶ 82; Dkt. 94-5 at 2, 6, 12-14; Dkt. 94-6 at 3-5.[3]

- The Trustee claims there was no support for the supposed "partial rescission" remedy sought by Aletheia in the Proctor Litigation.  Dkt. 91 at 15.  But the Arbitrator rejected this argument as well:  "[n]either [Proctor's counsel] at the time, nor the Trustee . . . , cited a decision that would preclude rescission of one contract because it was part of a transaction involving other contracts."  Dkt. 84-4 at 50.

---

[1] It absolutely was *not* "undisputed" that the board never approved Eichler's compensation.  Dkt. 91 at 18.  As the Arbitrator noted, "that assumption might have proven inaccurate if the case had been litigated."  Dkt. 84-4 at 84 n.28 (referencing Peikin's testimony that the board passed a catchall board resolution every year approving what had transpired that year).  Besides, under California law board approval is not required for Eichler to have had a defense to a hypothetical claim brought by Aletheia, as the Arbitrator correctly determined.  Dkt. 84-4 at 83-84.

[2] Page cites to the Trustee's exhibit filings (Dkts. 81-1, 85-1 to 85-4, 92, and 93 to 93-1) refer to the consecutive pagination added by the Trustee to the bottom of those documents.

[3] The Trustee only cites an internal O'Melveny email.  Dkt. 85-2 at 450.  The Arbitrator rejected the Trustee's interpretation of the email and noted that, if the author meant that Aletheia would recover any judgment in the Proctor litigation, the author would be incorrect because Proctor sought recovery for itself.  Dkt. 84-4 at 123-24.  Additionally, the Arbitrator considered and rejected the Trustee's mischaracterization of Exhibit 222.  Dkt. 84-4 at 81 (noting that the Trustee "misleadingly asserts" that Exhibit 222 shows that O'Melveny determined that Aletheia was damaged), 70 n.23.

4

Moreover, even assuming that Aletheia sought "partial rescission,"[4] the Arbitrator correctly noted that there is authority supporting the requested rescission remedy. Dkt. 84-4 at 51; *see also Persson v. Smart Inventions, Inc.*, 125 Cal. App. 4th 1141, 1153-54 (2005).

- Relatedly, it was ***not*** "[u]ndisputed" that "O'Melveny still had not found viable legal authority" for a "partial rescission" remedy 16 months after filing the amended complaint in the Proctor Litigation. Dkt. 91 at 19 (citing Ex. 225). The Arbitrator addressed the lone document cited by the Trustee for this argument, finding that it actually discussed further research for the distinct concept of whether Aletheia was excused from performing under the Side Letter Agreement based on Proctor's failure to perform under the Selling Agreement. Dkt. 84-4 at 51 n.17. This was not negligence by O'Melveny, as the Trustee contends, but rather, as the Arbitrator found, this document "exemplifies" the process of how preparing claims for trial is an "iterative process involving an ongoing review of claims and defenses as the factual record is developed through discovery," and O'Melveny's continuing research for the ***"excuse" defense*** says nothing about the appropriateness of the ***rescission remedy***. *Id.*; *see also id.* at 49-51 (Arbitrator's analysis concluding that the rescission remedy was viable).

- It is ***not*** "[u]ndisputed that O'Melveny's primary associate on the Proctor Litigation expressed the determination that Eichler would lose." Dkt. 91 at 19 (citing Ex. 212).[5] The Arbitrator considered and rejected this argument—explaining that the email "presents a simplistic view of a complex litigation landscape." Dkt. 84-4 at 46 n.15. The Arbitrator called the email a "superficial comment . . . [that] overlooks that Proctor became a shareholder only by aggressively touting its

---

[4] As Defendants explained, "partial rescission" is a misnomer because the rescission remedy sought to rescind an entire contract (the Side Letter Agreement), not part of a contract. Dkt. 94-10 at 27.

[5] The Trustee mischaracterizes the exhibit: it nowhere expresses the opinion that "Eichler would lose." Dkt. 85-2 at 450-55.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ORDER CONFIRMING ARBITRAL AWARD PURSUANT TO § 1 ET SEQ. OF THE FEDERAL ARBITRATION ACT

1  prowess as a top tier marketing organization that would have materially increased

2  Aletheia's billions of dollars in sales," which supported Aletheia's fraud claim

3  against Proctor.  *Id.*

4  • The Trustee claims that "Aletheia would likely lose on the question of whether

5  Bruce Lee was an 'independent' director" and that it is "[u]ndisputed that deNeve

6  signed off on an analysis that concluded that Proctor would prevail."  Dkt. 91 at 15,

7  19 (citing Ex. 251).  Here too, the Arbitrator considered and rejected these

8  arguments, including the Trustee's mischaracterization of Exhibit 251.  Dkt. 84-4 at

9  124 n.42.[6]

10 • The Trustee claims that O'Melveny somehow acted improperly with respect to

11 Lee's appointment and Peikin's termination.  Dkt. 91 at 15-16.  But the Trustee

12 cites no evidence, mischaracterizes the record on this point, and fails to note that

13 the Arbitrator considered and rejected these claims.  Dkt. 84-4 at 111, 113, 117-18.

14 • It is *not* "[u]ndisputed" that Peter Selvin of Loeb & Loeb LLP "refused to file

15 Eichler's desired complaint . . . because he simply did not believe Eichler's claim of

16 fraud to be credible."  Dkt. 91 at 19.  In fact, the Arbitrator found that Selvin "was

17 ready willing and able to draft and file a detailed complaint containing fraud and

18 other tort claims before Proctor beat him to the punch," and that "Selvin's

19 testimony provides no credible evidence to support an argument that O'Melveny

20 failed to conduct a proper investigation into the relevant facts and law underpinning

21 the amended complaint."  Dkt. 84-4 at 35-37.[7]

---

[6]  Exhibit 251 is a draft letter from Aletheia's then-counsel Freedman + Taitelman LLP seeking additional insurance funds to attempt to settle the Proctor Litigation. Dkt. 85-2 at 529.  It does not say "Proctor would prevail"; it only says that there "is a significant likelihood of an adverse verdict."  Dkt. 85-2 at 540.  As the Arbitrator explained, "it would not be unusual for counsel, in dealing with insurers, to emphasize the risks associated with further litigation when seeking to motivate them to fund the costs of settlement."  Dkt. 84-4 at 124 n.42.

[7]  The Trustee says that "Eichler was aware" of the two separates bases for the fraud claim at the time Aletheia entered into the relevant contracts, falsely implying that the claim was meritless.  Dkt. 91 at 19 n.14.  The Trustee's relies on testimony from

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ORDER CONFIRMING ARBITRAL AWARD
PURSUANT TO § 1 ET SEQ. OF THE FEDERAL ARBITRATION ACT

Gibson, Dunn &
Crutcher LLP

- The Trustee wrongly suggests that Peikin did not receive a "sweetheart" settlement deal.  Dkt. 91 at 18 n.11.  Peikin affirmed, during direct examination *by the Trustee*, that he received a "sweetheart settlement deal," Dkt. 85-3 at 706 (Tr. 70:15-19); by agreeing to testify against Defendants, Peikin paid only $100,000 of the more than $9.7 million the Trustee alleged Peikin owed, Supp. Rosen Decl., ¶ 2, Ex. 1 ¶¶ 13, 33-35; Supp. Rosen Decl., ¶ 3, Ex. 2.  The Trustee also ignores that he asserted a clawback claim against Peikin stretching back 4 years, so even assuming the statute of limitations had run on a breach of fiduciary duty claim, the Trustee still had his clawback claim.  Supp. Rosen Decl., ¶ 2, Ex. 1 ¶¶ 13, 33-35.

- The Trustee claims that, "[b]ecause of their prior representation of Eichler, Peikin, Barnes and Lee, Olson and deNeve were disabled by conflict from advising Aletheia" about possible claims against Eichler and Peikin.  Dkt. 91 at 4, 13-14.  The Arbitrator rejected this argument, including the Trustee's false contention that deNeve worked on the Proctor matter while at O'Melveny.  Dkt. 84-4 at 118-28.  The Trustee even quotes testimony by one of his experts, Neil Wertlieb, without mentioning that the Arbitrator *rejected* Mr. Wertlieb's testimony as "contrary to the credible evidence presented at trial."  Dkt. 84-4 at 122.[8]

The Trustee's many other attempts to challenge the Arbitrator's factual findings and legal conclusions are equally unavailing—they not only mischaracterize the record, but outright ignore the standard of review.  The Arbitrator's factual findings and legal conclusions are not subject to review here.  *See, e.g.*, *Kyocera*, 341 F.3d at 994; *see also Latinamerican Theatrical Grp. LLC v. Swen Int'l Holding*, 2013 WL

---

Peikin, whom the Arbitrator found was not credible.  Dkt. 84-4 at 131-34.  Moreover, the Arbitrator considered the extensive evidence related to the fraud claim and found that there was support for both bases underpinning it.  Dkt. 84-4 at 45-49.

[8]  Separately, the Trustee improperly conflates O'Melveny's representation of Peikin with that of Eichler.  As the Arbitrator found, "[a]t Peikin's request, O'Melveny briefly represented him in connection with motions to dismiss the New York action. . . . That was the extent of O'Melveny's representation of Peikin."  Dkt. 84-4 at 63 n.21.

4016279, at *1 (C.D. Cal. Aug. 5, 2013) (Snyder, J.).  For this reason alone, Defendants' Motion should be granted.

### III.    THERE IS NO BASIS UNDER SECTION 10 OF THE FAA TO VACATE THE FINAL AWARD

**A.    The Final Award Does Not Violate "Public Policy"**

The Trustee's Opposition, parroting his Motion to Vacate, asserts an erroneous "public policy" argument.  That argument fails for at least three independent reasons.  *First*, as this Court already has held and well-established case law dictates, the issue of whether the engagement agreements were illegal, which is the entire basis for the Trustee's public policy argument, was for the Arbitrator to decide.  By failing to raise the argument, the Trustee waived it.  *Second*, the Trustee misstates the public policy exception because enforcing the Final Award, which found no conflict, does not violate public policy.  In any event, the Court must defer to the Arbitrator's finding that there was no conflict.  *Third*, putting aside such deference, the Arbitrator correctly concluded that there was no conflict.

### 1.    Illegality Was An Issue For The Arbitrator To Decide

The Trustee's public policy argument turns on an illegality argument that was for the Arbitrator to decide but that the Trustee never raised in the arbitration.  Under the FAA, a challenge "to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445, 449 (2006); *see also, e.g.*, *Nitro-Lift Technologies, L.L.C. v. Howard*, 568 U.S. 17, 20-21 (2012) ("[A]ttacks on the validity of the contract . . . are to be resolved 'by the arbitrator in the first instance . . . .'" (citation omitted)).

The Trustee raised this identical illegality argument in his June 2016 motion for reconsideration, and the Court squarely held that the issue of illegality must be decided by the Arbitrator, not the Court.  *See* Dkt. 69 at 20 ("Applying the Ninth Circuit's analysis to the present case results in the application of federal law and, as such,

requires the arbitrator, ***not the Court***, to determine the validity of the Agreement." (emphasis added)).  The Trustee agreed:  "[w]here the FAA substantive law applies, the arbitrator is vested with the power to determine the legality of a contract."  Dkt. 54 at 3.  Ignoring the Court's prior ruling and his own admission, the Trustee now cites to *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*, 6 Cal. 5th 59 (2018) and *Loving & Evans v. Blick*, 33 Cal. 2d 603 (1949), but he omits that those cases are irrelevant because they were decided under ***California law, not the FAA***.  *Sheppard*, 6 Cal. 5th at 72 & n.2; *Loving*, 33 Cal. 2d at 610.[9]

In any event, the Trustee waived the issue of illegality by failing to argue it before the Arbitrator.  *See, e.g.*, *Steinmann v. ZTE Corp.*, 2015 WL 13546434, at *5 (C.D. Cal. Dec. 11, 2015) (party may not wait to attack arbitration "on grounds not raised before the arbitrators when the result turns out to be adverse" (quoting *Marino v. Writers Guild of Am., E., Inc.*, 992 F. 2d 1480, 1484 (9th Cir. 1993))), *aff'd* 692 F. App'x 493 (9th Cir. 2017); *Res. & Dev. Ctr. v. EP Int'l*, 182 F. Supp. 3d 556, 567 (E.D. Va. 2016) (claim that the underlying contract violates public policy is "to be determined exclusively by the arbitrators" and is forfeited if not raised during arbitration (quoting *Yukos Capital S.A.R.L. v. Samaraneftegaz*, 592 F. App'x 8, 12 (2d Cir. 2014))).

## 2.     The Public Policy Exception Does Not Apply And Does Not Permit Merits Review Regardless

As explained in Defendants' Opposition to the Trustee's Motion to Vacate, the Trustee's public policy argument fails as a matter of law.  Dkt. 94 at 11-13.  To the extent a public policy exception even exists, it is very narrow.  *See, e.g.*, *Aramark*, 530 F.3d at 823; *Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173*, 886

---

[9]  *Y.G. v. Riverside Unified School Dist.*, 774 F. Supp. 2d 1055 (C.D. Cal. 2011), is inapposite.  It has nothing to do with arbitration, let alone whether the arbitrator decides issues of illegality under the FAA.  Moreover, that case concerned the circumstances under which parties can agree to waive a statutory right.  *Id.* at 1064.  Here, the Trustee's illegality argument does not involve the waiver of any statutory right.  *Id.*

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ORDER CONFIRMING ARBITRAL AWARD PURSUANT TO § 1 ET SEQ. OF THE FEDERAL ARBITRATION ACT

F.2d 1200, 1211 (9th Cir. 1989).  It applies only where enforcing an arbitral award "would violate 1) an 'explicit, well defined and dominant public policy' that 2) 'specifically militates against the relief ordered by the arbitrator.'"  *Immersion Corp. v. Sony Comput. Entm't Am. LLC,* 188 F. Supp. 3d 960, 969 (N.D. Cal. 2016) (citation omitted).

The Trustee cites no case applying the public policy exception to vacate an arbitration award where the factual finding was that there was no conflict of interest. There obviously is no public policy against unconflicted representations.  *See Stead Motors*, 886 F.2d at 1211 n.11 ("[H]owever the public policy itself is established, it is the arbitrator's *award* which must violate it if the public policy exception is to apply." (emphasis in original)).

The cases make clear that a court applying the public policy exception must "tak[e] the facts as found by the arbitrator."  *Aramark*, 530 F.3d at 823; *see also United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 45 (1987) ("The parties did not bargain for the facts to be found by a court, but by an arbitrator . . . . Nor does the fact that it is inquiring into a possible violation of public policy excuse a court for doing the arbitrator's task.").  And here, the Trustee has not basis to challenge the Arbitrator's factual finding that there was no conflict of interest.  The Trustee's citation of *W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 766 (1983) to suggest that public policy is decided by the courts (Dkt. 91 at 3) has nothing to do with who decides the underlying factual question.  Neither *W.R. Grace* nor any other cited case suggests that the public policy exception is a basis to bootstrap a *de novo* merits review of the underlying factual finding—here, no conflict of interest.[10]

---

[10] *Iowa Elec. Light & Power Co. v. Local Union 204 of Int'l Elec. Workers*, 834 F.2d 1424 (8th Cir. 1987) and *Titan Fire Corp. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 734 F.3d 708 (7th Cir. 2013) are inapposite for the reasons stated in Defendants' Opposition to the Trustee's Motion to Vacate.  Dkt. 94 at 12 n.4.

Gibson, Dunn & Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ORDER CONFIRMING ARBITRAL AWARD PURSUANT TO § 1 ET SEQ. OF THE FEDERAL ARBITRATION ACT

Nor is there some exception under the FAA for "self-evident" conflicts (whatever that means). Dkt. 91 at 7. Indeed, in *Immersion*, cited by the Trustee in his Motion to Vacate, the court **rejected** a similar argument that the public policy exception required *de novo* review of the underlying issues. *Immersion*, 188 F. Supp. 3d at 969-70. The court explained that "confirmation by the court 'is required even in the face of . . . misinterpretations of law'" and that *de novo* review "find[s] no support in Ninth Circuit precedent." *Id.* at 970 (quoting *French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 902, 906 (9th Cir. 1986)) (omission in original); *see also Int'l Bhd. Of Elec. Workers v. Niagra Mohawk Power Corp.*, 143 F.3d 704, 716 (2d Cir. 1998) (courts are "limited to determining whether the award itself, as contrasted with the reasoning that underlies the award" violates public policy and are "not authorized to revisit . . . the reasoning").

### 3.      There Was No Conflict In Any Event

Even if merits review were proper (it is not), there was no actual or potential conflict in O'Melveny's joint representation of Aletheia and Eichler in the Proctor Litigation. That is because Aletheia's and Eichler's interests were aligned, and it was not reasonably foreseeable their interests would diverge. The Final Award and Defendants' Opposition to the Trustee's Motion to Vacate explain this in considerable detail. Dkt. 84-4 at 58-89; Dkt. 94 at 13-19. Ignoring this, the Trustee simply continues to misstate the applicable standard and the evidentiary record. The Trustee's disjointed hodgepodge of arguments regarding the parties' experts, causation, malpractice, and disgorgement were squarely rejected by the Arbitrator.

### a.      Once Again, The Trustee Misstates The Applicable Standard

The Trustee's entire Opposition turns on the proposition that a *per se* conflict exists if the corporation and its directors/officers are jointly represented where, as here, the adverse party seeks damages for itself rather than on behalf of the corporation—i.e., a *direct* action rather than a derivative action. Dkt. 91 at 12, 24. None of the Trustee's cited cases supports such a *per se* rule. As the Arbitrator rightly recognized,

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ORDER CONFIRMING ARBITRAL AWARD PURSUANT TO § 1 ET SEQ. OF THE FEDERAL ARBITRATION ACT

virtually all of the Trustee's cases "involved either an express derivative claim, a claim for dissolution, or both," and "[n]one ordered disqualification where, as here, no relief was sought for the corporation." Dkt. 81-1 at 641-42.

Those cases—*Gong v. RFG Oil, Inc.*, 166 Cal. App. 4th 209 (2008), *Coldren v. Hart, King & Coldren, Inc.*, 239 Cal. App. 4th 237 (2015), and *Havasu Lakeshore Investments, LLC v. Fleming*, 217 Cal. App. 4th 770 (2013)—simply do not hold what the Trustee contends.[11]  The Arbitrator explained this.  In *Gong*, "the shareholder plaintiff . . . sought dissolution of the corporation and expressly alleged damage to the corporation." Dkt. 84-4 at 68.  In *Havasu*, the court found "no actual conflict because, unlike *Gong*, the dispute did not involve a derivative claim, a dissolution claim, or their substantive equivalent." *Id.* at 68-69 (citing *Havasu*, 217 Cal. App. 4th at 781 (noting that "[t]he instant case does not involve a derivative suit (or its substantive equivalent) or an attempt by the Flemings to force dissolution of the LLC")).[12]  And in *Coldren*, the court ***reversed*** the trial court's order disqualifying counsel for the defendant because the plaintiff's "lawsuit [was] not a derivative suit in any sense":

> Contrary to [the plaintiff's] assertions . . . his complaint is not a derivative action.  [The plaintiff] has made direct claims against [the company] and seeks $8 million in damages from [the company].  If he prevails, the damages will not go to the benefit of [the company]; quite to the contrary, [the company] will have to pay the damages to [the plaintiff].

*Coldren*, 239 Cal. App. 4th at 246-47, 251-52.  Here, too, as the Arbitrator's factual findings made clear, Proctor asserted exclusively ***direct, not derivative*** claims against Aletheia and sought millions in damages ***from Aletheia***.  Dkt. 84-4 at 72-73.  If Proctor prevailed, the damages would ***not*** have gone to Aletheia; rather, Aletheia

---

[11] *In re AWTR Liquidation Inc.*, 548 B.R. 300, 318-20 (Bankr. C.D. Cal. 2016) is irrelevant; it concerned the business judgment rule.

[12] Indeed, *Havasu* expressly rejected the "proposition" that "an attorney may never jointly represent an entity and its management against a nonmanaging minority member," noting that such a "notion is contrary to rule 3-600(E)." *Havasu*, 217 Cal. App. 4th at 781-82.

would have paid the damages to Proctor.  *Id.* at 72-76, 124.[13]

### b.     Professor Marshall Articulated The Correct Standard

Professor Lawrence Marshall of Stanford Law School testified that in any joint representation, there are three possible and fundamentally distinct conflict scenarios: an **actual** conflict, a **potential** conflict, and a **hypothetical** conflict.  Dkt. 85-4 at 1965-66, 1968 (Tr. 2628:6-2630:12, 2637:25-2639:13).  An **actual** conflict exists only if the clients' goals with respect to the engagement diverge.  A **potential** conflict exists only if it is reasonably foreseeable that the clients' interests with respect to the engagement will diverge in the future.  *Id.* at 1966-67, 1992, 1996 (Tr. 2629:22-2630:12; 2635:22-2636:4; 2733:25-2734:6; 2750:2-8).  But "'[p]otential' doesn't mean conceivable, theoretically, hypothetically possible." *Id.* at 1966 (Tr. 2629:3-4).  Accordingly, "a mere **hypothetical** conflict is insufficient"; there must be a "reasonable likelihood an actual conflict will arise."  *Havasu*, 217 Cal. App. 4th at 779 (emphasis in original, quotations omitted); *see also Centex Homes v. St. Paul Fire & Marine Ins. Co.*, 19 Cal. App. 5th 789 (2018) (same); *Coldren*, 239 Cal. App. 4th at 247-48 (same).

Importantly, the attorney undertaking the joint representation must "exercise common sense . . . and judgment" in determining whether there is an actual, potential, or merely a hypothetical conflict.  Dkt. 85-4 at 1966-67 (Tr. 2631:24-2632:8, 2636:22-25).

### c.     Under The Correct Standard, There Was No Conflict

Applying the correct legal framework, the evidence was overwhelming that there was no actual or potential conflict.

*First*, Aletheia and Eichler shared a common interest in defeating Proctor's

---

[13] The Trustee falsely claims that Exhibit 29 shows that "the gravamen of the allegations . . . created an obvious conflict." Dkt. 91 at 2 n.3.  That is nothing more than an improper attempt to re-weigh the evidence; Exhibit 29 says nothing about a conflict of interest.  Instead, as Defendants' standard of care expert, John Spiegel, explained, this document demonstrates the type of "red team" thinking "you want lawyers on your team to be doing" (*i.e.*, considering "what arguments you should anticipate from the other side and how you're going to deal with them").  Dkt. 85-4 at 1730-31 (Tr. 2163:12-2164:9; 2166:25-2167:9).

claims.  Proctor was asserting *direct* claims (not derivative claims) against Aletheia and the individual defendants (including Eichler), based on contractual and other rights *unique to Proctor*, and was seeking to recover millions of dollars *from* Aletheia, not *for* Aletheia.  Indeed, Proctor repeatedly disavowed having brought derivative claims.  *See* Dkt. 85-1 at 34 ¶ 49, 94 ¶ 3, 216 ¶ 58, 310 ¶ 82; Dkt. 94-5 at 2, 6, 12-14; Dkt. 94-6 at 3-5.  Thus, as Professor Marshall testified, there was a "perfect alignment of interest where both Aletheia and the individual defendants had a common desire to defeat the litigation – or to resolve the litigation . . . as inexpensively as possible."  Dkt. 85-4 at 1968 (Tr. 2638:11-2639:4).

*Second*, there was no potential conflict because, even if Aletheia had theoretical claims against Eichler for purportedly excessive compensation, there was no reasonably foreseeable scenario under which Aletheia would have asserted them (1) while the Proctor Litigation and the SEC investigation were pending, and (2) given Eichler's centrality to the company.[14]  All of the witnesses agreed on this point.  Dkt. 84-4 at 74, 76-79.  As John Spiegel, Defendants' standard of care expert, explained, no reasonable practitioner experienced in the field "would ever contemplate or recommend" asserting a claim against Eichler under such circumstances because doing so would have "devastating consequences" for Aletheia.  Dkt. 85-3 at 1672 (Tr. 2070:8-23).[15]

---

[14]  The Trustee claims that the theoretical possibility that Aletheia could have asserted the "adverse domination" doctrine to toll the statute of limitations on hypothetical claims against Eichler created a conflict of interest in the Proctor Litigation.  Not so.  As the Arbitrator found, it was not reasonably foreseeable that Eichler's and Aletheia's interests would have diverged in the Proctor Litigation because they had a common interest in defeating Proctor's claims.  Dkt. 84-4 at 73-80.  Thus, there is no reasonably foreseeable scenario under which Aletheia would have had occasion to invoke the adverse domination doctrine.  In any event, if the Trustee genuinely believed the doctrine were applicable, he could have invoked it instead of alleging that the statute of limitations barred any claims against Eichler.  *See* Dkt. 84-3 ¶ 100(a).

[15]  The Trustee selectively quotes testimony from Spiegel for the false proposition that he "admitted that Aletheia had an interest in investigating the claims."  Dkt. 91 at 14.  But as the complete transcript shows, Spiegel's answer was based on a

---

14

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ORDER CONFIRMING ARBITRAL AWARD
PURSUANT TO § 1 ET SEQ. OF THE FEDERAL ARBITRATION ACT

Professor Marshall similarly opined there was not conflict where the interests of Aletheia and Eichler "were aligned and stayed aligned" throughout the Proctor Litigation.  Dkt. 85-4 at 1968 (Tr. 2637:17-2638:10).  He explained that it was not reasonably foreseeable that Aletheia and Eichler would turn on one another in the litigation because doing so would have been "devastating" in terms of the Proctor Litigation and Aletheia's own survival.  *Id.* (Tr. 2639:5-2640:22).[16]

### d.    The Barnes/Lee Demurrer Is Irrelevant

The Trustee falsely claims that O'Melveny "repeated[ly] admi[tted] that [Proctor's] fiduciary duty claim was 'derivative in nature,'" citing a demurrer that O'Melveny filed in the Proctor Litigation.  Dkt. 91 at 13.  But as the Arbitrator explained, neither the demurrer nor Judge Lefkowitz's ruling states that Proctor's claims were derivative or "derivative in nature."  Dkt. 84-4 at 69-72.  In fact, O'Melveny demurred to Proctor's breach of fiduciary duty claim against Barnes and Lee "on the ground that Proctor sought only direct relief through allegations that could only be, ***but were not***, pursued derivatively."  *Id.* at 69-70 (emphasis in original).  As the Arbitrator put it, "O'Melveny argued that [Proctor's] allegations could only support a derivative claim, but that Proctor had not pursued such a claim in name or substance and had in fact disclaimed any intent to seek a recovery for Aletheia," rendering its claim defective.  *Id.* at 70 (emphasis omitted).  Similarly, Judge Lefkowitz based her ruling on Proctor's unequivocal assertions that it was seeking to

___

hypothetical and in no way suggested that there was an actual conflict in the joint representation in the Proctor Litigation.  Dkt. 85-4 at 1759 (Tr. 2277:19-2278:19).  Moreover, the Trustee neglects to note that, as even his own expert conceded, the alleged excessive compensation had ended before O'Melveny began representing Aletheia.  Dkt. 85-3 at 1576 (Tr. 1965:4-9).

[16]  The Trustee falsely claims O'Melveny acted with intentional indifference because it incorrectly filled out a conflicts check form and did not follow its own internal guidelines.  Dkt. 91 at 16.  As the Arbitrator explained, "this argument is beside the point. . . .  This is not a case where the alleged conflict arose because of a failure to identify a prior representation or client."  Dkt. 84-4 at 32.  The relevant issue "is whether O'Melveny correctly conducted a conflicts analysis," and it did.  *Id.* at 32-33.

Gibson, Dunn & Crutcher LLP

vindicate "'*particularized rights separate from the body of shareholders or the corporation*.'" *Id.* at 71-72 (emphasis in original) (quoting Ex. 210 (Supp. Rosen Decl., ¶ 4, Ex. 3)).  Thus, as the Arbitrator explained, O'Melveny's demurrer and Judge Lefkowitz's ruling were "entirely consistent" with Defendants' arguments that "Proctor's claims were . . . neither derivative nor derivative in nature." *Id.* at 72.[17]

### e. Professor Marshall's Opinions Were Admissible And Directly Relevant To The Trustee's Claims

The Trustee's suggestion that the Arbitrator erred in admitting his expert testimony is both wrong and not subject to review here.  Dkt. 91 at 20.

*First*, Professor Marshall is obviously qualified.  While the Trustee now claims that Professor Marshall is "not an 'expert' at all" (Dkt. 91 at 20 & n.15), he did ***not*** challenge Professor Marshall's qualifications in the Arbitration—nor could he. Professor Marshall is one of the country's leading experts in the field of legal ethics and professional responsibility.  He has taught at Stanford Law School since 2005.  *See* Supp. Rosen Decl., ¶ 6, Ex. 5 at C.1.[18]  Before that, he taught at Northwestern University Pritzker School of Law for nearly two decades.  *Id.* at C.1-.2.

*Second*, Professor Marshall's opinions were directly relevant to the Trustee's allegation that an actual or potential conflict of interest existed because Defendants jointly represented Aletheia and Eichler in the Proctor Litigation.  As the Arbitrator explained, "expert testimony is permitted on complex questions relating to an attorney's duties under the Rules of Professional Conduct."  Dkt. 81-1 at 363 n.1.[19]

---

[17]  Moreover, O'Melveny's arguments in the demurrer are not "admissions."  *See Loube v. Loube*, 64 Cal. App. 4th 421, 428 (1998) (rejecting "the proposition that the position taken by attorneys on behalf of their clients somehow becomes binding on the attorneys when later sued").

[18]  The Trustee failed to include in his evidentiary submission Defendants' omnibus opposition to the Trustee's five motions *in limine* seeking to exclude all of Defendants' experts.  Supp. Rosen Decl., ¶ 7, Ex. 6.

[19]  *See also Stanley v. Richmond*, 35 Cal. App. 4th 1070, 1087 (1995) (expert testimony "admissible to establish the duty and breach elements of a cause of action

Indeed, the Trustee even offered his own ethics expert, Robert Kehr, to opine on the very same topic.[20] Dkt. 84-4 at 84.

*Third*, the FAA does not permit courts to "review de novo the arbitrators' discovery and evidentiary rulings." *Arbitration between Lemoine Skinner III v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 2003 WL 23174478, at *5 (N.D. Cal. Dec. 29, 2003). As the Ninth Circuit has recognized, "[a]rbitrators enjoy wide discretion to require the exchange of evidence, and to admit or exclude evidence, how and when they see fit." *U.S. Life Ins. Co. v. Super. Nat'l Ins. Co.*, 591 F.3d 1167, 1175 (9th Cir. 2010) (internal quotations omitted); *see also Bamberger Rosenheim, Ltd. v. OA Development, Inc.*, 2016 WL 9776588, at *7-8 (N.D. Ga. Aug. 24, 2016) (denying motion to vacate based on the arbitrator's failure to exclude testimony and noting that "the arbitrator has great flexibility and the courts should not review the legal adequacy of his rulings" and "courts across this country refuse to meddle in the evidentiary rulings and credibility determinations of Arbitrators").[21]

---

for breach of fiduciary duty"); *In re Marriage of Friedman*, 100 Cal. App. 4th 65, 73 (2002) ("[E]xpert opinion testimony was properly received to establish the duties owed by [the law firm]."); 4 Ronald E. Mallen, Legal Malpractice (2018 ed.) § 37:124 ("Multiple representation and conflicting interests can present complex issues" to be informed by "[e]xpert testimony"; "[t]he analysis of a rule's application, in general, and to the particular conduct, requires the testimony of expert witnesses."); Rest. (Third) of the Law Governing Lawyers § 52 ("[A] plaintiff alleging . . . breach of fiduciary duty ordinarily must introduce expert testimony.").

[20] The Trustee's Opposition ignores the Arbitrator's finding that Kehr's opinions lacked credibility and were contrary to law. Dkt. 84-4 at 84-88. Indeed, the Arbitrator noted that Kehr lacked any relevant litigation experience. *Id.* (finding, *inter alia*, that Kehr's opinion "reflects his lack of any substantial or recent litigation experience"). Similarly, the Trustee's suggestion that Kehr was testifying as a standard of care expert is completely false. (Dkt. 91 at 20.) Kehr did not testify as a standard of care expert; nor could he as he does not have any relevant litigation experience.

[21] The Trustee's attack on Defendants' standard of care expert, John Spiegel, is also meritless. Dkt. 91 at 21-22. The Trustee does not (and cannot) challenge Spiegel's qualifications to testify as a standard of care expert. Supp. Rosen Decl., ¶ 6; Ex. 5 at E.1. Instead, he claims that Spiegel's opinion was a "back-door ethics opinion." Dkt. 91 at 21. Not so. Spiegel testified about the standard of care applicable to practitioners in the field of complex civil litigation. *See* Supp. Rosen Decl., ¶ 7, Ex. 6 at 16-21. Moreover, the Trustee mischaracterizes *State Compensation Ins Fund v.*

17

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ORDER CONFIRMING ARBITRAL AWARD
PURSUANT TO § 1 ET SEQ. OF THE FEDERAL ARBITRATION ACT

### f.      The Trustee Failed To Prove Causation

To prevail on his claims for legal malpractice and breach of fiduciary duty, the Trustee had to prove that Defendants' actions or omissions caused Aletheia's alleged injuries.  *See, e.g.*, *Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP*, 593 F. Supp. 2d 1153, 1164 (S.D. Cal. 2008); *Slovensky v. Friedman*, 142 Cal. App. 4th 1518, 1533 (2006); *Stanley v. Richmond*, 35 Cal. App. 4th 1070, 1086 (1995).

The Trustee does not dispute that to prevail on his legal malpractice claim, he had to prove that "but for [O'Melveny's] alleged malpractice," Aletheia "would have obtained a more favorable result."  *Viner v. Sweet*, 30 Cal. 4th 1232, 1244 (2003). Rather, he argues that the "substantial factor" test, not the "but for" test, applies to his breach of fiduciary duty claim.  Dkt. 91 at 16-17 & n.10.  But as the Arbitrator explained (correctly, as discussed *infra*), the substantial factor test "does not replace, but rather subsumes, the 'but for' test of causation."  Dkt. 84-4 at 90.  Thus, to prevail on his breach of fiduciary duty claim, the Trustee also had to prove that "had [O'Melveny] disclosed the alleged conflict, [Aletheia] would have received a more favorable result."  *Blecher & Collins, PC v. Nw. Airlines, Inc.*, 858 F. Supp. 1442, 1457 (C.D. Cal. 1994).[22]

The Trustee utterly failed to carry his burden.  As the Arbitrator held, "[e]ven if the Trustee had met his burden of showing either professional negligence or breach of fiduciary duty, his claim would fail because he has not proved that anything O'Melveny did or failed to do caused damage to Aletheia."  Dkt. 84-4 at 89.

*First*, the Trustee offered no evidence that "unconflicted" counsel would have

---

*Drobot*, 192 F. Supp. 3d 1080 (C.D. Cal. 2016).  Spiegel was neither the expert whose opinion was rejected nor the counsel who was disqualified.  *See, e.g.*, Dkt. 92 at 48 n.2.  In any event, the Arbitrator's evidentiary ruling allowing Spiegel to testify provides no basis to vacate the Final Award.

[22]  The Trustee does not cite a single case supporting his suggestion that the relevant inquiry is whether "Aletheia would have likely prevailed" had it brought claims against Eichler.  Dkt. 91 at 17.  Regardless, the Trustee made no showing that Aletheia would have brought such claims—let alone that it would have won *and* been able to collect on any judgment.

18

Gibson, Dunn & Crutcher LLP

1    done anything differently than Defendants did.  For example, the Trustee offered no

2    testimony from anyone with complex civil litigation experience to controvert Spiegel's

3    opinion that a competent practitioner would ***not*** have recommended bringing an

4    excessive compensation suit, investigating such claims, or seeking a tolling agreement

5    while the Proctor Litigation and the SEC investigation were pending.  Dkt. 85-3 at

6    1675-77 (Tr. 2081:6-2082:9, 2083:14-2086:17, 2086:20-2090:1).

7        *Second*, the Trustee introduced no evidence that, "properly" advised, Aletheia

8    would have done anything differently.  No witness offered such testimony.  On the

9    contrary, multiple witnesses (including Spiegel, Metzger, Aronson, and deNeve)

10   testified that Aletheia would not have done so because of the devastating consequences

11   to Aletheia.  Indeed, deNeve testified that, when he advised Aletheia's Board and

12   senior management about potential claims against Eichler, there was no interest in

13   pursuing them.  Dkt. 85-3 at 1382-83 (Tr. 1462:7-1463:12, 1465:4-15); *see also id.* at

14   1378-79 (Tr. 1448:1-1449:21).  Even Peikin, who knew of the alleged excessive

15   compensation allegations and was hostile to Defendants and Eichler, admitted that he

16   did not file a derivative action against Eichler because it would have harmed Aletheia.

17   *Id.* at 784-85 (Tr. 244:20-245:10).[23]  Further, as the Arbitrator found, the Trustee's

18   own experts (Kehr and Wertlieb) offered the Trustee "no help" on this issue.  Dkt. 84-4

19   at 92-93.

20       *Third*, there was no evidence that Aletheia ***could*** have done anything differently.

21   At all relevant times, Eichler was the majority shareholder and CEO.  Claimant

22   presented no evidence he would have voted against his own interests.

23       *Fourth*, the Trustee offered no evidence that Eichler would have voluntarily paid

24   back any portion of the allegedly excessive compensation if he had been asked.  The

---

26   [23]  The Trustee claims the Arbitrator "bypass[ed] and ignore[d] evidence" by focusing

27   on whether Aletheia "would have sought" return of any money.  Dkt. 91 at 16-19.
The Arbitrator did no such thing.  After an exhaustive review of the evidence, he
found that the Trustee failed to prove causation for multiple, independent reasons.

28   Dkt. 84-4 at 92-94.  In any event, the Trustee's argument is precisely the type of
merits review that the FAA prohibits.

19

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ORDER CONFIRMING ARBITRAL AWARD
PURSUANT TO § 1 ET SEQ. OF THE FEDERAL ARBITRATION ACT

Trustee did not even call Eichler as a witness even though he was under the Trustee's control.  Supp. Rosen Decl., ¶ 8, Ex. 7 at Settlement Agreement ¶ 5.  Similarly, while the Trustee erroneously claims that the Arbitrator purportedly failed to decide whether Aletheia would have likely prevailed on a hypothetical claim (Dkt. 91 at 17), in fact the Arbitrator found that "the Trustee offered no evidence" for that point.  Dkt. 84-4 at 80-81.[24]

Simply put, as the Arbitrator concluded,

> [the Trustee] offer[ed] no evidence of how an attorney representing only Aletheia would have achieved a more favorable result in any of the matters for which O'Melveny was retained.  The Trustee presented neither witnesses nor documentation to show that such an attorney would have offered different advice to Aletheia, pursued a different course of action on behalf of Aletheia . . . , that Aletheia would have agreed to such a course of action, or that a different course of action would have achieved a better outcome in any respect, including recouping compensation paid to Eichler and Peikin.

Dkt. 84-4 at 92.[25]

### g. The Trustee's Arguments Regarding Malpractice And Disgorgement Are Irrelevant And Wrong

While the Trustee now claims he was not alleging "garden variety malpractice" and that the Arbitrator erred by "focus[ing] on whether Defendants breached their duty of care," Dkt. 91 at 9, the record proves otherwise.  In his interrogatory responses, the

---

[24]  The Trustee falsely claims that it was "[u]ndisputed that [Eichler's and Peikin's] compensation exceeded caps" in the Side Letter Agreement and Board resolution.  Dkt. 91 at 19.  In fact, the Arbitrator expressly found that Aletheia had a viable claim that the Side Letter Agreement was fraudulently induced and should be rescinded.  Dkt. 84-4 at 44-51.  Moreover, the Board resolution was void *ab initio*.  Dkt. 94-10 at 32-33.

[25]  In his closing brief, the Trustee admitted that he "is not asserting that O'Melveny should have obtained a better result in the Proctor Litigation, or in the SEC Investigation, or in the corporate and operational advice matters O'Melveny performed on behalf of Aletheia."  Supp. Rosen Decl., ¶ 9, Ex. 8 at 48.  This admission alone was fatal to his claims.  *See, e.g.*, *Lazy Acres Market, Inc. v. Tseng*, 152 Cal. App. 4th 1431, 1437 (2007) (affirming dismissal of breach of fiduciary claim where the "complaint does not suggest how [plaintiff] could have achieved a better result . . . but for [defendant's] breach of duty").

20

Trustee alleged **_67_** breaches of the duty of care, including that O'Melveny caused Aletheia to assert a fraud claim against Proctor "despite the claim's lack of merit," caused Aletheia to assert a claim for rescission "which was legally defective," and "in all material respects, failed to properly manage the Proctor Litigation." Dkt. 81-1 at 565-68 (Nos. 7, 13, and 24); *see also, e.g.*, Supp. Rosen Decl., ¶ 5, Ex. 4 at 25:16-18 (Trustee's counsel arguing that O'Melveny "caus[e]d Aletheia to file a meritless fraud claim against Proctor, which sought a frivolous remedy of partial rescission").

Amazingly, despite these claims, the Trustee failed to present a standard of care expert, a failure that the Arbitrator found independently dispositive. Dkt. 84-4 at 31-32.[26] Nonetheless, the Arbitrator conducted a thorough examination of the record and the applicable case law and concluded that Defendants' conduct satisfied the standard of care. Dkt. 84-4 at 32-58. There is no basis for reviewing—much less vacating—that determination here.

The Trustee's disgorgement argument is also irrelevant and wrong. Dkt. 91 at 11-12. Even if the Trustee had proven a conflict (he did not), determining whether disgorgement is appropriate requires a detailed examination and weighing of the facts and circumstances. *Sheppard*, 6 Cal. 5th at 89 (rejecting a bright-line rule and identifying factors courts must consider). None of those factors supports disgorgement here. *See* Dkt. 94-10 at 45-47; Dkt. 94-11 at 25. The Trustee also incorrectly suggests that the burden was on O'Melveny to show that disgorgement is not warranted. Dkt. 91 at 12. On the contrary, unlike *Sheppard*, this is not a quantum meruit case in which O'Melveny is seeking to recover fees. *Sheppard*, 6 Cal. at 88.

**B.    The Final Award Does Not "Manifestly Disregard" The Law**

"Manifest disregard of the law means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law." *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 641 (9th Cir. 2010)

---

[26] The Trustee previously conceded that "the duty of care . . . will require expert testimony." Dkt. 81-1 at 564.

Gibson, Dunn & Crutcher LLP

(internal quotations omitted).  "The risk that arbitrators may construe the governing law imperfectly . . . or may make errors with respect to the evidence . . . is a risk that every party to arbitration assumes."  *Kyocera*, 341 F.3d at 1003.  To establish manifest disregard, the Trustee must show that the arbitrator understood and correctly stated the law, and then disregarded it.  *Collins*, 505 F.3d at 879.

The Trustee has made no such showing.[27]  He argues only that the Arbitrator "misstate[d]" the test for causation for breach of fiduciary duty.  Dkt. 91 at 17 n.10.  Specifically, he contends that the "correct" test is the "substantial factor, not 'but for,' causation," and that under this test the purportedly "correct focus" is on Aletheia's supposed "lost rights with respect to claims against Eichler and Peikin that could have been brought successfully."  *Id.*  But leaving aside that this argument fails to meet the "manifest disregard" test even if the Trustee were right, the Arbitrator correctly rejected the Trustee's argument, which was based entirely on *Knutson v. Foster*, 25 Cal. App. 5th 1075 (2018).  As the Arbitrator explained, the "loose language" in *Knutson* on which the Trustee relied "cannot be interpreted as establishing different causal standards for [professional] negligence . . . and breach of fiduciary duty," and any such interpretation would be "directly contrary to California law."  Dkt. 84-4  at 90 n.31.[28]

Regardless, a "misinterpretation, misstatement or misapplication of the law"

---

[27]  To the extent that the Trustee is claiming that the Arbitrator disregarded the law in finding no conflict, his argument fails for the reasons set forth above and in Defendants' Opposition to the Trustee's Motion to Vacate.  Dkt. 94 at 19-20; *see also id.* at 13-19.

[28]  In addition, to the extent *Knutson* can be interpreted as purporting to state a different causation standard, it is a recently published and rarely cited case that would be inconsistent with California Supreme Court precedent and since-published California Court of Appeal precedent.  *See Rutherford v. Owens-Illinois, Inc.*, 16 Cal. 4th 953, 969 (1997) (holding that the substantial factor test "subsumes" the but-for test); *Mitchell v. Gonzales*, 54 Cal. 3d 1041, 1052 (1991) (same); *San Diego Gas & Elec. Co. v. San Diego Reg'l Water Quality Control Bd.*, 36 Cal. App. 5th 427, 436 (2019) (same).  It is thus not "well defined, explicitly, and clearly applicable" law.  *Carter v. Health Net of Cal., Inc.*, 374 F.3d 830, 838 (9th Cir. 2004) (citation omitted).

Gibson, Dunn &
Crutcher LLP

does not suffice to establish manifest disregard.  *Montes v. Shearson Lehman Bros., Inc.*, 128 F.3d 1456, 1461-62 (11th Cir. 1997).  "An arbitration board that incorrectly interprets the law has not manifestly disregarded it.  It has simply made a legal mistake."  *Id.* at 1461.  And it is well-established that "interpretations of the law by the arbitrators . . . are not subject . . . to judicial review for error in interpretation."  *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 231 (1987) (quoting *Wilko v. Swan*, 346 U.S. 427, 436-37 (1953)).

At bottom, the Trustee simply disagrees with the Arbitrator's conclusion that the same causation standard applies in both professional negligence and breach of fiduciary duty claims.  Dkt. 84-4 at 89-92 & n.31.  But mere "disagreement . . . is not a proper basis on which to vacate an arbitration award."  *Anoruo v. Tenet HealthSystem Hahnemann*, 697 F. App'x 110, 112 (3d Cir. 2017).  Courts are "not at liberty to set aside an arbitration panel's award because of an arguable difference regarding the meaning or applicability of laws urged upon it."  *Merrill Lynch, et al. v. Bobker*, 808 F.2d 930, 933-34 (2d Cir. 1986).

## C.    The Final Award Is Not "Completely Irrational"

The Trustee does not and cannot argue that the Final Award is "completely irrational."  That exception is "extremely narrow and is satisfied only 'where [the arbitrator's decision] fails to draw its essence from the [arbitration] agreement.'"  *Bosack*, 586 F.3d at 1106 (quoting *Comedy Club*, 553 F.3d at 1288) (first alteration in original).  The Trustee does not even try to satisfy this test.

## D.    The Final Award Is Not The Product Of "Evident Partiality"

Defendants' Opposition to the Trustee's Motion to Vacate explains in detail why the Trustee's actual bias arguments are without merit.  Dkt. 94 at 21-25.  The Trustee's Opposition advances no new arguments to support his claim of actual bias.  Instead, the Trustee fixates on the Arbitrator's order denying the Trustee's first summary judgment motion.  *See* Dkt. 91 at 23-25 (arguing that the Arbitrator "refused to apply black letter" law and "concocted from whole cloth a conflicts standard").  But the

Gibson, Dunn & Crutcher LLP

1    Trustee's arguments are inaccurate and irrelevant.  As demonstrated *supra* and in

2    Defendants' Opposition to the Trustee's Motion to Vacate, Dkt. 94 at 13-19, the

3    Arbitrator properly stated and applied the law.  In any event, mere disagreement with

4    an arbitrator's ruling does not establish actual bias.  *Kinney*, 756 F.2d at 745-46 ("Even

5    repeated rulings against one party to the arbitration will not establish bias absent some

6    evidence of improper motivation."); *Carlini Enterps. v. Paul Yaffe Design, Inc.*, 2016

7    WL 4374940, at *3 (C.D. Cal. Aug. 12, 2016) ("Substantive conclusions in an

8    arbitration award are insufficient to demonstrate evident partiality."); *James Dickey,*

9    *Inc. v. Alterra Am. Ins.*, 2017 WL 3013405, at *5 (C.D. Cal. July 14, 2017) (rejecting

10   evident partiality claim because arbitrator's "decision to deny the continuance was

11   reasonable and does not amount to bias").[29]

12                              **IV.   CONCLUSION**

13        For all of the foregoing reasons, Defendants request that the Court grant

14   Defendants' Motion to Confirm (as well as deny the Trustee's Motion to Vacate).  The

15   Court should then set a status conference to discuss next steps, including the

16   applicability of the Arbitrator's factual findings to the remaining core claims that have

17   been stayed.  *See* Dkt. 84 at 11-12.

18   Dated: October 7, 2019                  GIBSON, DUNN & CRUTCHER LLP

19

20                                          By:  /s/ Kevin S. Rosen
21                                                    Kevin S. Rosen

22                                          Attorneys for Defendants O'MELVENY &
                                            MYERS LLP, STEVEN J. OLSON, and J.
23                                          JORGE DENEVE

24

25   _____

26   [29]  The Trustee claims that the Arbitrator supposedly "emphasized . . . his partiality"
     by showing "disdain" for the Trustee.  Dkt. 91 at 23-24.  But the quote cited by the
27   Trustee in no way shows disdain, let alone evident partiality.  The Arbitrator merely
     noted that "[i]n his search for assets to pay this and other claims, the Trustee
28   targeted O'Melveny."  Dkt. 81-1 at 359.  This is completely accurate: the Trustee
     settled (collusively) with Proctor (*see* Dkt. 81-1 at 701) and sued O'Melveny.

                                            24