**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | | Date | November 1, 2019 |
|---|---|---|---|---|
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP | | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**   (IN CHAMBERS) - PLAINTIFF'S MOTION TO VACATE FINAL ARBITRATION AWARD (Dkt. [ 80 ], filed September 9, 2019)

DEFENDANTS' MOTION FOR ORDER CONFIRMING ARBITRAL AWARD (Dkt. [ 84 ], filed September 9, 2019)

## I.   INTRODUCTION

This dispute arises out of claims that defendant O'Melveny & Myers LLP ("O'Melveny") and two of its attorneys, defendants Steven J. Olson ("Olson") and Jorge deNeve ("deNeve"), committed legal malpractice and breached their fiduciary duties in the course of representing Aletheia Research and Management, Inc. ("Aletheia"). Dkt. 1 ("Compl."). On November 10, 2014, plaintiff Jeffrey I. Golden ("Golden"), acting in his capacity as Aletheia's trustee in bankruptcy, filed a complaint against O'Melveny, Olson, and deNeve, asserting claims for: (1) professional negligence (conflict of interest); (2) breach of fiduciary duty; (3) avoidance and recovery of preferential transfers under 11 U.S.C. §§ 548 and 550; (4) avoidance and recovery of fraudulent conveyances (two-year transfers) under 11 U.S.C. §§ 548 and 550; and (5) avoidance and recovery of fraudulent conveyances (four-year transfers) under 11 U.S.C §§ 544 and 550 and Cal. Civ. Code §§ 3439.04, 3439.05, and 3439.07.[1] Id.

On June 15, 2015, pursuant to the arbitration provisions contained in the engagement agreement between O'Melveny and Aletheia, the Court compelled arbitration of Golden's professional negligence and breach of fiduciary duty claims. Dkt. 30. The Court stayed Golden's remaining claims pending the completion of arbitration. Id. The parties selected

---

[1] The complaint also named the law firm Freedman + Taitelman, LLP ("Freedman") as a defendant. Id. Golden subsequently settled with Freedman, and the Court approved the settlement on November 2, 2015, dismissing Freedman from this litigation. Dkt. 37.

| **CIVIL MINUTES – GENERAL** | | | **'O'** |
|---|---|---|---|
| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | November 1, 2019 |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP | | |

the Hon. Gary A. Feess ("the Arbitrator"), a retired United States District Judge, to serve as arbitrator. Dkt. 39 at 3. The parties thereafter commenced arbitration before the Arbitrator in November 2015. Id.

Golden subsequently filed a motion before the Court on June 14, 2016, seeking reconsideration of the Court's order compelling arbitration of Golden's first two claims. Dkt. 54. On June 22, 2016, Golden also moved to disqualify Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), O'Melveny's counsel, based primarily on an alleged conflict of interest. Dkt. 56. On August 3, 2016, the Court denied Golden's motion for reconsideration and referred Golden's motion to disqualify to the Arbitrator. Dkt. 69.

The parties' arbitration hearing before the Arbitrator began on November 5, 2018 and concluded on November 29, 2018. Dkt. 84-4 ("Final Award") at 5. The parties submitted closing arguments to the Arbitrator on March 20, 2019, and the Arbitrator issued his corrected Findings, Conclusions, and Final Award on August 22, 2019.[2] Id. at 2, 5. The Final Award concluded that Golden "has failed to carry his burden of proof on any of his claims against" O'Melveny, Olson, or deNeve. Id. at 8.

Before the Court are the parties' cross motions to vacate or confirm the Arbitrator's Final Award, which the parties filed on September 9, 2019. See Dkt. 80 ("Golden Mot."); Dkt. 84 ("O'Melveny Mot."). The parties filed their respective oppositions on September 27, 2019. See Dkt. 91 ("Golden Opp."); Dkt 94 ("O'Melveny Opp."). The parties filed their respective replies on October 7, 2019. See Dkt. 95 ("O'Melveny Reply"); Dkt. 96 ("Golden Reply").

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

---

[2] The Arbitrator originally issued an award on June 21, 2019 and subsequently issued a corrected Final Award on August 22, 2019, which made minor corrections at the request of O'Melveny, Olson, and deNeve. Dkt. 84-1, Declaration of Kevin S. Rosen ("Rosen Decl.") ¶ 6.

## II.    BACKGROUND

Golden asserts that O'Melveny, Olson, and deNeve committed legal malpractice and breached fiduciary duties while representing Aletheia. Accordingly, the Court recites the factual and procedural background that gives rise to this dispute.[3]

### A.    Eichler and Peikin Found Aletheia in 1997

Roger Peikin ("Peikin"), a family law attorney, and Peter Eichler ("Eichler"), an asset manager formerly with Bear Stearns, initially became acquainted while Peikin was Eichler's client. Final Award at 13. After Eichler expressed his desire to Peikin to start his own money management firm, the two subsequently formed Aletheia on July 23, 1997, with Eichler initially owning 550 of the 1,000 issued shares and Peikin owning the remaining 450 shares. Id. Eichler, Peikin, Jesse Felder ("Felder"), and Patricia Barnes ("Barnes"), served as Aletheia's initial directors. Id. Eichler would go on to serve as Aletheia's Chairman, Chief Executive Officer, and Chief Investment Officer, while Peikin served as the company's General Counsel, Chief Financial Officer ("CFO"), and Chief Compliance Officer ("CCO"). Dkt. 85-2 at 544, Trial Exhibit 337 ("Trial Ex. 337").

Initially, Aletheia enjoyed only a few clients. Final Award at 14. Over time, however, Aletheia significantly increased the amount of the assets under its management. In 2000, the firm held $99 million in assets under management—by the end of 2006, this figure eclipsed $3.2 billion. Id.

### B.    Aletheia Agrees to Terms with Proctor

In early 2006, Aletheia began discussions with Proctor Investment Managers LLC ("Proctor") regarding a possible sale of a minority stake in Aletheia to Proctor in exchange for Proctor agreeing to market and sell Aletheia's investment products. Final Award at 14–16. The principals involved in these discussions on the part of Proctor include Mark Scalzo ("Scalzo"); Mona Aboelnaga ("Aboelnaga"), Proctor's President; and Jim Coley ("Coley"). Id. at 15–17. Negotiations continued through October of 2006. Id. at 17.

The final agreement between the parties consisted of several interrelated components. Id. at 18. First, pursuant to the "Selling Agreement," Proctor received fees

---

[3]    Neither party contests the Arbitrator's factual findings. See Golden Mot. at 4; O'Melveny Mot. at 8. Accordingly, the Court cites to the factual findings contained in the Final Award, unless otherwise specified.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | November 1, 2019 |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP | | |

in return for its use of "commercially reasonable efforts" to sell Aletheia's products. Final Award at 18. Second, pursuant to the "Stock Purchase Agreement," Proctor acquired a 10% equity interest in Aletheia for $16 million. Dkt. 85-1 at 352, Trial Exhibit 117 ("Trial Ex. 117"). Finally, the parties executed a "Side Letter Agreement" which set forth additional duties and obligations not contained in the Selling or Stock Purchase Agreements. Final Award at 18.

The Side Letter Agreement contains several provisions which, in part, form the bases for Golden's claims. For example, the Side Letter Agreement required Aletheia to increase the size of the Board of Directors to include an "Independent Director," who was to be a nominee of a shareholder holding less than 25% of the company stock and who was not an employee or officer of Aletheia, or the relative of an employee or officer. Final Award at 18. The Side Letter Agreement also imposed limits on the employee bonus pool, consisting of: (1) a 35% cap of pre-tax, pre-bonus income related to hedge fund partnership performance; and (2) a 20% cap on all other pre-tax, pre-bonus income such as management fees and commissions. Id. A distribution provision required that at least 45–50% of pre-tax, post-bonus pool earnings be paid pro rata to shareholders, minus the payment of all quarterly business expenses. Id. at 19. After the parties closed the transaction, Coley, Proctor's Chief Executive Officer, was elected as Aletheia's Independent Director. Id.

### C.     Aletheia's Relationship with Proctor Deteriorates and Litigation Ensues

Shortly after Aletheia and Proctor agreed to terms, internal problems arose at Proctor. Final Award at 20. By February 2007, Coley contemplated leaving his position as Proctor's CEO. Id. at 21. At a March 2007 meeting of Aletheia's board, Coley, while still serving as Aletheia's Independent Director, proposed changes to Aletheia's compensation structure. Id. In April of that year, Coley also spearheaded a successful effort to amend the Selling Agreement. Id. By September 2007, however, Coley had begun preparations to depart from Proctor. Id. at 23. During this time, Proctor failed to significantly increase the value of the assets that Aletheia managed: of the $5.7 billion increase in 2007 in value of assets that Aletheia managed, Proctor's sales accounted for slightly more than 2%. Id. at 25. Coley formally notified Eichler and Peikin of his departure from Proctor on October 16, 2007, and Coley formally resigned from his position on Aletheia's board nearly a month later. Id.

Shortly after Coley's resignation from Aletheia's board, Eichler and Peikin began contemplating the future of Aletheia's agreements with Proctor, retaining the law firm

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | November 1, 2019 |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP | | |

Loeb & Loeb LLP ("Loeb"), and one of its partners, Peter Selvin ("Selvin"), as legal counsel. Final Award at 26. On December 3, 2007, Aletheia notified Proctor that Proctor was in breach of the Selling Agreement. Id. Proctor responded by denying it had breached, and, on December 18, 2007, Aletheia gave notice that it was exercising its right to terminate the Selling Agreement because Proctor had not sufficiently cured its breaches within the contractually-specified time period. Id. After counsel for Proctor asserted that the termination was ineffective, Aletheia again provided notice of termination on January 4, 2008, listing additional facts that it contended supported its decision to terminate the agreements. Id.

Loeb and Selvin jointly represented Aletheia, Eichler, and Peikin, investigating potential claims against Proctor including breach of contract, fraud, breach of fiduciary duty, and rescission. Final Award at 28. On January 25, 2008, Proctor filed suit against Aletheia, Eichler, and Peikin in New York state court. Id. at 175. On January 29, 2008, however, the parties entered into a litigation standstill agreement, and Proctor agreed to dismiss the suit while it and Aletheia pursued a business resolution. Trial Ex. 337 at 548; Final Award at 28. Negotiations proved fruitless, and Loeb and Selvin, acting as Aletheia's counsel, filed a declaratory relief action ("the California Proctor Litigation") against Proctor on February 4, 2010, in the Superior Court of the State of California for the County of Los Angeles. Dkt 85-1 at 6, Trial Exhibit 3 ("Trial Ex. 3").

In response, Proctor again filed suit against Aletheia, Eichler, Peikin, and others in New York State Court ("the New York Proctor Litigation") on February 16, 2010. Dkt. 85-1 at 11, Trial Exhibit 4 ("Trial Ex. 4"). The gravamen of Proctor's complaint in the New York Proctor Litigation was that Eichler and Peikin took tens of millions of dollars in excessive compensation from Aletheia while Aletheia's directors sat idly by. Golden Mot. at 2.

### D.    The Boskovich Litigation

While Aletheia's dispute with Proctor was pending, Joseph Boskovich, a former Aletheia salesman, brought a wrongful termination suit against Aletheia, Eichler, and Peikin on September 17, 2008. Trial Ex. 337 at 546. In response, Aletheia asserted counterclaims for misappropriation of trade secrets against Boskovich and other former employees related to these former employees' competing asset management business. Final Award at 29. Loeb and Selvin initially represented Aletheia, Eichler, and Peikin jointly in this litigation ("Boskovich Litigation"). Id. at 9.

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | November 1, 2019 |
|---|---|---|---|
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP | | |

### E. The Securities and Exchange Commission Investigation

The Securities and Exchange Commission ("SEC") began investigating Aletheia in February 2009. Trial Ex. 337 at 543–44. Loeb and Selvin initially represented Aletheia, Eichler, and Peikin jointly in this investigation. Id. at 544; Final Award at 9. Because of a potential conflict between Eichler and Peikin regarding a Chinese currency transaction, however, Eichler and Peikin retained separate counsel. Final Award at 30. On November 5, 2009, Eichler replaced Loeb as counsel in the SEC investigation with O'Melveny. Trial Ex. 337 at 545. Meanwhile, Peikin retained the law firm Shartsis Friese LLP ("Shartsis"). Id. By January 2010, Aletheia had replaced Loeb with O'Melveny as its counsel in the SEC investigation. Id.

The SEC investigated allegations that Aletheia was misreporting returns for its various funds, possibly constituting fraud. Final Award at 108. Olson and deNeve were particularly active in the SEC investigation, ultimately persuading the SEC to turn its attention from a fraud inquiry into "a less threatening, but still important, books and records inquiry[.]" Id. Eichler and Aletheia ultimately reached a settlement with the SEC. Trial Ex. 337 at 560.

### F. Aletheia Retains O'Melveny to Provide Additional Legal Services

Aletheia first retained O'Melveny to represent it in the SEC investigation on January 26, 2010. Trial Ex. 337 at 545. The January 26, 2010 engagement letter provided that O'Melveny would represent Aletheia, Eichler, Barnes, and other individuals in the then-pending SEC investigation and to ensure "compliance with federal securities laws and regulations and the rules of the self regulatory organizations to which [Aletheia] is a member." Dkt. 17-2 ("Initial Engagement Letter") at 2. The agreement made clear that O'Melveny "do[es] not represent and will not be representing Roger Peikin." Id. at 3. The nature and scope of O'Melveny's representation of Eichler and Aletheia expanded over time, however.

#### 1. Aleitheia Retains O'Melveny in the Boskovich Litigation

In February 2010, O'Melveny began providing legal services to Aletheia regarding the Boskovich Litigation. Trial Ex. 337 at 547. Indeed, O'Melveny engaged in strategy sessions with Aletheia, Eichler, Peikin, and Loeb, their counsel of record in the Boskovich Litigation. Id. On March 2, 2010, O'Melveny formally appeared in the Boskovich Litigation when Loeb filed a notice formally associating O'Melveny as co-counsel. Id.

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | November 1, 2019 |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP | | |

### 2.    Aletheia and Eichler Retain O'Melveny in the Proctor Disputes

Aletheia and Eichler approached O'Melveny in February 2010 about the prospect of replacing Loeb as their counsel in the California and New York Proctor Litigation. Ex. 337 at 548. By July 13, 2010, O'Melveny had been retained to represent Aletheia, Eichler, and Barnes in the California and New York Proctor Litigations. Dkt. 17-4 ("July 13, 2010 Engagement Letter") at 2. As such, O'Melveny replaced Loeb and Selvin as counsel in these cases. Trial Ex. 337 at 548–49.

During this time, Peikin also approached O'Melveny about the possibility that the firm might represent him too. Although Peikin was not a party in the California Proctor Litigation, Peikin requested that O'Melveny represent him in the New York Proctor Litigation, in which he was a party. Trial Ex. 337 at 549. In February 2010, Peikin was replaced as CCO but retained his CFO and General Counsel positions. Id. at 550. In April 2010, O'Melveny presented Peikin with a proposed engagement letter, and although Peikin did not sign the letter, O'Melveny continued to represent Peikin in the New York Proctor Litigation, first entering an appearance on Peikin's behalf on April 8, 2010. Id. at 551–52. Friese, Peikin's personal counsel, remained engaged in the New York Proctor Litigation on Peikin's behalf. Id. at 549.

### 3.    O'Melveny Prepares a First Amended Complaint in the California Proctor Litigation

After substituting for Loeb and Selvin as counsel in the California Proctor Litigation, O'Melveny began preparations for filing an amended complaint in that case. Trial Ex. 337 at 550. In connection with that work, O'Melveny conducted a detailed factual investigation, reviewing documents and interviewing witnesses. Final Award at 38–39. O'Melveny also conducted legal research regarding available causes of action arising under California law, potential remedies, the possibility of seeking attorneys' fees, and additional issues regarding personal jurisdiction and venue. Id. O'Melveny's records indicate that between March and April of 2010, its attorneys worked more than 250 hours on the two Proctor cases alone. Id. at 39–40. On April 16, 2010, O'Melveny filed a first amended complaint against Proctor in the California Proctor Litigation, asserting, *inter alia*, claims for fraud, unfair competition, breach of contract, breach of the implied covenant of good faith and fair dealing, and false advertising. Trial Ex. 337 at 551.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | November 1, 2019 |
|----------|--------------------------|------|-------------------|
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP | | |

### 4.    O'Melveny Obtains Dismissal of the <u>Boskovich</u> Litigation and the New York <u>Proctor</u> Litigation

O'Melveny continued to defend the <u>Boskovich</u> and New York <u>Proctor</u> cases on behalf of Aletheia, Peikin, and Eichler.  Aletheia participated in mediation in the <u>Boskovich</u> Litigation, the parties reached a confidential settlement on August 6, 2010, and the court dismissed that action on September 8, 2010.  Trial Ex. 337 at 558.  Olson played a large role in resolving the case, and Aletheia's insurers largely funded the settlement.  Final Award at 53 n.18.  Additionally, the court dismissed the New York <u>Proctor</u> Litigation in favor of Aletheia, Eichler, and Peikin on the basis of *forum non conveniens*.  Trial Ex. 337 at 558.

### 5.    Peikin Departs Aletheia, and O'Melveny Defeats Peikin's Disqualification Bids

As early as February 2010, Friese, Peikin's personal counsel, contemplated the possibility that Peikin might step down from one or more of his roles at Aletheia.  Trial Ex. 337 at 566.  That month, Peikin was replaced as Aletheia's CCO.  <u>Id.</u> at 550.  On June 18, 2010, Peikin was removed as Aletheia's CFO.  <u>Id.</u> at 556.  Shortly before O'Melveny obtained dismissals of the <u>Boskovich</u> and New York <u>Proctor</u> cases, Friese substituted in as Peikin's counsel in these cases.  <u>Id.</u>  Peikin was later terminated from his position as Aletheia's General Counsel on July 6, 2011.  <u>Id.</u> at 557.

Peikin thereafter attempted to disqualify O'Melveny from jointly representing Aletheia and Eichler in the <u>Proctor</u> cases, the <u>Boskovich</u> Litigation, and "in all corporate, transactional, and regulatory matters, including those in which Peikin or his interests are in any way involved."  Trial Ex. 337 at 557.  Accordingly, Peikin commenced a lawsuit seeking an injunction "restraining [O'Melveny] from representing Eichler and Aletheia" based on allegations that O'Melveny breached its fiduciary duties of loyalty and confidentiality to Peikin.  <u>Id.</u>  For months, Peikin made no efforts to prosecute this suit.  <u>Id.</u> at 558.

Proctor filed a cross-complaint in the California <u>Proctor</u> Litigation on January 18, 2011, naming Peikin as a cross-defendant.  <u>Id.</u>  Peikin dismissed his own injunctive relief suit on January 31, 2011.  <u>Id.</u>  However, at a February 28, 2011 status conference in the California <u>Proctor</u> Litigation, Peikin indicated that he intended to renew his efforts to disqualify O'Melveny.  <u>Id.</u> at 558–60.  After Peikin moved to disqualify O'Melveny in the California <u>Proctor</u> Litigation, the court in that case denied Peikin's motion on July 18, 2011.  Dkt. 85-2, Trial Exhibit 173 ("Trial Ex. 173") at 420.  In doing so, the court found

that "there is not a 'substantial relationship' between O'Melveny & Myers' current representation of Aletheia and Eichler and its prior representation of Peikin to warrant disqualification." Trial Ex. 173 at 444.

### 6. Subsequent Developments in the California <u>Proctor</u> Litigation

O'Melveny continued to represent Aletheia, Eichler, and others in the California <u>Proctor</u> Litigation. Proctor demurred to the first amended complaint that O'Melveny filed in that case, and on September 22, 2010, the court overruled, in part, and sustained, in part, Proctor's demurrer. Final Award at 52, 180. In particular, the court sustained Proctor's demurrer to two of Aletheia's securities and unfair competition causes of action but overruled the demurrer in all other respects. <u>Id.</u> at 52. Aletheia filed a second amended complaint on January 18, 2011, and on June 2, 2011, the Court overruled the demurrers to Aletheia's second amended complaint filed by Proctor's corporate affiliates. <u>Id.</u> at 53, 183, 194.

In 2011, Proctor amended its complaint in the California <u>Proctor</u> Litigation to add claims against Barnes, a founding director of Aletheia, and Bruce Lee, who had became Aletheia's Independent Director. Final Award at 69. The gravamen of these claims was that these director's "failure to assure that Aletheia performed its contractual [obligations] ***to Proctor*** (and no one else) constituted a breach of their fiduciary duties as directors." <u>Id.</u> at 71 (emphasis in original). Barnes and Lee, represented by O'Melveny, demurred to Proctor's fiduciary breach claims on the grounds that Proctor had brought claims for direct relief that could only be asserted derivatively. <u>Id.</u> at 69–70. On August 30, 2011, the court overruled the demurrer to the extent that Proctor was suing to enforce its own rights and not suing for the benefit of Aletheia as a corporation. <u>Id.</u> at 72, 147.

### 7. O'Melveny's Corporate Governance and Compliance Work

As noted, O'Melveny's representation of Aletheia and Eichler extended beyond the <u>Boskovich</u> and <u>Proctor</u> cases. As O'Melveny worked to resolve the SEC's investigation, it recommended that Aletheia and Eichler retain the services of FTI Consulting, a third-party consulting firm, "to conduct an independent review and evaluation of Aletheia's corporate governance and compliance procedures." Final Award at 109. In 2010, FTI began an investigation into Aletheia's operations, ultimately preparing comprehensive findings and recommendations by late July 2010. <u>Id.</u> at 110. As of May 11, 2011, Aletheia had implemented many of these recommendations, including creation of a compliance committee and corporate restructuring such that employees reported to their respective senior officers rather than directly to Eichler. <u>Id.</u> In agreeing to close its investigation into

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | November 1, 2019 |
|----------|--------------------------|------|------------------|
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP | | |

Aletheia, Eichler, and Peikin, the SEC specifically noted that "Aletheia hired an independent consultant . . . to evaluate its compliance practices and procedures, and Aletheia is implementing its recommendations." Final Award at 111 (internal citation omitted).

### 8. Olson and deNeve Join Aletheia as Officers

In 2011, Olson and deNeve left O'Melveny to assume management positions at Aletheia. Final Award at 9–10, 121. In April 2011, Olson became Aletheia's President and Chief Legal Officer, while deNeve became Aletheia's Senior Vice President and General Counsel. Compl. ¶ 44. Olson resigned from Aletheia in January 2012, later rejoining O'Melveny in August 2013. Id. ¶ 49. In September 2012, deNeve resigned from Aletheia and immediately rejoined O'Melveny. Id. ¶ 53.

### G. Aletheia Replaces O'Melveny in January 2012

Throughout the course of the California Proctor Litigation, O'Melveny pursued possible settlement options on Aletheia's behalf. Final Award at 53–54. Discussions continued through 2011, at which point Proctor and Aletheia reached an impasse. Id. at 55. Proctor proposed the creation of a limited liability company that would permanently receive revenue from Aletheia, further insisting that any settlement of the Proctor Litigation between Proctor and Aletheia also include resolution of Peikin's claims. Id. Once the parties failed to settle the case, O'Melveny conferred with Aletheia and Eichler regarding the costs of O'Melveny continuing as litigation counsel, and O'Melveny recommended that Aletheia substitute less expensive counsel for O'Melveny. Id. Freedman thereafter replaced O'Melveny in January 2012. Id.; Dkt. 85-2 at 529.

### H. Aletheia's Subsequent Financial Troubles, Bankruptcy Petition, and Resolution of the Proctor Litigation

After replacing O'Melveny as counsel, and while the California Proctor Litigation was ongoing, Aletheia filed for bankruptcy on November 11, 2012, in the United States Bankruptcy Court for the Central District of California. Final Award at 11. In December 2012, Golden was appointed Aletheia's bankruptcy trustee. Id. He thereafter negotiated a settlement with Proctor on behalf of Aletheia, granting Proctor "an allowed, non-subordinated, non-priority, general unsecured claim against the Aletheia estate in an amount equal to ***the greater of*** $21,775,000 or 60% of the total pool of non-subordinated, non-priority, general unsecured claims finally allowed[.]" Id. (emphasis in Final Award) (internal citation omitted). The Bankruptcy Court thereafter approved the settlement on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | November 1, 2019 |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP | | |

May 5, 2014.  See In re Aletheia Research & Mgmt., Inc., No. 2:12-bk-47718-BR (Bankr. C.D. Cal. May 5, 2014, Dkt. 598).  Golden, acting on behalf of Aletheia, thereafter commenced this action on November 10, 2014.  See Compl.

## I.    Arbitration Proceedings

On June 15, 2015, the Court compelled arbitration of Golden's professional negligence and breach of fiduciary duty claims against O'Melveny, Olson, and deNeve. Dkt. 30.  Golden subsequently filed an arbitration demand, attaching and designating the complaint in this case as his Statement of Claims.  Rosen Decl. ¶ 2.  Golden subsequently filed a revised Statement of Claims on September 25, 2015.  Id. ¶ 3.  The parties thereafter engaged in substantial discovery efforts and motion practice before the Arbitrator.

On June 22, 2016, Golden moved to disqualify Gibson Dunn as O'Melveny's counsel based on allegations that Gibson Dunn had previously represented Aletheia in connection with the California Proctor Litigation.  Dkt. 81, Declaration of Jerrold L. Bregman ("Bregman Decl.") ¶ 12.  The Arbitrator denied Golden's motion to disqualify Gibson Dunn on November 22, 2016, determining that Gibson Dunn had previously represented *O'Melveny*, not Aletheia, as *O'Melveny* sought "advice and assistance" in responding to Peikin's various efforts to disqualify O'Melveny during the California Proctor Litigation. Dkt. 81-1, Exhibit 10 ("Ex. 10") at 423, 445.

On February 23, 2017, Golden moved for summary disposition of his claims against O'Melveny, contending that the claims present questions of law based on uncontested material facts.  Bregman Decl. ¶ 10.  O'Melveny filed an opposition on March 10, 2017, seeking to stay proceedings on the motion to allow it to conduct discovery.  Id. ¶ 11. Golden filed a reply on March 24, 2017.  Id.  On April 11, 2017, the Arbitrator granted O'Melveny's request to take discovery.  Dkt. 81-1, Exhibit 7 ("Ex. 7") at 357.

On July 24, 2017, the Arbitrator disclosed to the parties that his son, then a student in law school, was seeking employment as a summer associate with a number of law firms including O'Melveny and Gibson Dunn.  Dkt. 81-1, Exhibit 11 ("Ex. 11") at 447.  In making this disclosure, the Arbitrator noted that "[i]f either of counsel has any question or comment regarding these matters," they should "feel free to email me or to bring them up during the conference call on August 2."  Id.  Golden responded by letter on July 25, 2017, requesting that the Arbitrator recuse himself.  Bregman Decl. ¶ 13.  O'Melveny opposed Golden's request in its own letter dated July 28, 2017, contending that "your son's hypothetical employment at either Gibson Dunn or O'Melveny & Myers is not a valid basis for your disqualification."  Dkt. 81-1, Exhibit 13 ("Ex. 13") at 452.  O'Melveny's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**　　　　**'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | November 1, 2019 |
|----------|-------------------------|------|------------------|
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP | | |

opposition noted that, "given [Golden]'s position—notwithstanding O'Melveny's strenuous objection to it—O'Melveny has resolved that it will not offer employment to your son. Gibson Dunn will not do so either." Ex. 13 at 454. On August 1, 2017, Golden responded that the "unilateral action [of O'Melveny and Gibson Dunn] in terminating Your Honor's son's employment prospects at their law firms, even before interviewing him[,] . . . was a tactical maneuver to negatively inflame Your Honor's passions against [Golden] . . . creat[ing] a greater apparent conflict and basis for partiality than previously existed." Dkt 81-1, Exhibit 14 ("Ex. 14") at 456. On August 28, 2017, the Arbitrator denied Golden's recusal motion, finding that the firms' decisions not to consider the Arbitrator's son for employment had mooted any basis for recusal, and noting that the Arbitrator did not "hold a grudge against either party—[Golden] for raising the issue and [O'Melveny] for not holding to its insistence that [Golden]'s position was unfounded[.]" Dkt. 81-1, Exhibit 16 ("Ex. 16") at 470–71.

On August 17, 2018, Golden brought a second motion for summary disposition. Bregman Decl. ¶ 16. The Arbitrator denied this motion on October 18, 2018, finding that "the litigation record shows, at the very least, that the conflict question cannot be resolved in favor of [Golden] based on the face of" Proctor's complaint in the New York <u>Proctor</u> Litigation and Proctor's cross-complaint in the California <u>Proctor</u> Litigation. Dkt. 81-1, Exhibit 25 ("Ex. 25") at 648.

O'Melveny proffered John Spiegel as its expert witness on the legal standard of care owed to clients. Rosen Decl. ¶ 14. Golden thereafter moved to disqualify the Arbitrator based on an alleged pre-existing relationship between Spiegel and the Arbitrator. <u>Id.</u> The Arbitrator denied the disqualification motion on September 17, 2018, finding that although he and Spiegel both participated in the Christopher Commission's investigation into the Los Angeles Police Department, "there was nothing at all about Mr. Spiegel's role in that project that could have any bearing on any issue in this case, including the evaluation of any testimony that he may have to offer." Dkt. 84-10 at 3.

The Arbitration Hearing began on November 5, 2018 and concluded on November 29, 2018, spanning twelve days of proceedings. Final Award at 5. The parties presented closing arguments to the Arbitrator on March 20, 2019. <u>Id.</u> After closing argument but before issuing the Final Award, the Arbitrator notified Golden and O'Melveny that the parties in another case in which Gibson Dunn was counsel had requested the appointment of the Arbitrator. Dkt. 81-1, Exhibit 26 ("Ex. 26") at 650. The Arbitrator subsequently issued his corrected Final Award on August 22, 2019, giving rise to the present motions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | November 1, 2019 |
|----------|-------------------------|------|------------------|
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP | | |

## III.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") embodies a strong federal policy favoring arbitration.  Samson v. NAMA Holdings, LLC, 637 F.3d 915, 923 (9th Cir. 2011).  As a result, "judicial review of an arbitrator's decision is both limited and highly deferential." Barnes v. Logan, 122 F.3d 820, 821 (9th Cir. 1997) (internal citation and quotation marks omitted).  Indeed, a district court may set aside an arbitrator's decision "only in very unusual circumstances."  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942 (1995).

Section 9 of the Federal Arbitration Act requires a district court to confirm an arbitration award unless "the award is vacated, modified, or corrected[.]"  9 U.S.C. § 9. Section 10 of the FAA "provides the exclusive means by which a court reviewing an arbitration award under the FAA may grant vacatur of a final arbitration award[.]"  Biller v. Toyota Motor Corp., 668 F.3d 655, 664 (9th Cir. 2012).  Pursuant to Section 10, a district court may vacate an arbitration award:

> **(1)** where the award was procured by corruption, fraud, or undue means;
>
> **(2)** where there was evident partiality or corruption in the arbitrators, or either of them;
>
> **(3)** where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> **(4)** where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  "If the Court finds no basis to vacate, modify, or correct the arbitration award, the Court must confirm the award."  Voltage Pictures, LLC v. Gulf Film, LLC, No. 18-cv-00696-VAP-SK, 2018 WL 2110937, at *5 (C.D. Cal. Apr. 17, 2018) (internal citation omitted).  "Confirmation is required even in the face of erroneous findings of fact or misinterpretations of law."  Daniels v. Painter, No. 16-cv-3782-RSWL-E, 2018 WL 3486999, at *3 (C.D. Cal. July 16, 2018) (internal punctuation omitted) (citing French v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 784 F.2d 902, 906 (9th Cir. 1986)).

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | November 1, 2019 |
|---|---|---|---|
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP | | |

## IV.    DISCUSSION

### A.    Enforcing the Final Award Does Not Violate Public Policy

Golden seeks vacatur of the Final Award on the grounds that enforcing it "would result in the violation of an explicit, clearly applicable and well defined public policy[.]" Golden Mot. at 9.  In particular, Golden asserts that enforcing the award would violate California's public policy against "an attorney contract that has as its object conduct constituting a violation of the Rules of Professional Conduct[.]"  Id. at 11.

### 1.    The Public Policy Exception in Commercial Cases

As a preliminary matter, O'Melveny contends that "[t]here is no public policy exception under the FAA."[4]  O'Melveny Opp. at 11. n.3.  Because the Court ultimately concludes that, to the extent that any public policy exception exists, the exception does not require vacatur of the Final Award, the Court need not reach this question to resolve the parties' motions.

In Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173, Int'l Ass'n of Machinists & Aerospace Workers, the Ninth Circuit recognized that "a court need not, [and] in fact cannot, enforce an [arbitration] award which violates public policy."  886 F.2d 1200, 1209 (9th Cir. 1989) (en banc).  In that case, the Ninth Circuit considered whether an arbitration award, subject to judicial review pursuant to Section 301 of the Labor

---

[4]     O'Melveny also argues that, to the extent a public policy exception exists, Golden "***never*** raised the issue of illegality with the Arbitrator and therefore waived it." O'Melveny Opp. at 11 (emphasis in original).  The cases that O'Melveny relies on are inapposite, however, because they consider whether, *in the first instance*, a court or the arbitrator must decide whether a contract containing an arbitration provision is illegal, and thus whether the dispute is *subject to arbitration*.  See, e.g., Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 449 (2006) ("regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator.").  Here, Golden's challenge is *not* that the dispute was erroneously sent to arbitration because the Engagement Letters containing the arbitration provisions are illegal as void against public policy.  Instead, Golden's challenge is that *enforcing* the Arbitrator's Final Award would contravene public policy because doing so would allow O'Melveny to retain funds earned during a conflicted representation.  Golden Mot. at 16.  Accordingly, the Court concludes that Golden has not waived his public policy argument.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | November 1, 2019 |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP | | |

Management Relations Act ("LMRA"), 29 U.S.C. § 185, should be vacated on the basis that the award requiring an employee's reinstatement violated public policy. Id. at 1212. Courts have since primarily applied this "public policy exception" in those cases where a party seeks vacatur, pursuant to the *LMRA*, of an award entered following arbitration of a *labor* dispute. See, e.g., Aramark Facility Servs. v. Serv. Employees Int'l Union, Local 1877, AFL CIO, 530 F.3d 817, 823 (9th Cir. 2008) (award entered following arbitration pursuant to union's collective bargaining agreement); Matthews v. Nat'l Football League Mgmt. Council, 688 F.3d 1107, 1111 (9th Cir. 2012) (award entered following arbitration pursuant to National Football League's collective bargaining agreement); Sprewell v. Golden State Warriors, 266 F.3d 979, 987 (9th Cir. 2001) (award entered following arbitration pursuant to National Basketball Association's collective bargaining agreement).

The Court observes that Golden seeks vacatur of the Final Award pursuant to a different statutory scheme, the *FAA*. Although most of the cases considering the public policy exception arise in the context of arbitration decisions made reviewable by the LMRA, the Ninth Circuit has considered the exception in the context of arbitration decisions subject to judicial review under the FAA. See, e.g., U.S. Life Ins. Co. v. Ins. Comm'r of California, 160 F. App'x 559, 563 (9th Cir. 2005); Lagstein v. Certain Underwriters at Lloyd's, London, 607 F.3d 634, 641 n.4 (9th Cir. 2010). The Ninth Circuit has done so where a party sought vacatur of an award issued following the arbitration of legal malpractice claims. See DeMartini v. Johns, 693 F. App'x 534, 537 (9th Cir. 2017) (affirming denial of attorneys' motion to vacate arbitration award on public policy grounds where arbitrator entered award in favor of former client, attorneys alleged that former client had perjured himself, and attorneys contended that enforcing the award would therefore violate public policy against perjury).

In Hall Street Associates, L.L.C. v. Mattel, Inc., however, the United States Supreme Court held that "§§ 10 and 11 respectively provide the FAA's *exclusive* grounds for expedited vacatur and modification." 552 U.S. 576, 584 (2008) (emphasis added). And, in the context of construing another judicially-created exception to the FAA, the "wholly groundless" exception, the Supreme Court recently noted, with respect to Section 10 specifically, that "Congress designed the [Federal Arbitration] Act in a specific way, and it is not our proper role to redesign the statute." Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 530 (2019).

But, given the absence of controlling authority "suggesting that the judicially-created public policy defense is unavailable" in the Ninth Circuit in cases where an arbitration decision is subject to judicial review pursuant to the FAA, the Court proceeds

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | November 1, 2019 |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP | | |

to evaluate Golden's challenge, on public policy grounds, of the Final Award. See Immersion Corp. v. Sony Computer Entm't Am. LLC, 188 F. Supp. 3d 960, 969 (N.D. Cal. 2016) (noting majority of caselaw applying public policy exception in LMRA context but considering public policy challenge in FAA context because "[t]he court is not aware of any [contrary] authority in this circuit[.]"). To prevail on his public policy challenge of the Final Award, Golden must demonstrate that: "(1) an explicit, well defined, and dominant policy exists and (2) that the policy is one that specifically militates against the relief ordered by the arbitrator." Fund Raising, Inc. v. Alaskans for Clean Water, Inc., No. 2:09-cv-04106-AHM-VBK, 2012 WL 2456255, at *2 (C.D. Cal. June 26, 2012). Construing these factors, the Court determines that enforcing the Final Award would *not* violate public policy.

### 2.    California's Public Policy Against Conflicted Representations

To vacate the Final Award on public policy grounds, Golden must first point to the existence of "a public policy that is 'explicit,' 'well-defined,' and 'dominant' as 'ascertained by reference to the laws and legal precedents and not from general considerations of proposed public interest.'" S. California Gas Co. v. Util. Workers Union of Am., Local 132, AFL-CIO, 265 F.3d 787, 794–95 (9th Cir. 2001) (internal citation omitted). Here, Golden identifies the relevant public policy as "the lawyers' duty of undivided loyalty, enshrined in Rule 3-310(C), which bars undisclosed/unwaived conflicts of interest." Golden Mot. at 4.

During the course of O'Melveny's representation, California Rule of Professional Conduct 3-310(C) was in effect.[5] The Rule provided that an attorney shall not, without the informed written consent of each client:

**(1)** Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or

---

[5]    On November 1, 2018, California adopted new rules of professional conduct, which include both renumbering and substantive changes, and Rule 1.7 now encompasses the obligations previously set forth in Rule 3-310(C) regarding conflicts of interest between current clients. See Cal. R. Prof. Cond. 1.7. The parties agree that the previous standards, as set forth in Rule 3-310, govern this dispute. Golden Mot. at 4; O'Melveny Opp. at 13 n.5.

**(2)** Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or

**(3)** Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter.

United States for Use & Benefit of Bergelectric Corp. v. Sauer, Inc., No. 5:18-cv-00612-EJD, 2018 WL 6619981, at *2 (N.D. Cal. Dec. 18, 2018). Moreover, the Rules of Professional Conduct constitute "the set of binding rules governing the ethical practice of law in the State of California." Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co., 6 Cal. 5th 59, 73 (2018). The California Supreme Court has recognized that, although "questions of public policy are primarily for the legislative department to determine, . . . a contract or transaction may be found contrary to public policy even if the Legislature has not yet spoken to the issue." Id. (internal citation and quotation marks omitted). As such, the Rules of Professional Conduct "are not only ethical standards to guide the conduct of members of the bar; but they also serve as an expression of public policy to protect the public." Id. at 74 (internal citation omitted). Accordingly, "[i]t follows that an attorney contract that has as its object conduct constituting a violation of the Rules of Professional Conduct is contrary to the public policy of this state and is therefore unenforceable." Id.

In light of the California Supreme Court's recognition that the Rules of Professional Conduct represent an "expression of public policy" and that an attorney retainer agreement which violates these Rules violates this public policy, the Court finds that Golden has sufficiently identified a relevant public policy as the basis for his public policy challenge to the Final Award. See Aramark, 530 F.3d at 824 (finding party seeking vacatur had sufficiently identified existence of public policy based on statute, "its implementing regulations, and Supreme Court case law interpreting it.").

### 3. Public Policy Does Not Strongly Militate Against Enforcement

With respect to the second prong, Golden contends that "California's public policy . . . prohibiting undisclosed and unwaivable/unwaived conflicts of interest militates against the relief adjudged by the Final Award, which allows O'Melveny to retain all of its fees from or on behalf of Aletheia for the Proctor Litigation[.]" Golden Mot. at 16. In response, O'Melveny contends that Golden may not "us[e] the public policy exception to bootstrap a merits review" and that "[t]he evidence conclusively established there was no actual or potential conflict in O'Melveny's joint representation of Aletheia and Eichler in the Proctor Litigation[.]" O'Melveny Opp. at 12–13.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | November 1, 2019 |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP | | |

To satisfy the public policy exception's second prong, the Court "must find that the *relief* ordered by the arbitrator is contrary to a well-defined and dominant public policy." Fund Raising, 2012 WL 2456255, at *3 (emphasis in original). For example, in Aramark, the Ninth Circuit considered whether an arbitrator's order requiring that an employer *reinstate* employees it terminated for suspicion of violating immigration law contravened public policy against *hiring* undocumented workers. 530 F.3d at 831–832. Similarly, in United Food & Commercial Workers Int'l Union, Local 588 v. Foster Poultry Farms, the Ninth Circuit considered whether an arbitrator's order requiring that an employer *reinstate* drivers it discharged for failing drug tests violated public policy where United States Department of Transportation regulations merely "articulate[d] a 'well defined and dominant' public policy prohibiting employees who test positive for drug use from *driving* commercial motor vehicles." 74 F.3d 169, 174–75 (9th Cir. 1995) (emphasis in original). In evaluating a request for vacatur on public policy grounds, "[t]he court must focus on the award itself, not the behavior or conduct of the party in question." S. California Gas Co., 265 F.3d at 795.

Here, Golden contends that "the Final Award ignores and violates the public policy embedded in Rule 3-310(C) as it has been universally interpreted and enforced in California[.]" Golden Mot. at 5. Golden asserts that vacatur is appropriate because "the relief adjudged by the Final Award . . . rejects claims for O'Melveny's *per se* breach of the duty of loyalty arising from its conflicted representation based on the fallacious finding of no conflict." Id. at 16. To the extent that Golden's challenge is premised on the Arbitrator's purported misapplication of California's public policy regarding attorney conflicts of interest, Golden's challenge is based on his disagreement with the Arbitrator's findings and conclusions regarding the absence of a violation of the rule governing conflicts of interest, and thus sounds in the "manifest disregard" exception to the FAA, *not* the public policy exception. See Fund Raising, 2012 WL 2456255, at *4 (finding that public policy exception did not apply because, "where, as here, the challenge to an arbitration award is to the legal reasoning employed by the arbitrator—as opposed to the relief ordered by the arbitrator—the manifest disregard standard applies."); see also Aramark, 530 F.3d at 823 ("In reviewing an arbitral award for possible violations of public policy a court is not authorized to revisit or question the fact-finding or *the reasoning* which produced the award.") (emphasis added and internal punctuation omitted) (citing Int'l Bhd. of Elec. Workers, Local 97 v. Niagra Mohawk Power Corp., 143 F.3d 704, 716 (2d Cir.1998)).

Golden's contention that the Final Award contravenes public policy against conflicted representations because it "allows O'Melveny to retain all of its fees from or on

| | | | |
|---|---|---|---|
| **CIVIL MINUTES – GENERAL** | | | **'O'** |
| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | November 1, 2019 |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP | | |

behalf of Aletheia for the Proctor Litigation" likewise assumes that the Arbitrator's award misapplied California law. Golden Mot. at 16. Golden's argument appears to be that because the Final Award concluded O'Melveny was *not* conflicted, O'Melveny is therefore free to retain any payments it received from Aletheia during the course of its representation, which vitiates California's policy against conflicted representations because O'Melveny's representation *was* conflicted. However, even assuming that O'Melveny was conflicted in its representation of Aletheia, California's public policy against conflicted representations does not "specifically militate" against the Final Award.[6] In Sheppard Mullin, a case on which Golden principally relies, the California Supreme Court noted "that California law does not establish a bright-line rule barring all compensation for services performed subject to an improperly waived conflict of interest, no matter the circumstances surrounding the violation." 6 Cal. 5th at 89. Thus, because California law does not categorically bar compensation for legal services performed during a conflicted representation, the Court cannot say that enforcing the Final Award and allowing O'Melveny to retain fees earned during an allegedly conflicted representation violates public policy. See Foster Poultry Farms, 74 F.3d at 174 ("Because the DOT regulations do not make it illegal to reinstate employees who test positive for drug use, it *cannot* be said that the DOT regulations specifically militate against the relief ordered by the arbitrator in this case.") (emphasis in original) (internal citation and punctuation omitted). But, more importantly, Golden's public policy arguments are premised on challenges to the Arbitrator's decision finding that there was no conflict and his conclusion that there was no violation of the Rules of Professional Conduct. These challenges, made in the guise of arguments regarding public policy, are, as explained below, impermissible challenges to the Arbitrator's findings of fact and conclusions of law as erroneous.

### B. The Final Award Does Not Manifestly Disregard California Law

Golden also asserts that "the Final Award should be vacated for its manifest disregard of the law." Golden Mot. at 5. "The manifest disregard exception requires something beyond and different from a mere error in the law or failure on the part of the

---

[6] The Final Award concludes that "[b]ecause [Golden] failed to prove any of his claims against Respondents or to prove that any of his claims caused injury and damage, the Arbitrator *need not and does not reach* [the] issue of *collectability and disgorgement*." Final Award at 129 (emphases added).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | November 1, 2019 |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP | | |

arbitrators to understand and apply the law."[7] <u>Collins v. D.R. Horton, Inc.</u>, 505 F.3d 874, 879 (9th Cir. 2007) (internal citation omitted). Indeed, the exception imposes "a very stringent standard." <u>Bear, Stearns & Co. v. Buehler</u>, 432 F. Supp. 2d 1024, 1026 (C.D. Cal. 2000) (internal citation and quotation marks omitted). "To vacate an arbitration award on this ground, it must be clear from the record that the arbitrator[] recognized the applicable law and then ignored it." <u>Lagstein</u>, 607 F.3d at 641 (internal citation and punctuation omitted). Golden identifies three bases which he asserts establish that the Arbitrator manifestly disregarded California law. The Court addresses each in turn.

### 1. The Final Award's Application of California Law on Conflicts of Interest

Golden first asserts that the Arbitrator "recognized the applicable law that a conflict of interest requires disclosure and, if subject to waiver, informed written consent, but ignored that law." Golden Mot. at 17. The crux of Golden's claim is that O'Melveny breached its fiduciary duty to Aletheia by engaging in the joint representation of Aletheia, Eichler, Peikin, and other Aletheia directors in the <u>Proctor</u> Litigation, despite Proctor's allegations that: (1) Eichler and Peikin injured Aletheia by taking excessive compensation; and (2) and these other directors likewise harmed Aletheia by failing to take action to redress that excessive compensation. <u>Id.</u> at 1–3. Therefore, according to Golden, O'Melveny's joint representation "created an actual conflict of interest between the co-defendants because it meant that O'Melveny was representing both the looters (Eichler and Peikin) and the looted (Aletheia)."[8] Final Award at 63. Golden further contends that, in

---

[7]     In <u>Hall</u>, the United States Supreme Court held that "§§ 10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification." 552 U.S. at 584. The Ninth Circuit has held, however, that the Supreme Court's decision in <u>Hall</u> does not displace the "manifest disregard" exception because the exception "is shorthand for a statutory ground under the FAA, specifically 9 U.S.C. § 10(a)(4), which states that the court may vacate 'where the arbitrators exceeded their powers.'" <u>Comedy Club, Inc. v. Improv W. Assocs.</u>, 553 F.3d 1277, 1290 (9th Cir. 2009).

[8]     During oral argument, Golden urged that O'Melveny's concurrent representation of Eichler and Peikin presents a conflict of interest more egregious than that in <u>State Comp. Ins. Fund v. Drobot</u>, 192 F. Supp. 3d 1080 (C.D. Cal. 2016). In that case, a law firm represented an insurer in its civil action against medical providers who allegedly defrauded the insurer. <u>Drobot</u>, 192 F. Supp. 3d at 1090. At the same time, the law firm also represented one of the accused providers in the provider's criminal proceeding.

**CIVIL MINUTES – GENERAL**    **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | November 1, 2019 |
|---|---|---|---|
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP | | |

determining that there was no conflict, the Arbitrator manifestly disregarded the applicable law because, "[i]nstead of focusing on the substance of the allegations (harm to the corporation at the hands of [Eichler, Peikin, and the directors])," the Arbitrator "improperly focused on the form of the action (direct), thus limiting conflicts solely to derivative claims denominated as such and rendering the allegations irrelevant in contravention of settled law." Golden Mot. at 18.

To determine whether the Arbitrator manifestly disregarded the law, the Court first must look to the law that the Arbitrator applied. For the purposes of identifying whether a conflict of interest exists between a corporation and its officers or directors, the Arbitrator *first* distinguished between derivative and non-derivative suits. Final Award at 64–80. The Arbitrator noted that in a derivative suit, "recovery is sought *for* the corporation *from* the alleged faithless officer co-defendants, which puts their interests in conflict even though both are named as defendants in the case." Id. at 65 (emphasis in original). Thus, "where a shareholder plaintiff sues derivatively, joint representation of the corporation and officer/directors accused of malfeasance is barred because the corporation is necessarily seeking a recovery from those officers/directors." Id. Golden does not appear to contend that the Arbitrator manifestly disregarded the law by *initially* focusing on the distinction between derivative and direct suits as the *starting point* for determining whether O'Melveny engaged in an actual conflict.[9] See Forrest v. Baeza, 58 Cal. App. 4th 65, 74

---

Drobot, 192 F. Supp. at 1086. The defendants in the civil action subsequently filed a third-party complaint seeking indemnity from other parties, including the accused provider. Id. at 1085. The court held that "the duty of loyalty is improperly and impermissibly compromised when one law firm represents—at the same time, in the same litigation, in the same courthouse—a criminal and his victim." Id. at 1084. That case, which involves the simultaneous representation, by one law firm, of the accused provider in a criminal case *and* the victim plaintiff in a related civil case, where the accused provider is also a third-party defendant, does not control. In a civil shareholder action like this one, the proper inquiry, for conflict of interest purposes, is whether the shareholder's claims are direct, derivative, or derivative in nature. And, as the Court ultimately concludes, the Arbitrator did not "manifestly disregard" the law in conducting this inquiry.

[9]    See also La Jolla Cove Motel & Hotel Apartments, Inc. v. Superior Court, 121 Cal. App. 4th 773, 785–86 (2004) ("where a shareholder has filed an action questioning its management or the actions of individual officers or directors, such as in a shareholder derivative or the instant dissolution action, corporate counsel cannot represent both the corporation and the officers, directors or shareholders with which the corporation has a

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | November 1, 2019 |
|---|---|---|---|
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP | | |

(1997) ("Current case law clearly forbids dual representation of a corporation and directors in a shareholder derivative suit, at least where, as here, the directors are alleged to have committed fraud.").

Instead, Golden contends that the Arbitrator disregarded caselaw "that the proscriptions [against joint representation] applicable in derivative actions apply with equal force in shareholder direct actions that contain *allegations* that are *derivative in nature* . . . even when the relief sought is not on behalf of the corporation." Golden Mot. at 17–18 (emphases added). Put differently, Golden asserts that the Final Award runs afoul of California law because "[e]ven if no derivative lawsuit was filed, joint representation may be prohibited where the shareholder's claim is derivative in nature—e.g., harm to the corporation is alleged." Id. at 12 (citing Paul W. Vapnek, et al., Rutter Group Cal. Prac. Guide. Prof. Resp. § 4:93.1 (Sept. 2017 Update)). As such, Golden argues that the Arbitrator erred by declining to find that Proctor's claims were derivative in nature since "the Proctor Looting Allegations alleged harm to Aletheia, as the corporation is considered the true victim in claims of excess compensation" and because "there clearly was a ripe dispute over the control of the corporation and whether Lee was properly appointed as a director." Golden Mot. at 12–13. The Final Award "disregard[s] the factual allegations made by Proctor (the substance) and focus[ed] exclusively on the relief sought by Proctor, concluding that the Proctor Looting Allegations did not give rise to a conflict . . . because Proctor pursued recovery only for itself despite its allegations of harm to Aletheia." Id. at 17.

Golden's "derivative in nature" argument relies on the premises that "*the factual allegations* of the Proctor complaints *control the analysis*, that those allegations show that the Proctor [complaints] alleged harm to the corporation, and that the interests of Aletheia and Eichler were therefore adverse." Final Award at 66 (emphases added). In support of this argument, Golden points to the California Court of Appeal's opinions in Gong v. RFG Oil, Inc., 166 Cal. App. 4th 209 (2018), Havasu Lakeshore Investments, LLC v. Fleming, 217 Cal. App. 4th 770 (2013), M'Guinness v. Johnson, 243 Cal. App. 4th 602 (2015), and Coldren v. Hart, King & Coldren, Inc., 239 Cal. App. 4th 237 (2015). See Mot. at 17. In

conflict of interest."); accord Mark L. Tuft, et al., Rutter Group Cal. Prac. Guide. Prof. Resp. § 4:92.3 (Dec. 2018 Update) ("An attorney may not concurrently represent the corporation (or other business entity) and an individual officer, director or shareholder in litigation where a conflict between their interests exists (even with consent), *such as in shareholder derivative lawsuits*.") (emphasis added).

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | November 1, 2019 |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP | | |

rejecting Golden's contentions that the Proctor allegations were "derivative in nature" sufficient to create an actual and inherent conflict between Aletheia and Eichler, the Arbitrator considered (and distinguished) three of these cases:

\* \* \*

*Gong* involved a motion to disqualify counsel in phase 2 of a case where the corporation and its majority shareholder were ***jointly represented*** in phase 1. Because the court did not look to the pleadings at all until *after* the case had been partially tried, it does not support the proposition that adversity can be assessed on the basis of a complaint's factual allegations.

\* \* \*

In *Coldren*, a former partner sued his former law firm and one of its partners for damages allegedly arising out of the termination of his relationship with the firm. . . . In words that could have been written for this case, the appellate court wrote: . . . '[attorney] sued both [law firm] and [partner]—directly, not derivatively—on essentially the same claims. He is seeking over $8 million in damages against both. [Partner]'s interest is perfectly aligned with [law firm]'s interest in seeing [attorney]'s claims defeated.

\* \* \*

*Havasu Lakeshore* . . . conducted a similar analysis and reached a similar result. . . . It held that there was no actual conflict because unlike *Gong,* the dispute did not involve a derivative claim, a dissolution claim, or their substantive equivalent.

Final Award at 67–69 (emphases in original).

In light of the foregoing, the Court cannot say that the Arbitrator's conclusion that "[t]hese cases demonstrate that the question of conflict is to be determined not simply on a review of the factual allegations of the pleadings, but on the claims presented and the relief sought" constitutes a manifest disregard of the law. Final Award at 69. Here, even if the allegations in Proctor's complaints described claims that were derivative in nature, the relief Proctor was seeking was not. Indeed, Proctor repeatedly made clear that it sought relief on behalf of itself, not on behalf of Aletheia. Cf. Grosset v. Wenaas, 42 Cal. 4th 1100, 1114 (2008) ("If successful, a derivative claim will accrue to the direct benefit of the corporation and not to the stockholder who litigated it."). For example, Proctor acknowledged that its claims were "direct because we've always alleged harm to and a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | November 1, 2019 |
|----------|-------------------------|------|------------------|
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP | | |

recovery for Proctor, not harm to the corporation and a recovery by the corporation." Id. at 72 (citing Trial Exhibit 1147). During the hearing on the demurrers to Proctor's first amended complaint, counsel for Proctor expressly reiterated that:

> Proctor is *not saying* in its complaint anywhere *the company has suffered harm*. Recover money into the company. Proctor is not saying there was excessive fees paid out and compensation paid out, and *that money should* flow *back into Aletheia* because Aletheia would be a stronger, better company.

Final Award at 75 (citing Trial Exhibit 1147) (emphases added).

On these facts, and given Proctor's own representations that any relief would flow to Proctor, rather than Aletheia, the Arbitrator did not reach any conclusions that demonstrate an error of law, let alone manifest disregard of the law. See Coldren, 239 Cal. App. 4th at 246–47 (rejecting plaintiff's contention that his suit was a derivative action because plaintiff "seeks $8 million in damages from HKC. If he prevails, the damages will not go to the benefit of HKC; quite to the contrary, HKC will have to pay the damages to [plaintiff]. [Plaintiff's] lawsuit is not a derivative suit in any sense."). Moreover, Golden's allegation that the Arbitrator *misapplied* these cases is insufficient so as to require vacatur pursuant to the manifest disregard standard. See Laughlin v. VMWare, Inc., No. 5:11-cv-00530-EJD, 2012 WL 6652487, at *5 (N.D. Cal. Dec. 20, 2012) ("Even if the arbitrator erroneously applied or misunderstood the relevant law, that would not be enough to constitute a 'manifest disregard of the law' such that the arbitrator exceeded her decisionmaking authority."); cf. Brayton Purcell LLP v. Recordon & Recordon, No. C-04-4995 EMC, 2007 WL 420122, at *2 (N.D. Cal. Feb. 6, 2007) ("If an arbitrator, for example, stated the law, acknowledged that he was rendering a decision contrary to the law, and said that he was doing so because he thought the law unfair, *that* would be an instance of 'manifest disregard.'") (citing Lincoln Nat'l Life Ins. Co. v. Payne, 374 F.3d 672, 674 (8th Cir.2004)) (emphasis added).

An additional point bears mention. Golden urges that "*Gong* should be read for the narrow proposition that where a ***plaintiff's allegations*** are essentially derivative in nature, the failure to label them as such ***may still prohibit dual representation*** of the corporation and defendant shareholder[.]" Golden Mot. at 11 (emphases in original) (citing Coldren, 239 Cal. App. 4th at 251). Even assuming, *arguendo*, that Golden's statement of the law, that a pleading's *allegations* control whether claims are "derivative in nature" sufficient to create an actual conflict, is correct, the Court cannot say that the Arbitrator's findings and conclusions that Proctor's claims were *not* derivative in nature constitutes a manifest

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | November 1, 2019 |
|----------|-------------------------|------|------------------|
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP | | |

disregard of the law. Golden points to: (1) allegations in Proctor's complaint in the New York <u>Proctor</u> Litigation that "Aletheia Management, Eichler, and Pekein have all breached their fiduciary duties to Proctor IM and all other non-employee minority shareholders"; and (2) allegations in Proctor's complaint challenging the election of Bruce Lee as Aletheia's Independent director that "this action will also benefit all other minority shareholders of Aletheia[.]" Golden Reply at 15 n.5.; Trial Ex. 4 at 17; Dkt. 85-1, Trial Exhibit 9 ("Trial Ex. 9") at 94. For one, a suit which seeks recovery on behalf of minority shareholders for harm to these shareholders, rather than the corporation as a whole, is a *direct* suit. <u>See</u> <u>Jones v. H. F. Ahmanson & Co.</u>, 1 Cal. 3d 93, 107, 460 P.2d 464, 470 (1969) (finding that securities action was direct suit because "[i]t is clear from the stipulated facts and plaintiff's allegations that she does not seek to recover on behalf of the corporation for injury done to the corporation by defendants. . . . Thus, the gravamen of her cause of action is injury to herself and the other minority shareholders.").

Moreover, as the Arbitrator recognized, the various Proctor pleadings contain inconsistent allegations. For example, Proctor's cross-complaint against Aletheia in the California <u>Proctor</u> Litigation, filed on January 18, 2011, contained the allegation that "[t]he *injury* that resulted from Eichler's and Pekin's breaches of fiduciary duty *is to Proctor IM, not to Aletheia* as a corporate entity. As a result, the breach of fiduciary duty claims asserted herein are *direct claims* of Proctor IM and *not derivative claims*." Dkt. 85-1, Trial Exhibit 27 ("Trial Ex. 27") at 216 (emphases added). The Ninth Circuit has held that "[i]n some circumstances, . . . legally dispositive facts are so firmly established that an arbitrator cannot fail to recognize them without manifestly disregarding the law." <u>Coutee v. Barington Capital Grp., L.P.</u>, 336 F.3d 1128, 1133 (9th Cir. 2003). The Proctor pleadings which, despite Golden's assertions, at least in part disclaim any derivative theory, do not present such circumstances.

### 2. The Final Award's Application of California Law on Duty of Disclosure

Golden also contends that the Final Award manifestly disregards California law in a second respect. According to Golden, "the Final Award . . . disregards . . . settled California law that the client, not the attorney, is the master of all substantive determinations, mandating O'Melveny make full disclosure of material information—such as Aletheia's rights to recoup the excess compensation—with its failure to do so tantamount to constructive fraud." Golden Mot. at 5. The crux of Golden's claim is that the Arbitrator erred in declining to find that O'Melveny breached the duty of disclosure by failing to advise of its potential right to seek recovery from Eichler, Peikin, and other allegedly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | November 1, 2019 |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP | | |

malfeasant directors in light of Proctor's allegations that these individuals engaged in wrongdoing. Id. at 18–21.

The Arbitrator considered and rejected Golden's argument that O'Melveny's alleged omissions give rise to a claim for breach of the duty of disclosure, concluding that "[t]he issues raised by [Golden] are more properly analyzed under the duty to advise and the duty to alert." Final Award at 95. Accordingly, the Arbitrator proceeded to analyze Golden's claims in the context of *both* these duties. See id. at 96–104. With respect to the duty to advise, the Arbitrator concluded that "O'Melveny had no duty to ***advise*** Aletheia regarding claims that could be brought against Eichler and Peikin, whether those claims should be brought, or how the representation would be affected if in fact Aletheia determined to bring such claims or on any other matters outside the scope of the retention," but that in any event, "the evidence . . . shows that Aletheia's senior management . . . received advice regarding Aletheia's potential claims against Eichler and Peikin." Id. at 98–99 (emphasis in original). As to the duty to alert, the Arbitrator concluded that "it is not clear that a duty to alert had arisen" but that "it is not necessary to reach this issue because Aletheia was in fact alerted to the existence of the claims of excessive compensation and the potential consequences arising from those claims." Id. at 99.

The record therefore does not support Golden's contention that the Arbitrator reached his determinations based on erroneous expert testimony that "the disclosure obligation does not arise if the lawyer himself determines the client would not take action based on the disclosure." Golden Mot. at 20. To the contrary, the Arbitrator concluded that O'Melveny satisfied the duties to advise and alert, assuming these duties ever arose in the first place. The Arbitrator did so by relying on documentary evidence and deNeve's hearing testimony, both relating primarily to the period during which deNeve had left O'Melveny to serve as Aletheia's General Counsel. Final Award at 99–104. The Arbitrator specifically determined that "the excessive compensation issue . . . was repeatedly discussed with Aletheia's senior management, its directors including the outside director, and even with . . . shareholders who attended the [August 2011 Aletheia firm] retreat." Id. at 103–04. The manifest disregard exception does not authorize the Court to re-weigh this evidence. See Coutee, 336 F.3d at 1134 (declining to vacate on manifest disregard basis because "[t]he arbitrators considered this factual dispute and resolved it in favor of [non-movants]. We have no authority to re-weigh the evidence . . . [and] cannot conclude that the arbitrators manifestly disregarded the law[.]"). Accordingly, based on the Arbitrator's determinations that these duties were met, the Court declines to vacate the Final Award for manifest disregard of the law concerning the duties to advise and alert.

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | November 1, 2019 |
|---|---|---|---|
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP | | |

### 3.    The Final Award's Application of California Law on Causation

Golden contends that the Arbitrator manifestly disregarded the applicable law on causation because he "failed to decide whether Aletheia would have likely prevailed if Aletheia had sought to recover the more than $47 million of excessive compensation the Co-Founders paid themselves and others without Board approval."[10] Golden Reply at 21–22. According to Golden, the Arbitrator "instead created his own test of whether Aletheia would have sought the money back[.]" Id. at 22.

The record does not support Golden's arguments. To prevail on a claim for legal malpractice, a plaintiff must establish "(1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence." Coscia v. McKenna & Cuneo, 25 Cal. 4th 1194, 1199 (2001). A successful claim for breach of fiduciary duty requires: "(1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." Stanley v. Richmond, 35 Cal. App. 4th 1070, 1086 (1995). Having determined that O'Melveny breached neither its duty of care nor its duty of loyalty, and insofar as Golden's professional negligence and breach of fiduciary duty claims are concerned, the Arbitrator was therefore not required to decide "whether Aletheia would have likely prevailed" on any hypothetical excess compensation claims against Peikin or Eichler.

Nonetheless, contrary to Golden's assertion, the Arbitrator *did* conclude that "[e]ven if [Golden] had met his burden of showing either professional negligence or breach of fiduciary duty, his claim would fail because he has not proved that anything O'Melveny did or failed to do caused damage to Aletheia."[11] Final Award at 89. The Arbitrator

---

[10]    Generally, "[i]t is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers." U.S. ex rel. Giles v. Sardie, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000). However, the Court will consider Golden's argument because Golden also raises it in his opposition to O'Melveny's motion to confirm. See Golden Opp. at 16–19; Golden Reply at 21–23.

[11]    During the arbitration proceedings, Golden argued that different standards of causation applied to his claims for legal malpractice and breach of fiduciary duty: the "substantial factor" test in breach of fiduciary duty cases, and the "but for, trial within a trial" test in professional negligence cases. See Final Award at 89. The Arbitrator

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | November 1, 2019 |
|----------|-------------------------|------|------------------|
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP | | |

expressly determined that "it is far from clear that a suit to recover Eichler's (or Peikin's) compensation would have been successful at all[.]" Id. at 81. On this point, the Arbitrator heard testimony from both parties, ultimately concluding that "the record supports a finding that [Golden] has failed to prove causation as to either his malpractice or breach of fiduciary duty claim." Id. at 94. That Golden disagrees with this finding, based on the evidence presented, is not a proper basis for vacatur pursuant to the "manifest disregard" standard. See Glob. Bldg. Prod. Ltd. v. Chemco, Inc., No. C12-1017 RSM, 2012 WL 5183629, at *7 (W.D. Wash. Oct. 18, 2012) ("Where, as here, an arbitrator recognizes the law, directly addresses its applicability, and finds that the facts do not establish a violation of the law, the Court finds that there no evidence of a manifest disregard of the law.").

### C. The Final Award Is Not Irrational

Golden requests that the Court vacate the Final Award on the grounds that "it is irrational in light of the law and uncontroverted facts and therefore resulted in the Arbitrator exceeding his authority." Golden Mot. at 2. According to Golden, the Final Award is irrational because of "its failure to recognize the legally dispositive facts, namely, that the Engagement Agreements contemplated joint representation of Aletheia together with its alleged looters[,] the Co-Founders, and that the Proctor Looting Allegations sounded in harm to Aletheia." Golden Reply at 23.

Vacatur is appropriate where an arbitration award is "completely irrational." Comedy Club, 553 F.3d at 1288. "This standard is extremely narrow and is satisfied only where the arbitration decision fails to draw its essence from the agreement." Bosack v. Soward, 586 F.3d 1096, 1106 (9th Cir. 2009) (internal punctuation and citations omitted). "An award draws [its] essence from the parties' agreement if the award 'is derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intentions.'" Tutor Perini Bldg. Corp. v. S. California Dist.

---

considered and rejected these arguments. See id. at 89–94. To the extent that Golden renews that challenge here as the basis for his "manifest disregard" argument, see Golden Reply at 21 n.11, the Court rejects this contention as contrary to the law governing judicial review of arbitration proceedings. See Biller, 668 F.3d at 668 n.7. ("Our precedent is quite clear that manifest disregard of the law for the purposes of the FAA occurs only where there is evidence that the arbitrator knew the law but ignored it nonetheless. . . . Here, perhaps the arbitrator misunderstood the law and misapplied it, but we cannot conclude that the arbitrator ignored the law.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | November 1, 2019 |
|----------|-------------------------|------|------------------|
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP | | |

Council of Laborers, 373 F. Supp. 3d 1309, 1320 (C.D. Cal. 2019) (citing Bosack, 586 F.3d at 1106). "Under this standard of review, the district court does not assess the 'rightness or wrongness' of the arbitrator's contract interpretation." Mike Rose's Auto Body, Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc., 389 F. Supp. 3d 687, 694 (N.D. Cal. 2019).

O'Melveny contends that Golden misconstrues the "completely irrational" standard. O'Melveny Opp. at 20. The Court agrees. "Under the "completely irrational" doctrine, the question is whether the award is 'irrational' with respect to the contract, not whether the panel's findings of fact are correct or internally consistent." Bosack, 586 F.3d at 1106. Thus, "the 'completely irrational' standard generally applies in the context of an arbitrator's *contract interpretation*." Donnelly v. Jewel of Kahana, LLC, No. CIV. 12-00347 HG-KSC, 2013 WL 1337134, at *12 (D. Haw. Mar. 28, 2013) (emphasis added); see also Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC, 913 F.3d 1162, 1167 (9th Cir. 2019) (noting that an arbitration award is "irrational" where arbitrator "dispense[s] his own brand of industrial justice by disregarding a specific contract provision to correct what he perceived as an injustice."). Golden does not point to a contractual provision that he contends the Arbitrator erred in construing. Instead, Golden asserts that "the mountain of evidence of O'Melveny's recognition of the actual conflict" between Aletheia, Peikin, and Eichler "demonstrate[s] the obviousness of the conflict and the resulting irrationality of the Final Award in light of the facts[.]" Golden Mot. at 22. However, "[c]learly erroneous findings of fact or contradictory findings of fact do not render a decision completely irrational." Elem Indian Colony of Pomo Indians v. Pac. Dev. Partners X, LLC, No. C 09-1044 CRB, 2010 WL 2035331, at *2 (N.D. Cal. May 19, 2010). Accordingly, Golden has failed to show the Final Award is "completely irrational" so as to require vacatur.[12]

---

[12]     In support of his irrationality argument, Golden cites the Ninth Circuit's decisions in Coutee and American Postal. Golden Reply at 23. Both these cases, however, involve the manifest disregard exception, *not* the completely irrational exception. See Coutee, 336 F.3d 1133 ("In some circumstances, however, legally dispositive facts are so firmly established that an arbitrator cannot fail to recognize them without manifestly disregarding the law."); Am. Postal Workers Union AFL-CIO v. U.S. Postal Serv., 682 F.2d 1280, 1284 (9th Cir. 1982) ("We believe that a conclusion that Murphy did not strike would constitute manifest disregard of the law."). The Court has already determined that the Arbitrator did *not* manifestly disregard the law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | November 1, 2019 |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP | | |

### D.     Golden Has Not Demonstrated Evident Partiality

Golden additionally seeks vacatur of the Final Award on the basis of arbitrator bias. The FAA permits vacatur "where there was evident partiality or corruption in the arbitrators, or either of them[.]" 9 U.S.C. § 10(a)(2). "The party challenging the arbitration decision has the burden of showing partiality." Woods v. Saturn Distribution Corp., 78 F.3d 424, 427 (9th Cir. 1996). The standard used to determine whether "evident partiality" exists differs depending on whether the case is one of "nondisclosure" or "actual bias." Rosenhaus v. Jackson, No. 2:14-cv-03154-MWF-JCG, 2016 WL 4592180, at *4 (C.D. Cal. Feb. 26, 2016). In a nondisclosure case, all that is required is a "reasonable impression of bias . . . because the integrity of the process by which arbitrators are chosen is at issue[.]" Woods, 78 F.3d at 427. In actual bias cases, however, "the integrity of the arbitrator's decision is directly at issue . . . [and] the party alleging evident partiality . . . must establish specific facts which indicate improper motives." Id. (internal citations omitted). Golden contends that "[t]he instances of evident bias are numerous[.]" See generally Golden Mot. at 23–25. The Court addresses each in turn. [13]

### 1.     Potential Employment of the Arbitrator's Son

Golden asserts that vacatur of the Final Award is warranted because the Arbitrator "made up his mind against [Golden's] case on the basis of bias after O'Melveny and its counsel, [Gibson Dunn], barred [his] son from employment while he was preparing [for] on-campus interviews with both firms, blaming their decisions on" Golden. Golden Mot. at 6. The Court finds this argument unavailing.

---

[13]     The parties disagree as to which standard applies in this case. In his motion seeking vacatur, Golden cites the standard for nondisclosure cases. See Golden Mot. at 21. In his reply, however, Golden notes that he "was unaware of any of the specific facts recited in the Motion at the time the Arbitrator was selected; indeed, *such facts had not yet occurred*." Golden Reply at 23 (emphasis added). Because the events which allegedly establish the Arbitrator's bias occurred *after* the parties had selected the Arbitrator, the integrity of the process for choosing him is *not* at issue, and the Court therefore concludes that the standard for actual bias cases applies here. See Nordahl Dev. Corp. v. Salomon Smith Barney, 309 F. Supp. 2d 1257, 1266–67 (D. Or. 2004) ("Plaintiff does not allege that an arbitrator failed to disclose any relevant relationship . . . before the arbitration began. . . . Therefore the stricter standard governing actual bias cases applies to plaintiff's claim of partiality.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | November 1, 2019 |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP | | |

Golden does not dispute that neither O'Melveny, a party in the arbitration, nor its counsel, Gibson Dunn, *ever* employed the Arbitrator's son. To the contrary, after the Arbitrator disclosed to the parties that his son, then a law student, was seeking employment with a number of law firms including Gibson Dunn and O'Melveny, and after Golden raised the issue of possible bias, both Gibson and O'Melveny decided that, out of an abundance of caution, neither would extend an offer of employment to the Arbitrator' son. Ex. 13 at 454. Golden contends that the firms' decision to eliminate the possibility of an appearance of impartiality by declining to consider the Arbitrator's son for employment served to exacerbate the possibility of bias because, "[i]n turn, the Arbitrator refused to recuse himself." Golden Mot. at 24. The Court finds this argument unpersuasive. See Union Carbide Corp. v. U.S. Cutting Serv., Inc., 782 F.2d 710, 713–16 (7th Cir. 1986) (affirming denial of recusal where movant contended that judge "may be harboring a grudge" where movant originally moved to disqualify judge for holding stock in party and, in response, judge sold stock to eliminate conflict); see also Charles A. Wright & Arthur R. Miller, 13D Fed. Prac. & Proc. Juris. § 3542 (3d ed.) ("A litigant cannot force disqualification by attacking the judge and claiming that the attacks must have caused the judge to be biased against him.").

Nor would the actual hiring of the Arbitrator's son by either O'Melveny, a party, or Gibson Dunn, O'Melveny's counsel, have necessarily required the Arbitrator's recusal pursuant to either of the two federal statutes governing recusal of judicial officers, 28 U.S.C. § 144 or 28 U.S.C. § 455(a). See Datagate, Inc. v. Hewlett-Packard Co., 941 F.2d 864, 871 (9th Cir. 1991) ("an employment relationship between a judge's child and a party to the suit has not generally been held to merit per se disqualification."); U.S. ex rel. Weinberger v. Equifax, Inc., 557 F.2d 456, 463–64 (5th Cir. 1977) (recusal not required where judge's son was an associate of the law firm representing defendant and son did not actively participate in the case). Because the standard for determining partiality for arbitrators is more stringent than that for judges, Golden therefore fails to establish the "evident partiality" required for vacatur. See Schmitz v. Zilveti, 20 F.3d 1043, 1047 (9th Cir. 1994) (noting differences in standards); see also Transportes Coal Sea de Venezuela C.A. v. SMT Shipmanagement & Transp. Ltd., No. 05-cv-9029-KMK, 2007 WL 62715, at *4 (S.D.N.Y. Jan. 9, 2007) ("an arbitrator may not be deemed partial simply because he presides over an arbitration in which one party employs an arbitrator's family member's law firm").

| | **CIVIL MINUTES – GENERAL** | | **'O'** | |
|---|---|---|---|---|
| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | November 1, 2019 | |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP | | | |

### 2. The Arbitrator's Retention in an Unrelated Matter

Golden argues that vacatur is warranted on the basis of arbitrator bias because "Gibson [Dunn] . . . hired the Arbitrator on a new $20 million litigation matter after closing arguments were made in the instant case and while the Arbitrator was deliberating." Golden Mot. at 25. Golden contends that this constitutes "evidence that the Arbitrator would benefit from deciding in favor of Gibson [Dunn]" since by doing so, the Arbitrator "could expect to receive additional work." Golden Reply at 24. The Court disagrees. See Ario v. Cologne Reinsurance (Barbados), Ltd., No. CIV. 1:CV-98-0678, 2009 WL 3818626, at *10 (M.D. Pa. Nov. 13, 2009) ("there is no evident partiality from an arbitrator's accepting a position as an umpire in another, unrelated arbitration while the current arbitration is still ongoing, even if that position . . . is . . . in an arbitration where one of the parties is an affiliate of a party to the current arbitration."). Accordingly, Golden's mere allegation of bias, based on the selection of the Arbitrator as arbitrator in an unrelated matter involving Gibson Dunn, O'Melveny's counsel, which the Arbitrator disclosed, does not require vacatur.

### 3. Other Rulings Adverse to Golden Do Not Establish Bias

Golden contends that a number of the Arbitrator's adverse rulings during the course of the arbitration demonstrate evident partiality. Golden Mot. at 23–25. In particular, Golden points to the Arbitrator's rulings: (1) finding that there O'Melveny's representation of Aletheia, Eichler, and Peikin was *not* conflicted, notwithstanding the court's determinations in the California Proctor Litigation; (2) granting O'Melveny's request to stay consideration of Golden's summary disposition motion while O'Melveny took discovery; and (3) denying Golden's request to amend his discovery responses. Golden Mot. at 23–25. The Court notes that "repeated rulings against one party to the arbitration will not establish bias absent some evidence of improper motivation." Sheet Metal Workers Int'l Ass'n Local Union No. 420 v. Kinney Air Conditioning Co., 756 F.2d 742, 746 (9th Cir. 1985). Here, Golden has provided no evidence of improper motivation, and his identification of various adverse rulings is insufficient to require vacatur. Voltage, 2018 WL 2110937, at *8 ("it is evident from the Arbitration Award . . . that the Arbitrator considered the arguments and evidence presented by both sides . . . [t]hat the Arbitrator ruled in favor of Petitioners on all these issues is insufficient to establish evident partiality."); Div 15 Tech v. Sheet Metal Workers' Int'l Ass'n, Local 104, No. C 10-05309 JSW, 2011 WL 13244832, at *3 (N.D. Cal. Mar. 14, 2011) ("It is insufficient as a matter of law to allege bias based on unfavorable rulings in this and tangential incidents.").

### 4.      Language in the Final Award

During oral argument, Golden suggested that language in the Final Award demonstrates arbitrator bias. For example, Golden points to the Arbitrator's statement that Golden's settlement with Proctor on behalf of Aletheia "allowed [Golden] to avoid the fight with Proctor, which had proved a tenacious adversary over the years, and opened a path to a potentially deeper pocket – O'Melveny & Myers – through the present action for malpractice and breach of fiduciary duty." Final Award at 11. This language does not demonstrate the requisite evident partiality required for vacatur. See Plastic Recovery Techs., Co. v. Samson, No. 11 C 2643, 2011 WL 3205305, at *4 (N.D. Ill. July 28, 2011) (rejecting "claim that the language used in the Arbitration Award demonstrates the arbitrator's bias" requiring vacatur where arbitrator stated that plaintiffs "consistently demonstrated nothing short of contempt for this process" and that "their bad faith demonstrated a lack of respect for their contractual commitment, the arbitral process, and the other participants in that process."); accord Nowak v. Pennsylvania Prof'l Soccer, LLC, 156 F. Supp. 3d 641, 647 (E.D. Pa. 2016) ("We do not find [the arbitrator's] word choice constitutes evidence of impermissible bias to support vacatur.").

### E.      O'Melveny's Motion to Confirm the Final Award

O'Melveny seeks an order from the Court confirming the Final Award. See generally O'Melveny Mot. The Court "'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected[.]" Hall, 552 U.S. at 582. Golden does not contend that the Final Award should be modified or corrected. Instead, Golden opposes O'Melveny's motion to confirm the Final Award based on several of the same arguments he contends require vacatur, namely that: enforcement of the Final Award violates public policy; that the Arbitrator disregarded the applicable law in determining whether a plaintiff's claims are derivative in nature; that the Arbitrator misapplied the law on causation; and that the Arbitrator demonstrated evident partiality. See Golden Opp. at 11–25. The Court has rejected these arguments, determining they are insufficient to require vacatur.

Golden raises an additional argument in his opposition to O'Melveny's motion to confirm that he did not assert in his own motion to vacate. He suggests that the Arbitrator erred in allowing two of O'Melveny's experts, John Marshall and John Spiegel, to testify. Therefore, according to Golden, "the Final Award was informed by impermissible and baseless opinions and conclusions, which further supports its vacatur." Golden Opp. at 22. Golden does not, however, specify which provision of Section 9 of the FAA forms the basis for his request for vacatur on this basis.

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | November 1, 2019 |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP | | |

Under Section 10(a)(3), a court may vacate an arbitration decision "where the arbitrators were guilty of misconduct . . . in *refusing* to hear evidence pertinent and material to the controversy[.]" 9 U.S.C. § 10 (a)(3) (emphasis added). Here, Golden's complaint is that the Arbitrator erroneously *admitted* testimony, not that the Arbitrator *refused* to hear testimony. See Schoenduve Corp. v. Lucent Techs., Inc., No. C03-03523 RMW, 2004 WL 5573951, at *9 (N.D. Cal. Feb. 27, 2004) (declining to vacate award where party seeking vacatur "fails to point to any evidence that the arbitrator actually *refused* to hear.") (emphasis in original). Regardless of whether the Court construes Golden's argument as falling within the confines of Section 10(a)(3) or another exception, the Ninth Circuit has made clear that "[a]rbitrators enjoy wide discretion to require the exchange of evidence, and to admit or exclude evidence, how and when they see fit." U.S. Life Ins. Co. v. Superior Nat. Ins. Co., 591 F.3d 1167, 1175 (9th Cir. 2010) (internal citation and quotation marks omitted). Accordingly, the Court declines to vacate the Final Award on the basis of the Arbitrator's decisions to admit the testimony of O'Melveny's experts.

The Court concludes that there is no basis to vacate, modify, or correct the Final Award. Accordingly, confirmation of the Final Award is appropriate. See Voltage, 2018 WL 2110937, at *5 ("If the Court finds no basis to vacate, modify, or correct the arbitration award, the Court must confirm the award.").

## V.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Golden's motion to vacate the Final Award and **GRANTS** O'Melveny's motion to confirm the Final Award.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |