| CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|
| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | April 1, 2020 |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     (IN CHAMBERS)

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. [ 117 ], filed December 30, 2019)

TRUSTEE'S MOTION FOR LEAVE TO AMEND COMPLAINT (Dkt. [ 123 ], filed March 2, 2020)

## I.     INTRODUCTION AND BACKGROUND

Presently before the Court is the motion for summary judgment filed by defendants O'Melveny & Myers LLP ("O'Melveny"), Steven J. Olson ("Olson"), and Jorge deNeve ("deNeve") (collectively, "defendants") and the motion for leave to file an amended complaint filed by plaintiff Jeffrey I. Golden ("Golden"). The procedural and factual background of this dispute is set out in the Court's November 1, 2019 order. See Dkt. 99 ("Order Confirming Final Award"). Accordingly, the Court only sets forth those facts necessary to resolve the parties' present motions.

On November 10, 2014, Golden, acting in his capacity as the Trustee of Aletheia Research and Management, Inc. ("Aletheia"), filed this action against O'Melveny, Olson, and deNeve asserting claims for: (1) professional negligence (conflict of interest); (2) breach of fiduciary duty; (3) avoidance and recovery of preferential transfers pursuant to 11 U.S.C. §§ 547 and 550 ("preference claim"); (4) avoidance and recovery of fraudulent conveyances (two-year transfers) pursuant to 11 U.S.C. §§ 548 and 550 ("two-year fraudulent transfer claim"); and (5) avoidance and recovery of fraudulent conveyances (four-year transfers) pursuant to 11 U.S.C. §§ 544 and 550 and Cal Civ. Code. §§ 3439.04, 3439.05, and 3439.07 ("four-year fraudulent transfer claim"). Dkt. 1 ("Compl."). The

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | April 1, 2020 |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP ET AL. | | |

gravamen of Golden's claims is that O'Melveny, Olson, and deNeve committed legal malpractice and breached their fiduciary duties in the course of representing Aletheia and when Olson and deNeve subsequently served as two of Aletheia's corporate officers. Id.

On June 15, 2015, pursuant to the arbitration provisions contained in the engagement agreement between O'Melveny and Aletheia, the Court compelled arbitration of Golden's professional negligence and breach of fiduciary duty claims. Dkt. 30 ("Order Compelling Arbitration"). The Court stayed adjudication of Golden's remaining claims pending the completion of arbitration. Id. The parties selected the Hon. Gary A. Feess ("the Arbitrator"), a retired United States District Judge, to serve as arbitrator, thereafter commencing arbitration in November 2015. Dkt. 39 at 3.

The parties' arbitration hearing before the Arbitrator began on November 5, 2018 and concluded on November 29, 2018. Dkt. 84-4 ("Final Award") at 5. After the parties submitted closing arguments to the Arbitrator on March 20, 2019, the Arbitrator issued the Final Award on August 22, 2019, concluding that Golden "has failed to carry his burden of proof on any of his claims against" O'Melveny, Olson, or deNeve. Id. at 2, 5, 8.

On September 9, 2019, the parties' filed cross motions to vacate or confirm the Final Award. Dkts. 80, 84. On November 1, 2019, the Court denied Golden's motion to vacate the Final Award and granted defendants' motion to confirm the Final Award. See generally Order Confirming Final Award. Golden thereafter filed a notice of interlocutory appeal of the Court's order pursuant to 9 U.S.C. § 16 (a)(1) of the Federal Arbitration Act. Dkt. 102.

The Court lifted its previous stay of Golden's remaining preference and fraudulent transfer claims on December 9, 2019. Dkt. 112. On December 30, 2019, defendants thereafter filed a motion for summary judgment as to Golden's remaining claims, dkt. 117 ("MSJ"), as well as a statement of uncontroverted facts and conclusions of law, dkt. 117-19 ("SUF"). Golden filed an opposition, dkt. 119 ("MSJ Opp."), and a statement of genuine disputed facts, dkt. 121 ("GDF"), on February 3, 2020. Defendants filed a reply on February 24, 2020. Dkt 122 ("MSJ Reply"). With leave of the Court, Golden filed a surreply on March 16, 2020. Dkt. 125 ("MSJ Surreply").

On March 2, 2020, Golden filed a motion seeking leave to file an amended complaint. Dkt. 123 ("MLA"). Defendants filed an opposition on March 9, 2020 ("MLA Opp."). Golden filed a reply on March 16, 2020. Dkt. 126 ("MLA Reply").

The Court held a hearing on March 30, 2020. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | April 1, 2020 |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP ET AL. | | |

## II.    LEGAL STANDARDS

### A.    Motion for Leave to File an Amended Complaint

Generally, leave to amend is "denied only upon [a] showing of bad faith, undue delay, futility, or undue prejudice to the opposing party." Chudacoff v. Univ. Med. Ctr. of S. Nevada, 649 F.3d 1143, 1152 (9th Cir. 2011) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  Rule 15(a) "is to be applied with extreme liberality," Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990), and whether to permit amendment is a decision "entrusted to the sound discretion of the trial court." Jordan v. County of Los Angeles, 669 F.2d 1311, 1324 (9th Cir. 1982).

### B.    Motion for Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out "specific facts showing a genuine issue for trial" in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e).  The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324.  Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987).  When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | April 1, 2020 |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP ET AL. | | |

opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## III. DISCUSSION

### A. Defendants' Motion for Summary Judgment

#### 1. Claims Against Olson and deNeve

Golden asserts the preference claim and the two-year fraudulent transfer claim against O'Melveny, deNeve, and Olson, but Golden does not specifically assert the four-year fraudulent transfer claim against deNeve or Olson. See Compl. ¶¶ 74–97. deNeve and Olson therefore move for summary judgment on these claims to the extent that Golden asserts these claims against deNeve and Olson individually. See MSJ at 23. According to deNeve and Olson, Golden "cannot prove . . . that Olson and deNeve were transferees of any of the challenged attorneys' fees and costs payments to O'Melveny" which form the bases for these claims. Id.

In response, Golden asserts that "the Complaint alleges that the Subject Transfers were received by O'Melveny and does not allege that either Olson or deNeve received the Subject Transfers." MSJ Opp. at 6. Accordingly, Golden "confirms these claw-back claims under the Bankruptcy Code are asserted only against O'Melveny and not against Olson or deNeve." Id.

Accordingly, the Court **GRANTS** summary judgment in favor of deNeve and Olson as to Golden's preference claim, two-year fraudulent transfer claim, and four-year fraudulent transfer claim.

#### 2. Fraudulent Transfer Claims

Golden asserts fraudulent transfer claims against O'Melveny pursuant to 11 U.S.C. §§ 544, 548, and 550 as well as pursuant to Cal. Civ. Code §§ 3439.04, 3439.05, and 3439.07. See Compl. ¶¶ 84–97. Both Golden's two-year and four-year fraudulent transfer claims require that Aletheia "received less than a reasonably equivalent value in exchange" for O'Melveny's legal fees. See In re Walters, 163 B.R. 575, 581 (Bankr. C.D. Cal. 1994) ("California's fraudulent conveyance statutes are similar in form and substance to the

Bankruptcy Codes' fraudulent transfer provisions, and the 9th Circuit has analyzed those statutes and the Code Provisions contemporaneously.").

O'Melveny moves for summary judgment on Golden's fraudulent transfer claims on the basis of collateral estoppel. See MSJ at 9–17. According to O'Melveny, Golden's "fraudulent transfer claims require proof that . . . Aletheia did not receive reasonably equivalent value in exchange for the alleged payments to O'Melveny." Id. at 9. Because the Final Award determined that O'Melveny did not commit legal malpractice, have a conflict of interest, or breach a fiduciary duty during the course of its representation of Aletheia, O'Melveny therefore contends that "[c]ollateral estoppel . . . precludes [Golden] from re-litigating these issues" and "negates the sole basis as to why Aletheia supposedly did not receive reasonably equivalent value in exchange for its alleged payments to O'Melveny." Id. at 10.

The Court first considers the doctrine of collateral estoppel's applicability as between arbitration and subsequent non-arbitral proceedings, as well as the doctrine's applicability as between adjudications rendered with respect to non-bankruptcy claims and subsequent core bankruptcy claims. The Court next determines the Final Award's preclusive effect, if any, to the remaining claims in this case. To the extent that any of the Final Award's determinations are entitled to preclusive effect, the Court then evaluates whether those determinations require the grant of summary judgment to O'Melveny on Golden's fraudulent transfer claims.

### a. The Doctrine of Collateral Estoppel

"The doctrine of collateral estoppel, or issue preclusion, is grounded on the premise that once an issue has been resolved in a prior proceeding, there is no further fact-finding function to be performed." Wabakken v. California Dep't of Corr. & Rehab., 801 F.3d 1143, 1148 (9th Cir. 2015). "Collateral estoppel . . . has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979).

"A federal-court order confirming an arbitration award has 'the same force and effect' as a final judgment on the merits, . . . including the same preclusive effect." NTCH-WA, Inc. v. ZTE Corp., 921 F.3d 1175, 1180 (9th Cir. 2019). Thus, "when a federal district court enters a judgment confirming an arbitration award pursuant to the Federal Arbitration Act, that judgment has res judicata effect as to all matters adjudicated by the arbitrators and embodied in their award[.]" Id. (internal citation omitted). "Collateral estoppel

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | April 1, 2020 |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP ET AL. | | |

principles apply in bankruptcy cases and can be used . . . to prevent re-litigation of issues already decided." In re Archer, No. 1:11-br-17628-MT, 2015 WL 75072, at *4 (Bankr. C.D. Cal. Jan. 6, 2015). Accordingly, determinations rendered with respect to non-bankruptcy claims may have preclusive effect as to bankruptcy claims. See In re Fiene, No. 2:10-cv-09586-VAP, 2012 WL 3867337, at *10 (C.D. Cal. Sept. 5, 2012) (affirming bankruptcy court's determination that arbitrator's finding of fraud had preclusive effect with respect to debtor's subsequent bankruptcy proceedings).

Here, the Court confirmed the Final Award on November 1, 2019. See Order Confirming Final Award. Accordingly, assuming the requirements for collateral estoppel are met, the Final Award may have preclusive effect with respect to Golden's remaining fraudulent transfer claims.

### b.    Collateral Estoppel Elements

"Collateral estoppel applies to a question, issue, or fact when four conditions are met: (1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits." Oyeniran v. Holder, 672 F.3d 800, 806 (9th Cir. 2012). Although there are various formulations of the elements in the caselaw, in addition to these four conditions, it is also necessary to establish that "the first proceeding ended with a final judgment on the merits" and that "the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding." Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 (9th Cir. 2006). The Court proceeds to determine whether the Final Award satisfies these elements with regards to the issue of whether Aletheia received "reasonably equivalent value" in exchange for its payments to O'Melveny.

### i.    Sufficient Identity of Issues

"The party asserting collateral estoppel must first show that the estopped issue is identical to an issue litigated in a previous action." Kamilche Co. v. United States, 53 F.3d 1059, 1062 (9th Cir. 1995). However, "[n]ot all issues need to be the same for issue preclusion to apply." EON Corp IP Holdings LLC v. Apple Inc., No. 14-cv-05511-WHO, 2015 WL 4914984, at *8 (N.D. Cal. Aug. 17, 2015). All that is required is that "the issues presented are in substance the same[.]" Richey v. U.S. I.R.S., 9 F.3d 1407, 1410 (9th Cir. 1993). "To determine whether two issues are identical for purposes of collateral estoppel, the Court considers (1) whether there is a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first; (2)

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | April 1, 2020 |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP ET AL. | | |

whether the new evidence or argument involves the application of the same rule of law as that involved in the prior proceeding; (3) whether pretrial preparation and discovery related to the matter presented in the first action could reasonably be expected to have embraced the matter sought to be presented in the second; and (4) how closely related the claims involved in the two proceedings are." Sec. & Exch. Comm'n v. Alexander, 115 F. Supp. 3d 1071, 1082 (N.D. Cal. 2015) (internal citation and alterations omitted). "Nonetheless, these factors are not applied mechanistically." Howard v. City of Coos Bay, 871 F.3d 1032, 1041 (9th Cir. 2017).

Here, the parties dispute whether there is a sufficient identity of issues between Golden's professional negligence and breach of fiduciary duty claims, which are the subject of the Final Award, and Golden's remaining fraudulent transfer claims. According to O'Melveny, Golden "already arbitrated O'Melveny's alleged malpractice, conflict, and breach of fiduciary duty" and Golden's fraudulent transfer claims "allege that Aletheia did not receive reasonably equivalent value *because* of that same alleged malpractice, conflict and breach of fiduciary duty." MSJ Reply at 3 (emphasis in original). Golden asserts, however, that his remaining fraudulent transfer claims are not predicated on his already-adjudicated professional negligence and breach of fiduciary duty claims. MSJ Opp. at 15. That is because "O'Melveny's services may not have been reasonably equivalent in value even assuming no malpractice and no breach of fiduciary duty."[1] MSJ Surreply at 5.

---

[1] During the hearing, Golden's counsel referred to the transcript from the Court's June 15, 2015 hearing on defendants' motion to compel arbitration as support for Golden's argument that his fraudulent transfer claims are not predicated on his malpractice and breach of fiduciary duty claims. During the June 15, 2015 hearing, Golden's counsel argued that "[w]e don't have to show malpractice to win a fraudulent conveyance action. All we have to show is that the services . . . provided were not reasonably equivalent in value to the payments that were made while the debtor was insolvent." Dkt. 120, Exh. 2 ("June 15, 2015 Hearing Tr.") at 8:21–25. Golden's counsel conceded during that hearing, however, that "*it's possible that a ruling in the arbitration could have a negative effect or res judicata effect* that could constrain, limit or otherwise impact this Court's discretion and determination of the preference action and the fraudulent conveyance actions." Id. at 9:11–15 (emphasis added). Indeed, the Court specifically noted the concession of Golden's counsel in its subsequent order compelling arbitration. See Order Compelling Arbitration at 12 n.4 (noting that Golden's counsel made "a statement at oral argument to the effect

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | April 1, 2020 |
|----------|-------------------------|------|---------------|
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP ET AL. | | |

The Court does not find Golden's arguments availing. Golden's malpractice claim alleged that, *inter alia*, "[b]y virtue of the attorney-client relationship that existed between Aletheia and [d]efendants, [d]efendants owed a duty to Aletheia to represent it with undivided loyalty and to exercise reasonable care and skill in providing legal services on Aletheia's behalf" which "required [d]efendants . . . to place Aletheia's interests in being represented by attorneys with undivided loyalty to Aletheia above [d]efendants' interests in *billing and collecting fees*[.]" Compl. ¶ 64 (emphasis added). Similarly, Golden's breach of fiduciary duty claim alleged that, among other things, "[d]efendants breached their fiduciary obligations to Aletheia, including breaching their duty to . . . place Aletheia's interests in being represented by attorneys with undivided loyalty to Aletheia above [d]efendants' interests in *billing and collecting fees*[.]" Id. ¶ 72 (emphasis added). The Court compelled arbitrations of these claims based on these allegations, Order Compelling Arbitration at 5, meaning that the propriety of O'Melveny's fees were the subject of arbitration. Indeed, Golden ensured that the propriety of O'Melveny's fees were before the Arbitrator by including, in Golden's revised Statement of Claims, allegations that O'Melveny breached its fiduciary duty and committed legal malpractice by, *inter alia*, failing to "place [Aletheia's] interest in being represented by attorneys with undivided loyalty to [Aletheia] above [O'Melveny's] interest in billing and collecting fees[.]" Dkt. 117-6 ("SOC"), ¶¶ 90, 105.

In determining whether there is an identity of issues, courts often look to whether there is "a substantial overlap between the evidence . . . to be advanced in the second proceeding and that advanced in the first[.]" Resolution Tr. Corp. v. Keating, 186 F.3d 1110, 1116 (9th Cir. 1999). Here, Golden contends that there is not an overlap in the evidence between Golden's professional negligence and malpractice claims and his fraudulent transfer claims because his fraudulent transfer claims hinge "on issues to be explored through discovery which go to the value Aletheia received" for O'Melveny's legal services, "including regarding the hours spent, staffing, tasks performed for which the Fraudulent Transfers were made, results achieved, rates charged (including relative to the tasks performed and what the firm was charging others for similar work), the fair market value of the services actually received by Aletheia, [and] the actual value thereof to Aletheia[.]" MSJ Opp. at 16. But much of the evidence that Golden contends will be

---

that the decision of the arbitrator might operate as *res judicata*" and that "counsel appears to concede that the arbitrable and non-arbitrable claims are in fact related.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | April 1, 2020 |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP ET AL. | | |

subject to discovery with respect to his fraudulent transfer claims was already adduced during the arbitration of his professional negligence and breach of fiduciary duty claims.

For example, during arbitral discovery, consistent with Rule 30(b)(6), Golden noticed a deposition "of the Person Most Knowledgeable of" O'Melveny. Dkt. 122-4 ("Golden 30(b)(6) Dep. Notice") at 1. Golden's deposition notice specifically enumerated as topics for deposition: "YOUR billing practices for Aletheia, including without limitation, YOUR processes for creating, reviewing and/or revising, YOUR billing statements that YOU sent to ALETHEIA"; "YOUR gross income from or on behalf of ALETHEIA for YOUR fees or costs, including for services YOU provided to ALETHEIA"; and "YOUR analysis of ALETHEIA'S ability and willingness to pay YOUR fees and costs for representing ALETHEIA in the PROCTOR LITIGATION." Golden 30(b)(6) Dep. Notice at 5–6. Similarly, Golden submitted, during arbitration, a request for production of documents relating to, *inter alia*, "All DOCUMENTS summarizing payments O'MELVENY received from Aletheia for fees and costs" and "All DOCUMENTS summarizing any discounts of O'Melveny fees and costs that were billed to ALETHEIA." Dkt. 124-2 ("Golden RFP") at 6. And, in connection with his motion to disqualify Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), O'Melveny's counsel in this case, Golden acknowledged having sought O'Melveny's billing records during arbitral discovery. Dkt. 57-1 Exh. 14. "Preclusion cannot be avoided simply by offering evidence in the second proceeding that could have been admitted, but was not, in the first." Applied Med. Res. Corp. v. U.S. Surgical Corp., 352 F. Supp. 2d 1119, 1125 (C.D. Cal. 2005) (internal citation omitted). Here, evidence regarding O'Melveny's billing practices not only *could have* been admitted during the arbitration of Golden's professional negligence and breach of fiduciary duty claims, Golden *did in fact* seek and obtain discovery on these issues. See Cartmill v. Sea World, Inc., No. 10-cv-361-CAB-DHB, 2012 WL 13175846, at *6 (S.D. Cal. July 25, 2012) (finding sufficient identity of issues because "[t]he pretrial preparations in Kuba embraced the matters sought in Cartmill. This is shown by the fact that much of the evidence Plaintiffs reference as being new to the Cartmill action was already presented, in some form, to the District Court and the Ninth Circuit in Kuba.").

Courts have also looked to "whether there is 'a substantial overlap between the evidence or argument to be advanced' in the two proceedings regarding damages." Howard, 871 F.3d at 1041. Indeed, where "the scope of economic damages necessarily overlaps, the evidence supporting these damages must also overlap." Id. at 1042. "[M]erely asking for the same type of relief is not justification for issue preclusion. . . . Likewise, requesting the same types of damages does not make two issues necessarily identical." Id. at 1041–42. "The more important question is whether" the party against

**CIVIL MINUTES – GENERAL**         **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | April 1, 2020 |
|---|---|---|---|
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP ET AL. | | |

whom estoppel is sought has "request[ed] damages covering the same factual losses in both suits?" Id. at 1042.

Here, in connection with his professional negligence and fiduciary breach claims, Golden sought "disgorgement of all legal fees and costs[.]" Compl. at 26. In his closing brief, Golden argued that "[t]he record does not reflect that O'Melveny's services benefitted Aletheia, which filed bankruptcy less than a year after O'Melveny withdrew from the representation." Dkt. 95-9 ("Golden Closing Br.") at 47. That is because O'Melveny instead "*profit[ed] from the exorbitant undiscounted attorney's fees* charged to Aletheia . . . [and] squandered Aletheia's resources." Id. at 13 (emphasis added). These arguments regarding damages are consistent with the theory of damages that Golden now advances with respect to his fraudulent transfer claims. See MSJ Surreply at 2 ("[d]efendants are asking this Court to summarily decide . . . that O'Melveny's services were reasonably equivalent in value to the payment it received in the face of [Golden's] allegations that *certain if not all of such services were* inflated (for excessive staffing), *ineffectual*, *unnecessary*, and/or administrative in nature and not properly charged to Aletheia at lawyers' full rates.") (emphases added).

Golden emphasizes that "the elements of the claims for breaches of fiduciary duty and malpractice, which *were* the subject of the Arbitration, did not require or subsume the altogether different elements implicated by [Golden's] remaining core bankruptcy claims, whose existence depends on substantive provisions of the Bankruptcy Code[.]" MSJ Opp. at 1. But the relevant inquiry is not necessarily whether the *claim*s are the same, but instead whether the already-litigated claims and the remaining claims involve the application of the same rule of law. See Fed. Trade Comm'n v. Nat'l Audit Def. Network, Inc., No. 02-cv-0131-LDG-PAL, 2009 WL 10709201, at *7 (D. Nev. July 24, 2009) ("[T]he second factor for assessing the identity of the issues in two proceedings for collateral estoppel purposes is whether both proceedings use the same rule of law. In this case, both proceedings use the same standard of proof – a preponderance of the evidence."). Here, the parties do not dispute that Golden's professional negligence, fiduciary breach, and fraudulent transfer claims involve the preponderance of evidence standard. Even assuming *arguendo* the proper focus is on whether the *claims* are identical, the fact that the causes of action are different is not dispositive as to whether there is a sufficient identity of *issues*. See, e.g., Pac. Boring, Inc. v. Staheli Trenchless Consultants, Inc., 138 F. Supp. 3d 1156, 1163 (W.D. Wash. 2015) (finding that cases presented identical issues and noting that "the *claims* at issue in this case are not identical to those pled in the state court matter. However, several of the issues before Judge Shaffer are identical to the issues before the Court.") (emphasis in original).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | April 1, 2020 |
|----------|--------------------------|------|----------------|
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP ET AL. | | |

On balance, the Court concludes that Golden's already-adjudicated professional negligence and breach of fiduciary duty claims and Golden's fraudulent transfer claims present issues that "are in substance the same[.]" In re Universal Life Church, Inc., 128 F.3d 1294, 1299 (9th Cir. 1997).

## ii.    The Issues were Actually Litigated and Decided

"Another prerequisite to the application of collateral estoppel is that the disputed issue must have been actually litigated in the prior proceeding." In re Gottheiner, 703 F.2d 1136, 1140 (9th Cir. 1983). An "issue is actually litigated when an issue is raised, contested, and submitted for determination." Janjua v. Neufeld, 933 F.3d 1061, 1066 (9th Cir. 2019). "[C]ourts often look to the record of the prior proceeding to determine whether an issue was in fact raised, contested, and submitted for determination." Factory Direct Wholesale, LLC v. iTouchless Housewares & Prod., Inc., 411 F. Supp. 3d 905, 921 (N.D. Cal. 2019).

**Golden Raised the Fee Issues.**  During arbitration, Golden raised the issue of whether Aletheia received value in return for the payments it made to O'Melveny which are now the subject of Golden's fraudulent transfer claims. For example, during arbitral discovery, defendants propounded to Golden interrogatories which asked Golden to "IDENTIFY all legal work performed by [defendants] on behalf of ALETHEIA that YOU contend fell below the standard of care owed by [defendants] to ALETHEIA." Dkt. 124-3 ("O'Melveny Interrogatory") No. 5. In his revised response to this interrogatory, Golden indicated that:

> O'MELVENY committed the following specific acts and omissions constituting malpractice in that such conduct and omissions fell below the standard of care, including fiduciary breaches of duty of undivided loyalty, the duty of care, and the duty of competence in that O'MELVENY . . . improperly objected to discovery . . . in order to hinder and delay PROCTOR'S prosecution of its claims, which resulted in harm to ALETHEIA, including . . . *avoidable motion practice and significant billing* to ALETHEIA[.]"

Dkt. 124-8 ("Golden Interrogatory Resp.") No. 5 at 7, 9 (emphasis added).

Golden clarified that "[t]o the extent O'MELVENY is not otherwise required to disgorge the fees and costs that it received for representing ALETHEIA from and after the conflict arose in the PROCTOR LITIGATION, . . . [Golden] *intends to pursue a claim* against O'MELVENY *based on its billing practices* with respect to ALETHEIA." Golden

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | April 1, 2020 |
|---|---|---|---|
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP ET AL. | | |

Interrogatory Resp. No. 5 at 14 (emphases added). Golden proceeded to challenge "specific wrongful billing practices" including that O'Melveny:

    A.    improperly staffed and billed ALETHEIA such that it billed excessively under the circumstances and received upwards of $10 million in a two-year period, including by using more than sixty (60) attorneys and forty (40) paralegals and support staff in matters in which it represented ALETHEIA;

    B.    improperly staffed and excessively billed ALETHEIA by including multiple and unnecessary or otherwise redundant lawyers on calls, at meetings, and at hearings, by billing senior lawyer time for work that could have been performed by more junior lawyers at lower rates, performing work that appears to not be closely related to the client's needs, excessively drafting and revising legal documents (pleadings, motion papers, correspondence, and other documents), and billing for repetitive work, and by the block billing of multiple time entries so that it is impossible to measure how much time was spent on particular tasks; [and]

    C.    billed ALETHEIA at lawyers' rates for work that is overhead, administrative, or clerical in nature and was, therefore, not properly billed to ALETHEIA at such rates, or at all[.]

Golden Interrogatory Resp. No. 5 at 14–15. Golden's interrogatory responses indicate that Golden raised issues regarding the propriety of O'Melveny's billing practices and the value of O'Melveny's services in connection with Golden's already-adjudicated malpractice and breach of fiduciary duty claims.

       The Court notes that Golden made these representations in his third amended response to O'Melveny's Interrogatory No. 5. Importantly, Golden's response only came after O'Melveny moved to compel further responses from Golden and after the Arbitrator ordered that Golden "must indicate whether he intends to pursue any claim against [O'Melveny] based on its billing practices with respect to Aletheia, and, if so, and identification of the basis for any such claim." Dkt. 124-7 ("Motion to Compel Order) at 6. That O'Melveny's billing practices and the value of its services were the subject of motion practice and a discovery ruling during the arbitration further confirms that these issues were "actually litigated" during the arbitration. See Walker v. Oregon, No. 08-cv-06135-HO, 2010 WL 1224235, at *8 (D. Or. Mar. 23, 2010) ("an issue of fact may be 'actually litigated' in the course of resolving a preliminary motion").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | April 1, 2020 |
|----------|-------------------------|------|---------------|
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP ET AL. | | |

**Golden Contested the Fee Issues.**  Moreover, Golden *contested*, during the arbitration, whether Aletheia had received value in return for Aletheia's payments to O'Melveny.  For example, during the "Person Most Knowledgeable" deposition of O'Melveny, Golden's counsel questioned O'Melveny's designee regarding O'Melveny's billing practices. Dkt. 122-6 ("O'Melveny Dep. Tr.") at 558:16–22. Indeed, O'Melveny's designee testified that part of the reason why O'Melveny ultimately withdrew from representing Aletheia was because O'Melveny "believe[d] that it made more sense for Aletheia, if they were going to pursue a litigation strategy against Proctor, that they do so with a firm that was not as expensive as O'Melveny." Id. at 736:1–5.

Golden further contested the value of O'Melveny's services during the arbitration hearing.  Indeed, Golden's counsel cross-examined John Spiegel, O'Melveny's standard of care expert, with respect to O'Melveny's billing practices and the value of O'Melveny's services, raising issues such as O'Melveny's policy of discounting its rates.  See Dkt. 85-4 ("Spiegel Tr.") at 1821.  Golden's counsel specifically asked: "What documents did you review showing the schedule of O'Melveny rates charged during the period of time 2010 to 2012?"  Spiegel Tr. at 1822.  Spiegel testified that he "reviewed the O'Melveny invoices which provide . . . information about hourly rates."  Id.  Similarly, Golden's counsel repeatedly asked Spiegel about the "reasonableness" of O'Melveny's fees, and Spiegel testified that the fees were reasonable and comported with the reasonable standard of care:

> Q:  You testified as to the reasonableness of O'Melveny's fees in the Proctor litigation, correct?
>
> A:  I believe my opinion outline indicated that yes, I have reviewed the invoices and found them to be reasonable, which would include the overall amount billed.
>
> . . .
>
> Q:  Can you, please, explain how you categorized the various tasks and projects for which O'Melveny billed so you could evaluate the amount of its fees for particular projects.
>
> A:  I looked for areas of work as I went through the invoices, and in my view, O'Melveny was covering those various areas, which I can identify for you[,] in a manner that met the professional standard of care, a lot of time devoted to settlement, which was, you know, a core objective from the outset.

Id. at 1825–26.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | April 1, 2020 |
|----------|-------------------------|------|---------------|
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP ET AL. | | |

**Golden Submitted the Fee Issues for the Arbitrator's Determination.**  Golden submitted issues regarding O'Melveny's billing practices and the value of O'Melveny's services to the Arbitrator for the Arbitrator's determination by raising these issues in his closing brief, in his closing reply brief, and in his live closing argument to the Arbitrator. For example, Golden's closing brief noted that "[o]ver the two year period it represented Aletheia, Eichler and others in various matters O'Melveny received a total of $9,114,198" and argued that "[t]he record does not reflect that O'Melveny's services benefitted Aletheia, which filed bankruptcy less than a year after O'Melveny withdrew from the representation."  Golden Closing Br. at 46–47.  The brief further raised arguments regarding O'Melveny's purported failure to discount its rates despite industry pressure and O'Melveny's alleged overstaffing of "27 lawyers on the Proctor Litigation alone[.]"  Id. at 30 n.8.  Golden's closing reply brief similarly attacked the reasonableness of O'Melveny's fees.  See Dkt. 122-8 ("Golden Closing Reply Br.") at 2 ("Time and time again, [O'Melveny] subjugated Aletheia's interests . . . to their own *self-interest of retaining and billing* on the Aletheia matters[.]") (emphasis added).

In a presentation which accompanied his counsel's live closing argument to the Arbitrator, Golden specifically argued that Spiegel, O'Melveny's standard of care expert, "could not substantiate that any of [O'Melveny's] fees were reasonable."  Dkt. 122-9 ("Golden Closing Presentation") at 102.  That is because, according to Golden, Spiegel did not consider "[a]ny specific motions or actions taken;" "[t]he amount of time spent on any actions;" "[t]he amount of money spent on any actions;" "[w]hether any particular actions were appropriate;" and "[t]he number of lawyers and support staff used for any particular tasks or actions."  Id.  Similarly, Golden urged that O'Melveny's "conduct not only *exacerbated Aletheia's defense fees* but extended and created a multiplicity of litigation in an action that [O'Melveny] knew Aletheia was certain lose."  Id. at 68 (emphasis added).

**The Arbitrator Actually Decided the Fee Issues.**  Golden contends that "the question of whether O'Melveny's services were reasonably equivalent in value to the amount of the Fraudulent Conveyances O'Melveny received . . . was not decided by the Arbitration Award so collateral estoppel could not and does not apply."  MSJ Opp. at 19. According to Golden, the Final Award "makes no findings of fact or conclusions of law whatsoever concerning the value of O'Melveny's services to Aletheia relative to the amount of the Fraudulent Transfers."  Id. at 20.  The Court disagrees.

Golden's fraudulent transfer claims each require that Aletheia "must not have received reasonably equivalent value in exchange for the property transferred[.]"  In re United Energy Corp., 944 F.2d 589, 594 (9th Cir. 1991).  Where, as here, the "property

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | April 1, 2020 |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP ET AL. |

transferred" is remuneration to the creditor law firm for legal services that the firm provided to the debtor during the pre-petition period, "the Court looks not only to the hours performed by the attorney, but to the contract as a whole." In re Armstrong, 234 B.R. 899, 904 (Bankr. E.D. Ark. 1999). "All aspects of the transaction are included in the calculus, not merely tangible hours." Id. "There is a two step process required to determine whether a debtor received a reasonably equivalent value. First, it must be determined that the debtor received value. . . . Second, the Court must determine whether that value was reasonably equivalent to what the debtor gave up." In re Jordan, 392 B.R. 428, 441 (Bankr. D. Idaho 2008). "By its terms and application, the concept of 'reasonably equivalent value' does not demand a precise dollar-for-dollar exchange." 5 Collier on Bankruptcy ¶ 548.05 (16th 2020).

The Arbitrator actually decided issues in the Final Award which serve to collaterally estop Golden with respect to the Court's two-step reasonable equivalency analysis. First, the Final Award determined that Aletheia received value in the form of the legal services that O'Melveny provided in return for Aletheia's fees payments. Indeed, the Arbitrator noted the "success" that O'Melveny achieved on Aletheia's behalf. See Final Award at 58 ("[E]ven though success isn't required, O'Melveny had significant success in court: it won its motion to dismiss; defeated Proctor's motion to stay; defeated most of Proctor's demurrers; precluded Proctor and Peikin from pressing their 709 claims; and defeated Peikin's motion to disqualify O'Melveny from representing defendants in the Proctor suit."). The Arbitrator found that O'Melveny's legal services benefitted, and therefore provided value to, Aletheia. See, e.g., Final Award at 7 ("O'Melveny *mitigated the substantial risk* facing both Aletheia and Eichler in a contemporaneous investigation conducted by the SEC.") (emphasis added).

Similarly, the Arbitrator *actually* considered the value that Aletheia received in the form of O'Melveny's services in comparison to the fees that Aletheia paid to O'Melveny. See Final Award at 7 ("[Golden] alleges that, after two years of work, and the collection of *millions of dollars in fees* from Aletheia, O'Melveny fled the scene for greener pastures and left Aletheia to collapse into bankruptcy and ruin.") (emphasis added); cf. id. at 8 ("[Golden] has no evidence that anything O'Melveny did or failed to do caused any injury to Aletheia."). In an appendix to the Final Award devoted solely to "witness credibility," the Arbitrator recognized that Golden "attacked the credibility of . . . O'Melveny attorneys" on the basis of "motive." Id. at 134. "Citing to declines in O'Melveny's revenues during the financial crisis and pressure to discount billing rates, [Golden] argued that [Seth] Aronson launched Aletheia on frivolous, scorched earth litigation because . . . he had 'found a client willing to pay full rates on non-complex matters.'" Id. at 134–35. The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | April 1, 2020 |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP ET AL. | | |

Arbitrator determined, however, that "the evidence . . . falls far short of making a plausible case that Aronson, a highly regarded and well respected practitioner in his field, would risk his standing in the community for a fee that, spread over more than two years, amounted to a little more than one percent of the firm's 2009 gross revenue." Id. at 135.

Importantly, the Arbitrator cited the footnote in Golden's closing brief, Final Award at 135, wherein Golden specifically raised: that "[t]he representation of Aletheia generated over $9 million in billings in just 26 months"; that "O'Melveny suffered two straight years . . . of declining profits and the industry was feeling increasing pressure to discount rates"; and that "O'Melveny's staffing [of] 27 lawyers on the Proctor Litigation alone . . . demonstrated that [Seth] Aronson took advantage of Eichler's unbridled spending of Aletheia's resources . . . to the detriment of Aletheia." Golden Closing Br. at 30 n.8. Accordingly, in light of Golden's arguments regarding the excessiveness of O'Melveny's fees, by concluding that Golden "failed to show *any* . . . basis for a recovery against Respondents either as counsel, or in the case of Olson and deNeve, as officers of Aletheia," Final Award at 12 (emphasis added), the Arbitrator actually decided the propriety of O'Melveny's fees, concluding that the fees Alethia paid O'Melveny were reasonable as compared to the legal services that O'Melveny provided in return. See Disimone v. Browner, 121 F.3d 1262, 1268 (9th Cir. 1997) ("In determining whether an issue was 'actually litigated and determined' in an earlier adjudication, the court is 'allowed to draw necessary inferences from the prior adjudication in order to determine whether an issue was actually decided.'").

### iii.     Golden Had a Full and Fair Opportunity to Litigate

"[T]he concept of collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case." Allen v. McCurry, 449 U.S. 90, 95 (1980). Golden contends that "there was no opportunity to litigate th[e] issue, much less a full and fair opportunity, in the Arbitration" and that "the Arbitrator was biased against [Golden], which is an issue currently on appeal to the Ninth Circuit." GDF Nos. 53, 55. The Court does not find Golden's arguments availing.[2]

"A determination of whether the plaintiff had a full and fair opportunity to litigate does not involve reconsideration of the merits of the claim or issue." CollegeSource, Inc.

---

[2]     In confirming the Final Award, the Court has already rejected Golden's claim of arbitrator bias. See Order Confirming Final Award at 30–33.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | April 1, 2020 |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP ET AL. | | |

v. AcademyOne, Inc., No. 08-cv-1987-GPC-MDD, 2015 WL 5638104, at *8 (S.D. Cal. Sept. 24, 2015). Here, the arbitration afforded Golden the ability to participate in discovery, submit briefing to the Arbitrator, question and cross-examine live witnesses, and deliver live closing arguments to the Arbitrator. That is all that is required to satisfy the collateral estoppel doctrine's "full and fair opportunity" requirement. See NTCH-WA, Inc. v. ZTE Corp., No. 2:12-cv-3110-TOR, 2017 WL 3994792, at *9 (E.D. Wash. Sept. 11, 2017) (finding that arbitration proceedings satisfied "full and fair opportunity" requirement where "the parties were represented by counsel, participated in extensive discovery, provided the arbitrator with extensive briefing, made opening and closing arguments, and were permitted to examine and cross-examine witnesses and to present relevant evidence in a manner substantially akin to adjudicatory proceedings.").

### iv.    The Issues were Necessarily Decided

"Preclusive force attaches only to issues that were necessary to support the judgment in the prior action." Pool Water Prod. v. Olin Corp., 258 F.3d 1024, 1031 (9th Cir. 2001). "Issues that are necessarily decided include all issues that must have been decided for a judgment to stand[.]" Janjua, 933 F.3d at 1066. "Even if an issue is not explicitly raised, if it is necessary to the ultimate determination, it is 'necessarily decided.'" Id. However, "[l]itigants are not precluded from relitigating an issue if its determination was merely incidental to the judgment in the prior action." Pool Water Prod., 258 F.3d at 1031.

Pursuant to California law, "[t]he elements of a cause of action for attorney malpractice are: (1) the duty of the attorney to use such skill, prudence and diligence as members of the profession commonly possess; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage." Schultz v. Harney, 27 Cal. App. 4th 1611, 1621 (1994). "Overbilling can support a claim for malpractice or breach of fiduciary duty, as charging an excessive and unlawful fee breaches the ethical duties of good faith and fidelity and thus amounts to legal malpractice." Dahan v. Sussman Shank, LLP, No. 2:16-cv-02547-SVW-AS, 2017 WL 2713737, at *8 (C.D. Cal. Feb. 7, 2017).

Here, Golden's revised interrogatory responses made clear, with respect to Golden's professional negligence claim, that "[Golden] intends to pursue a claim against O'MELVENY *based on its billing practices* with respect to ALETHEIA." Golden Interrogatory Resp. No. 5 at 14 (emphasis added). Golden's interrogatory responses clarified that the basis for Golden's billing practices claim was that O'Melveny "derive[d] *exorbitant fees and costs* from ALETHEIA, anticipating that EICHLER would not . . .

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | April 1, 2020 |
|----------|-------------------------|------|---------------|
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP ET AL. | | |

object to or contest O'MELVENY'S billings." Id. (emphasis added). Moreover, Golden specifically argued during closing argument that Spiegel, O'Melveny's standard of care expert, "could not substantiate that any of [O'Melveny's] fees were reasonable." Golden Closing Presentation at 102. After considering the evidence and argument presented during the arbitration, the Arbitrator concluded that O'Melveny's "representation of Aletheia . . . conformed to the applicable standard of care" and that Golden "failed to show that *any* act or omission of the Respondents caused *any* injury to Aletheia and failed to show *any other basis for a recovery* against Respondents either as counsel, or in the case of Olson and deNeve, as officers of Aletheia." Final Award at 12 (emphases added).

Because Golden pursued a claim for legal malpractice based in part on allegations that O'Melveny charged Aletheia "exorbitant fees and costs," because these allegations could give rise to a claim for legal malpractice pursuant to California law, and because the Arbitrator concluded that Golden "failed to show that any act or omission of [O'Melveny] caused any injury to Aletheia and failed to show *any other basis for a recovery*," the Arbitrator "necessarily decided" the reasonableness of O'Melveny's fees. See Janjua, 933 F.3d at 1066 ("Even if an issue is not explicitly raised, if it is necessary to the ultimate determination, it is 'necessarily decided.'"); see also Moore's Federal Practice, Civil § 132.03[3][e] (Matthew Bender 3d ed.) ("An issue that was necessarily implicit in a larger determination is given issue preclusive effect. An issue that is distinctly presented in the pleadings and necessarily resolved may be reflected in the decision that includes that point, although it may not be expressly mentioned in the decision.").

### v.     **Final Judgment**

"Only a final judgment that is 'sufficiently firm' can be issue preclusive." Robi v. Five Platters, Inc., 838 F.2d 318, 326 (9th Cir. 1988). "A federal-court order confirming an arbitration award has 'the same force and effect' as a final judgment on the merits, . . . including the same preclusive effect." NTCH-WA, Inc., 921 F.3d at 1180.

Here, the Court confirmed the Final Award on November 1, 2019. See Order Confirming Final Award. Golden "does not dispute that the Court's order confirming the Final Award "constitutes a final judgment." See GDF No. 57. Accordingly, the Final Award constitutes "a final judgment" for collateral estoppel purposes. That Golden has filed an interlocutory appeal of the Court's order confirming the Final Award does not render a different result. See Collins v. D.R. Horton, Inc., 505 F.3d 874, 882 (9th Cir. 2007) ("[A] a final judgment retains its collateral estoppel effect, if any, while pending appeal.").

**CIVIL MINUTES – GENERAL**    **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | April 1, 2020 |
|---|---|---|---|
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP ET AL. | | |

### vi. Golden was a Party to the Arbitration

Finally, collateral estoppel requires that "the person against whom collateral estoppel is asserted in the present action was a party or in privity in the previous action." Aten Int'l Co. v. Uniclass Tech. Co., No. 2:15-cv-04424-AG-AJW, 2015 WL 12778415, at *2 (C.D. Cal. Nov. 16, 2015). Golden was indisputably a party to the arbitration in which the Arbitrator rendered the Final Award. SUF No. 58.

\* \* \*

In accordance with the foregoing, the Court concludes that in determining that Golden "failed to show any other basis for a recovery against" O'Melveny, Final Award at 12, the Arbitrator rejected Golden's argument that O'Melveny charged Aletheia "exorbitant fees and costs" during the course of its representation of Aletheia. That finding is entitled to preclusive effect pursuant to the doctrine of collateral estoppel, barring Golden from relitigating, in the context of his fraudulent transfer claims, the issue of whether Aletheia received "reasonably equivalent value" in return for its remuneration to O'Melveny. See In re Red Dot Scenic, Inc., 313 B.R. 181, 187 (Bankr. S.D.N.Y. 2004) (finding that if bankruptcy court had determined that a note and purchase agreement between debtor and creditor were "valid and enforceable," that would collaterally estop relitigation of issue of whether debtor's payments to creditor were "supported by reasonably equivalent value" for purposes of fraudulent transfer claim); see also In re Butcher, 69 B.R. 198, 203 (Bankr. E.D. Tenn. 1986) (finding "reasonably equivalent value" requirement met where bankruptcy trustee sought avoidance of transfers to debtor's attorney as fraudulent transfer because "[i]t is undisputed in this record that from February or March through May 27, 1983, Schledwitz performed various legal and other services for the debtor, six to eight hundred hours in all. . . . Schledwitz was owed a debt for legal services and for expenses advanced. When Schledwitz received payment on the dates in question, the debtor received 'reasonably equivalent value,' i.e. satisfaction of an antecedent debt."); In re Bledsoe, 350 B.R. 513, 519 (Bankr. D. Or. 2006) (noting, in the context of fraudulent transfer claim premised on distribution of assets following marital dissolution, "[i]f a decree of dissolution is subject to collateral attack in federal court because the distribution of assets is financially or mathematically unequal, then virtually every decree would be subject to *endless litigation* and an 'intolerable uncertainty regarding the finality of any' judgment.") (emphasis added).

The Court therefore **GRANTS** summary judgment to O'Melveny on Golden's fraudulent transfer claims.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | April 1, 2020 |
|----------|--------------------------|------|----------------|
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP ET AL. | | |

### 3. Preference Claim

Golden's preference claim against O'Melveny alleges that "during the one year period prior to the Petition Date," a transfer of $2,623,068.78 was made "to or for the benefit of O'Melveny . . . by or on behalf of Aletheia . . . on or about December 31, 2011." Compl. ¶ 76. In support of the preference claim, Golden further alleges that "O'Melveny on the one hand, and Olson and/or deNeve on the other, continued to have a sufficiently close relationship while Olson and deNeve were officers of Aletheia, which was not at arm's-length, including Olson and/or deNeve having some economic interest in the payments that O'Melveny received from Aletheia, sufficient for O'Melveny to be deemed an 'insider' with respect to Aletheia for purposes of 11 U.S.C. § 547(b)(4)(B)." Id. ¶ 78. Golden further avers that "this payment to Aletheia was made by Aletheia's insurance carrier in respect of an insurance claim, and claim proceeds, belonging to Aletheia." Id. ¶ 76.

"Section 547 of the Bankruptcy Code authorizes a bankruptcy trustee to avoid preferential transfers made by a debtor within a certain period of time prior to the bankruptcy filing." In re Schuman, 81 B.R. 583, 585 (B.A.P. 9th Cir. 1987). "The eligible transfers are referred to as 'preferences' because they are deemed to be transfers that favor one creditor to the detriment of other creditors." In re Ehring, 900 F.2d 184, 186 (9th Cir. 1990). "A transfer by Debtor constitutes an avoidable preference if six elements are shown: (1) a transfer of an interest of the debtor in property; (2) to or for the benefit of a creditor; (3) for or on account of an antecedent debt; (4) made while the debtor was insolvent; (5) made to an insider between 90 days and one year before the date of the filing of the petition; and (6) that enables the creditor to receive more than such creditor would receive in a Chapter 7 liquidation of the estate." Mann v. GTCR Golder Rauner, L.L.C., 351 B.R. 708, 711 (D. Ariz. 2006). For the purposes of the preferential transfer statute, there are "two types of insiders: statutory insiders and non-statutory insiders." In re The Vill. at Lakeridge, LLC, 814 F.3d 993, 999 (9th Cir. 2016). "Statutory insiders, also known as 'per se insiders,' are persons explicitly described in 11 U.S.C. § 101(31), such as 'persons in control of the debtor.'[3] Id. (internal alteration omitted) (citing 11 U.S.C. § 101(31)). "A non-statutory insider is a person who is not explicitly listed in § 101(31), but who has a

---

[3]     Golden acknowledges that he "does not contend O'Melveny was a 'statutory insider' . . . because O'Melveny was not a director, officer, person in control, relative, partnership, or relative, [sic] of Aletheia." MSJ Opp. at 4 n.5.

| | CIVIL MINUTES – GENERAL | | 'O' | |
|---|---|---|---|---|
| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | April 1, 2020 | |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP ET AL. | | | |

sufficiently close relationship with the debtor to fall within the definition." In re The Vill. at Lakeridge, LLC, 814 F.3d at 999.

Here, O'Melveny moves for summary judgment on Golden's preference claim on the grounds that that O'Melveny was not a "non-statutory insider" for the purposes of the preferential transfer statute. See MSJ at 17. O'Melveny makes several arguments in support of its contention that it is *not* an insider: (1) at the time of the December 31, 2011 payment[4], O'Melveny had already withdrawn from representing Aletheia and had already been replaced as counsel by Freedman + Taitelman, LLP; (2) O'Melveny was never an insider because it "was merely one of several law firms that represented Aletheia in the Proctor Litigation and other matters" and "[c]ourts consistently reject attempts to treat outside attorneys as non-statutory insiders"; (3) the payments that form the basis for the preference claim were made by Houston Casualty Company ("Houston Casualty"), rather than Aletheia; and (4) "even if Olson's and deNeve's alleged relationships with O'Melveny were somehow relevant to this inquiry (they are not), O'Melveny was similarly unrelated to and unaffiliated with Olson and DeNeve" because when Houston Casualty made the two payments to O'Melveny, "deNeve was employed by Aletheia, not O'Melveny, and Olson had left Aletheia to work for the U.S. Department of Commerce in Washington, DC." MSJ at 17–23.

Golden contends that summary judgment is inappropriate as to his preference claim on several grounds. According to Golden, O'Melveny "makes no attempt to rely upon [the Final Award] because [the Final Award] did not address [the question of O'Melveny's insider status] and, thus, collateral estoppel could not and does not attach." MSJ Opp. at 4. Golden also contends that genuine disputes of material fact preclude the grant of summary judgment to O'Melveny on the question of O'Melveny's insider status. Id. at 5. The gravamen of Golden's preference claim is that "O'Melveny was able to leverage its non-arm's-length relationship with Aletheia, via deNeve, to coerce Aletheia to direct Houston Casualty to pay O'Melveny funds that were owing to Aletheia, which was not in Aletheia's best interest to pay O'Melveny at that time, and, thus, O'Melveny was a non-statutory insider." Id. at 24. That is because "at the time O'Melveny received the Preferential Payments, defendant deNeve, who was effectively on loan from O'Melveny

---

[4] O'Melveny notes that "[a]lthough [Golden] alleges one payment to O'Melveny as the basis for [the preference claim], O'Melveny actually received two payments . . . in the one-year period before the Petition Date—one for $1,000,000 on April 5, 2012, and another for $1,350,000 on May 7, 2012." MSJ at 18.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | April 1, 2020 |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP ET AL. | | |

and was serving as Aletheia's General Counsel, was beholden to O'Melveny hoping or anticipating he would be re-hired by O'Melveny in the future." Id.

The Court does not find Golden's arguments persuasive. In the Final Award, the Arbitrator determined that "neither Olson nor deNeve breached any fiduciary duty to Aletheia either as counsel or as officers of the company." Final Award at 129. As explained more fully below, the Arbitrator's finding precludes Golden from relitigating, in the context of his preference claim, the issue of whether deNeve was "beholden" to O'Melveny so as to render O'Melveny a non-statutory insider for the purposes of Golden's preference claim.

### i. Sufficient Identity of Issues

There is a sufficient identity of issues between Golden's already-adjudicated breach of fiduciary duty claim and Golden's remaining preference claim so as to permit the application of collateral estoppel. For example, Golden's statement of claims in the arbitration alleged that "both Olson and deNeve joined Aletheia as officers" and that "[i]n that capacity, Olson and deNeve owed fiduciary obligations of loyalty and care to the Company rather than to its officers or shareholders personally." SOC ¶ 67. Despite their fiduciary obligations, however, "Olson and deNeve compounded O'Melveny's breach when . . . they continued to ignore the harm caused by Eichler and other[s] against the Company and *exhibited extreme disloyalty to the company by continuing to advance O'Melveny's* and Eichler's *agendas*." Id. ¶ 97 (emphases added). The allegations substantially overlap with those that Golden offers in support of his preference claim. See Compl. ¶ 78 ("O'Melveny . . . and Olson and/or deNeve . . . continued to have a sufficiently close relationship while Olson and deNeve were officers of Aletheia, . . . including Olson and/or deNeve having some economic interest in the payments that O'Melveny received from Aletheia[.]").

Golden argues that discovery with his respect to his remaining preference claim "may reveal other highly relevant information, such as that deNeve had communications with, and obtained assurances or an understanding relative to his future employment from O'Melveny[.]" MSJ Opp. at 25. But evidence on this issue was already adduced during arbitral discovery of Golden's fiduciary duty claims against O'Melveny, deNeve, and Olson, further highlighting the overlap between Golden's breach of fiduciary duty and preference claims. See Cartmill, 2012 WL 13175846, at *6 (finding sufficient identity of issues because "[t]he pretrial preparations in Kuba embraced the matters sought in Cartmill. This is shown by the fact that much of the evidence Plaintiffs reference as being new to the

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | April 1, 2020 |
|----------|-------------------------|------|---------------|
| Title    | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP ET AL. | | |

Cartmill action was already presented, in some form, to the District Court and the Ninth Circuit in Kuba."). Indeed, during deposition of O'Melveny's corporate designee, Golden's counsel specifically asked: "Was there an agreement of any kind, formal or informal, that either or both [of Olson and deNeve] could return to O'Melveny after their time at Aletheia?" O'Melveny Dep. Tr. at 716:2–4. O'Melveny's designee answered "[t]here's no agreement." O'Melveny Dep. Tr. at 716:5; cf. Dk 120 ("Bregman Decl.") ¶ 19 (noting that, with respect to preference claim, "discovery would focus on the relationship between O'Melveny and Aletheia relative to O'Melveny's efforts to be paid as well as its efforts to influence, and its actual influence over, deNeve and the extent to which deNeve was beholden to O'Melveny[.]").

Finally, argument regarding the relationship between O'Melveny and deNeve, during deNeve's time as Aletheia's General Counsel, *was* advanced during the arbitration. See Furnace v. Giurbino, No. 1:11-cv-00012-LJO, 2013 WL 2190086, at *3 (E.D. Cal. May 20, 2013) (finding sufficient identity of issues where "there is a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first."). For example, Golden argued in his closing brief that "Olson and deNeve were so conflicted they did not even request a reduction of O'Melveny's full rates [sic] legal fees[.]" Golden Closing Br. at 39. That is precisely the argument that Golden now advances to establish O'Melveny's insider status with respect to Golden's preference claim. See MSJ Opp. at 23 n.12 ("That deNeve was beholden to O'Melveny also manifested itself in other ways . . . including . . . his never seeking a reduction in hourly rates[.]").

Accordingly, the Court finds that Golden's preference claim, which turns on whether deNeve was "beholden" to O'Melveny, presents issues that are in substance the same as those adjudicated during the arbitration of Golden's breach of fiduciary duty claim.

### ii.  deNeve's Relationship with O'Melveny was Actually Litigated and Actually and Necessarily Decided

An "issue is actually litigated when an issue is raised, contested, and submitted for determination." Janjua, 933 F.3d at 1066. There can be no doubt that Golden raised, contested, and submitted for determination the issue of whether, during his time as Aletheia's General Counsel, deNeve was "beholden" to O'Melveny.

Golden raised the issue during arbitration, including in his fourth amended responses to O'Melveny's interrogatories. Dkt. 117-10 at 16. Indeed, Golden specifically "allege[d] that the conduct and omissions of OLSON and DENEVE, while they were officers of

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | April 1, 2020 |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP ET AL. | | |

ALETHEIA, breached their duty of care to ALETHEIA insofar as they, or either of them . . . put the economic interests of O'MELVENY, relative to the payment of its excessive fees and costs, ahead of their fiduciary and competence duties to ALETHEIA[.]" Id. at 16–17. Moreover, Golden contested these issues, and his counsel specifically questioned deNeve during the arbitration hearing regarding deNeve's decision not to seek discounts for O'Melveny's services and outstanding payments for O'Melveny's services. See Dkt. 85-3 at 1396–1397. Finally, Golden submitted the issue for the Arbitrator's determination because Golden's counsel specifically argued in the presentation accompanying his closing argument that "Olson and deNeve were hopelessly and horribly conflicted" and "[f]ailed to request a reduction of OMM full-rates legal fees." Golden Closing Presentation at 61, 64.

The Arbitrator actually decided the issue of the nature of the relationship between deNeve and O'Melveny during deNeve's time as an Aletheia officer. Indeed, in the Final Award, the Arbitrator concluded that "neither Olson nor deNeve breached any fiduciary duty to Aletheia either as counsel or as officers of the company." Final Award at 129. The Arbitrator also concluded that "there is no evidence that anything that Olson and deNeve did, or did not do, caused any injury to Aletheia." Id. at 127. Moreover, these determinations were "necessary" because breach and proximate damages are elements of a claim for breach of fiduciary duty pursuant to California law. See Mendoza v. Cont'l Sales Co., 140 Cal. App. 4th 1395, 1405 (2006).

### iii. Full and Fair Opportunity, Final Judgment, Party to the Arbitration

The Court has already determined, with respect to Golden's fraudulent transfer claims, that Golden had a full and fair opportunity to litigate, that the Court's order confirming the Final Award renders the Final Award a final judgment, and that Golden was a party to the arbitration. That reasoning applies equally here.

\* \* \*

For the foregoing reasons, the Court concludes that in determining that "neither Olson nor deNeve breached any fiduciary duty Aletheia either as counsel or as officers of the company," Final Award at 129, the Arbitrator rejected Golden's argument that deNeve placed the economic interests of O'Melveny ahead of his duties to Aletheia. See John F. Matull & Assocs., Inc. v. Cloutier, 194 Cal. App. 3d 1049, 1053 n.3 (1987) ("[A]n officer of a corporation acts in a fiduciary capacity and the law does not allow such individuals to secure any personal advantage as against the corporation."). Pursuant to the doctrine of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | April 1, 2020 |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP ET AL. | | |

collateral estoppel, the Arbitrator's finding bars Golden from relitigating, in the context of his preference claim, the issue of whether deNeve was "beholden" to O'Melveny so as to render O'Melveny a non-statutory insider.

Accordingly, the Court **GRANTS** summary judgment to O'Melveny on Golden's preference claim.

### 4.     Golden's Request to Defer Ruling Pursuant to Rule 56(d)

Golden contends that "[r]elevant discovery remains to be conducted and this matter should not be resolved summarily prior to such discovery in accordance with Fed. R. C. P. 56(d)." MSJ Opp. at 22. The Court does not find Golden's contention availing.

"Rule 56(d) offers relief to a litigant who, faced with a summary judgment motion, shows the court by affidavit or declaration that 'it cannot present facts essential to justify its opposition.'" Michelman v. Lincoln Nat. Life Ins. Co., 685 F.3d 887, 899 (9th Cir. 2012) (citing Fed. R. Civ. P. 56(d)). "The court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Id. (internal citation and quotation marks omitted). "A party seeking Rule 56(d) relief bears the burden of showing that (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." Childs v. Caesars Entm't Operating Co., Inc., No. 2:18-cv-01869-APG-DJA, 2020 WL 907558, at *1 (D. Nev. Feb. 25, 2020) (internal citation and quotation marks omitted). "Ultimately, the district court's decision on a Rule 56(d) motion is within the district court's discretion." Blocktree Properties, LLC v. Pub. Util. Dist. No. 2 of Grant Cty. Washington, No. 2:18-cv-390-RMP, 2019 WL 2437468, at *2 (E.D. Wash. June 11, 2019).

Golden provides no compelling basis that would warrant granting Golden's request. For example, Golden submits a declaration wherein his counsel attests that Golden "has been unable to discover facts that are or may be essential to his opposition to the Motion's two primary arguments; namely, first, that the services O'Melveny provided in consideration of the Fraudulent Conveyances were 'reasonably equivalent in value' in relation to the amount of the Fraudulent Conveyances . . . and second, that O'Melveny is a non-statutory insider for purposes of Section 547 of the Bankruptcy Code." Bregman Decl. ¶ 17. If given the opportunity to conduct further discovery regarding the fraudulent transfer claims, Golden attests that he would adduce evidence "regarding the value to Aletheia and its creditors of the services O'Melveny provided in respect of the Fraudulent Conveyances it received, the hours spent, staffing, tasks performed for which the Fraudulent Transfers

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | April 1, 2020 |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP ET AL. |

were made, results achieved, rates charged (including relative to the tasks performed and what the firm was charging others for similar work), the fair market value of the services actually received by Aletheia, the actual value thereof to Aletheia, and related matters[.]" Bregman Decl. ¶ 18. With respect to his preference claim, Golden attests that "discovery would focus on the relationship between O'Melveny and Aletheia relative to O'Melveny's efforts to be paid as well as its efforts to influence, and its actual influence over, deNeve, and the extent to which deNeve was beholden to O'Melveny, given deNeve was General Counsel of Aletheia at the time O'Melveny received the Preferential Payments." Id. ¶ 19. These general averments are insufficient to satisfy Rule 56(d). See Gen. Ins. Co. of Am. v. INB Ins. Servs. Corp., No. 18-cv-03372-JST, 2018 WL 6592440, at *4 (N.D. Cal. Dec. 14, 2018) (finding that counsel's declaration that discovery "'is likely to produce evidence that will raise triable issues of fact defeating the summary judgment motion' . . . is insufficient to meet INB's burden 'to show that the evidence sought exists, and that it would prevent summary judgment.'"); accord Naoko Ohno v. Yuko Yasuma, 723 F.3d 984, 1013 n.29 (9th Cir. 2013) ("It is not enough to rely on vague assertions that discovery will produce needed, but unspecified, facts. . . . The evidence sought . . . must be more than the object of mere speculation.") (internal alterations and citations omitted). Moreover, as the Court noted in determining that collateral estoppel applies, much of this evidence was already adduced during arbitral discovery.

Indeed, to justify Rule 56(d) relief, Golden must "proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment." Chance v. Pac-Tel Teletrac Inc., 242 F.3d 1151, 1161 n.6 (9th Cir. 2001). Even assuming arguendo that Golden had proffered sufficient facts regarding the "value" of O'Melveny's services to Aletheia and the relationship between Aletheia and deNeve, Golden fails to demonstrate how this evidence would render the doctrine of collateral estoppel inapplicable so as to defeat O'Melveny's motion for summary judgment. See Sec. & Exch. Comm'n v. Stein, 906 F.3d 823, 833 (9th Cir. 2018) (denying request for Rule 56(d) relief because party "did not, for example, point out how particular evidence not yet discovered was 'essential' to his argument that issue preclusion was inapplicable or unfair.").

Accordingly, the Court **DENIES** Golden's request to defer ruling on O'Melveny's motion for summary judgment or for other relief pursuant to Rule 56(d).

**B.      Golden's Motion for Leave to File Amended Complaint**

Golden seeks leave to file a first amended complaint. See generally MLA. According to Golden, the first amended complaint would: (1) provide additional factual

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | April 1, 2020 |
|----------|--------------------------|------|----------------|
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP ET AL. | | |

allegations that would support Golden's contentions, with respect to Golden's fraudulent transfer claims, "that the services provided by O'Melveny were not reasonably equivalent in value relative to the various payments that the firm received"; (2) provide additional factual allegations that would support Golden's contentions, with respect to Golden's preference claim, regarding "the reasons why O'Melveny was an 'insider' of [Aletheia] at the time it received pre-petition payments"; (3) "clarify that the bankruptcy claims for the avoidance and recovery of certain pre-petition transfers are brought against O'Melveny only"; (4) remove references to Freedman + Taitelman, LLP, with whom Golden has since settled; and (5) "correct a few non-substantive typographical errors." MLA at 1–2.

"Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." Desertrain v. City of Los Angeles, 754 F.3d 1147, 1154 (9th Cir. 2014) (internal citation omitted). "The grant or denial of leave to amend is in the Court's discretion." T.T. v. Cty. of San Diego, No. 3:19-cv-00407-AJB-AGS, 2020 WL 516146, at *3 (S.D. Cal. Jan. 31, 2020). The Court addresses these factors in turn.[5]

### 1. Undue Delay

"Relevant to evaluating the delay issue is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." Jackson v. Bank of Hawaii, 902 F.2d 1385, 1388 (9th Cir. 1990). Thus, "[w]here the party seeking amendment knows or should know of the facts upon which the proposed amendment is based but fails to include them in *the original complaint*, the motion to amend may be denied." De Saracho v. Custom Food Mach., Inc., 206 F.3d 874, 878 (9th Cir. 2000) (emphasis added).

Here, Golden filed the original complaint in this case on November 10, 2014. See Compl. On June 7, 2013, prior to Golden's filing this action, Golden's previous counsel requested that O'Melveny produce "its complete file with respect to any and all matters in

---

[5]     The Court notes that once the Court has entered a scheduling order, the "party seeking to amend pleading after date specified in scheduling order must first show 'good cause' for amendment under Rule 16(b), then, if 'good cause' be shown, the party must demonstrate that amendment was proper under Rule 15[.]" Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 608 (9th Cir. 1992). The Court has not entered a scheduling order to date, and the parties appear to agree that Rule 15 applies.

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | April 1, 2020 |
|---|---|---|---|
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP ET AL. | | |

which it represented Aletheia, any of its affiliates, or Mr. Eichler. This request includes, but is not . . . limited to, all court filings, draft pleadings, correspondence, emails memoranda, notes, analyses, and any other related documents, whether maintained in hard copy or electronic form (including metadata)." Dkt. 70-2 at 3. Moreover, in connection with Golden's motion to disqualify Gibson Dunn, O'Melveny's outside counsel, O'Melveny's general counsel submitted a declaration attesting that "in September and October 2013, O'Melveny, under my direction, produced to Aletheia's counsel *all of O'Melveny's invoices* pertaining to the Proctor Litigation, including all of the invoices containing references to Gibson Dunn attorneys." Dkt. 59-2 ¶ 19 (emphasis added). Accordingly, it appears that at the time Golden filed his original complaint on November 10, 2014, Golden knew of the facts and theories which Golden now contends warrant leave to amend his fraudulent transfer claims. Indeed, Golden seems to concede this point in reply. See MLA Reply at 4 ("Specifically, as relevant here, [Golden] has explained the Original Complaint *has always contended* the services O'Melveny provided to Aletheia were not reasonably equivalent in value relative to the payments O'Melveny received.") (emphasis added).

With respect to his preference claim, Golden complains that O'Melveny "fails to explain on what basis [Golden's] counsel was supposed to have known before filing the Original Complaint that deNeve was, at that time, on his fourth stint working at O'Melveny, having left and returned to the firm no fewer than three times." MLA Reply at 5. The Court does not find Golden's argument availing. First, the allegations in Golden's original complaint belie his argument that he did not know the facts which form the basis for his proposed amendments to his preference claim. Golden's original complaint alleged that: "deNeve was employed by O'Melveny as an attorney with the Firm or employed by Aletheia as an officer of the Company"; that "[o]n or about April 19, 2011, . . . Olson and deNeve, who had been part of O'Melveny's legal team in the Proctor litigation, jointed Aletheia as officers"; that "[o]n or about September 17, 2012, deNeve resigned his positions as Aletheia's Vice President and General Counsel, and immediately rejoined O'Melveny as a counsel"; and that "O'Melveny on the one hand, and Olson and/or deNeve on the other, continued to have a sufficiently close relationship while Olson and deNeve were officers of Aletheia . . . including Olson and/or deNeve having some economic interest in the payments that O'Melveny received from Aletheia, sufficient for O'Melveny to be deemed an 'insider' with respect to Aletheia[.]" Compl. ¶¶ 4, 44, 53, and 78.

In sum, it appears that at the time Golden filed his original complaint in November 2014, Golden knew of the underlying material facts that form the basis for his preference

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | April 1, 2020 |
|----------|--------------------------|------|---------------|
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP ET AL. |

and fraudulent transfer claims, which Golden now contends require amendment. See Acri v. Int'l Ass'n of Machinists & Aerospace Workers, 781 F.2d 1393, 1398 (9th Cir. 1986) ("[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action."). Although the Court stayed this case as to these claims while Golden's professional negligence and breach of fiduciary claims were arbitrated, Golden did not file this motion seeking leave to amend until March 2, 2020. Indeed, despite the Court's stay order, Golden represented to the Court in July 2016 that he "will seek leave to amend its Original Complaint to clarify and reinforce that it is seeking a finding of illegality based on O'Melveny's violation of Rule 3-310(C)(2)." Dkt. 54 at 5 n.4. Given that Golden knew the factual bases for his proposed amendments before filing his original complaint, and because Golden already anticipated filing an amended complaint in July 2016, Golden fails to explain why he could not have advanced his proffered amendments at that time. See AmerisourceBergen Corp. v. Dialysist W., Inc., 465 F.3d 946, 953 (9th Cir. 2006) ("We have held that an eight month delay between the time of obtaining a relevant fact and seeking a leave to amend is unreasonable."). Even assuming *arguendo* that Golden's counsel did not know, at the time of filing the original complaint, that deNeve was "on his fourth stint at O'Melveny," and even assuming that allegation is not already captured in substance in Golden's original complaint, Golden fails to explain why employment information regarding deNeve, Aletheia's own general counsel, was not reasonably available to Golden. See Quidel Corp. v. Siemens Med. Sols. USA, Inc., No. 16-cv-3059-BTM-AGS, 2019 WL 1409854, at *2 (S.D. Cal. Mar. 27, 2019) ("in evaluating undue delay, we also inquire 'whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading.").

Accordingly, the Court concludes that this factor weighs against amendment.

### 2. Bad Faith

"Bad faith exists where the proposed amendment suggests that the movant is merely seeking to prolong the litigation by adding new but baseless legal theories." Quidel Corp., 2019 WL 1409854, at *3 (internal citation omitted). Here, the Court notes that Golden filed his motion for leave to file an amended complaint on March 2, 2020, *after* O'Melveny already filed its motion for summary judgment on December 30, 2019, and *after* O'Melveny filed its reply in support of its motion for summary judgment on February 24, 2020. Dkts. 117, 122, 123. See Forty-Niner Sierra Res., Inc. v. Subaru of Am., Inc., 416 F. Supp. 2d 861, 871 (E.D. Cal. 2004) (denying plaintiff's request for leave to file amended complaint because "[p]laintiff requested leave to amend *25 days after* [d]efendant filed is

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | April 1, 2020 |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP ET AL. | | |

motion for summary judgment" and "[w]here the primary motivation for an amendment is surviving summary judgment, the movant's motive weighs against granting leave to amend.") (emphasis in original).

In support of Golden's motion seeking leave to amend, Golden's counsel submitted a declaration describing the reason for Golden's delay in seeking leave to amend. See Dkt. 123-1. Golden's counsel attests that "[b]etween the time that [defendants] filed their Answer to the Original Complaint and March, 2, 2020, our firm has been focusing its efforts in this case on drafting [Golden's] opening brief for the appeal of this Court's order confirming [the Final Award] and denying [Golden's] motion to vacate that award." Id. ¶ 8. According to Golden's counsel, "[o]n December 30, 2019, [defendants] filed their motion for summary judgment with respect to [Golden's] Bankruptcy Claims, and since then through February 3, 2020, when our firm filed [Golden's] papers in opposition to that motion for summary judgment, our firm was also focusing on drafting such opposition papers." Id.

Although the reasons that Golden advances do not justify Golden's delay in filing the motion for leave to amend, the Court declines to find that Golden acted in bad faith.

### 3.     Golden Has Not Previously Amended

Another factor which guides the Court's analysis in determining to grant leave to amend is "whether plaintiff has previously amended his complaint." Mendia v. Garcia, 165 F. Supp. 3d 861, 873 (N.D. Cal. 2016). "The district court's discretion to deny leave to amend is particularly broad where a petitioner previously has amended the complaint." Alzheimer's Inst. of Am. v. Elan Corp. PLC, 274 F.R.D. 272, 276 (N.D. Cal. 2011) (internal alteration and citation omitted).

Here, Golden has not previously amended the original complaint. Accordingly, this factor does not preclude amendment.

### 4.     Futility

The Court may deny leave to amend "where the amendment would be futile." Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc., 368 F.3d 1053, 1061 (9th Cir. 2004). "An amendment is futile when no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." Missouri ex rel. Koster v. Harris, 847 F.3d 646, 656 (9th Cir. 2017) (internal citation and quotation marks omitted).

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | April 1, 2020 |
|---|---|---|---|
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP ET AL. | | |

In support of his motion for leave to file a first amended complaint, Golden submits a proposed first amended complaint. See Dkt. 123-1, Exh. 2 ("FAC"). With respect to Golden's preference claim, Golden proposes to include an allegation that "this was deNeve's *fourth* employment term (stint) at O'Melveny, as deNeve initially joined O'Melveny after graduating law school (first stint), then left O'Melveny after approximately one year for a clerkship lasting approximately one year, then re-joined O'Melveny for approximately 2 ½ years (second stint), then left O'Melveny for a job at the Securities and Exchange Commission, then re-joined O'Melveny (third stint) for approximately three and a half years, prior to leaving O'Melveny to join Aletheia as described above." FAC ¶ 51. As to Golden's fraudulent transfer claims, Golden proposes to include an allegation that, *inter alia*, "O'Melveny's bills and invoices to Aletheia included substantial charges for unnecessary staffing, over-staffing and excessive billing for tasks, meetings and the like, such that, for example, O'Melveny received upwards of $10 million in a two year period, including by using more than sixty (60) attorneys and forty (4) paralegals and support staff on Aletheia matters where fewer lawyers and lower billings would have had equivalent value and benefit to Aletheia, assuming such services provided any benefit whatsoever to Aletheia." Id. ¶ 55.

Golden fails to explain how the additional allegations in his proposed FAC would allow him to overcome the Final Award's preclusive effects on his preference and fraudulent transfer claims, however. For that reason, the Court concludes that amendment would be futile. See McQuillion v. Schwarzenegger, 369 F.3d 1091, 1099 (9th Cir. 2004) ("The district court did not err in denying leave to amend because amendment would have been futile. At the time of its ruling, McQuillion could not amend his complaint to avoid collateral estoppel[.]").

### 5. Prejudice

In determining whether to grant leave to amend, "[p]rejudice to the opposing party is the most important factor." Jackson, 902 F.2d at 1387 (9th Cir. 1990). Courts have identified factors such as the cost of additional discovery and litigation costs in determining whether amendment would prejudice the nonmoving party. Andersen v. Hallier Properties, LLC, No. 2:09-cv-08323-GW-PJW, 2011 WL 13185645, at *4 (C.D. Cal. Mar. 21, 2011).

The Court first compelled arbitration of Golden's professional negligence and breach of fiduciary duty claims on June 15, 2015. See Order Compelling Arbitration. The arbitration proceedings commenced in November 2015, and the arbitration hearing began on November 5, 2018, concluding on November 29, 2018. Final Award at 5. The

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | April 1, 2020 |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP ET AL. | | |

Arbitrator's Final Award has preclusive effect on Golden's remaining preference and fraudulent transfer claims, and allowing amendment would subject O'Melveny to additional discovery and litigation on claims that are foreclosed. See Jackson, 902 F.2d at 1388 (finding that granting leave to amend would prejudice nonmoving party because "[t]o permit the amended complaint would require appellees *to relitigate a portion of their state court action* with their insurer on the different theories raised by the section 1962(a) and (b) claims.") (emphasis added); AmerisourceBergen Corp., 465 F.3d at 954 n.10 ("[I]f an amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial.") (internal citation and alteration omitted); Cobb v. Ocwen Loan Servicing, LLC., No. 2:16-cv-01659-JGB-KK, 2017 WL 10560638, at *3 (C.D. Cal. June 15, 2017) ("Allowing Plaintiff further leave to amend would only prejudice Ocwen through additional expenditures of resources.").

The risk of undue prejudice to O'Melveny therefore weighs against amendment.

\* \* \*

On balance, the Court concludes that undue delay, futility, and prejudice preclude amendment. Accordingly, the Court **DENIES** Golden's motion for leave to file a first amended complaint.

## IV.     CONCLUSION

In accordance with the foregoing, the Court orders as follows:

1.     The Court **GRANTS** summary judgment to Olson and deNeve with respect to Golden's preference, two-year fraudulent transfer, and four-year transfer claims;

2.     The Court **GRANTS** summary judgment to O'Melveny on Golden's preference, two-year fraudulent transfer, and four-year fraudulent transfer claims;

3.     The Court **DENIES as moot** defendants' request for judicial notice, dkt. 118; and

///

///

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:14-cv-08725-CAS(AGRx) | Date | April 1, 2020 |
| Title | JEFFREY I. GOLDEN v. O'MELVENY & MYERS LLP ET AL. | | |

4.   The Court **DENIES** Golden's motion for leave to file a first amended complaint.

IT IS SO ORDERED.

| | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |